JAMES Y. PAK (SBN 304563)
*james.pak@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

KEVIN J. MINNICK (SBN 269620)
*kevin.minnick@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

P. ANTHONY SAMMI
*anthony.sammi@skadden.com*
KURT WM. HEMR
*kurt.hemr@skadden.com*
(motion for *pro hac vice* admission
of the foregoing attorneys forthcoming)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Attorneys for Plaintiff,
Crytek GmbH

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CRYTEK GMBH,<br><br>Plaintiff,<br><br>v.<br><br>CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP.,<br><br>Defendants. | Case No. 2:17-cv-08937<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Crytek GmbH ("Crytek") brings this Complaint against Cloud Imperium Games Corporation and Roberts Space Industries Corporation ("Defendants"), and in support thereof alleges as follows, upon personal knowledge as to itself and upon information and belief as to all others:

## NATURE OF ACTION

1. This Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because federal courts have exclusive jurisdiction in copyright cases, and because those claims are federal questions. This Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332 because Defendants are citizens of California, Plaintiff is a citizen of a foreign state, and the amount in controversy substantially exceeds $75,000.

2. Crytek is an industry-leading video game developer, publisher, and technology provider. It has created some of the most popular and award-winning video game franchises in the world, including Far Cry and Crysis. Crytek is also long renowned for pushing the boundaries of video games with its highly acclaimed CryEngine, a cutting-edge, powerful, and feature-filled video game development platform and computer program that provides game developers access to today's most advanced game engine technologies.

3. In 2012, Defendants sought to develop a new game called "Star Citizen," which was billed as an epic space adventure, trading, and dogfighting video game. To make that game a reality, Defendants sought to use the CryEngine video game development platform as its foundation. Crytek and Defendants agreed to preliminary license terms, and Crytek invested significant time and expense in creating impressive demonstrations and proofs-of-concept that were used to persuade the public to contribute financially to a "crowdfunding" campaign to support development of the video game. As a direct result of Crytek's efforts, the

crowdfunding campaign for Star Citizen was a monumental success, raising over 150 million dollars — a record for video game crowdfunding projects.

4. Crytek and Defendants subsequently formalized their relationship by entering into a Game License Agreement. In that Agreement, Defendants promised, among other things, (i) to use the CryEngine game development platform exclusively and to promote that platform within the video game, (ii) to collaborate with Crytek on CryEngine development, and (iii) to take a number of steps to ensure that Crytek's intellectual property was protected. Defendants utterly failed to follow through on those promises, and their actions and omissions constitute breaches of contract and copyright infringement and have caused substantial harm to Crytek.

5. By this action, Crytek seeks damages that will fairly and fully compensate it for Defendants' breach and infringement. If this relief is not granted, Defendants will continue to profit unjustly at Crytek's expense.

## PARTIES

6. Plaintiff Crytek is a German corporation with its principal place of business in Frankfurt, Germany. Crytek is, and at all relevant times has been, the owner of a copyright in the CryEngine computer program ("CryEngine"). CryEngine is the subject of an application for copyright registration.

7. Defendant Cloud Imperium Games Corporation ("CIG") is a corporation organized under the laws of Delaware and registered to do business in California with its principal place of business in Los Angeles, California.

8. Defendant Roberts Space Industries Corporation ("RSI") is a corporation organized under the laws of Delaware and registered to do business in California with its principal place of business in Los Angeles, California.

## JURISDICTION AND VENUE

9. This Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because federal courts have exclusive jurisdiction in copyright cases, and because those claims are federal questions.

10. This Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332 because Defendants are citizens of California, Plaintiff is a citizen of a foreign state, and the amount in controversy substantially exceeds $75,000.

11. This Court has personal jurisdiction over Defendants because their principal place of business is in Los Angeles, California; they transact business in the State of California; they have engaged in actionable conduct within the State of California; and they maintain agents in the State of California and have other contacts with the State of California. The causes of action asserted herein arise out of Defendants' transactions and business within the State of California.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants regularly conduct business in this District, and a substantial part of the events giving rise to this action occurred in this District.

## FACTS GIVING RISE TO THIS ACTION

13. Chris Roberts, a video game designer, and Ortwin Freyermuth, an entertainment lawyer, founded Defendants. On October 10, 2012, Defendants initiated a crowdfunding campaign to raise money for Star Citizen, a game to be developed by Defendants.

14. At significant time and expense, Crytek created demonstrations and proofs-of-concept for Defendants related to Star Citizen, and Defendants used those materials as part of the crowdfunding campaign for Star Citizen.

15. On November 20, 2012, Crytek and Defendants entered into a Game License Agreement ("GLA") with Crytek. The GLA was extensively negotiated, and negotiations on behalf of the Defendants were led by one of the Defendants' co-founders, Freyermuth. In prior years, Freyermuth also represented Crytek in negotiations of similar license agreements with third parties. Notwithstanding that he had confidential information about Crytek's licensing practices that would unfairly advantage Defendants, Freyermuth never recused himself from those negotiations and never resolved that conflict of interest with Crytek. The

negotiations on behalf of Crytek were led by Carl Jones, then an employee of Crytek. Jones later left Crytek and became an employee of Defendants.

16. Under the GLA, Defendants agreed to pay Crytek a license fee for access to and use of CryEngine in the Star Citizen video game. Crytek agreed to charge Defendants a below-market license rate for CryEngine in exchange for Defendants' agreements that they would — among other things — prominently display Crytek trademarks and copyright notices in the Star Citizen video game and related marketing materials.

17. Having met their initial funding target and hoping to raise further contributions from the public, Defendants added additional "stretch goals" to their crowdfunding campaign and made further use of Crytek's materials in that process. Defendants promised to expand the scope of the crowdfunding project whenever each stretch goal was reached, and these expanded promises successfully induced additional funding contributions from the public. Defendants raised over $50 million by 2014, over $100 million by 2015, and over $150 million by earlier this year. Star Citizen has hit a record for video game crowdfunding projects and is one of the highest-funded crowdfunding campaigns of all time.

18. Yet, even as funding for Defendants' campaign reached new heights, Defendants breached several promises they made to Crytek in the GLA and infringed Crytek's copyrights in the CryEngine computer program.

### A. Defendants Are Developing a Separate Game Using CryEngine Without Permission

19. Section 2.1.2 of the GLA contained a promise by Defendants to use CryEngine for the development of only one video game. During the negotiation of the terms of the GLA, Crytek made it clear that the game license would not cover anything more.

20. Section 2.1.2 of the GLA expressly states that CIG has a license only to "embed CryEngine in the Game and develop the Game." The GLA limits the use of the CryEngine computer program to a single video game called Star Citizen.

21. Exhibit 2 of the GLA states that "the Game does not include any content being sold and marketed separately," such as content "sold and marketed as a separate, standalone PC game."

22. On December 16, 2015, Defendants announced that "Squadron 42," a single-player video game involving space combat, would be sold separately from Star Citizen.

23. On January 29, 2016, Defendants made a further public announcement about Squadron 42, stating that it would be made available for purchase as a stand-alone video game.

24. On February 5, 2016, Crytek notified Defendants that their plan to distribute Squadron 42 as a standalone game was not covered by the GLA's license, because the GLA did not grant Defendants a license to embed CryEngine in any game other than Star Citizen.

25. On February 14, 2016, Defendants moved forward with their plan for Squadron 42 notwithstanding their failure to obtain a license and began offering the video game for separate purchase. As a result, Defendants are intentionally and willfully using CryEngine without a license and in violation of copyright laws.

26. On December 23, 2016, in reference to Star Citizen and Squadron 42, Defendants announced that "[b]oth games are currently in development and are backed by a record-breaking $139 million crowd funded effort."

27. Crytek has not been compensated for Defendants' unlicensed use of Crytek technology in the Squadron 42 game, and has been substantially harmed by being deprived of that compensation, which would ordinarily include a substantial up-front payment as well as a substantial royalty on game sales.

**B. Defendants Removed Crytek Trademarks and Copyright Notices from Their Games and Marketing Materials Without Permission**

28. Sections 2.8.1, 2.8.2, and 2.8.3 of the GLA contained promises by Defendants that they would prominently display Crytek's trademarks and copyright notices in the Star Citizen video game and related marketing materials.

29. Section 2.8.1 of the GLA expressly states that the "splash screen, credits screen, documentation and packaging (if any) as well as the marketing material" shall include "Crytek's copyright notice."

30. Section 2.8.2 of the GLA further states the "splash screen, credits screen, documentation and packaging (if any) as well as the marketing material" shall prominently display both the "Crytek" and "CryEngine" trademarks.

31. Section 2.8.3 of the GLA states that any changes to Crytek's trademarks and copyright notices in these materials requires "Crytek's prior written approval" and a ten day approval period.

32. In accordance with those provisions of the GLA, the Star Citizen video game initially contained a splash screen that included Crytek's trademarks and copyright notices:




33. Defendants knew Crytek's right to display its trademarks and copyright notices in the Star Citizen video game and related marketing materials was a critical component of the GLA. Yet, by at least September 24, 2016, Defendants' co-founder

Chris Roberts publicly sought to minimize Crytek's contribution to Star Citizen, stating that "we don't call [the video game engine] CryEngine anymore, we call it Star Engine" (https://www.youtube.com/watch?v=fDROliuDczo).

34. Shortly thereafter, Defendants removed Crytek trademarks and copyright notices from the Star Citizen video game and related marketing materials in breach of the GLA.

35. The licensing fee negotiated under the GLA reflected a substantial reduction from Crytek's usual licensing fees in view of the promotional consideration and other consideration that Defendants promised to Crytek in Sections 2.8.1, 2.8.2, and 2.8.3 of that Agreement. In view of the fact that Crytek has been deprived of that promised consideration, Crytek has been substantially damaged, and has failed to receive the balance of its full, usual license fee.

### C. Defendants Broke Its Promise to Exclusively Use CryEngine for the Game

36. Section 2.1.2 of the GLA contained a critical promise from Defendants that they would not develop the Star Citizen video game using any other video game engines.

37. Section 2.1.2 of the GLA states that Defendants have a license only to "exclusively embed CryEngine in the Game."

38. On December 23, 2016, Defendants announced that they were using the Amazon Lumberyard video game engine for Star Citizen. The GLA did not permit Defendants to use any other video game engine in Star Citizen except for CryEngine.

39. Crytek has been damaged by Defendants' breach of Section 2.1.2 of the GLA, including for the reason that Crytek has failed to receive the benefit of the favorable attention that it otherwise would have derived from Defendants' use of CryEngine in Star Citizen.

**D. <u>Defendants Broke Its Promise to Collaborate On CryEngine Development</u>**

40. Section 7.3 of the GLA contained a promise that Defendants would provide bug fixes and optimizations to CryEngine on at least an annual basis.

41. Section 7.3 of the GLA states that "<u>[a]nnually</u> during the Game's development period, and again upon publication of the final Game, Licensee shall provide Crytek with any <u>bug fixes, and optimizations</u> made to the CryEngine's original source code files (including CryEngine tools provided by Crytek) as a complete compilable version."

42. On November 16, 2015, Crytek requested long overdue bug fixes and optimizations from Defendants. Defendants did not make a good faith effort to provide Crytek with the promised bug fixes and optimizations to the CryEngine as a complete compilable version.

43. On November 24, 2016, Crytek informed Defendants that they were in breach of Section 7.3 of the GLA. Although Defendants claimed that they were ready and willing to comply with their obligations, they did not comply.

44. On June 22, 2017, Crytek sent another letter to Defendants, again requesting the bug fixes and optimizations that were promised under the GLA. To date, Defendants have not made a good faith effort to provide Crytek with the promised bug fixes and optimizations to the CryEngine as a complete, compilable version.

45. Crytek has been damaged by Defendants' breach of Section 7.3 of the GLA, including for the reason that Defendants have failed to provide the technology to Crytek that they promised to Crytek under the GLA, and Crytek accordingly has not benefited from use of that technology.

**E. Defendants Disclosed CryEngine Technology to Third Parties Without Permission**

46. Sections 2.2.1, 2.2.2, and 2.6 of the GLA contained a promise by Defendants that they would keep the underlying technology for CryEngine (including computer source code) confidential and not share it with anyone else without first disclosing that third party and obtaining prior written approval.

47. Section 2.2.1 of the GLA states that Defendants shall not "publish or distribute the CryEngine in any way, be it in source code or object code."

48. Section 2.2.2 of the GLA states that Defendants shall not "use CryEngine in any manner which may disclose the CryEngine source code or other Crytek proprietary information to any third party not otherwise authorized herein."

49. Section 2.6 of the GLA states that a third party developer is permitted to access the Crytek technology so long as Defendants obtain "prior written approval" from Crytek and the third party developer enters into non-disclosure and non-competition agreements with Crytek.

50. On May 6, 2015, Defendants began posting a series of videos online titled "Bugsmashers." The videos contain excerpts of information from CryEngine that were confidential, in breach of the GLA, and should not have been shown to the public. The series continues today.

51. On August 26, 2017, news reports announced a partnership between Defendants and a third party developer, Faceware Technologies. Upon information and belief, as a result of the partnership, Faceware received access to the underlying technology for CryEngine (including computer source code). Defendants did not disclose this third party developer's involvement to Crytek, let alone obtain Crytek's prior written approval. This was entirely in breach of the GLA.

52. Crytek has been damaged by Defendants' breach of these provisions of the GLA, including for the reason that third parties not authorized by Crytek may have used Crytek's technology to Crytek's detriment.

## COUNTS

### COUNT 1: BREACH OF CONTRACT

53. Crytek incorporates by reference the allegations in the preceding paragraphs of this Complaint.

54. The GLA constitutes a writing to which Defendant was a party and through which Cyrtek provided Defendants with a limited license to use the CryEngine computer program.

55. The GLA limits the use of the CryEngine computer program to a single video game called Star Citizen.

56. Defendants breached the GLA by using CryEngine to market, develop, and incentivize funding for more than one game, thereby enriching itself of millions of dollars without payment for such use.

57. Defendants further breached the GLA by refusing to provide agreed upon annual bug fixes and optimizations to CryEngine.

58. Defendants further breached the GLA by, among other things, removing Crytek's trademarks and copyright notices from the Star Citizen video game and related marketing materials.

59. Defendants further breached the GLA by breaking its promise to exclusively use CryEngine in the Star Citizen video game.

60. Crytek has suffered and will continue to suffer harm by Defendants' past and ongoing breaches of the GLA and is entitled to monetary damages in an amount to be determined at trial.

**COUNT 2: COPYRIGHT INFRINGEMENT**

61. Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint.

62. Crytek is the copyright holder of the copyrighted CryEngine computer program. The CryEngine computer program constitutes copyright expression protected by 17 U.S.C. § 101, *et seq*. A true and correct copy of Crytek's application for copyright registration is attached as Exhibit 1.

63. Defendants have reproduced, displayed, and distributed unauthorized copies of the CryEngine computer program to which they had access. Such unauthorized copies exceed the permissible license terms and therefore constitute unlawful reproduction, display, and distribution of the CryEngine computer program.

64. Defendants' acts violate the exclusive rights of Crytek as the copyright holder to reproduce, display and distribute the CryEngine computer program and to create derivative works from it, as set forth in 17 U.S.C. § 106.

65. Crytek is informed and believes and thereon alleges that the infringement of Crytek's copyright was willful, reckless, and/or in blatant disregard for Crytek's rights as a copyright holder, and as such, claims willful, exemplary and enhanced statutory damages, and/or a preclusion from claiming certain deductions or other benefits during the calculation of damages.

66. Defendants' infringements of Crytek's copyrights are the direct and proximate cause of damages to Crytek, and Crytek is entitled to compensatory damages in an amount to be determined at trial.

67. Crytek is further entitled to recover from Defendants all of the gains, profits, and advantages they have obtained as a result of the infringement, and for disgorgement of any additional gains, profits, and advantages Defendants obtained that are attributable to their infringement of the CryEngine computer program in an amount to be proven at trial, together with attorneys' fees and costs pursuant to 17 U.S.C. §§ 504 and 505.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following legal and equitable relief in favor of Plaintiff and against Defendant as a result of its infringing conduct and other inequitable practices:

a. awarding Plaintiff all direct damages (estimated to be in excess of $75,000), indirect damages, consequential damages (including lost profits), special damages, costs, fees, and expenses incurred by reason of Defendants' breach of contract and copyright infringement;

b. entering a permanent injunction enjoining and restraining Defendants from continuing to possess or use the Copyrighted Work and a preliminary and permanent injunction requiring Defendants, and all those acting in concert or participation with Defendants, from infringing or encouraging, aiding or abetting others to infringe the Copyrighted Work;

c. awarding actual damages and disgorgement of Defendants' profits in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit as provided by law and as set forth in the contracts at issue;

d. awarding punitive damages in an amount to be determined at trial;

e. awarding all remedies provided for under 17 U.S.C. § 504;

f. granting such other and further relief as the equities of the case may require and as this Court may deem just and proper under the circumstances.

Dated: December 12, 2017

/s/ James Y. Pak

JAMES Y. PAK (SBN 304563)
*james.pak@skadden.com*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
(650) 470-4500
(650) 470-4570

***Attorneys for Plaintiff***
***Crytek GmbH***

KEVIN J. MINNICK (SBN 269620)
*kevin.minnick@skadden.com*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

P. ANTHONY SAMMI
*anthony.sammi@skadden.com*
KURT WM. HEMR
*kurt.hemr@skadden.com*
(motion for *pro hac vice* admission of the foregoing attorneys forthcoming)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

**JURY DEMAND**

Plaintiff Crytek GmbH hereby demands a trial by jury on all matters and issues so triable.

Dated: December 12, 2017

*/s/ James Y. Pak*
JAMES Y. PAK (SBN 304563)
*james.pak@skadden.com*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
(650) 470-4500
(650) 798-4570

***Attorneys for Plaintiff Crytek GmbH***

KEVIN J. MINNICK (SBN 269620)
*kevin.minnick@skadden.com*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

P. ANTHONY SAMMI
*anthony.sammi@skadden.com*
KURT WM. HEMR
*kurt.hemr@skadden.com*
(motion for *pro hac vice* admission of the foregoing attorneys forthcoming)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000