**JOSEPH R. TAYLOR** (SBN 129933)
**JEREMY S. GOLDMAN** (SBN 306943)
**AZITA M. ISKANDAR** (SBN 280749)
**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (347) 438-2156
E-Mail:  jtaylor@fkks.com
         jgoldman@fkks.com
         aiskandar@fkks.com

Attorneys for Defendants CLOUD IMPERIUM GAMES CORP.
and ROBERTS SPACE INDUSTRIES CORP.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYTEK GMBH, | Case No. 2:17-CV-08937 |
| Plaintiff, | [HON. DOLLY M. GEE] |
| vs. | **DECLARATION OF JEREMY S. GOLDMAN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR CLAIMS FOR RELIEF THEREIN OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT AND TO STRIKE CERTAIN PORTIONS OF THE FIRST AMENDED COMPLAINT** |
| CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP., | |
| Defendants. | |
| | Date:      February 9, 2018 |
| | Time:      9:30 AM |
| | Courtroom:  8C |

1    I, JEREMY S. GOLDMAN, declare as follows:

2        1.    I make this declaration on the basis of personal knowledge, except where

3    indicated otherwise.  I make this declaration in support of Defendants' Motion to Dismiss

4    the First Amended Complaint or Claims For Relief Therein or, in the Alternative, For a

5    More Definite Statement and to Strike Certain Portions of the First Amended Complaint

6    (the "Motion").

7        2.    I am over age eighteen and a resident of the State of California.

8        3.    I am an attorney licensed to practice law in the State of California, and a

9    partner at the law firm Frankfurt Kurnit Klein & Selz P.C., counsel of record for the

10   defendants in the above-captioned lawsuit, Cloud Imperium Games Corp. ("CIG") and

11   Roberts Space Industries Corp. ("RSI") (together, "Defendants").

12   **Exhibits to the Declaration**

13       4.    Attached hereto as **Exhibit A** is a true and correct copy of the fully-executed

14   Game License Agreement (the "GLA") entered into between plaintiff Crytek GmbH

15   ("Crytek") and CIG, dated as of November 20, 2012.

16       5.    Attached hereto as **Exhibit B** is a true and correct copy of the fully-executed

17   Amendment to the GLA entered into between Crytek and CIG, dated as of September 4,

18   2014.

19       6.    Attached hereto as **Exhibit C** is a true and correct copy of a press release

20   issued by Defendants on December 23, 2016, entitled "Star Citizen and Squadron 42

21   Utilize Amazon Lumberyard Game Engine" (the "2016 Press Release").  Crytek

22   references, quotes from and relies upon the 2016 Press Release in its First Amended

23   Complaint at paragraphs 26 and 38.

24   **Compliance With Local Rule 7-3**

25       7.    On December 12, 2017, Crytek filed its initial complaint in this action [ECF

26   1] (the "Initial Complaint").

27

28

---

8. Among other deficiencies with the Initial Complaint, paragraph 15 of the Initial Complaint included the false and improper allegation that Ortwin Freyermuth, an attorney who co-founded CIG and RIS, had negotiated the GLA on behalf of Defendants and against Crytek without resolving a conflict of interest with Crytek. *See* Initial Compl. [ECF 1] ¶ 15, lines 25-28 ("Notwithstanding that he had confidential information about Crytek's licensing practices that would unfairly advantage Defendants, Freyermuth never recused himself from those negotiations and never resolved that conflict of interest with Crytek.") (the "Offending Allegation").

9. Upon learning of the filing of the Initial Complaint, on December 14, 2017, our law firm notified Crytek's counsel of the falsity of the Offending Allegation. We pointed out that, contrary to the statement contained in the Offending Allegation, Mr. Freyermuth's law firm had obtained a written conflict waiver signed by Crytek prior to negotiating the GLA on behalf of CIG. Notwithstanding the existence of the written conflict waiver, a copy of which we provided to Crytek's counsel, Crytek initially refused to withdraw the Offending Allegation from the Initial Complaint.

10. On December 28, 2017, I participated in a teleconference with Crytek's counsel pursuant to Local Rule 7-3 to discuss our anticipated motion to dismiss or, in the alternative, for a more definite statement and to strike certain portions of the Initial Complaint, based upon numerous deficiencies with the Initial Complaint. During the call, I also communicated Defendants' intent to serve upon Crytek's counsel a motion, pursuant to Rule 11 of the Federal Rules of Civil Procedure, based upon Crytek's improper inclusion of, and refusal to withdraw, the Offending Allegation.

11. On January 2, 2018, Crytek filed its First Amended Complaint (the "FAC") [ECF 18]. The FAC addressed only a few of the many deficiencies with the Initial Complaint that I had raised during my teleconference with Crytek's counsel on December 28, 2017. The unaddressed deficiencies are the subject of this Motion.

1    12. With respect to the Offending Allegation, Crytek omitted from the FAC the

2  false statement that had been included in the Initial Complaint alleging that Mr.

3  Freyermuth had negotiated the GLA on behalf of CIG without resolving a conflict

4  interest. However, and as discussed in the accompanying Memorandum of Points and

5  Authorities in support of the Motion, the FAC retains certain misleading, immaterial,

6  impertinent and scandalous statements regarding Mr. Freyermuth as well Carl Jones,

7  another employee of CIG. *See* FAC ¶ 15, lines 28-4.

8    I declare under penalty of perjury that the foregoing is true and correct.

9    Executed on January 5, 2018 at Los Angeles, California.

10

11                          JEREMY S. GOLDMAN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

Fully-Executed Game License Agreement between
Crytek GmbH and Cloud Imperium Games Corp.
Dated as of November 20, 2012

## GAME LICENSE AGREEMENT

(the "**Agreement**")

dated as of November 20, 2012

(the "**Effective Date**")

between

Crytek GmbH
Grüneburgweg 16-18
60322 Frankfurt/Main
Germany

– "**Crytek**" –

and

Cloud Imperium Games Corporation
9255 Sunset Blvd., Ste. 803
West Hollywood, CA 90069
USA

– "**Licensee**" –

– Crytek and Licensee hereinafter jointly called "**Parties**" –

**WHEREAS** Crytek has developed the game engine software "CryEngine";

**WHEREAS** Licensee desires to use, and Crytek desires to grant the license to use, the "CryEngine" for the game currently entitled "Space Citizen" and its related space fighter game "Squadron 42," together hereafter the "Game", pursuant to the terms and conditions of this Agreement;

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein the Parties hereby agree as follows:

## 1.       Definitions

1.1.       "Affiliate" means any corporate entity (including any limited liability company) that controls or is controlled by, or is under common control with, another corporate or limited liability entity, where "control" means the ownership or control of more than fifty percent (50%) of the voting rights of such entity.

1.2.       "Commercial Life": The period of time in which Licensee makes the game available to play by third parties, in exchange for the payment of any fee(s), including, without limitation, any free-to-play version with in-game microtransactions.

1.3.       "Confidential Information": Defined in Section 7.1.

1.4.       "CryEngine": The game engine software called "CryEngine" and the other software components created by Crytek as well as the documentation pertaining to the CryEngine as further defined in Exhibit 1 attached hereto and incorporated by reference herein, including any upgrades or updates thereof as they become available during the support period set forth in Sec. 4.1.2, or as otherwise made available to other licensees outside of their support period.

1.5.       "First Public Release" as used herein shall mean the earlier of (i) the Game reaching 500,000 alpha or beta players, (ii) the Game being released to the general public as non-beta release, or (iii) July 31, 2015.

1.6.     "Game": the interactive software product developed and published for the certain platforms as further defined in Exhibit 2 attached hereto and incorporated by reference herein. The Game shall include patches, bug fixes and upgrades (but not sequels or prequels, it being understood that the continuous development and expansion of the Game's "online universe" and any so-called DLCs therefor shall not be considered a sequel or prequel) which do not involve a change to the name of the Game. Notwithstanding the foregoing, if a name change occurs before the Game's First Public Release, or if it is purely a name change without any material change in game concept, features or functionalities, such Game will still be deemed the same Game despite the name change.

1.7.     "MOD Tools": custom editing tools designed for the Game based on, or incorporating components of Sandbox or other CryEngine software (all unnecessary features removed to prevent that users could use the MOD Tools to load and/or play content developed by Crytek or by other existing or future CryEngine licensees), approved by Crytek (not to be unreasonably withheld) and to be distributed to the user for the building of user content and components for use in the Game, such as additional assets (vehicles, character, spaceships, weapons etc.), game levels, and the like. For avoidance of doubt: in no case shall the users be able to commercialize what they have built with MOD Tools, it being understood, however, that users' participation in design competitions organized by Licensee to promote the Game shall not be deemed a "commercialization" pursuant hereto, even if the users are awarded cash prizes or other rewards.

1.8.     "Next Gen": the successors of Xbox 360 ("Xbox 720"/"Durango") and Playstation 3 ("PS4"/"Orbis"), and any other console platforms introduced hereafter to the extent supported by CryEngine;

1.9.     "Term": defined in Section 8.1

## 2.     Grant of License

2.1.     Grant: Subject to strict and continuous compliance with the restrictions in the Agreement and the timely payment of the first installment of the License and Buyout Fee pursuant to Section

5.1.1 hereof by Licensee, Crytek grants to Licensee a world-wide, license only:

2.1.1. to non-exclusively develop, support, maintain, extend and/or enhance CryEngine such right being non-sub-licensable except as set forth in Sec. 2.6 below;

2.1.2. to exclusively embed CryEngine in the Game and develop the Game which right shall be sub-licensable pursuant to Sec. 2.6);

2.1.3. to exclusively manufacture, market, promote, sell, license, publish and exploit the Game in any way which right shall be freely sub-licensable.

2.1.4. subject to the payment of the additional MOD Fee pursuant to Sec. 5.1.3 below and the issuance of a MOD EULA which prohibits legal entities from use and prohibits commercialization of the MOD results or as otherwise approved by Crytek in writing (such approval not to be unreasonable withheld), to develop, manufacture, market, promote, sell, license, publish and exploit the MOD Tools in connection with the Game;

2.2. Restrictions on Use: Except as expressly permitted under the Agreement, Licensee shall not:

2.2.1. publish or distribute the CryEngine in any way, be it in source code or object code, except as permitted in this Section 2. This includes publishing or redistributing any of the CryEngine as an isolated application or of the Sandbox Editor or other tools listed in Exhibit 1, except as provided for in Sec. 2.1.4 above.

2.2.2. use CryEngine in any manner which may disclose the CryEngine source code or other Crytek proprietary information to any third party not otherwise authorized herein;

2.2.3. except with respect to the limited rights of Licensee pursuant to 2.2.1 above, use, copy, reproduce or duplicate, in any manner or form, in whole or in part CryEngine (or any part thereof), or any Crytek documentation pertaining thereto (except only as necessary to exercise Licensee's rights under the license);

2.2.4. reverse engineer and/or decompile the CryEngine object code; or

2.2.5.     copy, sublicense, sublease or otherwise distribute, in whole or in part, any of Crytek's games
           (including "Crysis"), or enhance, modify or create any derivatives of any such Crytek games.

2.3.       Licensee shall take diligent measures to prevent any third end-user or sub-contractor from
           copying, reproducing or duplicating CryEngine and/or supporting documentation.

2.4.       During the Term of the License, or any renewals thereof, and for a period of two years
           thereafter, Licensee, its principals, and Affiliates shall not directly or indirectly engage in the
           business of designing, developing, creating, supporting, maintaining, promoting, selling or
           licensing (directly or indirectly) any game engine or middleware which compete with
           CryEngine.

2.5.       This license is not assignable to any third party, it being understood that Licensee may assign
           this license to Affiliates provided that Licensee remains secondary liable.

2.6.       Licensee may sub-contract the development of the Game to one or more third party
           developer(s) of Licensee's own choosing subject to prior written approval of the developer by
           Crytek (not to be unreasonably withheld), execution of the necessary non-disclosure and non-
           competition agreements by and between such developer and Crytek. Approval for sub-
           contracting shall not be unreasonably withheld. The developer shall be added to Exhibit 3.

2.7.       Licensee shall enable Crytek access to the Game limited to twenty (20) test/QA accounts for
           the Game at no cost.

2.8.       Copyright Notice and Trademarks

2.8.1.     The splash screen, credits screen, documentation and packaging (if any) as well as the
           marketing material (print, online etc.) of the Game shall include the following wording:
           "Portions of this software are included under license © 2004-201_ Crytek GmbH. All rights
           reserved." Crytek's copyright notices shall be no less prominently displayed than Licensee's
           own copyright notices.

2.8.2.     Crytek grants Licensee the right to use the trademarks "Crytek" and "CryEngine" only to

promote the Game. The splash screen, credits screen, documentation and packaging (if any) as well as the marketing material (print, online etc.) of the Game shall include the trademarks "Crytek" and "CryEngine". Licensee shall use the trademarks as made available online by Crytek within eight (8) weeks before the final design of the respective material. Crytek's trademarks shall be no less prominently displayed than Licensee's own trademarks.

2.8.3.   The design of the splash screen, the credits screen, the documentation, the packaging and the marketing material is subject to Crytek's prior written approval regarding Crytek's copyright notice and trademarks. The approval shall be deemed given if Crytek does not give any notice within ten (10) days from receipt of a sample.

2.9.   Crytek shall deliver the CryEngine no later than upon receipt of the first installment of the License and Buyout Fee pursuant to Section 5.1.1.

**3.   [intentionally deleted]**

**4.   Service and Support**

4.1.   Crytek will render the following technical support only:

4.1.1.   If elected by Licensee during the period beginning at the date hereof and ending December 31st, 2018 ("**Initial Support Term**"), up to two weeks of training in separate one week installments. The first week of training shall be held at Licensee's offices, the second week of training will be held at Crytek Frankfurt. The details of the training (especially the dates) are subject to further consultation between the Parties. The training itself will be free of charge but Licensee shall bear all costs (if any) for traveling, as well as 4-stars accommodation and meals of Crytek's staff involved.

4.1.2.   During the Initial Support Term, Crytek will have technical personnel available each business day (10-6 PM CET excluding its scheduled holidays - ("Normal Working Hours")) to receive error reports from Licensee of failures of the unmodified CryEngine software to perform according to its documented functional specification. The Parties agree that the primary means of error reporting will be by electronic mail or submission of an error report to an

online software bug (error) tracking package established for this purpose by Crytek. Reports of errors must include the details of hardware configuration used, software configuration (including driver versions), error logs, screens shots (where applicable), and detailed reproduction steps, at a minimum. Crytek may also require access to the source code of the Game application in order to track down the source of the error. Licensee may use telephone communications to supplement electronic mail reporting. Crytek shall make commercially reasonable efforts to provide Licensee with an initial response to the error report by 6 PM CET on the third business day following the date of the error report. An error includes a failure of CryEngine to perform according to its documentation. There are three prerequisite conditions to a reported problem being deemed an error under this Agreement: i) Crytek must be able to recreate the problem (which might include requiring the Game's source code); and ii) Licensee has not modified the source code of the module which is the source of the error; and iii) Licensee is using CryEngine in accordance with the documentation and other instructions. Crytek will use commercially reasonable efforts to create Error Corrections within a reasonable amount of time after the report of any perceived error and to provide Licensee with the error correction. An "Error Correction" is defined as a software modification or addition, which when made or added to CryEngine or its documentation establishes material conformity of CryEngine with its functional specifications. Error Corrections include, without limitation, changes in the documentation, procedures or routines that when used in the regular operation of CryEngine eliminates the practical adverse effect on Licensee of the nonconformity. In the event that Crytek definitively concludes and demonstrates that the error lies in the Game application itself (or in user-modified routines of the CryEngine), and not in the unmodified CryEngine software, Crytek will be entitled to recoup its associated labour costs at the standard rate of € 1.000,00 per man day used.

4.1.3.  During the entire Term: access to restricted developer support forums and online support pages as they become available.

4.1.4.  Termination of support: Crytek shall be entitled to terminate any support services in the event it ceases generally to provide CryEngine to its customers.

4.1.5.  Except as described in this Section 4 Crytek shall not be obliged to render any support

services. Crytek, in its sole discretion, may agree to render further training or support at a man-day charge of € 1.000,00. This applies also if Crytek grants licenses for further platforms and/or delivers upgrades or Licensee requests support for a ported Engine and/or ported Game and/or for a modified CryEngine source code. In any case Crytek will not render any support or training unless Licensee has delivered a snapshot of the ported and/or modified source code. If Licensee requests Crytek personnel to render services at a location other than a Crytek location, then Licensee shall bear the reasonable costs of travel, accommodation (no less favorable than 4-stars) and meals for such Crytek personnel.

**5.       Payment**

5.1.      <u>License and Buy-Out Fee for PC, Mobile and Next Gen</u>: Licensee shall pay to Crytek a fee (the "**License and Buyout Fee**") for the PC/Windows/Mac OS, mobile platforms, and NextGen amounting to € 1,850,000.00 (One million eight hundred and fifty thousand Euros, including a license fee amounting to € 600,000.00 and a royalty buyout amounting to € 1.25 million). Subject to Sec. 5.5 the License and Buyout Fee shall be payable as follows:

5.1.1.     €250,000.00 (two hundred and fifty thousand Euros, license fee only) on or before December 30, 2012 (receipt of which is hereby acknowledged by Crytek);

5.1.2.     €700,000 (seven hundred thousand Euros, including a license fee amounting to € 350,000.00 and a royalty buyout amounting to € 350,000.00) upon execution and delivery of this Agreement;

5.1.3.     €400,000 (four hundred thousand Euros, royalty buyout only) upon First Public Release, but in no event later than July 1, 2014;

5.1.4.     €250,000.00 (two hundred and fifty thousand Euros, royalty buyout only) on or before July 1, 2015; and

5.1.5.     €250,000.00 (two hundred and fifty thousand Euros, royalty buyout only) on or before July 1, 2016.

man-day charge of € 1.000,00. This applies also if Crytek grants licenses for further platforms and/or delivers upgrades or Licensee requests support for a ported Engine and/or ported Game and/or for a modified CryEngine source code. In any case Crytek will not render any support or training unless Licensee has delivered a snapshot of the ported and/or modified source code. If Licensee requests Crytek personnel to render services at a location other than a Crytek location, then Licensee shall bear the reasonable costs of travel, accommodation (no less favorable than 4-stars) and meals for such Crytek personnel.

**5.**  **Payment**

5.1.  <u>License and Buy-Out Fee for PC, Mobile and Next Gen</u>: Licensee shall pay to Crytek a fee (the "**License and Buyout Fee**") for the PC/Windows/Mac OS, mobile platforms, and NextGen amounting to € 1,850,000.00 (One million eight hundred and fifty thousand Euros, including a license fee amounting to € 600,000.00 and a royalty buyout amounting to € 1.25 million). Subject to Sec. 5.5 the License and Buyout Fee shall be payable as follows:

5.1.1.  €250,000.00 (two hundred and fifty thousand Euros, license fee only) on or before December 30, 2012 (receipt of which is hereby acknowledged by Crytek);

5.1.2.  €700,000 (seven hundred thousand Euros, including a license fee amounting to € 350,000.00 and a royalty buyout amounting to € 350,000.00) upon execution and delivery of this Agreement;

5.1.3.  €400,000 (four hundred thousand Euros, royalty buyout only) on or before July 1, 2014;

5.1.4.  €250,000.00 (two hundred and fifty thousand Euros, royalty buyout only) upon First Public Release, but in no event later than July 1, 2015; and

5.1.5.  €250,000.00 (two hundred and fifty thousand Euros, royalty buyout only) on or before July 1, 2016.

5.2.     MOD Fee (optional): If and when Licensee elects to distribute MOD Tools, Licensee shall give Crytek written notice thereof and shall pay to Crytek an additional fee (the "**MOD Fee**") amounting to

**€ 150,000.00 (one hundred and fifty thousand Euros).**

Notwithstanding the foregoing, if Crytek at any time hereafter provides to its licensees or the public a free limited editing tool (such as in a revised version of the CryEngine SDK, or any similar tool released for free use, e.g. in connection with Crytek's GFace) that allows for free or limited commercialization of the work product created with such editing tool, then Licensee shall be entitled to use such free editing tool for its MOD Tools without any obligation to pay the MOD Fee.

5.3.     Support Extension: If Licensee wishes to extend the support as set forth in Sec. 4.1.2 for an additional year Licensee shall give Crytek two (2) months' written notice prior to the end of the support period pursuant to Sec. 4.1.2 (or its extension, if applicable) and pay to Crytek a support extension fee (the "**Support Extension Fee**") amounting to

**€ 100,000.00 (one hundred thousand Euros) per additional year of support.**

Each additional year of support shall include one (1) more week of training as set forth in Sec. 4.1.1 which shall be provided, at Licensee's option, either at a Crytek or a Licensee location. The Support Extension Fee shall be due upon the issuance of the notice to extend support and in accordance with Sec. 5.4.

5.4.     No Royalties: The Parties acknowledge and agree that other than the MOD Fee and any Support Extension Fee, if applicable, the License and Buyout Fee shall be deemed complete compensation for all rights, services, and privileges granted to Licensee hereunder, and no further royalties or participation whatsoever shall be due or payable to Crytek in connection therewith.

5.5.     Payments: All payments under Section 5 shall be due within ten (10) business days after

invoice by Crytek in full without any offsets, subject, however, to any withholding tax pursuant to applicable tax law.

## 6. Limited Warranty and Indemnification

6.1. By Crytek

6.1.1. Crytek warrants

6.1.1.1. that it is duly organized and validly existing under the laws of the Federal Republic of Germany and has the full right, power and authority to enter into this Agreement.

6.1.1.2. that the grant of license pursuant to Section 2 does not violate the intellectual property rights of any third party and that no claim of any such infringement has been asserted against Crytek;

6.1.1.3. that the CryEngine as delivered (or subsequently updated by Crytek) will substantially perform in accordance with its documentation. Except for this Section 6.1.1.3 the CryEngine is delivered "as is". Elements and features of CryEngine provided to licensee hereunder may include preliminary versions (including, for example, "alpha" and "beta" versions of software) of certain SDK and CryEngine components which may include bugs and may not provide full functionality.

6.1.2. If a claim arises which seeks to enjoin Licensee from its use of CryEngine as contemplated herein, in addition to the indemnification obligations set forth herein, Crytek shall either: (i) procure for Licensee the right to continue using the CryEngine and the right to continued enjoyment of the licenses granted under this Agreement; or (ii) replace or modify the CryEngine, in whole or in part, so that it becomes non-infringing but provides substantially equivalent functionality; or, in the event only that options (i) and (ii) are impossible or economically not feasible, (iii) terminate this Agreement and require Licensee to return or destroy all copies of the affected software in Licensee's possession, or part thereof, and refund the aggregate payments paid for CryEngine to Crytek.

6.1.3.    WARRANTY DISCLAIMER. THE WARRANTIES IN SECTION 6.1 ARE IN LIEU OF
          ALL OTHER WARRANTIES. CRYTEK DOES NOT MAKE AND HEREBY DISCLAIMS
          ANY AND ALL OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT
          NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A
          PARTICULAR PURPOSE AND ANY WARRANTIES ARISING FROM COURSE OF
          DEALING, USAGE OR TRADE PRATICE.

6.1.4.    INDEMNIFICATION DISCLAIMER. EXCEPT FOR INTENTIONAL ACTS OR
          OMISSIONS OR GROSS NEGLIGENT ACTS, IN NO EVENT SHALL EITHER PARTY
          HERETO BE LIABLE FOR ANY DAMAGES, INCLUDING BUT NOT LIMITED TO
          INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, OR
          DAMAGES FOR LOSS OF PROFITS, REVENUE, DATA OR USE, INCURRED BY
          EITHER PARTY OR ANY THIRD PARTY, WHETHER IN AN ACTION IN CONTRACT
          OR TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EVEN IF THE RELEVANT
          PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.
          CRYTEK'S MAXIMUM AGGREGATE LIABILITY TO LICENSEE IN CONNECTION
          WITH OR IN ANY MANNER RELATED TO THIS AGREEMENT (WHETHER IN AN
          ACTION IN CONTRACT OR TORT [INCLUDING NEGLIGENCE, EXCEPT GROSS
          NEGLIGENCE] OR OTHERWISE) WILL BE LIMITED TO THE TOTAL AMOUNT
          PAID BY OR ON BEHALF OF LICENSEE TO CRYTEK UNDER THIS AGREEMENT.
          THE FOREGOING ALLOCATION OF RISK IS REFLECTED IN THE AMOUNT OF THE
          COMPENSATION CONTEMPLATED UNDER THIS AGREEMENT.

6.2.      By Licensee. Licensee warrants that it is duly organized and validly existing under the laws
          of Delaware, that it has the full right, power and authority to enter into this Agreement and
          that it will comply with the conditions of this Agreement including but not limited the
          restrictions in Sections 2.2 and 7.

**7.       Proprietary Rights**

7.1.      Confidential Information. The parties have entered into that certain Non-Disclosure
          Agreement dated as of March 8, 2012 (the "NDA"). The terms of such NDA are

incorporated herein by this reference and shall apply to this agreement as if they were set forth herein.

7.2.     Title.  Licensee acknowledges and agrees that:    (a) as between Licensee and Crytek, ownership of the CryEngine and the Crytek Confidential Information, and all intellectual property rights therein, shall belong to Crytek, and Licensee shall not represent or assert any ownership interest therein or thereto;  (b) nothing in this Agreement constitutes, or shall be construed to constitute, any transfer of title or ownership with respect to CryEngine (or any part thereof), or document or other material pertaining thereto), including without limitation transfer of any copyrights, patents, trademarks, trade secrets, intellectual property, source code, improvements, enhancements, sequence, logic, structure and other proprietary rights therein, now or hereafter existing; and (c) Licensee shall keep the CryEngine and the Crytek Confidential Information, and all intellectual property rights therein, free of any liens, attachments and other encumbrances with respect to Licensee and/or Licensee's license and use of the CryEngine and the Crytek Confidential Information, and all intellectual property rights therein.

7.3.     Reverse Technology Transfer. Annually during the Game's development period, and again upon publication of the final Game, Licensee shall provide Crytek with any bug fixes, and optimizations made to the CryEngine's original source code files (including CryEngine tools provided by Crytek) as a complete compilable version. All such technology outlined in this Section and provided by Licensee to Crytek pursuant to this section (collectively the "Reverse Technology Transfer") shall be the sole and exclusive property of Licensee. Given that such Reverse Technology Transfer is the sole and exclusive property of Licensee, Licensee hereby grants Crytek a non-exclusive, royalty-free and perpetual license to such Reverse Technology Transfer ("Reverse Technology License") solely for the purposes of (1) using the Reverse Technology Transfer internally at Crytek, (2) incorporating the Reverse Technology Transfer in future releases of the CryEngine and (3) distributing the CryEngine, with the embedded Reverse Technology Transfer to third parties without restriction and without payment of any additional fees or royalties to Licensee.  Crytek acknowledges that it does not and will not obtain any rights in the Game itself.

**8.      Term and Termination**

8.1.          Term. The Term of this Agreement shall begin on the Effective Date. Unless sooner
terminated in accordance with the provisions hereof, the Term shall remain in force for the
Commercial Life of the Game.

8.2.          Termination. Each Party shall have the right to terminate this Agreement or the license grants
with respect to the Game prior to the end of the Term immediately upon written notice
delivered to the other party if, at any time: (a) the other party is in material breach of any
term, condition or covenant of this Agreement and fails to cure such breach within thirty (30)
days after its receipt of written notice thereof by the other party; or (b) the other party (i)
becomes insolvent; or (ii) admits in writing its insolvency or inability to pay its debts or
perform its obligations as they mature; or (iii) makes or attempts an assignment for the
benefit of creditors; or (iv) files a petition for reorganization, readjustment or rearrangement of
its business or affairs under any laws or governmental regulations relating to bankruptcy or
insolvency, or is adjudicated bankrupt or if a receiver is appointed for such other party and such
action is not dismissed within sixty (60) days. In addition, Crytek shall have the right to
terminate this Agreement (x) in the event it ceases generally to provide the CryEngine to its
customers, or (y) pursuant to Sections 6.1.2 (iii).

8.3.          Effect of Termination. Upon termination of this Agreement, the license shall immediately and
automatically end and Licensee shall immediately take the following measures: (a) Licensee
shall return the CryEngine and any and all material related thereto to Crytek (including all
data carriers and documentation); and (b) Licensee shall delete and/or destroy any and all
copies of the CryEngine, whether in object code or source code, in whole or in part,
permanent or temporary; and (c) Licensee shall promptly provide to Crytek a statement
signed by an authorized officer of Licensee that any and all material regarding the CryEngine
have been returned to Crytek and any and all copies of the CryEngine have been deleted
and/or destroyed. Sections 6.3 and 7 shall survive any termination of this Agreement, as well
as any other provisions which by their terms or meaning are intended to survive. Termination
of this Agreement shall not relieve the Parties of any obligation accruing prior to such
termination.

**9.      Publicity, Further Cooperation**

9.1.      The Parties confirm that they have jointly prepared a press release confirming that Licensee has licensed the CryEngine for the Game. Further joint announcements in respect to the Game shall be subject to mutual approval by the Parties.

9.2.      Subject to prior written approval by Licensee, which shall not be unreasonably withheld, Licensee grants Crytek the right to use, at no charge, the Game to promote and demonstrate the CryEngine following the First Public Release of the Game. Crytek may use the Game after the First Public Release of the Game, including game excerpts and screen shots to promote CryEngine, so long as the content is properly identified with the name and trademarks for the Game and Licensee.

**10.      General Provisions**

10.1.      Oral agreements have not been made. This Agreement supersedes all prior agreements made between the Parties regarding CryEngine. This Agreement and the exhibits hereto reflect the entire agreement and understanding of the Parties with respect to its subject matter, may be amended or extended only by a written document signed by both Parties. The Parties acknowledge that the exhibits to this Agreement form a substantial part of this Agreement.

10.2.      All notifications according to this contract shall be in writing. Facsimile shall be considered as writing.

10.3.      Only the following persons are entitled to giving notifications according to this Agreement:

- for Crytek: registered officers, Carl Jones
- for Licensee: Chris Roberts, Ortwin Freyermuth

Crytek and Licensee may at any time replace a contact person with a different contact person by notifying the other party in writing specifying the contact person being replaced and the name of the new contact.

10.4.    All communication, correspondence and/or payments of the Parties shall be addressed as
         follows:

- for Crytek: Carl Jones
  - address: Grüneburgweg 16-18, 60322 Frankfurt/Main, Germany
  - phone: +49 69 219 77 66 - 0
  - fax: +49 69 219 77 66 - 99
  - U.S. EIN: 98-0521969

- for Licensee: Chris Roberts, Ortwin Freyermuth
  - address: 9255 Sunset Blvd., Ste 803, West Hollywood, CA 90069, USA
  - phone: +1-310-275-1300
  - fax: +1-310-275-1700

10.5.    Nothing herein contained shall in any way create any association, partnership, joint venture or
         the relation of principal and agent between the Parties hereto or be construed to evidence the
         intention of the Parties to constitute such.

10.6.    If any provision of this Agreement shall be found to be invalid or unenforceable for legal or
         factual reasons the invalidity or unenforceability of such provisions shall not affect the other
         provisions of this Agreement and all provisions of this Agreement not affected by such
         invalidity or unenforceability shall remain in full force and effect. The Parties hereby agree to
         attempt to substitute for any invalid or unenforceable provision a valid or enforceable
         provision which achieves to the greatest extent possible the economic and legal objective of
         the Agreement. This applies as well in case of an omission or invalidity of the whole
         Agreement. A waiver of a breach of any provision to this Agreement will not constitute a
         waiver of any other breach.

10.7.    Notwithstanding anything in this Agreement to the contrary, where a breach of certain
         provisions of this Agreement may cause either Party irreparable injury or may be
         inadequately compensable in monetary damages, either Party will be entitled to obtain

equitable relief, in addition to any other remedies which may be available, provided, however, that under no circumstances shall Licensee be entitled to enjoin the exploitation of CryEngine, nor shall Crytek be entitled to enjoin the publishing or other exploitation of the Game,

10.8.    This Agreement is governed and construed by the laws of the State of California applicable to agreements entered into and to be performed within the State. Place of performance and jurisdiction shall be the courts of Los Angeles County. In the event any litigation is brought by either Party in connection with this Agreement, the prevailing party will be entitled to recover from the other party all reasonable costs, attorneys' fees and other expenses reasonably incurred by such prevailing party in the litigation.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above

Crytek GmbH                                     Cloud Imperium Games Corporation


by   _AUNI YEKI_                                by Chris Roberts
its authorized signatory                        CEO

## EXHIBIT 1

- CryENGINE 3 source & object code (with all modules other than those provided by third parties to Crytek under separate license)
- Sandbox 3 Editor source & object code (with all modules other than those provided by third parties to Crytek under separate license)
- Example game source code demonstrating usage of all major CryENGINE 3 features
- Source code for all plug-ins and exporters as they become available for third party tools (i.e. 3DS Max)
- Sample art assets for all major classes of objects (i.e. characters, faces, vegetation, buildings, terrain features, and vehicles) sufficient to allow any experienced game development teams to create their own assets which are compatible with the CryENGINE 3
- CryEngine 3, Example Game Code, Sandbox 3 Editor, Exporters, & Plug-In source code Documentation, associated user documentation and all available training videos
- Third party code:
    - Included at no additional cost:
        - FMOD sound library and tools;
        - Autodesk Scaleform SDK (provided under separate license attached hereto as Ex. 4) ;
    - Not included and to be licensed by the respective developer:
        - CRI's Middleware SDK (used for video decoding & playback);
        - Annosoft's Lip-sync SDK (used for driving character's mouth and jaw animations);
        - XTREME Toolkit Pro MFC class library (to rebuild the Sandbox Editor);
        - Autodesk MAX SDK to rebuild the CryExport plugin.

Platforms:

- PC Online/Offline and mobile (iOS and Android, as available);
- Next Gen (successors of Xbox 360 ("Xbox One"/"Durango") and Playstation 3 ("PS4"/"Orbis") as and when offered by Crytek

## EXHIBIT 2

### Description of the Game with platform(s)

STAR CITIZEN (the "Game')

A rich universe focused on epic space adventure, trading and dogfighting in first person.

Star Citizen is a destination, not a one-off story. It is a universe where any number of adventures can take place, allowing players to decide their own game experience. The players can pick up jobs as a smuggler, pirate, merchant, bounty hunter, or enlist as a pilot, protecting the borders from outside threats. A huge sandbox with a complex and deep lore allowing players to explore or play in whatever capacity they wish. The Game as defined for purposes of this Agreement includes all content accessed by the players through the Star Citizen client software, either online on PC/Windows/Mac OS and Mobile Platforms, or on NextGen platforms.

For the avoidance of doubt, the Game does not include any content being sold and marketed separately, and not being accessed through the Star Citizen Game client, e.g. a fleet battle RTS sold and marketed as a separate, standalone PC game that does not interact with the main Star Citizen game (as opposed to an add-on / DLC to the Game).;

**Features -**

·       **Squadron 42:** Single Player – Offline or Online ((Drop in / Drop out co-op play)
·       **Star Citizen:** Persistent Universe (hosted by CIG)
·       Mod-able multiplayer (hosted by player)

## EXHIBIT 3

Authorized third party developer(s)

1. third party developer:

Name: **BEHAVIOUR INTERACTIVE INC**

Address: 416, de Maisonneuve W., Suite 600, Montreal, Quebec, H3A 1L2, Canada

Approved by Crytek: _____ execution

Signature: _____

2. third party developer:

Name: CGBot LLC

Address: 2206 S 3rd St., Austin, TX 78704, USA

Approved by Crytek: _____ execution

Signature: _____

3. third party developer:

Name: MetalPop, LLC

Address: 13030 Royal Fern Drive, Orlando, FL 32828

Date of Approval by Crytek: _____ execution

Signature: _____

4. third party developer:

Name: IllFonic, LLC

Address: 1391 Speer Blvd. Suite 850, Denver, CO 80204

Date of Approval by Crytek: _____ execution

Signature: _____

CryEngine CIG License 013-11-05                                    p. 20

5. third party developer:

Name: <u>Moon Collider Limited</u>
Address: 3 Brunswick Road, Birchington, Kent, England, CT7 0EE
Date of Approval by Crytek:
Signature: _____

6. third party developer:

Name: <u>Foundry 42, Ltd.</u>
Address: Freedom House, Church Street, Wilmslow, Cheshire, SK9 1AX
Date of Approval by Crytek:
Signature: _____

7. third party developer:

Name: <u>AJC Games Inc.</u>, dba <u>Void Alpha.</u>
Address: 5900 Hollis Street, Suite T1, Emeryville, CA 94608
Date of Approval by Crytek:
Signature: _____

**EXHIBIT 4**

### END USER LICENSING AGREEMENT TERMS AND CONDITIONS

These Terms and Conditions ("**ToC**") apply to Licensee's use of Autodesk Materials made available to License under the license agreement ("**Agreement**") between Licensee and Crytek GmbH, Grüneburgweg 16-18, 60322 Frankfurt am Main, Germany or its affiliates ("**Crytek**"). If any provisions of the Agreement conflict with any of the provisions of these ToC, the provisions of these ToC prevail.

**1.**  **Definitions**

As used in this ToC, the following terms have the following meanings:

1.1.  "Application" means titles or applications developed by Licensee using the Integrated Product.

1.2.  "Autodesk" means Autodesk, Inc., 111 McInnis Parkway, San Rafael, CA 94903.

1.3.  "Autodesk Materials" means any Autodesk materials made available by to Licensee, directly or indirectly, in relation to the Agreement, including if applicable the Autodesk® Scaleform® software and its Source Code.

1.4.  "Licensee" means the individual or entity executing this ToC (by signature or electronic affirmation) that is licensing the Integrated Product under the Agreement.

1.5.  "Integrated Product" means the bundling of the Autodesk Materials with the CryEngine.

1.6.  "Site" means the means Licensee's physical location or a physical location approved by Crytek according to the terms of the Agreement.

1.7.  "Source Code" means the human-readable source code format of software.

2.  **License**

    Licensee is licensed on a non-exclusive, non-transferable, non-assignable basis for its own purposes (not for license to others) to use Autodesk Materials only as included in the Integrated Product, solely at the Site to create an Application.

3.  **Limitations and Restrictions**

3.1.  Licensee will not copy Autodesk Materials except: (1) to create an archival copy; and (2) for its employees whose access is necessary to exercise the license. Licensee will notify its employees with access to Autodesk Materials of the restrictions in the Agreement and in these ToC and ensure their compliance with both. Licensee must retain all proprietary notices on copies of Autodesk Materials.

3.2.  Licensee will not disclose Autodesk Materials to or discuss any Source Code included in the Autodesk Materials with any person, except Licensee employees necessary to exercise the license in these ToC.

3.3.  Licensee hereby acknowledges that: (1) Autodesk Materials include trade secrets and confidential information of Autodesk, its licensors, and suppliers; (2) Autodesk, its licensors and suppliers hold all right, title and interest in and to all tangible and intangible intellectual property, including all trade secrets, copyrights, and other intellectual property rights pertaining thereto, contained in Autodesk Materials, any part, and any copies; (3) Autodesk Materials are protected by copyright and contain proprietary information protected by copyright and intellectual property laws, international treaty provisions and other applicable laws; (4) Licensee has only the limited, revocable right to use Autodesk Materials as expressly as set forth in and limited by these ToC; (5) derivative works or modifications, adaptations, changes, additions, improvements to or of Autodesk Materials, if any, created by Licensee are the sole and exclusive property of Autodesk, even if created at the Licensee's request or in with Licensee's assistance, and shall be considered part of Autodesk Materials, including all applicable rights to patents, copyrights, trademarks and trade secrets inherent

therein and appurtenant thereto, and Licensee hereby assigns such rights to Autodesk; (5) nothing in these ToC constitutes, or shall be construed to constitute, any transfer of title or ownership with respect to Autodesk Materials, including without limitation transfer of any copyrights, patents, trademarks, trade secrets, intellectual property, source code, improvements, enhancements, sequence, logic, structure, and other proprietary rights therein, now or hereafter existing. Licensee will ensure the Application will not in any way give access to any part of (1) Autodesk Materials as part of the Integrated Product other than the object code; or (2) Autodesk Source Code.

3.4.     Licensee will not alter, reverse engineer, disassemble decompile, recompile, or otherwise attempt to discover or derive the source code of Autodesk Materials. Licensee will not (1) use, reproduce, compile, publicly display, modify, translate, adapt, arrange, or perform Materials (or any derivative works thereof); (2) transfer, assign, rent, disclose, adapt, translate Autodesk Materials (or any derivative works thereof); (3) distribute, resell, relicense Autodesk Materials or any part as a stand-alone product; (4) incorporate any part of Autodesk Materials into a product to be sold or licensed as a development tool; (5) distribute the Application in other than compiled executable form; or (6) distribute Autodesk Materials other than as part of the Integrated Product included in an Application.

3.5.     Licensee will make commercially reasonable efforts to include references to "Autodesk" and to "Autodesk® Scaleform®" in all locations where references to "Crytek" and "CryEngine" are required by the Agreement.

3.6.     Licensee, its employees, agents and third parties will not disclose, export or re-export, directly or indirectly, any product, documentation or technical data (or direct products thereof), (in conformity with laws and regulations of the United States and other countries relating to international trade), to any country, entity or other party which is ineligible to receive them under U.S. laws and regulations as modified from time to time by the U.S. Dept. of Commerce or the U.S. Dept. of the Treasury or under other laws or regulations to which End User may be subject. Licensee is solely responsible for (1) complying with these laws and regulations; and (2) monitoring any modifications to them. Autodesk Materials provided to the U.S. Government are provided with the same commercial license rights and

CryEngine CIG License 013-11-05

p. 24

restrictions.

3.7.     If Autodesk Source Code is provided to Licensee, Licensee will: (1) store one physical copy in a locked container or drawer for backup purposes and one or more electronic copies on personal computers or servers, password protected, and located at the Site; (2) use, maintain or disclose Autodesk Source Code only at the Site; and (3) notify its employees with access to Source Code of the restrictions in this ToC and the Agreement and ensure their compliance with this ToC and the Agreement.

3.8.     Autodesk, Inc., 111 McInnis Parkway, San Rafael, CA 94903 is a third-party beneficiary to the Agreement and to the ToC to the extent the Agreement contains provisions that relate to Licensee use of Autodesk Materials. Such provisions are for the benefit of Autodesk and enforceable by Autodesk, in addition to Crytek.

3.9.     Upon termination of the Agreement, the right to exercise licenses to Autodesk Materials terminates. Licensee will promptly cease use of Autodesk Materials and return in 10 days, or (at Autodesk's option) destroy, all electronic and physical copies of Autodesk Materials. However, Licensee's rights to use Autodesk Materials properly distributed by Licensee under the Agreement survive termination, unless otherwise terminated in accordance with the Agreement for breach of Autodesk intellectual property rights.

INTENDING TO BE LEGALLY BOUND TO THE TERMS OF THIS AMENDMENT, EACH OF THE PARTIES HAS CAUSED ITS DULY AUTHORIZED REPRESENTATIVE TO EXECUTE THIS DOCUMENT.

CLOUD IMPERIUM GAMES CORPORATION
ROBERTS SPACE INDUSTRIES CORP.

Name: Chris Roberts
Title: CEO
Date: 10/6/2013

CRYTEK GMBH.

Name: RVWI YERLI
Title: MANAGING DIRECTOR
Date: 20.11. 2012

# Exhibit B

Fully-Executed Amendment to Game License Agreement
between Crytek GmbH and Cloud Imperium Games Corp.
Dated as of September 4, 2014

**AMENDMENT # 1**

(the "Amendment")

dated as of September 4, 2014

to the

GAME LICENSE AGREEMENT

(the "Agreement")

dated as of November 20, 2012

between

Crytek GmbH

Grüneburgweg 16-18

60322 Frankfurt/Main

Germany

– "**Crytek**" –

and

Cloud Imperium Games Corporation

9255 Sunset Blvd., Ste. 803

West Hollywood, CA 90069

USA

– "**Licensee**" –

– Crytek and Licensee hereinafter jointly called "**Parties**" –

WHEREAS the Parties entered into that certain Game License Agreement (the "Agreement") effective as of November 20, 2012 with respect to the "CryEngine" software, and

WHEREAS the Parties desire to amend the Agreement as set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants contained herein the Parties hereby agree as follows:

1.       **Definitions**

All capitalized terms herein shall be defined as set forth in the Agreement.

2.       **Amendment to Section 2.1:**

Section 2.1.1 shall be deemed deleted and replaced by the following:  "to non-exclusively develop, support, maintain, extend and/or enhance CryEngine such right being exclusive only with respect to the Game, and non-sub-licensable except as set forth in Sec. 2.5 and 2.6 below."

3.       **Amendment to Section 4.1:**

Section 4.1.4 shall be deleted and substituted by the following:

"Termination of support: Crytek shall be entitled to terminate with one (1) year's notice any support services in the event it ceases generally to provide CryEngine support to third parties."

4.       **Amendment to Section 4:**

The following Sec. 4.2 shall be added to the Agreement:

"4.2 If and to the extent that Licensee requests specific development work ("Development Services)" to be performed for Licensee in connection with the Game beyond the service scope provided for in Sec. 4.1 above, such Development Services shall be compensated separately and at rates to be negotiated in good faith.  Notwithstanding anything else provided for in Crytek's employment agreements with its personnel, all results and proceeds of the Development Services rendered by Crytek's personnel ("Results and Proceeds") shall be considered a work-made-for-hire pursuant to the U.S. Copyright Act with Licensee being the

author and owner of such Results and Proceeds.  To the extent that any of such Results and Proceeds shall be held not to be a "work-made-for-hire" under the U.S. Copyright Act, Crytek hereby irrevocably assigns to Licensee the entire copyright and all rights in the Results and Proceeds, including the right to exploit and distribute the Results and Proceeds throughout the world in perpetuity in any media or embodiment, now known or hereafter developed.  Sec. 7 ("Reverse Technology Transfer") below shall apply to the Results and Proceeds, to the extent applicable."

**5.        Amendment to Section 5.3:**

(a) The following clause shall be inserted at the beginning of Sec. 5.3: "Subject to Crytek continuing to offer support for the CryEngine to unrelated third parties pursuant to Sec. 4.1.2."

(b) The following clause shall be inserted at the end of Sec. 5.3: "For avoidance of doubt: Updates and upgrades shall not be included after the Initial Support Period unless made available to other licensees outside of their support period."

**6.        Amendment to Section 8.2**

The last sentence of Sec. 8.2 shall be deemed deleted and is hereby replaced by the following: "In addition, Crytek shall have the right to terminate this Agreement pursuant to Section 6.1.2 (iii) above."

**7.        Closing Provisions**

7.1.     Except as expressly set forth herein, the Agreement shall remain in full force and effect and is hereby ratified. This Amendment is governed and construed by the laws of the State of California applicable to agreements entered into and to be performed within the State. Place of performance and jurisdiction shall be the courts of Los Angeles County.

CryEngine CIG License 013-11-05 – Amend #1                                    p. 4

**IN WITNESS WHEREOF**, the Parties have executed this Amendment as of the date first written above.

Crytek GmbH                                    Cloud Imperium Games Corporation

by _AVNI YERLI_                                by _Ortwin Freyermuth_

its authorized signatory                       its authorized signatory

# Exhibit C

December 23, 2016 Press Release issued by Cloud Imperium Games Corp. and Roberts Space Industries Corp.

PAGEVAULT
WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | Star Citizen and Squadron 42 Utilize Amazon Lumberyard Game Engine - Roberts Space Industries |
| Capture URL: | https://robertsspaceindustries.com/comm-link/ press/15660-Star-Citizen-And-Squadron-42-Utilize-Amazon-Lumberyard-Game-Engine |
| Captured site IP: | 54.85.161.94 |
| Page loaded at (UTC): | Tue, 02 Jan 2018 20:33:26 GMT |
| Capture timestamp (UTC): | Tue, 02 Jan 2018 20:34:34 GMT |
| Capture tool: | v5.3.1 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/54.0.2840.99 |
| Operating system: | Microsoft Windows NT 6.2.9200.0 (6.2.9200.0) |
| PDF length: | 4 |
| Capture ID: | ad127f2b-f8b1-4b06-bf4a-591680eea826 |
| User: | fkks-ndonovan |

ALPHA 3.0 IS NOW LIVE!

**RSI** ROBERTS SPACE INDUSTRIES
STAR CITIZEN   SQUADRON 42   COMM-LINK   STORE   COMMUNITY   MY RSI
CAREERS   PRESS   HELP

▷ PRESS

| ID: 15680 | COMMENTS: 0 | DATE: DECEMBER 23RD 2016 |

# Star Citizen and Squadron 42 Utilize Amazon Lumberyard Game Engine

*Highly-anticipated space sim games will take advantage of Lumberyard's deep integration with Amazon Web Services (AWS) and Twitch*

**Los Angeles, December 23, 2016** — Cloud Imperium™ Games (CIG) announced today the company is using the Amazon Lumberyard game engine to create its ground-breaking space sim games, Star Citizen and Squadron 42. Both games are currently in development and are backed by a record-breaking $139 million crowd funded effort.

Amazon Lumberyard is a free AAA, cross-platform, 3D game engine that empowers game developers to create the highest-quality experiences, connect their games to the vast compute and storage of the AWS Cloud, and engage fans on Twitch.

"We've been working with Amazon for more than a year, as we have been looking for a technology leader to partner with for the long term future of Star Citizen and Squadron 42," said Chris Roberts, CIG's CEO and creative director. "Lumberyard provides ground breaking technology features for online games, including deep back-end cloud integration on AWS and its social component with Twitch that enables us to easily and instantly connect to millions of global gamers. Because we share a common technical vision, it has been a very smooth and easy transition to Lumberyard. In fact, we are excited to announce that our just released 2.6 Alpha update for Star Citizen is running on Lumberyard and AWS."

"Star Citizen and Squadron 42 are incredibly ambitious projects which are only possible with great engine technology paired with the transformative power of the cloud. We love how CIG's bold vision has already inspired a massive community, and we're thrilled to see what they create with Lumberyard, AWS, and the Twitch community," said Dan Winters, head of business development for Amazon Games. "We're excited that they've chosen Lumberyard and AWS to provide the performance and scalability they need to bring their games to a massive audience."

Added Roberts, "We are delighted to be working with a partner with the strength, vision, and resources of Amazon Web Services. We are looking forward to developing our relationship with AWS and the Lumberyard community in

Document title: Star Citizen and Squadron 42 Utilize Amazon Lumberyard Game Engine - Roberts Space Industries
Capture URL: https://robertsspaceindustries.com/comm-link/press/15680-Star-Citizen-And-Squadron-42-Utilize-Amazon-Lumberyard-Game-Engine
Capture timestamp (UTC): Tue, 02 Jan 2018 20:34:34 GMT
Page 1 of 3



on Lumberyard and AWS.

Star Citizen and Squadron 42 are incredibly ambitious projects which are only possible with great engine technology paired with the transformative power of the cloud. We love how CIG's bold vision has already inspired a massive community, and we're thrilled to see what they create with Lumberyard, AWS, and the Twitch community," said Dan Winters, head of business development for Amazon Games. "We're excited that they've chosen Lumberyard and AWS to provide the performance and scalability they need to bring their games to a massive audience."

Added Roberts, "We are delighted to be working with a partner with the strength, vision, and resources of Amazon Web Services. We are looking forward to developing our relationship with AWS and the Lumberyard community in the future."

Star Citizen is 100% crowd funded and was officially announced on October 10, 2012. The money raised pays for the development of the game including the Roberts Space Industries platform where fans and backers can interact with the team, view multiple weekly webcasts about Star Citizen, learn about the story behind the game, read constant updates on the game's progress and much more. Star Citizen is recognized by Guinness World Records as the top crowd funded project and game in the world. People interested in backing the project can do so at http://robertsspaceindustries.com/pledge.

**About Cloud Imperium Games**

Cloud Imperium Games Corporation and its subsidiary Roberts Space Industries™ Corp. were founded in April 2012 by renowned game developer Chris Roberts (Wing Commander, Freelancer, Privateer) and his business partner and long-time international media attorney Ortwin Freyermuth. Operating from Los Angeles and Austin under Roberts' leadership and using his long-standing relationships in the game space, Cloud Imperium quickly assembled a top tier development team for the creation of art assets, story elements, and an extensive prototype for Star Citizen. Once UK-based Erin Roberts joined in 2013 to contribute his extensive background in game production, the Roberts and Freyermuth added CIG's international operations in Manchester, UK to develop the mission driven Squadron 42 which is set in Star Citizen's first person universe. They added a fourth office in Frankfurt, Germany in 2015 to take advantage of the growing development talent in that region. Star Citizen and Squadron 42 are being marketed and launched via www.robertsspaceindustries.com. More information about the company, including jobs and contact information can be found at www.cloudimperiumgames.com.

**Contact**
David Swofford
Cloud Imperium Games
david.swofford@cloudimperiumgames.com
512 750-9098

###

Star Citizen, Squadron 42, Cloud Imperium, Roberts Space Industries are trademarks of Cloud Imperium Games Corporation. All other trademarks are the property of their respective owners.

// END TRANSMISSION

STAR

Document title: Star Citizen and Squadron 42 Utilize Amazon Lumberyard Game Engine - Roberts Space Industries
Capture URL: https://robertsspaceindustries.com/comm-link/press/15660-Star-Citizen-And-Squadron-42-Utilize-Amazon-Lumberyard-Game-Engine
Capture timestamp (UTC): Tue, 02 Jan 2018 20:34:34 GMT

advantage of the growing development talent in that region. Star Citizen and Squadron 42 are being marketed and launched via www.robertsspaceindustries.com. More information about the company, including jobs and contact information can be found at www.cloudimperiumgames.com.

**Contact**

David Swofford

Cloud Imperium Games

david.swofford@cloudimperiumgames.com

512 750-9098

\###

Star Citizen, Squadron 42, Cloud Imperium, Roberts Space Industries are trademarks of Cloud Imperium Games Corporation. All other trademarks are the property of their respective owners.

**// END TRANSMISSION**



| STAR CITIZEN | SQUADRON 42 | COMM-LINK | STORE | COMMUNITY | MORE | SOCIAL LINKS |
|---|---|---|---|---|---|---|
| GETTING STARTED | ENLIST TODAY | ALL | ALL ITEMS | COMMUNITY HUB | HELP | |
| DOWNLOAD | PLEDGE NOW | TRANSMISSIONS | SHIPS | SPECTRUM | PRESS | |
| FUNDING | | CITIZENS | GAME PACKAGES | FORUMS | CAREERS WITH US | |
| THE VISION | | ENGINEERING | SHIP UPGRADES | CHAT | TERMS OF SERVICES | |
| STARMAP | | SPECTRUM DISPATCH | SUBSCRIPTIONS | ORGANIZATIONS | PRIVACY POLICY | |
| SHIP MATRIX | | NEWSLETTER ARCHIVES | VOYAGER DIRECT | DEV TRACKER | EULA | |
| ALL EVENTS | | | ELECTRONIC ACCESS | LEADERBOARDS | DMCA | |
| | | | REFERRAL PROGRAM | ISSUE COUNCIL | ACKNOWLEDGEMENTS | |
| | | | | FORUMS ARCHIVE | | |

© 2012-2018 Cloud Imperium Games Corporation & Roberts Space Industries Corp. & Cloud Imperium Games UK Ltd. & Roberts Space Industries International Ltd.

Document title: Star Citizen and Squadron 42 Utilize Amazon Lumberyard Game Engine - Roberts Space Industries
Capture URL: https://robertsspaceindustries.com/comm-link/press/15660-Star-Citizen-And-Squadron-42-Utilize-Amazon-Lumberyard-Game-Engine
Capture timestamp (UTC): Tue, 02 Jan 2018 20:34:34 GMT                                                          Page 3 of 3