Exhibit B

**JOSEPH R. TAYLOR** (SBN 129933)
**JEREMY S. GOLDMAN** (SBN 306943)
**AZITA M. ISKANDAR** (SBN 280749)
**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (347) 438-2156
E-Mail:  jtaylor@fkks.com
         jgoldman@fkks.com
         aiskandar@fkks.com

Attorneys for Defendants CLOUD IMPERIUM GAMES CORP.
and ROBERTS SPACE INDUSTRIES CORP.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYTEK GMBH, | Case No. 2:17-CV-08937 |
| vs. | [HON. DOLLY M. GEE] |
| CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP., | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR CLAIMS FOR RELIEF THEREIN OR, IN THE ALTERNATIVE, TO STRIKE CERTAIN PORTIONS OF THE FIRST AMENDED COMPLAINT** |
| Defendants. | |
| | Date:       February 9, 2018 |
| | Time:       9:30 AM |
| | Courtroom: 8C |

# **TABLE OF CONTENTS**

Preliminary Statements ...............................................................................1

Summary of Arguments ...............................................................................1

Statement of Relevant Allegations.............................................................3

Legal Standard .............................................................................................4

I.    Motion to Dismiss…………………………………..…..4

    A. General Standard...............................................................4

    B. Doctrine of Incorporation by Reference ...........................5

II.    Motion to Strike…………………………………….5

Argument......................................................................................................6

I.    The FAC Fails to State a Claim for Breach of
Contract……………………………………………………..6

    A.    RSI is Not a Party to the GLA.......................................6

    B.    The GLA Expressly Allows Activities That Crytek Contends   Constitute
Breaches of the GLA .......................................................6

        1.    CIG Has An Exclusive Right — Not An Obligation — To
Embed The Engine In The Game ...........................................7

        2.   Any CIG Obligation to Include Copyright and Trademark Notices
Could Only Apply To CIG's Use of The Engine.................... 10

        3.  CIG's Planned Release of Squadron 42 Does Not Breach the
GLA ...................................................................................... 10

    C.    The GLA Expressly Precludes The Alleged Contract Claims For
Damages. ........................................................................ 12

II.    The Complaint Fails to State a Claim For Copyright Infringement Because The
GLA Expressly Authorized Defendants' Prior Use Of The Engine In
Squadron 42 And Defendants Are Not Now Using The Engine In
Squadron
42…………………………………………………………………..15

III.    The Court Should Dismiss Crytek's Improper Claims For Damages And
Injunctive Relief That Are Unavailable As A Matter Of Law And Under The
Express Terms Of The GLA …………..…………………………16

    A.    Monetary Damages.................................................... 16
    B.    Injunctive Relief ....................................................... 16

C.     Statutory Damages and Attorneys' Fees Under the Copyright Act .............16

D.     Punitive Damages ........................................................................18

IV.   The Court Should Strike the Immaterial, Impertinent, Scandalous (And False)
      Allegations Regarding Messrs. Freyermuth and
      Jones ...........................................................................................18

Conclusion .......................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 2TheMart.com. Inc. Securities Litig.*,
   114 F. Supp. 2d 955 (C.D. Cal. 2000) ............................................................... 5, 19, 20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503, 869 P.2d 454 (1994) ................................................................ 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................... 4, 5, 7

*Barnhart v. Points Dev. US Ltd.*,
   No. 16 Civ. 2516, 2016 WL 3041036 (C.D. Cal. May 25, 2016) ............................ 6, 7

*Beijing Zhongyi Zhongbiao Elec. Info. Tech. Co. v. Microsoft Corp.*,
   No. 13 Civ. 1300, 2013 WL 6979555 (W.D. Wash. Oct. 31, 2013), *aff'd*,
   655 F. App'x 564 (9th Cir. 2016) ................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 4

*Conder v. Home Sav. of Am.*,
   680 F. Supp. 2d 1168 (C.D. Cal. 2010) ......................................................... 7

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ...................................................................... 5

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ..................................................................................... 17

*Erlich v. Menezes*,
   21 Cal. 4th 543, 981 P.2d 978 (1999) ........................................................... 14

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 .................. 5, 19

*First Commercial Mortgage Co. v. Reece*,
   89 Cal. App. 4th 731, 108 Cal. Rptr. 2d 23 (2001) ......................................... 17

*Fleischer v. A. A. P., Inc.*,
   180 F. Supp. 717 (S.D.N.Y. 1959) ............................................................... 19

*Foley v. Interactive Data Corp.*,
    47 Cal. 3d 654, 765 P.2d 373 (1988) ........................................................ 13

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
    11 Cal. 4th 85, 900 P.2d 669 (1995) (conc. and dis. opn. of Mosk, J.) ...................... 13

*Gssime v. Nassau Cty.*,
    No. 09 Civ. 5581, 2014 WL 810876 (E.D.N.Y. Feb. 28, 2014) ................................ 19

*I.A.E., Inc. v. Shaver*,
    74 F.3d 768 (7th Cir. 1996) ................................................................. 15

*Lions Gate Films Inc. v. Saleh*,
    No. 14 Civ. 6033, 2016 WL 6822748 (C.D. Cal. Mar. 24, 2016) ............................ 17

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ........................................................... 15, 16

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
    795 F.3d 997 (9th Cir. 2015) ................................................................ 9

*Patent Scaffolding Co. v. William Simpson Const. Co.*,
    256 Cal. App. 2d 506 (1967) ............................................................... 12

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ................................................................ 5

*Riedel v. JP Morgan Chase Bank, N.A.*,
    No. 13 Civ. 1146, 2015 WL 12657068 (C.D. Cal. Apr. 3, 2015) ............................ 18

*Saregama India Ltd. v. Young*,
    No. 02 Civ. 9856, 2003 WL 25769784 (C.D. Cal. Mar. 11, 2003) .......................... 18

*Slottow v. Am. Cas. Co. of Reading, Pennsylvania*,
    10 F.3d 1355 (9th Cir. 1993) ............................................................... 18

*St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins.*,
    101 Cal. App. 4th 1038 (2002) ............................................................. 12

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................... 5

*Survivor Prods. LLC v. Fox Broad. Co.*,
    No. 01 Civ. 3234, 2001 WL 35829267 (C.D. Cal. June 12, 2001) ........................... 6

*Tom Trading, Inc. v. Better Blue, Inc.*,
    26 F. App'x 733 (9th Cir. 2002) ............................................................ 6

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ............................................................... 16

**Statutes**

17 U.S.C. § 412 .......................................................................................... 17

Cal. Civ. Code § 1639 ................................................................................ 13

Cal. Civ. Code § 1641 .................................................................................. 7

Cal. Civ. Code § 1644 .................................................................................. 8

Cal. Civ. Code § 1655 ................................................................................ 10

Federal Rule of Civil Procedure 12 Rule 11 ....................................... 1, 4, 20

Federal Rule of Civil Procedure 12(b)(6) .............................................. 4, 16

Federal Rule of Civil Procedure 12(f) ...................................................... 5, 19

## PRELIMINARY STATEMENT

This action never should have been filed.  The First Amended Complaint ("FAC"), like the initial complaint filed before it, sacrifices legal sufficiency for loud publicity. Though Crytek GmbH ("Crytek") twice now conceals the actual Game License Agreement ("GLA") from the Court and the press, the Court possesses the power to examine the incorporated GLA on this motion.  The GLA eliminates virtually every claim and remedy Crytek seeks; Crytek's admission that Defendants are not even using Crytek's software gets rid of the rest.  The allegations regarding Defendants' co-founder Ortwin Freyermuth and another employee Carl Jones (the "Offending Allegations"), though modified in retreat by Crytek's counsel after being confronted with a Rule 11 motion based on a false allegation contained in the initial complaint, still bear absolutely no material relation to any claim or named party, and have everything to do with generating misleading, scandalous press.  Neither of Crytek's two contrived claims can survive the contract, and all its remedies are contractually barred, justifying dismissal as a matter of law.  The Court also should send a message to Crytek by striking the immaterial, impertinent and scandalous Offending Allegations in paragraph 15 of the FAC.

## SUMMARY OF ARGUMENTS

Crytek's claims for breach of contract and copyright infringement against Defendants Cloud Imperium Games Corp. ("CIG") and Roberts Space Industries Corp. ("RSI" and, together with CIG, "Defendants") all are tied to alleged violations of the GLA that Crytek deliberately omitted from its initial complaint (the "Initial Complaint") and now omits from the FAC.  Crytek hides the GLA because its express language precludes Crytek's claims and remedies as a matter of law.

The GLA granted CIG a license to use Crytek's video game engine, a software program called "CryEngine" (the "Engine") in a videogame called "Star Citizen" (the "Game") and a related videogame called "Squadron 42" being developed by CIG.  Crytek pleads that CIG's alleged previous use of the Engine in "Squadron 42" exceeds the scope

of the GLA.  The omitted GLA reveals that the defined term "Game" where CIG can use the Engine includes both "the **game** currently entitled 'Space Citizen' **and** its related space fighter **game** *'Squadron 42.'*" (Emphasis added.)[1]  Moreover, a December 23, 2016 press release (the "2016 Press Release") that Crytek references, quotes from and relies upon to support its claims, but also conceals from the Court, reveals that CIG is no longer using the Engine in Squadron 42 at all — thus rendering Crytek's related claims for breach of the GLA and copyright infringement subject to immediate dismissal.

The GLA further shows that CIG has an exclusive right, not a duty, to use the Engine in the Game.  Through hiding the GLA, Crytek contorts the word "exclusively" to argue that the word means that CIG somehow is **required** to use the Engine in the Game.  The plain language of the GLA where the grant of rights to CIG appears, plus the well-established concept of an exclusive license, instead establish that the word "exclusively" simply means that CIG's right to use the Engine in the Game is **exclusive** to CIG and Crytek may not give that right to anyone else.  Crytek's tortured interpretation of the GLA would turn the GLA and well-established Ninth Circuit law about exclusivity on its head.  CIG's obligation to include copyright and trademark notices for Crytek necessarily applies only when CIG actually uses the Engine, which Crytek pleads CIG is not.

Crytek's claim for damages — an essential element of any breach of contract claim — is precluded by express language in the GLA barring either party from seeking **any** damages from the other.  The FAC also seeks various forms of monetary damages and equitable relief that are unavailable under the GLA or as a matter of law, including statutory damages and attorney's fees under the Copyright Act, punitive damages, and an injunction.  The GLA shows on its face that defendant RSI is not even a party to the GLA and has no business being named at all.  For all these reasons, described in more detail below, the FAC should be dismissed in its entirety, with prejudice.

---

[1] The recital in the GLA erroneously refers to the Game as "Space Citizen" instead of "Star Citizen."

Finally, in the event the Court declines to dismiss the FAC in whole or in part, the Court should strike the Offending Allegations on the ground that they are immaterial, impertinent, and scandalous.

## STATEMENT OF RELEVANT ALLEGATIONS

CIG, together with its affiliate RSI, is a video game company that, since 2012, has been developing a new game called "Star Citizen," described as an epic space adventure, trading and dogfighting video game. FAC ¶ 3. On November 20, 2012, CIG entered into the Game License Agreement with Crytek, another video game company that owns rights in a game engine called "CryEngine." *Id*. ¶¶ 2, 15 [lines 25-26].[2] Pursuant to the GLA, CIG agreed to pay Crytek a buyout license fee for access to and use of the Engine in the "Game" (*id.* ¶ 16), defined in the GLA as the game Star Citizen "***and*** its related space fighter ***game*** 'Squadron 42.'" GLA at page 2, second "WHEREAS" (emphasis added). The GLA grants certain exclusive rights in favor of CIG, including the exclusive right to embed the Engine in the Game and the exclusive right to exploit the Game. *Id.* ¶¶ 2.1.1 (as amended), 2.1.2, and 2.1.3. No provision in the GLA states that CIG "shall not" embed any other engine or third-party software in the Game. *Id.*, *passim*.

On December 23, 2016, CIG announced that it has ***stopped*** using the Engine in both Star Citizen and Squadron 42, and now was using the Amazon Lumberyard game engine. FAC ¶ 38; Goldman Decl., Ex. C (2016 Press Release).[3] Both Star Citizen and

---

[2] A copy of the GLA is attached as Exhibit A to the Declaration of Jeremy S. Goldman submitted herewith (the "Goldman Declaration"). A copy of Amendment #1 to GLA (the "Amendment") is attached as Exhibit B to the Goldman Declaration. As discussed below, the Court may properly consider the GLA, as amended by the Amendment, under the incorporation by reference doctrine. *See infra* at Section I (B).

[3] A copy of the 2016 Press Release is attached as Exhibit C to the Goldman Declaration. The Court may also properly consider the 2016 Press Release, which Crytek references, quotes from and relies upon in support of its claims, under the incorporation by reference doctrine. *See* FAC ¶¶ 26 and 38.

---

Squadron 42 remain in development.  *Id*. ¶ 26.  Crytek claims it is damaged because CIG is ***not*** using the Engine.  *Id.* ¶ 39.

Crytek filed its Initial Complaint against CIG and RSI on December 12, 2017.  *See* ECF 1.  Crytek filed its FAC on January 2, 2018 after Defendants' counsel notified Crytek's counsel, pursuant to Local Rule 7-3, that Defendants were planning to:  (a) file a motion to dismiss and strike certain portions of the Initial Complaint based on numerous deficiencies contained therein, and (b) serve a motion pursuant to Rule 11 of the Federal Rules of Civil Procedure based upon Crytek's improper inclusion of, and refusal to withdraw, a false statement in the Initial Complaint that Ortwin Freyermuth, an attorney who co-founded CIG and RSI, had negotiated the GLA on behalf of Defendants and against Crytek without resolving a conflict of interest with Crytek.  *See* Goldman Decl. ¶¶ 8-11.  Contrary to the false statement contained in paragraph 15 of the Initial Complaint, Mr. Freyermuth's law firm had obtained a written conflict waiver signed by Crytek prior to negotiating the GLA on behalf of CIG.  *See* Goldman Decl. ¶ 9.

Although the FAC addressed a few of the deficiencies Defendants had raised regarding the Initial Complaint, the FAC retains several fundamental defects.  Moreover, while Crytek withdrew the false statement regarding Mr. Freyermuth, the FAC retains certain immaterial, impertinent and scandalous statements regarding Mr. Freyermuth as well Carl Jones, another employee of CIG.  *Compare* Initial Compl. ¶ 15, *with* FAC ¶ 15.

## LEGAL STANDARD

### I.    Motion to Dismiss

#### A.    General Standard

Federal Rule 12(b)(6) permits a party to move to dismiss a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted."  To survive a motion to dismiss under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted).  The Court need not accept as true "[t]hreadbare

1   recitals of the elements of a cause of action, supported by mere conclusory
2   statements[.]"  *Ashcraft*, 556 U.S. at 678.

3       The Ninth Circuit requires that:  (1) a complaint must "contain sufficient
4   allegations of underlying facts to give fair notice and to enable the opposing party to
5   defend itself effectively," and (2) "the factual allegations that are taken as true must
6   plausibly suggest an entitlement to relief, such that it is ***not unfair*** to ***require*** the
7   opposing party ***to be subjected to the expense of discovery and continued litigation***."
8   *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis added).

9       **B.      Doctrine Of Incorporation By Reference**

10      The Court is empowered to consider the omitted GLA as well as the 2016 Press
11  Release under the doctrine of incorporation by reference even though Plaintiff chose not
12  to attach those documents to the FAC.  The Ninth Circuit has "extended the doctrine of
13  incorporation by reference to consider documents in situations where the complaint
14  necessarily relies upon a document or the contents of the document are alleged in a
15  complaint, the document's authenticity is not in question and there are no disputed issues
16  as to the document's relevance."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th
17  Cir. 2010).  "Otherwise, a plaintiff with a ***legally deficient*** claim could ***survive*** a motion
18  to dismiss ***simply by failing to attach a dispositive document on which it relied***."
19  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.
20  1993).

21  **II.    Motion to Strike**

22      Federal Rule 12(f) provides that a court "may order stricken from any pleading . . .
23  any redundant, immaterial, impertinent, or scandalous matter."  Matter is "immaterial" if
24  it "has no essential or important relationship to the claim for relief or the defenses being
25  pleaded."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other*
26  *grounds*, 510 U.S. 517.  "Impertinent" matter comprises "statements that do not pertain,
27  and are not necessary, to the issues in question."  *Id.*  "Scandalous" matter includes
28  "allegations that cast a cruelly derogatory light on a party or other person."  *In re*

*2TheMart.com. Inc. Securities Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) (citing *Skadegaard v. Farrell*, 578 F. Supp. 1209, 1221 (D.N.J. 1984)).  Courts possess "considerable discretion in disposing of a motion to strike redundant, impertinent, immaterial, or scandalous matter." *Survivor Prods. LLC v. Fox Broad. Co.*, No. 01 Civ. 3234, 2001 WL 35829267, at *3 (C.D. Cal. June 12, 2001) (citing 5A Wright & Miller, Federal Practice & Procedure: Civil 2d, § 1382).

## ARGUMENT

### I.     The FAC Fails to State a Claim for Breach of Contract

To state a claim for breach of contract against CIG, Crytek must allege the following elements: "(1) existence of the contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damages." *Tom Trading, Inc. v. Better Blue, Inc.*, 26 F. App'x 733, 735 (9th Cir. 2002) (quoting *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745, 108 Cal. Rptr. 2d 23 (2001)).  As shown below, Crytek fails to state a claim for breach of the GLA because RSI is not a party to the GLA, the GLA expressly allows activities that Crytek contends constitute breaches of the GLA and the GLA expressly precludes Crytek's claim for damages.

### A.     RSI is Not a Party to the GLA

Under California law, "a plaintiff cannot maintain a breach of contract claim against an entity who is not a party to the contract." *Barnhart v. Points Dev. US Ltd.*, No. 16 Civ. 2516, 2016 WL 3041036, at *3 (C.D. Cal. May 25, 2016).  Here, though the FAC alleges that "Defendants" (defined as CIG and RSI) entered into the GLA with Crytek (FAC ¶ 15), in fact the sole parties to enter into the GLA were Crytek and CIG.  *See* GLA at 1 (defining "Parties" as Crytek and CIG) and 16 (signature block); Amendment at 1 (defining "Parties" as Crytek and CIG) and 4 (signature block).  Crytek does not and cannot allege that RSI is a party to the GLA.  *Id.*

Crytek's Initial Complaint contained no allegations whatsoever regarding RSI, nor did it explain why RSI is included as a defendant to the breach of contract or copyright

infringement claims.  *See* Initial Complaint [ECF 1], *passim*.  In an attempt to remedy that deficiency, Crytek added a single sentence to the FAC: "By their actions and conduct, Defendants established that RSI was bound by the GLA as if it were a signatory thereto."  FAC ¶ 54.  This "threadbare" allegation, which fails to identify any "actions" or "conduct" by RSI that would bind it to a contract between two other parties, is entirely conclusory and provides no basis for naming RSI as a defendant to either claim in this action.  *See Ashcraft*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" insufficient to overcome motion to dismiss).

Accordingly, the claims against RSI should be dismissed.  *See Barnhart*, 2016 WL 3041036, at *3 (dismissing claim for breach of contract against non-party to contract); *see also Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) (same).

## B.   The GLA Expressly Allows Activities That Crytek Contends Constitute Breaches of the GLA

The FAC also fails to state a claim for breach of contract because certain of the alleged "breaches" of the GLA, even if the underlying facts as alleged by Crytek are accepted as true, are not breaches at all.

### 1.   CIG Has An Exclusive Right — Not An Obligation — To Embed The Engine In The Game

Crytek's claim that CIG was forced to use the Engine in the Game (FAC ¶¶ 36-39, 59) is based entirely on isolating the word "exclusively" contained in Section 2.1.2 of the GLA from the language of that provision and everything else in the GLA.  However, the express language of the GLA and the concept of exclusivity under well-established copyright law show that the exclusivity restriction is on Crytek, not CIG.

In interpreting the GLA, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641; *see also County of Marin v. Assessment Appeals Bd. of*

*Marin* County, 64 Cal. App. 3d 319, 324–325 (1976) ("[T]he contract must be construed as a whole and the intention of the parties must be ascertained from the consideration of the entire contract, not some isolated portion.")

Applying this rule of construction, it is clear that the term "exclusively" was included in Section 2.1.2 of the GLA to ***protect*** CIG's license, not restrict it. The title of the document itself — "Game License Agreement" — supports this conclusion. Merriam-Webster defines the word as "permission to act" or "freedom of action." *See* "License." Merriam-Webster.com. Merriam-Webster, n.d. Web. 20 Dec. 2017; *see also* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by the usage, in which case the latter must be followed.").

Consistent with the ordinary meaning of the term "license," the recitals of the GLA state that CIG "desires to use, and Crytek desires to grant ***the license to use***, the 'CryEngine' for the game . . . ." GLA at 2 (emphasis added). Following certain definitions in Section 1, Section 2 defines the "Grant of License" from Crytek to CIG. Within Section 2, Section 2.1 defines the "Grant," which is followed by Section 2.2, which sets forth certain "Restrictions on Use." The term "exclusively," which provides the sole basis for Crytek's claim, is found in the "Grant" section, ***not*** in the "Restrictions" section. No provision in the GLA states that CIG "shall not" embed any other engine or third-party software in the Game.

Section 2.1 (as amended) provides, in relevant part:

2.1   <u>Grant</u>: Subject to strict and continuous compliance with the restrictions in the Agreement and the timely payment of the first installment of the License and Buyout Fee pursuant to Section 5.1.1 hereof by Licensee, Crytek grants to Licensee a world-wide, license only:

2.1.1  to ***non-exclusively*** develop, support, maintain, extend and/or enhance CryEngine such right being ***exclusive*** only with respect to the Game, and non-sub-licensable except as set forth in Sec. 2.6 below;

2.1.2.  to ***exclusively*** embed ***CryEngine in the Game*** and develop the Game which right shall be sub-licensable pursuant to Sec. 2.6;

2.1.3  to ***exclusively*** manufacture, market, promote, sell, license, publish and exploit the Game in any way which right shall be freely sublicensable.

GLA at pages 3-4 & Amendment at page 2 (emphasis added).

This language, plus the rest of the hidden document, reflect the unremarkable and obvious truth:  there are some rights granted to CIG that may be granted to others by Crytek (non-exclusive), but others where ***Crytek*** is prohibited from granting such rights to others (exclusive).  Obviously CIG could never have a document that even remotely suggests Crytek could grant ***somebody else*** the right to embed the Engine in the Game.

Crytek's house of cards pleading tries to ***restrict***, rather than ***protect***, CIG's granted rights.  Ninth Circuit copyright jurisprudence regarding exclusivity accords with the GLA, underscoring the absurdity of Crytek's attempt.  The Ninth Circuit recognizes that "the essence of an 'exclusive' license under the [Copyright] Act is that 'the copyright holder permits the licensee to use the protected material for a specific use and ***further promises that the same permission will not be given to others***."  *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1005 (9th Cir. 2015) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) (emphasis added)).  Contrary to Crytek's sham interpretation, and consistent with well-established jurisprudence on exclusive licenses, the GLA uses the word "exclusively" in § 2.1.2 to signify ***Crytek's*** promise not to permit anyone other than CIG to "embed CryEngine in the Game and develop the Game."

The GLA's use of the terms "exclusively" and "non-exclusively" in Section 2.1 buttresses this conclusion.  Specifically, the GLA makes clear that any rights in the Engine ***as they relate to the Game*** are exclusive to CIG, the developer of the Game.

---

Thus, Crytek grants CIG the ***exclusive*** right — meaning CIG, ***and no one else***, has the right — to:

- "develop, support, maintain, extend and/or enhance CryEngine . . . ***with respect to the Game***" (§ 2.1.1)
- "embed CryEngine ***in the Game*** and develop ***the Game***" (§ 2.1.2); and
- "manufacture, market, promote, sell, license, publish and exploit ***the Game*** in any way" (§ 2.1.3).

GLA at 4 (as amended by Amendment at 2) (emphasis added).  On the other hand, the ***non-exclusive*** grant of rights in Section 2.1.1 allows Crytek to permit others to "develop, support, maintain, extend and/or enhance CryEngine," provided such activities are not "with respect to the Game."  *Id.*

Accordingly, Crytek's claims that the GLA forces CIG to use the Engine, and that CIG breached the GLA by using a different game engine, are meritless.  This flaw, combined with the plain admission that CIG has elected to move to a different engine (*see* FAC ¶¶ 38 and 39; 2016 Press Release), unravels much of the FAC.

## 2. Any CIG Obligation to Include Copyright and Trademark Notices Could Only Apply To CIG's Use of The Engine

Crytek alleges that CIG breached the GLA by failing to include copyright and trademark notices in the Game.  CIG's obligation to include the copyright and trademark notices necessarily requires CIG's actual use of the Engine in the Game.  While the GLA includes a provision requiring CIG to include copyright and trademark notices for Crytek, that requirement is subject to an implied condition that CIG actually use the Engine in the Game.  *See* Cal. Civ. Code § 1655 ("Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention.").  Otherwise, the notices would misrepresent reality and could mislead that CIG is using Crytek's Engine when it is not, precisely as Crytek admits.

## 3. CIG's Planned Release of Squadron 42 Does Not Breach the GLA

Crytek contends that CIG breached the GLA by using the Engine to develop Squadron 42, alleging that "Section 2.1.2 of the [GLA] expressly states that CIG has a license <u>only</u> to 'embed CryEngine in the <u>Game</u> and develop the <u>Game</u>.'" FAC ¶ 20 (emphasis in FAC).  Crytek tries to hide the critical fact, readily apparent on the face of the contract, that the GLA expressly defines the "Game" as including both Star Citizen *and* Squadron 42.  Indeed, the second recital of the GLA provides:

> **WHEREAS** Licensee desires to use, and Crytek desires to grant a license to use, the "CryEngine" for the *game* currently entitled "Space Citizen" *and its related space fighter game "Squadron 42,"* together hereafter the "Game", pursuant to the terms and conditions of this Agreement;

GLA at 2 (emphasis added).

CIG's right to use the Engine in connection with its development of Squadron 42 is further established by Exhibit 2 to the GLA, which contains a more detailed description of the Game.  That Exhibit itemizes Squadron 42 as *the first feature of the Game*:

> **Features –**
>
> - **Squadron 42:** Single Player – Offline or Online (Drop in / Drop out co-op play)
> - **Star Citizen:** Persistent Universe (hosted by CIG)

GLA at 18.  Thus, contrary to Crytek's claim that CIG's alleged prior use of the Engine to develop Squadron 42 was a breach of the GLA, such use was expressly authorized by the GLA.

Furthermore, Crytek's claim that CIG is in breach of the GLA by planning to release Squadron 42 as a standalone game fails for the simple reason that ***CIG is no longer using the Engine in Squadron 42***.  Crytek attempts to hide this dispositive fact from the Court by misrepresenting the contents of the 2016 Press Release.  To support its meritless claim that CIG broke a non-existent obligation to use the Engine in the Game, Crytek alleges, in paragraph 38 of the FAC:  "On December 23, 2016, Defendants announced that they were using the Amazon Lumberyard video game engine *for Star*

1    *Citizen*." FAC ¶ 38 (emphasis added). This is a blatant misrepresentation of CIG's

2    announcement. In fact, CIG announced in the 2016 Press Release that it had switched to

3    Amazon Lumberyard for both Star Citizen *and Squadron 42*. *See* 2016 Press Release

4    ("[CIG] announced today the company is using the Amazon Lumberyard game engine to

5    create its ground-breaking space sim games, Star Citizen *and Squadron 42*.") (emphasis

6    added). Thus, Crytek's claim that CIG is breaching the GLA by using the Engine in

7    Squadron 42 is flatly contradicted by the 2016 Press Release, which makes crystal clear

8    that CIG is using Lumberyard, not the Engine, in Squadron 42.

9         **C.**    **The GLA Expressly Precludes The Alleged Contract Claims For**

10              **Damages**

11        "An essential element of a claim for breach of contract are damages resulting from

12   the breach." *St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins.*,

13   101 Cal. App. 4th 1038, 1060 (2002). Thus, "[a] breach of contract without damage is

14   not actionable." *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d

15   506, 511 (1967).

16        Here, the GLA expressly precludes Crytek from seeking "any damages"

17   whatsoever. Section 6.1.4 of the GLA provides, in relevant part:

18                EXCEPT FOR INTENTIONAL ACTS OR OMISSIONS OR

19                GROSS NEGLIGENT ACTS, *IN NO EVENT SHALL*

20                *EITHER PARTY HERETO BE LIABLE FOR ANY*

21                *DAMAGES*, INCLUDING BUT NOT LIMITED TO

22                INDIRECT, INCIDENTAL, SPECIAL OR

23                CONSEQUENTIAL DAMAGES, OR DAMAGES FOR LOSS

24                OF PROFITS, REVENUE, DATA OR USE, *INCURRED BY*

25                *EITHER PARTY* OR ANY THIRD PARTY, WHETHER *IN*

26                *AN ACTION IN CONTRACT* OR TORT (INCLUDING

27                NEGLIGENCE) OR OTHERWISE, EVEN IF THE

28                RELEVANT PARTY HAS BEEN ADVISED

GLA at 11 (emphasis added).  This unambiguous language controls.  Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. . . .").

After Defendants' counsel pointed out this fundamental problem with Crytek's claim for breach of contract as it was pleaded in the Initial Complaint, Crytek attempted to fix the issue by inserting the word "intentionally" before the words "breached the GLA" in paragraphs 56-59 of the FAC.  *See* FAC ¶¶ 56 ("Defendants *intentionally* breached the GLA…") (emphasis added), 57 ("Defendants further *intentionally* breached the GLA…") (emphasis added), 58 (same), 59 (same).  Presumably, Crytek inserts the word "intentionally" in order to argue that its claim for damages against Defendants falls within the exception "FOR INTENTIONAL ACTS OR OMISSIONS."  *See* GLA § 6.1.4.  Crytek's meager attempt to circumvent the GLA's clear prohibition against either party seeking damages from the other should be rejected.

Based upon well-established principles distinguishing between contract and tort, it is clear that the exception for "FOR INTENTIONAL ACTS OR OMISSIONS" applies solely to claims sounding in tort, not contract.  "Contract and tort are different branches of law.  Contract law exists to enforce legally binding agreements between parties; tort law is designed to vindicate social policy."  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515, 869 P.2d 454, 460 (1994).  In contrast to tort law, "in traditional contract law, the *motive* of the breaching party generally has no bearing on the scope of damages that the injured party may recover for the breach. . .; the remedies are limited to contract damages."  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 699, 765 P.2d 373, 400 (1988) (emphasis added).  Motive is irrelevant to breach of contract because "the intentional breach of contract has come to be viewed as a morally neutral act, as exemplified in Justice Holmes's remark that '[t]he duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it — and nothing else.'"  *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 106, 900 P.2d 669, 682

1   (1995) (conc. and dis. opn. of Mosk, J.) (quoting Holmes, *The Path of the Law*, 10 HARV.

2   L. REV. 457, 462 (1897)).

3         The California Supreme Court has held that, outside the insurance context, a claim

4   for an "intentional" or "tortious" breach of contract may lie only when:

5         (1) the breach is accompanied by a traditional common law tort, such as

6         fraud or conversion; (2) the means used to breach the contract are tortious,

7         involving deceit or undue coercion or; (3) one party intentionally breaches

8         the contract intending or knowing that such a breach will cause severe,

9         unmitigable harm in the form of mental anguish, personal hardship, or

10        substantial consequential damages.

11  *Erlich v. Menezes*, 21 Cal. 4th 543, 553–54, 981 P.2d 978, 984 (1999) (citations omitted).

12  Here, although Crytek claims that Defendants "intentionally breached" the GLA in

13  various ways, neither that conclusory allegation, nor any other facts alleged in the FAC,

14  are sufficient to bring Crytek's ordinary claim for breach of contract within any of these

15  narrow exceptions.

16        Accordingly, based on the plain language of the GLA, Crytek cannot plead any

17  damages referenced vaguely but repeatedly throughout its claim for breach of contract,[4]

18  and the claim must be dismissed with prejudice.

---

[4] *See* FAC ¶¶ 5 ("By this action, Crytek seeks damages. . ."), 35 ("Crytek has been substantially damaged"), 39 ("Crytek has been damaged"), 45 (same), 52 (same), 60 ("Crytek . . . is entitled to monetary damages in an amount to be determined at trial."), Prayer For Relief (a) ("awarding Plaintiff all direct damages (estimated to be in excess of $75,000), indirect damages, consequential damages (including lost profits), special damages, costs, fees, and expenses incurred by reason of Defendants' breach of contract), and Prayer For Relief (c) (awarding actual damages and disgorgement of Defendants profits in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit as provided by law and as set forth in the contracts in issue").

---

## II. The Complaint Fails to State a Claim For Copyright Infringement Because The GLA Expressly Authorized Defendants' Prior Use Of The Engine In Squadron 42 And Defendants Are Not Now Using The Engine In Squadron 42

The sole basis for Crytek's claim for copyright infringement is the allegation that Defendants are exceeding the scope of the GLA by using the Engine to develop Squadron 42, a game Crytek pleads is separate from Star Citizen. FAC ¶¶ 25, 63. However, Crytek's claim for copyright infringement fails because CIG's prior use of the Engine to develop Squadron 42 was expressly authorized by the GLA. *See* GLA at 2 (defining Game as Star Citizen "and its related space fighter game 'Squadron 42'") and GLA Exhibit 2 at 18; *see also Beijing Zhongyi Zhongbiao Elec. Info. Tech. Co. v. Microsoft Corp.*, No. 13 Civ. 1300, 2013 WL 6979555, at *6 (W.D. Wash. Oct. 31, 2013), *aff'd*, 655 F. App'x 564 (9th Cir. 2016) (granting motion to dismiss copyright infringement claim based on Microsoft's alleged violation of software license agreement where terms in license agreement, which court considered through incorporation by reference doctrine, expressly authorized the allegedly unauthorized use).

Moreover, "[t]o recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution)." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 940 (9th Cir. 2010) (citing *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1315–16 (Fed. Cir. 2005)). Crytek cannot maintain its copyright claim for the simple reason that Crytek pleads that ***Defendants are not using any copyrighted work belonging to Crytek*** (*i.e.*, the Engine) to develop either Star Citizen ***or*** Squadron 42. *See* FAC ¶ 38 ("On December 23, 2016, Defendants announced that they were using the Amazon Lumberyard video game engine for Star Citizen."); 2016 Press Release ("Star Citizen and Squadron 42 Utilize Amazon Lumberyard Game Engine"). Even if there were any merit to Crytek's claim that the GLA requires CIG to use the Engine in the Game (there is not), Crytek cannot possibly establish a claim for

---

MEM. OF PTS. & AUTHS. ISO DEFENDANTS' MOTION TO DISMISS AND STRIKE THE FAC

15

*copyright infringement* based on Defendants' decision **not** to use the Engine in Squadron 42. *See MDY Indus.*, 629 F.3d at 941 (though use of third-party software to cheat in video game violated terms of use, it did not infringe licensor's copyright because there was no "nexus between the condition and the licensor's exclusive rights of copyright").

Accordingly, Crytek's claim for copyright infringement must be dismissed.

## III. The Court Should Dismiss Crytek's Improper Claims For Damages And Injunctive Relief That Are Unavailable As A Matter Of Law And Under The Express Terms Of The GLA

Even if the Court does not dismiss the breach of contract or copyright infringement claims in their entireties, the Court should dismiss Crytek's improper claims for damages and injunctive relief that are unavailable as a matter of law and under the express terms of the GLA. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) (Rule 12(b)(6) motion is proper vehicle to seek dismissal of claims for damages and other relief that are unavailable as a matter of law).

### A. Monetary Damages

Crytek's claim for monetary damages against CIG based upon CIG's alleged breach of the GLA should be dismissed in light of Section 6.1.4 of the GLA which, as discussed, precludes "either party" from being "liable for any damages. . . incurred by either party. . . ." GLA at 11.[5]

### B. Injunctive Relief

In its Prayer for Relief, Crytek requests the Court to enter:

> a permanent injunction enjoining and restraining Defendants from continuing to possess or use the Copyrighted Work and a preliminary and permanent injunction requiring Defendants, and all those acting in concert or participation with Defendants, from

---

[5] This dismissal should extend to the damage claims referenced above in note 5.

infringing or encouraging, aiding or abetting others to infringe

the Copyrighted Work

FAC at 14.

Crytek's claim for injunctive relief should be dismissed for at least two reasons. *First*, the claim for injunctive relief should be dismissed insofar as it conflicts with Section 10.7 of the GLA, which expressly provides that "***under no circumstances . . . shall Crytek be entitled to enjoin the publishing or other exploitation of the Game***." GLA at 16 (emphasis added).

*Second*, the FAC states no facts to support a claim for injunctive relief.  In order for the Court to grant injunctive relief for copyright infringement, Crytek must plead facts that, if proven, would establish: "(1) that it has suffered irreparable injury; (2) the available remedies at law are inadequate to compensate for that injury; (3) a balance of hardships favoring Plaintiff; and (4) that an injunction will advance the public interest." *Lions Gate Films Inc. v. Saleh*, No. 14 Civ 6033, 2016 WL 6822748, at *6 (C.D. Cal. Mar. 24, 2016) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1209 (C.D. Cal. 2007) (applying the four factor test from *eBay* to copyright dispute)).  As the FAC states no facts to support any of these essential elements, Crytek's claim for injunctive relief must be dismissed.

### C.      Statutory Damages and Attorneys' Fees Under the Copyright Act

Crytek's claims seeking statutory damages and attorney's fees under the Copyright Act should be dismissed pursuant to 17 U.S.C. § 412, which provides that "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for . . . (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  Here, the FAC alleges that the infringement commenced in 2015 or 2016.  *See* FAC ¶¶ 22-26.  Crytek's copyright registration attached to the FAC is dated December 11, 2017 and states that the Engine

1    was first published February 23, 2012.  *See* FAC, Ex. 1 [ECF 18-1].  Accordingly,

2    Crytek's claims for statutory damages and attorney's fees are barred as a matter of law

3    and should be dismissed.[6]

4        **D.    Punitive Damages**

5        Finally, Crytek's claim in its Prayer For Relief (d) seeking "punitive damages in an

6    amount to be determined as trial" should be dismissed because punitive damages are not

7    recoverable for either breach of contract or copyright infringement.  *See Slottow v. Am.*

8    *Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1361 (9th Cir. 1993) ("Punitive

9    damages aren't available in California for simple breaches of contract, no matter how

10   willful."); *Riedel v. JP Morgan Chase Bank, N.A.*, No. 13 Civ. 1146, 2015 WL

11   12657068, at *2 (C.D. Cal. Apr. 3, 2015) (dismissing claim for punitive damages where

12   sole remaining claim was for breach of contract); *Saregama India Ltd. v. Young*, No. 02

13   Civ. 9856, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003) ("Punitive damages are

14   not available under the Copyright Act.") (citations omitted).

15   **IV.   The Court Should Strike the Immaterial, Impertinent, Scandalous (And**

16       **False) Allegations Regarding Messrs. Freyermuth and Jones**

17       As shown above, the entire FAC should be dismissed for failure to state a claim

18   particularly given the lack of candor by Crytek regarding the GLA.  To the extent the

19   FAC is not dismissed in its entirety, the Court should strike the Offending Allegations.

20       In a ham-fisted attempt to smear "one of Defendants' co-founders, [Ortwin]

21   Freyermuth," as well as Carl Jones, a current employee of CIG and former employee of

22   Crytek, the FAC includes the following assertion:

23       15.    On November 20, 2012, Crytek and Defendants entered

24       into a Game License Agreement ("GLA") that was extensively

25   _____

26   [6] This dismissal should extend to the claims alleged in the following paragraphs of the
     FAC: ¶ 68 ("Crytek . . . claims willful, exemplary and enhanced statutory damages"), ¶
27   70 ("Crytek is further entitled to . . . attorneys' fees . . . pursuant to 17 U.S.C. §§ 504 and
     505"), and Prayer For Relief (e) ("awarding all remedies provided for under 17 U.S.C. §
28   504").

negotiated.  The negotiations on behalf of the Defendants were led by one of the Defendants' co-founders, Freyermuth.  ***In prior years, Freyermuth had represented Crytek in negotiations of similar license agreements with third parties and had confidential information about Crytek's licensing practices***.  The negotiations on behalf of Crytek were led by Carl Jones, then an employee of Crytek.  ***Jones later left Crytek and became an employee of Defendants***.

FAC ¶ 15 (emphasis added).

The Court should strike the Offending Allegations (the statements in bold italics above) on the grounds that they are "immaterial," "impertinent" and "scandalous" within the meaning of Federal Rule 12(f).  The Offending Allegations are "immaterial" because they have "no essential or important relationship" to Crytek's claim for breach of the GLA or infringement of the Engine.  *See Fantasy*, 984 F.2d at 1527.  Similarly, the statements are "impertinent" because they do not pertain, and are not necessary to, any of the issues raised by Crytek's claims for breach of contract or copyright infringement.  *Id.*  Finally, the statements are "scandalous" because they "cast a cruelly derogatory light" on Mr. Freyermuth (a co-founder of CIG) and Mr. Jones (an employee of CIG) without any justification.  *See, e.g.*, *2TheMart.com*, 114 F. Supp. 2d at 965; *see also Gssime v. Nassau Cty.*, No. 09 Civ. 5581, 2014 WL 810876, at *3 (E.D.N.Y. Feb. 28, 2014) (striking as scandalous "Plaintiff's direct personal attack on defense counsel" that "improperly suggests that counsel committed some wrongdoing in filing the Answer"); *Fleischer v. A. A. P., Inc.*, 180 F. Supp. 717 (S.D.N.Y. 1959) (striking as scandalous statements in complaint regarding counsel's actions in the past that were relevant only to an unrelated motion to disqualify).

The scandalous nature of the Offending Allegations in the FAC also must be viewed in light of the Initial Complaint.  As discussed above and in the Goldman Declaration, paragraph 15 of the Initial Complaint also included the allegation that Mr.

Freyermuth had negotiated the GLA on behalf of Crytek without resolving a conflict of interest — an allegation that was demonstrably false given that Mr. Freyermuth had obtained a written conflict waiver from Crytek prior to negotiating the GLA on behalf of CIG. *See* Initial Complaint ¶ 15; Goldman Decl. ¶ 9.  After filing the Initial Complaint, that false allegation was reported by several media outlets important to the video game industry, all defaming Mr. Freyermuth, exactly as apparently intended.[7]  Although Crytek amended the Initial Complaint under the shadow of an impending Rule 11 motion [*see* Goldman Decl. ¶ 10], in part by removing the false statement regarding Mr. Freyermuth, Crytek deliberately left in a statement insinuating that Mr. Freyermuth engaged in improper conduct by negotiating the GLA on behalf of CIG, even though Crytek knows full well that it executed a written conflict waiver and that the allegation regarding Mr. Freyermuth bears no connection whatsoever to either claim asserted against Defendants. Likewise, by stating that Mr. Jones became an employee of Defendants after negotiating the GLA on behalf of Crytek, without disclosing that Mr. Jones left Crytek years later, for reasons that had nothing to do with Defendants, Crytek casts Mr. Jones in a "cruelly derogatory light," again without the statement having any bearing on either of Crytek's claims.  *2TheMart.com*, 114 F. Supp. 2d at 965.

While the damage to Mr. Freyermuth caused by Crytek's irresponsible inclusion of the false allegation in the Initial Complaint cannot be undone, and the gratuitous and misleading comments about Messrs. Freyermuth and Jones in the FAC have already been published, the Court should send a message to Crytek and its counsel by ordering that the

---

[7] *See e.g. The Crytek and Star Citizen Feud is Getting More Complicated,* POLYGON, Dec. 14, 2017, *at* https://www.polygon.com/2017/12/14/ 16776300/crytek-star-citizen-lawsuit-cig-rsi ("Crytek isn't simply saying that CIG and RSI broke the terms of the agreement. They're also implying that the lawyers who helped to negotiate the agreement in the first place may not have been playing by the rules."); *Crytek is Also Targeting Lawyer's Conflict of Interest in Star Citizen Lawsuit,* KITGURU, Dec. 15, 2017, *at* https://www.kitguru.net/gaming/damien-cox/crytek-is-also-targeting-lawyers-conflict-of-interest-in-star-citizen-lawsuit/.

1  immaterial, impertinent, scandalous and highly misleading Offending Allegations
2  regarding Messrs. Freyermuth and Jones be stricken from paragraph 15 of the FAC.

3                              **<u>CONCLUSION</u>**

4         For the reasons stated herein, the Court should dismiss Crytek's irresponsible FAC
5  in its entirety with prejudice or, in the event anything remains or leave to amend is
6  granted, order Crytek to strike the identified portion of paragraph 15 of the FAC.

7

8  Dated: January 5, 2018                    FRANKFURT KURNIT KLEIN & SELZ P.C.

9                                            BY:  */s/ Jeremy S. Goldman*
10                                                 Joseph R. Taylor (SBN 129933)
                                                   Jeremy S. Goldman (SBN 306943)
11                                                 Azita M. Iskandar (SBN 280749)
                                                   2029 Century Park East, Suite 1060
12                                                 Los Angeles, California 90067
                                                   Telephone: (310) 579-9600
13                                                 Facsimile: (347) 438-2156
                                                   E-Mail: jtaylor@fkks.com
14                                                         jgoldman@fkks.com
                                                           aiskandar@fkks.com
15
                                            Attorneys for Defendants CLOUD IMPERIUM
16                                          GAMES CORP. and ROBERTS SPACE
                                            INDUSTRIES CORP.
17

18

19

20

21

22

23

24

25

26

27

28