JAMES Y. PAK (SBN 304563)
*james.pak@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

KEVIN J. MINNICK (SBN 269620)
*kevin.minnick@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

P. ANTHONY SAMMI (admitted *pro hac vice*)
*anthony.sammi@skadden.com*
KURT WM. HEMR (admitted *pro hac vice*)
*kurt.hemr@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Attorneys for Plaintiff
Crytek GmbH

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CRYTEK GMBH, | Case No. 2:17-cv-08937-DMG-FFM |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR CLAIMS FOR RELIEF THEREIN OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT** |
| v. | |
| CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP., | |
| Defendants. | Date:            February 9, 2018 |
| | Time:           9:30 a.m. |
| | Courtroom:   8C |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES..........................................................iii

PRELIMINARY STATEMENT .......................................................1

SUMMARY OF ARGUMENT ........................................................2

ARGUMENT ..............................................................................4

    I.    THE MOTION IGNORES
        SEVERAL OF THE CLAIMS STATED ....................................4

    II.   CRYTEK HAS PLEADED
        CLAIMS FOR BREACH OF CONTRACT.................................6

        A.    BOTH CIG AND RSI ARE BOUND BY THE GLA..............6

              1.   RSI Is Identified As
                  A "Licensee" In Exhibit 4 To The GLA........................6

              2.   RSI Accepted The Terms
                  Of The GLA By Its Conduct ...........................7

              3.   If RSI Is Not A Party To The GLA,
                  Then Crytek's Claims For Copyright
                  Infringement Are Even Stronger .......................8

        B.    DEFENDANTS BREACHED
            THE GLA IN NUMEROUS WAYS.............................8

              1.   The GLA Requires Defendants To Develop
                  Star Citizen "Exclusively" Using CryEngine.................8

               2.   The GLA Is A License For
                  Only One Game, Yet Defendants Used
                  CryEngine To Develop Two Games ...........................11

              3.   The GLA Requires Defendants To
                  Display Crytek's Trademark and Copyright Notices .....13

        C.    CRYTEK IS ENTITLED TO DAMAGES
            FOR DEFENDANTS' BREACHES OF THE GLA ...............14

               1.   The GLA Does Not Preclude
                  Contract Claims for Damages ...........................14

               2.   Crytek Alleged Factual Bases For Its Damages.............18

    III.  CRYTEK HAS SUFFICIENTLY PLEADED
        ITS CLAIMS FOR COPYRIGHT INFRINGEMENT.....................19

i

1

IV.    NONE OF THE REMEDIES
        THAT CRYTEK SEEKS ARE BARRED ........................................20

V.     DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED....22

CONCLUSION ...................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

## CASES

*In re 2TheMart.com Sec. Litig.*,
   114 F. Supp. 2d 955 (C.D. Cal. 2000)...........................................................24

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503, 869 P.2d 454 (1994) ...........................................................16

*Beijing Zhongyi Zhongbiao Electronic Information Technology Co. v. Microsoft Corp.*,
   No. C13-1300-MJP, 2013 WL 6979555 (W.D. Wash. Oct. 31, 2013)............20

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006).........................................................................8

*Delgado v. MillerCoors LLC*,
   No. CV 16-5241 DMG (ASx), 2017 WL 1130165
   (C.D. Cal. Mar. 16, 2017)..................................................................................4

*Emeryville Redevelopment Agency v. Harcros Pigments, Inc.*,
   101 Cal. App. 4th 1083 (2002)................................................................12, 13

*Erlich v. Menezes*,
   21 Cal. 4th 543, 981 P.2d 978 (1999) .........................................................16

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993).......................................................................24

*Fleischer v. A.A.P., Inc.*,
   180 F. Supp. 717 (S.D.N.Y. 1959).................................................................25

*Foley v. Interactive Data Corp.*,
   47 Cal. 3d 654, 765 P.2d 373 (1988).............................................................17

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
   11 Cal. 4th 85, 900 P.2d 669 (1995) .............................................................17

*Gssime v. Nassau County*,
   No. 09-cv-5581 (JS)(ARL), 2014 WL 810876 (E.D.N.Y. Feb. 28, 2014) ......25

*Guardian Media Technologies, Ltd. v. Sears, Roebuck & Co.*,
   No. 14-cv-767 PSG (PLAx), 2014 WL 12588283
   (C.D. Cal. July 9, 2014)...................................................................................12

*Guillot-Vogt Associates, Inc. v. Holly & Smith*,
   848 F. Supp. 682 (E.D. La. 1994)..................................................................22

*Hernandez v. Monsanto Co.*,
   No. CV 16-1988-DMG (Ex), 2016 WL 6822311
   (C.D. Cal. July 12, 2016)...................................................................................4

*Long v. Authentic Athletix LLC*,
   No. 16-cv-03129-JSC, 2017 WL 6493094 (N.D. Cal. Dec. 19, 2017).............8

iii

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*,
   629 F.3d 928 (9th Cir. 2010) ........................................................... 19

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
   795 F.3d 997 (9th Cir. 2015) ........................................................... 11

*Oasis West Realty, LLC v. Goldman*,
   51 Cal. 4th 811, 250 P.3d 1115 (2011) ............................................. 6

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ......................................................... 19

*Riedel v. JP Morgan Chase Bank, N.A.*,
   No. EDCV 13-01146-VAP (SPx), 2015 WL 12657068
   (C.D. Cal. Apr. 3, 2015) ................................................................. 22

*Russell v. Union Oil Co. of California*,
   7 Cal. App. 3d 110 (1970) ................................................................ 8

*Saregama India Ltd. v. Young*,
   No. CV 0219856 RJK, 2003 WL 25769784 (C.D. Cal. Mar. 11, 2003) ......... 22

*Slottow v. American Casualty Co. of Reading, Pa.*,
   10 F.3d 1355 (9th Cir. 1993) ........................................................... 22

*Survivor Prods., LLC v. Fox Broad. Co.*,
   No. 01-cv-3234, 2001 WL 35829267 (C.D. Cal. June 12, 2001) ................ 24

*Washington Mutual Finance Group, LLC v. Bailey*,
   364 F.3d 260 (5th Cir. 2004) ............................................................ 8

**STATUTES**

17 U.S.C. § 106 ..................................................................................... 19

17 U.S.C. § 504(c)(2) ............................................................................ 22

Cal. Civ. Code § 1641 ......................................................................... 9, 14

Cal. Civ. Code § 1647 ............................................................................ 24

Cal. Civ. Code § 1655 ............................................................................ 13

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## **PRELIMINARY STATEMENT**

Defendants' Motion seeking dismissal and other relief is without merit. Rather, that Motion is a blatant effort to impose delay and burden on Crytek as it seeks to vindicate its rights under its contract with Defendants and its copyrights.

The facts here are straightforward:  Plaintiff Crytek GmbH ("Crytek") granted Cloud Imperium Games Corp. ("CIG") and Roberts Space Industries Corp. ("RSI") (collectively, "Defendants") a license to use Crytek's powerful video game development platform, CryEngine, in the development of Defendants' video game called "Star Citizen."  Pursuant to that Game License Agreement (the "GLA"), Crytek agreed to provide technical support and know-how to Defendants and licensed CryEngine to Defendants at a discounted rate, in return for certain promises from Defendants.

But after accepting Crytek's assistance — and after raising record-breaking amounts from video game consumers in a crowdfunding campaign — Defendants began to break their promises to Crytek:

- Defendants promised that they would develop Star Citizen with CryEngine, not any other development platform.  But Defendants now boast that they have breached that promise, and are promoting a competing development platform.

- Defendants promised that they would prominently display Crytek's copyright notices and trademarks both within Star Citizen and in any marketing materials for Star Citizen.  But Defendants have admittedly breached that promise.

- Even though Defendants had licensed Crytek's technology to develop only <u>one</u> game (Star Citizen), they later separated Star Citizen's feature "Squadron 42" into a standalone game without obtaining a license to use Crytek's technology in <u>two</u> games.

- Defendants promised to provide Crytek with any improvements or bug fixes that they made to CryEngine while developing Star Citizen. Defendants never made a good faith effort to honor that promise.
- Defendants promised that they would maintain the confidentiality of Crytek's valuable technology. But they published excerpts of Crytek's source code unilaterally and shared Crytek's technology with a third-party developer without obtaining Crytek's approval.

Defendants say this action never should have been filed. Indeed, if only they had kept their promises, the action never would have been filed. But now that Crytek seeks to enforce its contractual rights and copyrights, Defendants deny having any enforceable obligation to Crytek and move the Court to dismiss Crytek's claims in their entirety. Defendants' arguments simply do not withstand scrutiny, and certainly cannot meet the demanding standard required to obtain dismissal of Crytek's claims as a matter of law. The Court should deny Defendants' Motion and permit Crytek to proceed so that it may vindicate its rights.

## SUMMARY OF ARGUMENT

Crytek has sufficiently stated claims for both breach of contract and copyright infringement. Defendants' motion to dismiss should be denied.

As a preliminary matter, Defendants seek dismissal of Crytek's First Amended Complaint in its entirety, but that Complaint alleges numerous breaches of contract and copyright infringement that Defendants' motion *does not address at all*. Defendants have proffered no basis to dismiss those aspects of Crytek's claims.

The arguments that Defendants *do* make are unpersuasive:

*First*, with regard to Crytek's claims for breach of contract, RSI is bound by the GLA for several reasons, including that (i) RSI is a signatory to at least one portion of the GLA; (ii) RSI has accepted the contract by its conduct; and (iii) RSI is equitably estopped from arguing that it is not bound by the GLA. If RSI is deemed

2

not to be bound by the GLA, however, Defendants' infringement of Crytek's copyrights is even more pervasive.  Defendants' claim that their conduct was authorized by the GLA conflicts with the GLA's plain terms providing that Defendants were required to use CryEngine exclusively, were required to promote Crytek by prominently displaying its copyright notices and trademarks, and were licensed to develop only one standalone game, not two.  Defendants' contention that the GLA does not permit damages for intentional breaches of its terms — thereby rendering the entire GLA unenforceable and illusory — is contrary to both common sense and the express terms of the GLA.

***Second***, with regard to Crytek's claims for copyright infringement, Defendants argue that the GLA authorized their use of CryEngine to develop Squadron 42.  That is incorrect because the GLA authorized development of only one game, Star Citizen, not two games.  Defendants further argue that having breached the GLA by embedding a different engine in place of CryEngine, they can no longer be held liable for copyright infringement.  This argument ignores both the pervasive copyright infringement that took place before Defendants breached the exclusivity requirement of the GLA and Crytek's allegations that Defendants' infringement is in fact ongoing.  In any event, Defendants' bare assertion that they "are not using any copyrighted work belonging to Crytek" (Defts.' Br. at 15) presents a disputed factual question that cannot be resolved on a motion to dismiss.

Defendants' motion to strike should also be denied.  Defendants seek to strike certain portions of an allegation that sets forth information concerning Ortwin Freyermuth, one of Defendants' founders, who negotiated the GLA on Defendants' behalf notwithstanding having previously served as counsel for Crytek.  The allegation also informs the Court that the person who negotiated the GLA on behalf of Crytek is now employed by Defendants.  All of that information may become relevant if the Court were to hold that there are ambiguous provisions of the GLA such that the finder of fact must review the negotiations of the GLA to construe it.

**ARGUMENT**[1]

**I.      THE MOTION IGNORES SEVERAL OF THE CLAIMS STATED**

Defendants' Motion simply does not address several of Crytek's theories of liability, which precludes dismissal of those aspects of Crytek's claims.

***First***, pursuant to Section 7.3 of the GLA, Defendants were required to provide Crytek with any bug fixes and optimizations made to CryEngine.[2]   This "Reverse Technology Transfer" entailed granting Crytek "a non-exclusive, royalty-free and perpetual license" to use any such bug fixes or optimizations internally at Crytek, incorporate them into future releases of CryEngine, and distribute them to third parties.   (GLA § 7.3 (Goldman Decl. Ex. A, ECF No. 20-3).)   Indeed, Defendants have publicly claimed to have made extensive optimizations to CryEngine.  (*See, e.g.*, Christopher Roberts, *Lumberyard for those interested…*, RSI Community Forums (Dec. 2016), https://forums.robertsspaceindustries.com/discussion/364217 ("We stopped taking new builds from Crytek towards the end of

---

[1]      Crytek will not belabor the standards for resolving motions to dismiss and motions to strike, with which this Court is well familiar.  *E.g.*, *Hernandez v. Monsanto Co.*, No. CV 16-1988-DMG (Ex), 2016 WL 6822311, at *2 (C.D. Cal. July 12, 2016) ("A plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation marks and citations omitted); *Delgado v. MillerCoors LLC*, No. CV 16-5241 DMG (ASx), 2017 WL 1130165, at *3-4 (C.D. Cal. Mar. 16, 2017) ("As a general matter, motions to strike are disfavored and are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of litigation.") (same).

[2]      Defendants suggest that the Court should draw negative inferences from the fact that Crytek did not file the GLA as an exhibit to its initial and amended complaints.  (*E.g.*, Defts.' Br. at 1-2 (accusing Crytek of "conceal[ing]" the GLA from the Court by "deliberately omitt[ing]" and "hiding" the GLA); *id.* at 9 (describing the GLA as "the hidden document"); *id.* at 18 (arguing that "the entire FAC should be dismissed for failure to state a claim particularly given the lack of candor by Crytek regarding the GLA.").  The GLA contains sensitive business information concerning Crytek's licensing practices and Crytek was not obliged to attach it to a public filing.  In any event, the terms of the GLA contradict Defendants' contentions here.

2015. . . .   What runs Star Citizen and Squadron is our <u>heavily modified version of</u> <u>the engine</u> which we have dubbed StarEngine.") (emphasis added); (*see also* First Amended Complaint ("FAC") ¶ 33 (ECF No. 18) (quoting Roberts's statement that "[W]e don't call [the video game engine] CryEngine anymore, we call it Star Engine.").)   Yet Defendants repeatedly refused to substantively provide optimizations or bug fixes to Crytek.  (*Id.* ¶¶ 42-44.)  Those refusals flouted their obligations:  Defendants gladly accepted Crytek's technical support and discounted license to use CryEngine, but breached their obligation to provide any technical advances back to Crytek.

*Second*, Sections 2.2.1 and 2.2.2 of the GLA require Defendants to maintain the confidentiality of Crytek's technology, forbidding Defendants from "publish[ing] or distribut[ing] the CryEngine in any way, be it in source code or object code," and further requiring that Defendants shall not "use CryEngine in any manner which may disclose the CryEngine source code or other Crytek proprietary information to any third party not otherwise authorized herein."  (*Id.* ¶¶ 46-48.)  Here, notwithstanding their obligation to protect Crytek's valuable software, Defendants repeatedly publicly exposed confidential CryEngine technology including source code to the general public in a series of "Bugsmashers" videos posted online.  (*Id.* ¶ 50.)  This public display breached Sections 2.2.1 and 2.2.2 and was also an infringing publication of Crytek's copyrighted source code.

*Third*, although Section 2.6 of the GLA permits Defendants to "sub-contract the development of the Game to one or more third party developer(s)," that permission is expressly made "subject to prior written approval of the developer by Crytek" and "execution of the necessary non-disclosure and non-competition agreements by and between such developer and Crytek."  Yet Defendants have partnered with third-party developer Faceware Technologies without obtaining Crytek's approval and, upon information and belief, have provided Faceware access

to Crytek's technology including source code.  (FAC ¶ 51.)  This breach of the GLA also entails an infringing distribution of Crytek's copyrighted source code.

Defendants' Motion does not address any of these breaches of the GLA or infringement of Crytek's copyrights, aside from Defendants' generalized (and incorrect) arguments concerning the remedies sought by Crytek, which are addressed below.  For that reason alone, the Court should not dismiss either count of Crytek's First Amended Complaint.

## II.   CRYTEK HAS PLEADED CLAIMS FOR BREACH OF CONTRACT

To state a claim for breach of contract, Crytek must allege that a contract exists (here, the GLA), that Crytek performed its obligations under the GLA, that Defendants breached the GLA, and that those breaches caused damages to Crytek. *E.g., Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 250 P.3d 1115, 1121 (2011).  Crytek has alleged each and every one of those required elements.  (*E.g.*, FAC ¶¶ 53-60.)  Defendants do not contest that a contract exists between Crytek and CIG or that Crytek performed its obligations, but instead contend that RSI is not bound by the GLA, that no breaches occurred, and that Crytek cannot recover damages.  All of those contentions are incorrect.

### A.   BOTH CIG AND RSI ARE BOUND BY THE GLA

Defendants argue that Crytek cannot maintain a claim for breach of contract against CIG's subsidiary RSI because RSI is not a signatory to the main body of the GLA.  (Defts.' Br. at 6-7 (ECF No. 20-2).)  But the First Amended Complaint alleges several reasons to conclude that RSI is bound by the GLA:

#### 1.   RSI Is Identified As A "Licensee" In Exhibit 4 To The GLA

Although RSI is not listed in the signature block of the main body, RSI did sign Exhibit 4 to the GLA as a "Licensee," as that term is defined in the Exhibit (GLA Ex. 4 at 24.)  Exhibit 4 is an "End User Licensing Agreement Terms and Conditions" (abbreviated in the document as "ToC") that applies to "Licensee's use

6

of Autodesk Materials made available to Licensee under the license agreement ('Agreement') [*i.e.*, the GLA] between Licensee and Crytek."

"Licensee" is defined as "the individual or entity executing this ToC." (GLA Ex. 4, § 1.4.)  The ToC concludes, "Intending to be legally bound to the terms of this Amendment, each of the parties has caused its duly authorized representative to execute this document."  (GLA Ex. 4 at 24.)  Defendants' founder and CEO, Chris Roberts, executed the ToC on behalf of both "Cloud Imperium Games Corporation" and "Roberts Space Industries Corp."  Accordingly, as of the signing of the ToC, RSI was a "Licensee."

Defendants cannot be heard to argue that because the ToC is an exhibit, rather than a section of the main body of the GLA, the Court should disregard the exhibit. In the main body of the GLA, the parties "acknowledge that the exhibits to this Agreement form a substantial part of this Agreement."  (GLA § 10.1.)  Exhibit 4 further provides that "[i]f any provisions of the Agreement conflict with any of the provisions of these ToC, the provisions of these ToC prevail."  (GLA Ex. 4 at 21)  Accordingly, to the extent that the signature block of the main body of the GLA conflicts with the signature block of the ToC, the ToC prevails, making RSI a Licensee under the GLA.  Even construed most favorably to Defendants, RSI's execution of the ToC would create a factual issue as to which Defendants are parties to the GLA, which could not be resolved on a motion to dismiss.

## 2.   RSI Accepted The Terms Of The GLA By Its Conduct

Even if the Court concludes that RSI's signature on Exhibit 4 of the GLA is insufficient to bind RSI to that contract, Crytek alleges that RSI accepted the terms of the GLA by its conduct.  (FAC ¶ 54.)  RSI, not CIG, made the public announcements and published the content cited in the First Amended Complaint. (*E.g.*, FAC ¶¶ 22-23, 25-26, 32, 50.)  These announcements and publications include Defendants' decision to abandon CryEngine in breach of the GLA, the publication of Crytek's confidential source code in the "Bugsmashers" video series, and the

7

distribution of software both with and without Crytek's copyright notices and trademarks.  It is well settled that parties can manifest acceptance of a contract by their conduct.  *E.g.*, *Long v. Authentic Athletix LLC*, No. 16-cv-03129-JSC, 2017 WL 6493094, at *3 (N.D. Cal. Dec. 19, 2017) (citing *Russell v. Union Oil Co.*, 7 Cal. App. 3d 110, 114 (1970) ("Acceptance of an offer . . . may be manifested by conduct as well as by words . . . .")).  And Defendants are also equitably estopped from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that the contract imposes.  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)).  Here, RSI accepted (and exceeded) the benefits of the GLA by using and publishing Crytek's technology.  RSI therefore accepted the GLA and further is equitably estopped from denying that it is bound by that agreement.

### 3. If RSI Is Not A Party To The GLA, Then Crytek's Claims For Copyright Infringement Are Even Stronger

Defendants' suggestion that RSI is not bound by the GLA ignores the implications that holding would have for Crytek's claims of copyright infringement. If the Court determines that RSI is not bound by the GLA, then RSI was not authorized to obtain Crytek's code:  RSI is not included on Exhibit 3 to the GLA, which lists the "[a]uthorized third party developer(s)" who are entitled to receive access to Crytek's technology pursuant to Section 2.6 of the GLA.  (GLA Ex. 3 at 19.)  If RSI is not a party to the GLA, then CIG had no license to distribute Crytek's technology to RSI.  And *a fortiori*, RSI had no license to (for example) publish Crytek's source code through the "Bugsmashers" videos hosted on RSI's web site.

### B. DEFENDANTS BREACHED THE GLA IN NUMEROUS WAYS

### 1. The GLA Requires Defendants To Develop Star Citizen "Exclusively" Using CryEngine

Crytek began assisting the development of Star Citizen at Defendants' infancy in 2012, when Defendants lacked the resources to develop sufficiently impressive

1  software to attract crowdfunding backers.  Crytek stepped in to aid Defendants,

2  creating demonstrations and proofs of concept and otherwise providing technology

3  that enabled Defendants to set crowdfunding records.  (FAC ¶¶ 14, 17.)

4      Shortly after Defendants launched their crowdfunding campaign, Crytek

5  agreed to license CryEngine to Defendants at a below-market rate to continue

6  supporting Defendants' efforts.  (*Id*. ¶ 16.)   In return, Defendants promised to

7  develop Star Citizen using CryEngine exclusively.  (*E.g.*, *id*. ¶¶ 36-37.)  Years later,

8  beginning in December 2016, Defendants breached that promise by announcing that

9  they intended to use an engine other than CryEngine.  (*Id*. ¶¶ 38-39.)

10     Defendants correctly recognize that "[t]he whole of a contract is to be taken

11 together, so as to give effect to every part, if reasonably practicable, each clause

12 helping to interpret the other."  (Defts.' Br. at 7 (quoting Cal. Civ. Code § 1641).)

13 Yet their argument wholly disregards that principle, relying on two related and false

14 assertions: (1) that Crytek's claim "is based entirely on isolating the word

15 'exclusively' contained in Section 2.1.2"; and (2) that no other provision of the GLA

16 precluded Defendants from abandoning CryEngine for a competitor's product.

17 (Defts. Br. at 7-8.)

18     Section 2.1.2 grants Defendants a license "to exclusively embed CryEngine in

19 the Game."  That grant is "[s]ubject to strict and continuous compliance with the

20 restrictions in the Agreement."  (GLA § 2.1.)  If there is any doubt that Section 2.1.2

21 prohibits Defendants from developing the Game with engines other than CryEngine,

22 another section of the GLA also makes Defendants' obligation clear.  Section 2.4

23 provides:

24     During the Term of the License, or any renewals thereof, and for a

25     period of two years thereafter, **Licensee**, its principals, and Affiliates

26     **shall not directly or indirectly engage in** the business of designing,

27     developing, creating, **supporting, maintaining, promoting**, selling or

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    licensing (directly or indirectly) **any game engine or middleware**
2    **which compete with CryEngine**.

3    (Emphasis added.)   This section further confirms there is only one reasonable
4    construction of the GLA: that Crytek received exclusivity for Star Citizen (among
5    other things) in return for the license, technical support, and financial discounts that
6    it provided to Defendants.  Thus, even if the Court were to construe Section 2.1.2 to
7    permit Defendants to abandon CryEngine in favor of another engine — and Crytek
8    respectfully submits that such a construction is inconsistent with the GLA — that
9    same abandonment and concomitant development, support, maintenance, promotion,
10   selling, and licensing of that other engine would constitute breaches of Section 2.4.
11   Indeed, Defendants promoted an alternative engine in breach of Section 2.4 in the
12   very RSI press release that Defendants themselves submitted with their brief.
13   (Goldman Decl. Ex. C (quoting Roberts's statement that an alternative engine
14   "provides ground breaking technology features for online games, including deep
15   back-end and cloud integration . . . and its social component . . . that enables us to
16   easily and instantly connect to millions of global gamers").)

17   Defendants' interpretation of the word "exclusively" in Section 2.1.2 is that
18   Crytek gave only Defendants — not some unrelated third party — the right to embed
19   CryEngine in Defendants' game Star Citizen.  (Defts.' Br. at 9.)  That is absurd:  How
20   could Crytek license a third party to do anything at all with Defendants' software?
21   Defendants admit: "Obviously CIG could never have a document that even remotely
22   suggests Crytek could grant **somebody else** the right to embed the Engine in the
23   Game."  (*Id*. (emphasis as in original).)  Accordingly, Defendants' suggestion that the
24   parties added the word "exclusively" to prevent Crytek from allowing some third
25   party to develop Defendants' software is nonsense.

26   Defendants cite cases involving other types of exclusivity, but pointedly do
27   not contend that the GLA prohibits Crytek from licensing CryEngine to other parties
28   for use in other games.  That is the type of exclusivity at issue in cases such as

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1005 (9th Cir. 2015) (describing exclusive licenses where "the copyright holder permits the licensee to use the protected material for a specific use and further promises that the same permission will not be given to others").  Nor could they credibly so contend, given that Defendants' co-founder Ortwin Freyermuth had negotiated licensing agreements on behalf of Crytek before negotiating the GLA, and thus knew full well that Crytek's business model includes licensing its valuable CryEngine to multiple developers simultaneously.  (FAC ¶ 15.)

The reading of the GLA most favorable to Defendants here — and Crytek submits that such a reading is not at all tenable — would be that the use of the word "exclusively" in the GLA is somehow ambiguous.  If that were so, Crytek's claim for breach of the exclusivity provision could not be dismissed now because factual development would be required to determine the parties' intent.

## 2. The GLA Is A License For Only One Game, Yet Defendants Used CryEngine To Develop Two Games

Defendants used Crytek's CryEngine to develop two separate games (Star Citizen and Squadron 42) even though Section 2.1.2 of the GLA provides Defendants a license to embed CryEngine in only one game — the "Game" as that term is defined in Section 1.6 and Exhibit 2 of the GLA — and does not permit using CryEngine for any separate standalone game.  (*E.g.*, FAC ¶¶ 19-21, 56.)

When the parties negotiated the GLA, Squadron 42 was to be a feature of Star Citizen, not a standalone game.  (FAC ¶ 20; GLA Ex. 2 (identifying Squadron 42 as a "[f]eature" of Star Citizen).)  Section 1.6 of the GLA states that the "Game" is "the interactive software product developed and published for the certain platforms as further defined in Exhibit 2."  In turn, Exhibit 2 states, "<u>For the avoidance of doubt, the Game does not include any content being sold and marketed separately</u>, and not being accessed through the Star Citizen Game client."  (GLA Ex. 2 at 18 (emphasis

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  added).)  The "doubt" that the parties expressly sought to avoid when they negotiated
2  the GLA is exactly the doubt that Defendants seek to manufacture and rely on now.

3       Years after the parties entered into the GLA, Defendants chose to develop
4  Squadron 42 as a standalone game, separate from Star Citizen.  (FAC ¶¶ 15, 22-23.)
5  But Defendants never obtained a license to embed CryEngine in the standalone
6  Squadron 42.  (FAC ¶¶ 24-27.)  Defendants' development of a standalone Squadron
7  42 with CryEngine thus exceeded the license granted by the GLA.

8       Defendants mischaracterize the GLA with their assertions that "the GLA
9  expressly defines the 'Game' as including both Star Citizen and Squadron 42."
10  (Defts.' Br. at 11; *see also id.* at 2, 3, 15.)  The portion of the GLA that Defendants
11  quote does not provide a definition for "Game":  that portion is a recital that precedes
12  the body of the GLA.  (GLA at 2.)  The definition of "Game" — singular, *not*
13  plural — set forth later, in the "Definitions" section of the GLA, utterly refutes
14  Defendants' contention that the GLA provided Defendants a license to develop <u>two</u>
15  separate games with CryEngine.  (GLA § 1.6 & Ex. 2.)

16       Defendants urge the Court to hold that the recital "defines" the term "Game,"
17  even though there is an actual definition of that term in the GLA that conflicts with
18  Defendants' proposed definition.  The GLA is clear, and even if it were not, it is well
19  settled that if a contract's prefatory recitals and the contractual provisions themselves
20  are incompatible, the contractual provisions will control.  For example, in *Guardian*
21  *Media Technologies, Ltd. v. Sears, Roebuck & Co.*, No. 14-cv-767 PSG (PLAx),
22  2014 WL 12588283 (C.D. Cal. July 9, 2014), the court construed a contract where
23  one party contended that prefatory recitals should control.  *Id*. at *7.  The court
24  recognized, "As California courts routinely proclaim, '[t]he law has long
25  distinguished between a "covenant" which creates legal rights and obligations, and a
26  "mere recital" which a party inserts for his or her own reasons into a contractual
27  instrument.'"  *Id*. (quoting *Emeryville Redevelopment Agency v. Harcros Pigments,*
28  *Inc.*, 101 Cal. App. 4th 1083, 1101 (2002)).  Accordingly, the court "refuse[d] to

12

1  allow the [recital at issue], or any other introductory recital, to deracinate the plain

2  meaning of the [agreement]." *Id.* The *Emeryville* court similarly noted, "Recitals are

3  given limited effect even as between the parties." 101 Cal. App. 4th at 1101.

4  Here, the GLA provided Defendants with a license to develop only one game

5  with CryEngine. When Defendants elected to split "the Game" into two games, each

6  one embedding CryEngine, they should have obtained an appropriate license. And

7  even read most favorably to Defendants — a reading that is not at all tenable —

8  Defendants have at best identified an ambiguous term in the GLA that would require

9  factual development to resolve. Crytek's claim for breach of this provision therefore

10  could not be dismissed as a matter of law in any event.

11  ### 3.   The GLA Requires Defendants To Display
12  ### Crytek's Trademark and Copyright Notices

13  Pursuant to Sections 2.8.1, 2.8.2, and 2.8.3 of the GLA, Defendants are

14  required to prominently display Crytek's copyright notices and trademarks in Star

15  Citizen's splash screen, credits screen, documentation, packaging, and marketing

16  materials, and are required to obtain Crytek's written approval before making any

17  changes to their use of Crytek's copyright notices and trademarks. (FAC ¶¶ 28-31.)

18  Yet Defendants ceased displaying Crytek's copyright notices and trademarks without

19  seeking Crytek's approval — going so far as to claim, "We don't call [the video game

20  engine] CryEngine anymore, we call it Star Engine." (*Id.* ¶¶ 33-34.)

21  Defendants acknowledge that they ceased including Crytek's copyright notices

22  and trademarks but nevertheless assert that they were entitled to cease doing so after

23  they purportedly ceased using CryEngine. (Defts.' Br. at 10.) Defendants' only

24  support for that proposition is Cal. Civ. Code § 1655, which concerns "implied"

25  provisions. That statute, the relevant portion of which Defendants quote, applies

26  only "in respect to matters concerning which the contract manifests no contrary

27  intention." *Id.* The statute has no application here: Section 2.4 of the GLA, which

28  prohibited Defendants' switch to an alternative engine in the first place, also squarely

13

1   prohibits the promotion of other engines via Star Citizen's splash screen, marketing

2   materials, or any other medium.  By its terms, Section 2.4 remains in effect for two

3   years after the termination of the GLA (an event that has not yet occurred).

4   Defendants assert that displaying Crytek's copyright notices and trademarks

5   "would misrepresent reality and could mislead that CIG is using Crytek's engine

6   when it is not."  (*Id.*)  But even if Defendants were contractually permitted to remove

7   CryEngine from Star Citizen — they were not — Crytek's technology would remain

8   foundational to Defendants' software.  The prohibition on promoting competing

9   game engines or middleware for two years after the expiration of the GLA, along

10   with Crytek's contractual right to approve the "design of the splash screen, the credits

11   screen, the documentation, the packaging and the marketing material" (GLA §§ 2.4,

12   2.8.3), forbid Defendants from unilaterally removing Crytek's copyright notices and

13   trademarks as they did.  (FAC ¶¶ 33-34.)

14   **C.    CRYTEK IS ENTITLED TO DAMAGES
       FOR DEFENDANTS' BREACHES OF THE GLA**

15

16   **1.    The GLA Does Not Preclude Contract Claims for Damages**

17   Quoting only a portion of Section 6.1.4 of the GLA, Defendants suggest that

18   Crytek's claim for breach of contract is barred by that section.  (Defts.' Br. at 12-14.)

19   But Section 6.1.4, interpreted as a whole as it must be, does not support that

20   construction.  Cal. Civ. Code § 1641 ("The whole of a contract is to be taken

21   together, so as to give effect to every part, if reasonably practicable, each clause

22   helping to interpret the other.").  Defendants' proposal would make other portions of

23   the same section superfluous and, taken to its logical conclusion, would render all of

24   the GLA's obligations illusory with no means to enforce them.

25   In particular, Section 6.1.4 provides that intentional or grossly negligent

26   breaches, as opposed to negligent breaches, can give rise to liability for damages in

27   actions for breach of contract.  (GLA § 6.1.4.)  The section further limits Crytek's

28   liability to Defendants, even in the event of intentional or grossly negligent breaches,

14

to the amount Defendants paid for the license.  (*Id*.)  There is no parallel limitation on Defendants' liability to Crytek for Defendants' intentional or grossly negligent breaches.  (*Id*.)  That section, in its entirety, provides:

> Indemnification disclaimer.  **Except for intentional acts or omissions or gross negligent acts**, in no event shall either party hereto be liable for any damages, including but not limited to indirect, incidental, special or consequential damages, or damages for loss of profits, revenue, data or use, incurred by either party or any third party, whether in an action in contract or tort (including negligence) or otherwise, even if the relevant party has been advised of the possibility of such damages.  Crytek's maximum aggregate liability to Licensee in connection with or in any manner related to this agreement (whether in an action in contract or tort [including negligence, except gross negligence] or otherwise) will be limited to the total amount paid by or on behalf of Licensee to Crytek under this agreement.  The foregoing allocation of risk is reflected in the amount of the compensation contemplated under this agreement.

(*Id*. (emphasis added).[3])

Defendants' argument addresses only the first sentence of Section 6.1.4.  (Defts.' Br. at 12-13.)  But if the parties could never bring any action for intentional breaches of contract, then the second sentence of Section 6.1.4 — which limits Crytek's maximum aggregate liability to Defendants "in connection with or in any manner related to this Agreement (whether in an action <u>in contract</u> or tort . . . or otherwise)" (emphasis added) — would be surplusage.  Under Defendants' proposed reading, Crytek's maximum liability for contract claims would be <u>zero</u>, not "the total

---

[3]    In the GLA, Section 6.1.4 is set forth entirely in capital letters.  It is reproduced here in ordinary type for ease of reading.

amount paid by or on behalf of licensee to Crytek under this agreement." (GLA § 6.1.4.) (Again, there is no such limitation on Defendants' liability.)

Defendants' interpretation would also require the Court to entertain the dubious assumption that the parties negotiated and executed a detailed twenty-four-page agreement intending that no party could ever actually enforce that agreement by seeking damages for breach. The Court should not accept a construction that would make the entire GLA illusory.

Defendants cite a number of cases distinguishing generally between tort and contract law, but none of those cases involve contracts, like the GLA, that differentiate between remedies available for intentional or grossly negligent breaches of contract, on one hand, and negligent breaches, on the other. For example, in *Erlich v. Menezes*, the plaintiffs had contracted with the defendant, a licensed general contractor, to build a "dreamhouse." 21 Cal. 4th 543, 548, 981 P.2d 978, 980-81 (1999). The contractor did a very bad job on the house: for example, "[t]hree decks were in danger of 'catastrophic collapse.'" *Id*. at 549, 981 P.2d at 981. The plaintiffs testified that they suffered emotional distress as a result of the defective condition of the house and the defendant's botched efforts at repair, and the jury awarded them damages for those tortious injuries over and above the sum awarded for breach of contract. *Id*. The court noted that tort remedies are available for negligent breaches of contract "only when the conduct in question is so clear in its deviation from socially useful business practices that the effect of enforcing such tort duties will be . . . to aid rather than discourage commerce." *Id*. at 554, 981 P.2d at 985 (citation omitted). *Erlich* is not applicable here because Crytek does not seek tort remedies for Defendants' breaches of contract.

Nor are any of the other cases that Defendants cite applicable — all of them involve plaintiffs who sought tort remedies for contractual breaches, and none of them involve contracts where the parties agreed to permit liability only for intentional or grossly negligent breaches of contract. In *Applied Equipment Corp. v.*

16

1  *Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 869 P.2d 454 (1994), the court held that a
2  party could not be held liable in tort for conspiring to interfere with its own contract.
3  *Id.* at 510, 869 P.2d at 456-57.  Likewise, in *Foley v. Interactive Data Corp.*, 47 Cal.
4  3d 654, 699, 765 P.2d 373, 400-401 (1988), the court held that a plaintiff could not
5  obtain tort remedies for the breach of the implied covenant of good faith and fair
6  dealing in an employment contract.  Finally, in *Freeman & Mills, Inc. v. Belcher Oil
7  Co.*, 11 Cal. 4th 85, 102-03, 900 P.2d 669 (1995) the court held that a plaintiff could
8  not obtain tort remedies for a defendant's bad-faith denial that a contract existed.[4]

9       Here, Crytek does <u>not</u> seek tort remedies for Defendants' breaches of contract.
10  Rather, Crytek seeks to recover damages for Defendants' <u>intentional</u> breaches of
11  contract, just as Section 6.1.4 contemplates.  The First Amended Complaint alleges
12  numerous instances of intentional breaches that give rise to Defendants' liability:

13       • On February 14, 2016, Defendants moved forward with their plan
14          for Squadron 42, notwithstanding their failure to obtain a license,
15          and began offering the video game for separate purchase.
16          Defendants are thus <u>intentionally</u> and willfully using CryEngine
17          without a license and in violation of copyright laws.  (FAC ¶ 25.)

18       • Defendants <u>intentionally</u> breached the GLA by using CryEngine to
19          market, develop, and incentivize funding for more than one game,
20          thereby enriching themselves by millions of dollars without payment
21          for such use.  (*Id.* ¶ 56.)

22       • Defendants <u>intentionally</u> breached the GLA by refusing to provide
23          agreed-upon bug fixes and optimizations to CryEngine.  (*Id.* ¶ 57.)

---

25  [4]    Defendants rely on Justice Holmes's remark, quoted in a concurring and
26  dissenting opinion in *Freeman*, that entering into a contract "means a prediction that
you must pay damages if you do not keep it."  11 Cal. 4th at 106.  Here, Defendants
27  make the remarkable argument that notwithstanding having intentionally breached
the GLA they could never be required to pay any damages at all.  (Defts.' Br. at 13.)

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1
2
3

- Defendants <u>intentionally</u> breached the GLA by, among other things, removing Crytek's trademarks and copyright notices from the Star Citizen video game and related marketing materials.  (*Id*. ¶ 58.)

4
5
6

- Defendants <u>intentionally</u> breached the GLA by breaking their promise to exclusively use CryEngine in the Star Citizen video game.  (*Id*. ¶ 59.)

7
8

Section 6.1.4 does not preclude Crytek from recovering damages for Defendants' intentional breaches — indeed, it plainly permits those claims for damages.

9

## 2. Crytek Alleged Factual Bases For Its Damages

10
11
12
13
14

Defendants suggest that Crytek's damages are alleged in a conclusory manner that does not sufficiently demonstrate the basis for Crytek's claims.  (*See, e.g.*, Defts.' Br. at 14 & n.4 (accusing Crytek of pleading "damages referenced vaguely but repeatedly").)    Defendants' misleadingly selective quotations aside, the First Amended Complaint alleges several specific forms of damages, including:

15
16
17

(1)    The up-front payment and royalty on game sales that Crytek did not receive when Defendants separated Star Citizen and Squadron 42 into two separate games (FAC ¶ 27);

18
19
20
21

(2)    The amount by which Crytek discounted its CryEngine license in return for Defendants' now-broken promises to include Crytek's trademarks and copyright notices on the Star Citizen video game and related marketing materials (*id*. ¶ 35);

22
23
24
25

(3)    The financial benefits of the favorable attention that the parties anticipated Crytek would receive for Defendants' exclusive use of CryEngine, which will now accrue to another engine's owner rather than to Crytek (*id*. ¶ 39);

26
27
28

(4)    The value of the bug fixes and optimizations to CryEngine that Defendants were obligated to provide under Section 7.3 of the GLA (*id*. ¶ 45); and

18

(5)    All of the gains, profits, and advantages that Defendants have obtained by infringing Crytek's copyrights (*id.* ¶ 70).

Those allegations provide ample notice of the nature of Crytek's damages claim.

### III.   CRYTEK SUFFICIENTLY PLEADED <u>ITS CLAIMS FOR COPYRIGHT INFRINGEMENT</u>

To plead its claim for copyright infringement, Crytek has alleged "ownership of a valid copyright" and "copying of constituent elements of the work that are original," where the word "copying" is a shorthand for any of the copyright owner's exclusive rights set forth in 17 U.S.C. § 106 (*e.g.*, the exclusive rights to reproduce, distribute, and perform the copyrighted work and to prepare derivative works).[5] *Range Road Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153-54 (9th Cir. 2012).  As the Ninth Circuit has observed, "[t]o recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright."  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 940 (9th Cir. 2010).  Defendants' Motion fails to offer any basis on which the Court might dismiss Crytek's claim for copyright infringement.[6]

*First*, as noted above, the operative complaint includes several allegations of copyright infringement that Defendants' Motion does not address.  These allegations include Defendants' infringing publication of Crytek's source code and distribution of CryEngine to an unauthorized third party.  *See supra* Part I.

---

[5]    Defendants do not dispute that Crytek owns a valid copyright in its CryEngine computer program.  (FAC ¶ 62.)

[6]    Defendants' Notice of Motion states that Crytek's "claims for copyright infringement are so vague and ambiguous that Defendants cannot reasonably prepare a response."  (ECF No. 20-1 at 1.)  That argument is neither made nor developed in Defendants' brief, but in any event, the First Amended Complaint contains numerous specific allegations of infringement.

19

1      **Second**, Defendants reiterate their argument that the GLA authorized them to

2    develop Squadron 42 as a standalone game.  It did not.  *See supra* Part II.B.2.

3    Accordingly, Defendants' development of Squadron 42 exceeded the GLA's scope

4    and infringed, *inter alia*, Crytek's exclusive rights to copy, distribute, and prepare

5    derivative works with regard to CryEngine.  Defendants rely on *Beijing Zhongyi*

6    *Zhongbiao Electronic Information Technology Co. v. Microsoft Corp.*, No. C13-

7    1300-MJP, 2013 WL 6979555 (W.D. Wash. Oct. 31, 2013), involving Microsoft's

8    use of certain Chinese character fonts, where a license agreement provided Microsoft

9    a "perpetual, non-exclusive, worldwide, irrevocable" license to use the fonts in <u>any</u>

10   Microsoft product.  *Id.* at *6.  Because Microsoft had a license to "incorporate the

11   Fonts into any operating system or product, without limitation," its use of the fonts in

12   the product at issue was licensed.  Here, however, the GLA authorized the

13   Defendants to embed CryEngine in only <u>one</u> game, not <u>two</u> separate games.

14     **Third**, Defendants assert that having breached the GLA by embedding a

15   different engine in place of Crytek's CryEngine, they can no longer be held liable for

16   infringing Crytek's copyrights.  This argument is unpersuasive for two independent

17   reasons:  Even if the Court determines that Defendants were permitted to switch

18   engines and did in fact do so, Defendants' argument fails to account for the full year

19   of infringing conduct between Defendants' announcement of the separate, standalone

20   Squadron 42 on December 16, 2015, and Defendants' eventual engine switch on

21   December 23, 2016.  (FAC ¶¶ 22, 38.)  In any event, notwithstanding Defendants'

22   representation that they no longer use CryEngine in any way (Defts.' Br. at 15-16),

23   Crytek alleges that Defendants' use of CryEngine is ongoing.  (*E.g.*, FAC ¶¶ 25, 51,

24   66.)  Crytek should be permitted to obtain discovery to test the truth of Defendants'

25   assertions that they have completely abandoned the use of CryEngine.

26   **IV.    <u>NONE OF THE REMEDIES THAT CRYTEK SEEKS ARE BARRED</u>**

27     Defendants assert that several forms of remedies that Crytek seeks are barred.

28   (Defts.' Br. 16-18.)  That assertion is incorrect.

1     **First**, Defendants reiterate their (incorrect) argument that Section 6.1.4 of the

2     GLA bars Crytek's claim for money damages for breach of the GLA.  It does not.

3     *See supra* Part II.C.1.

4     **Second**, Defendants argue that Crytek cannot obtain injunctive relief for

5     Defendants' copyright infringement.  They rely first on Section 10.7 of the GLA, in

6     which the parties both agreed that injunctive relief would be available as a remedy

7     for certain breaches and agreed to certain limitations on the forms of equitable relief

8     they would seek.  The section, in its entirety, provides:

9          Notwithstanding anything in this Agreement to the contrary, where a

10         breach of certain provisions of this Agreement may cause either Party

11         irreparable injury or may be inadequately compensable in monetary

12         damages, **either Party will be entitled to obtain equitable relief**, in

13         addition to any other remedies which may be available, provided,

14         however, that under no circumstances shall Licensee be entitled to

15         enjoin the exploitation of CryEngine, nor shall Crytek be entitled to

16         enjoin the publishing or other exploitation of the Game[.]

17    (GLA § 10.7 (emphasis added).)  The section does not bar injunctive relief; rather, it

18    expressly recognizes that such relief may be appropriate.  The only limitation that

19    Section 10.7 imposes on Crytek is that Crytek may not seek to "enjoin the publishing

20    or other exploitation of the Game."  Section 10.7 does <u>not</u> preclude Crytek from

21    seeking other forms of injunctive relief, such as relief concerning Defendants'

22    unauthorized publication and distribution of Crytek's copyrighted source code.

23    Defendants also argue that Crytek has not pleaded facts sufficient for the

24    Court to impose injunctive relief.  Not only is that argument premature at this stage,

25    when no motion for injunctive relief is pending, but it also ignores numerous

26    allegations of irreparable injury, including allegations of reputational injuries and

27    Defendants' publication of Crytek's confidential source code and distribution of

28    Crytek's technology to unvetted third parties.  (*E.g.*, FAC ¶¶ 39, 50-52.)

1    ***Third***, Defendants argue that Crytek cannot obtain statutory damages or
2    attorneys' fees under the Copyright Act because Crytek's copyright registration is
3    dated December 11, 2017, after certain acts of infringement commenced.  At this
4    stage, it would be premature to foreclose the availability of statutory damages.  *See,*
5    *e.g.*, *Guillot-Vogt Assocs., Inc. v. Holly & Smith*, 848 F. Supp. 682, 691-692 (E.D.
6    La. 1994) (denying motion to dismiss statutory damages claim because question
7    remained as to whether independent acts of infringement occurred after registration).

8    ***Fourth***, Defendants argue that Crytek cannot obtain punitive damages in this
9    action for breach of contract and copyright infringement.  But Defendants overstate
10   the holdings of the cases on which they rely.  For example, in *Slottow v. American*
11   *Casualty Co. of Reading, Pa.*, 10 F.3d 1355 (9th Cir. 1993), the Ninth Circuit noted
12   that punitive damages <u>are</u> available for breach of contract in limited circumstances.
13   *Id.* at 1361; *accord Riedel v. JP Morgan Chase Bank, N.A.*, No. EDCV 13-01146-
14   VAP (SPx), 2015 WL 12657068, at *2 (C.D. Cal. Apr. 3, 2015).   Separately,
15   although the Copyright Act does not provide for punitive damages, *e.g.*, *Saregama*
16   *India Ltd. v. Young*, No. CV 0219856 RJK, 2003 WL 25769784 (C.D. Cal. Mar. 11,
17   2003), it does provide for enhanced penalties when "infringement was committed
18   willfully."   17 U.S.C. § 504(c)(2).   At this preliminary stage, before Crytek has
19   obtained discovery concerning the circumstances of Defendants' unlawful conduct,
20   precluding the potential for punitive or enhanced damages would be premature.

21   **V.    DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED**

22   Defendants aver that Crytek's initial complaint contained a "false allegation"
23   that was "modified in retreat by Crytek's counsel after being confronted with a Rule
24   11 motion."  (Defts.' Br. at 1.)  They now move to strike what they term "the
25   immaterial, impertinent and scandalous Offending Allegations" in paragraph 15 of
26   the First Amended Complaint.  (*Id.*)

27   To avoid burdening itself and the Court with the wasteful motion practice
28   threatened by Defendants, Crytek did delete certain allegations from its pleading.

Specifically, in the First Amended Complaint, Crytek retained its allegation that Freyermuth had confidential information about Crytek's licensing practices due to his prior representation of Crytek in negotiations of similar license agreements with third parties, but removed its allegations that Freyermuth's possession of that information would unfairly advantage Defendants and that Freyermuth never resolved that conflict of interest.  (*Compare* ECF No. 1 ¶ 15 *with* FAC ¶ 15.)

Defendants assert that the latter of those allegations was "demonstrably false given that Mr. Freyermuth had obtained a written conflict waiver from Crytek prior to negotiating the GLA on behalf of CIG."  (Defts.' Br. at 20.)  Having removed that allegation in an (apparently futile) effort to avoid this motion practice, Crytek will refrain from addressing it at length, and will instead briefly note as follows:

*First*, the letter by which Freyermuth's firm sought Crytek's consent to his adverse representation (the "Letter," which Crytek is prepared to submit if the Court would find it useful) states that Freyermuth's firm received a request to represent "Chris Roberts and Cloud Imperium and its various related entities ('Cloud')" in negotiating the GLA.  The Letter does not explain that Freyermuth had a personal interest in Defendants, even though Freyermuth co-founded Defendants and thus had a personal financial interest in the negotiation of the GLA.  (FAC ¶ 13.)

*Second*, the Letter asserts that Freyermuth's "law firm does not believe that there exists any actual or potential conflict of interest in representing Cloud with respect to the Transaction and Crytek with respect to other transactions as set forth in the introductory paragraph of this letter."  It is unclear how this facially reassuring claim that no "actual or potential conflict" exists could be true in light of Freyermuth's personal interest in Defendants, which the Letter does not address.

*Third*, the Letter acknowledges that Freyermuth's firm has "information or knowledge concerning Crytek that Cloud may consider relevant to their actions and decisions," including "information concerning other unrelated transactions or even information on how the parties do business or approach adversity."  Yet it promises

23

1   that "absent consent from the applicable client, we may not, and will not disclose

2   such information to the other."  It is unclear how such disclosure could have been

3   avoided, given Freyermuth's personal involvement in both representations.

4        Notwithstanding Crytek's amendment of paragraph 15, Defendants move the

5   Court to strike two sentences of the current version of that paragraph:

6        1. "In prior years, Freyermuth had represented Crytek in negotiations of

7            similar license agreements with third parties and had confidential

8            information about Crytek's licensing practices"; and

9        2. "Jones later left Crytek and became an employee of Defendants."

10  If the Court were to hold that the GLA were ambiguous — which Crytek expressly

11  denies — any ambiguous provision would be construed in light of the extrinsic

12  evidence concerning the parties' intent and the negotiation of the GLA.  Cal. Civ.

13  Code § 1647 ("A contract may be explained by reference to the circumstances under

14  which it was made, and the matter to which it relates.").  One of those relevant

15  circumstances is that Freyermuth represented Defendants in that adverse

16  representation — which Defendants now claim yielded an agreement barring any

17  cause of action by Crytek for its breach.  Freyermuth's prior representation of Crytek

18  and possession of Crytek's confidential information concerning its licensing practices

19  is accordingly neither immaterial, impertinent, nor scandalous.  Similarly, should the

20  Court be required to consider the factual circumstances of the negotiation, it will be

21  relevant to that inquiry that the negotiators for both sides of the transaction,

22  Freyermuth and Jones, are both now associated with Defendants, which may

23  introduce bias in any present-day testimony concerning the negotiations.[7]

24  _____

25  [7]      The cases on which Defendants rely are not to the contrary.  *See Fantasy, Inc.*
    *v. Fogerty*, 984 F.2d 1524, 1527-29 (9th Cir. 1993) (affirming decision to strike

26  allegations related to claims barred by the statute of limitations and res judicata); *In*
    *re 2TheMart.com Sec. Litig.*, 114 F. Supp. 2d 955, 958 (C.D. Cal. 2000) (denying

27  motion to strike); *Survivor Prods., LLC v. Fox Broad. Co.*, No. 01-cv-3234 LGB
    (SHX), 2001 WL 35829267, at *3-4 (C.D. Cal. June 12, 2001) (striking quotations

28                                                                                    *(cont'd)*

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion To Dismiss The First Amended Complaint Or Claims For Relief Therein Or, In The Alternative, To Strike Certain Portions Of The First Amended Complaint should be denied in its entirety.

Dated: January 19, 2018                    Respectfully submitted,

                                                      */s/ James Y. Pak*
KEVIN J. MINNICK (SBN 269620)        JAMES Y. PAK (SBN 304563)
*kevin.minnick@skadden.com*              *james.pak@skadden.com*
SKADDEN, ARPS, SLATE,                    SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP                        MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400       525 University Avenue, Suite 1400
Los Angeles, CA 90071                    Palo Alto, CA 94301
Telephone: (213) 687-5000                (650) 470-4500
Facsimile:  (213) 687-5600               (650) 470-4570

P. ANTHONY SAMMI                         ***Attorneys for Plaintiff***
(admitted *pro hac vice*)                ***Crytek GmbH***
*anthony.sammi@skadden.com*
KURT WM. HEMR
(admitted *pro hac vice*)
*kurt.hemr@skadden.com*
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

_____
*(cont'd from previous page)*
from newspaper articles that had "no possible bearing on the controversy between the parties" and "[did] not assist in the Court's understanding of the parties' dispute"); *Gssime v. Nassau Cty.*, No. 09-cv-5581 (JS)(ARL), 2014 WL 810876, at *3 (E.D.N.Y. Feb. 28, 2014) (striking a "direct personal attack on defense counsel" that "improperly suggests the counsel committed some wrongdoing in filing the Answer"); *Fleischer v. A.A.P., Inc.*, 180 F. Supp. 717, 721-22 (S.D.N.Y. 1959) (striking allegations concerning disqualification of counsel, which was collateral to the issues to be litigated).  If anything, the stricken statement in *Gssime* is most analogous to Defendants' repeated and baseless contentions that Crytek has sought to mislead the Court and made a "false" allegation concerning Freyermuth.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS