**JOSEPH R. TAYLOR** (SBN 129933)
**JEREMY S. GOLDMAN** (SBN 306943)
**AZITA M. ISKANDAR** (SBN 280749)
**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (347) 438-2156
E-Mail:  jtaylor@fkks.com
          jgoldman@fkks.com
          aiskandar@fkks.com

Attorneys for Defendants CLOUD IMPERIUM GAMES CORP.
and ROBERTS SPACE INDUSTRIES CORP.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYTEK GMBH, | Case No. 2:17-CV-08937 |
| vs. | [HON. DOLLY M. GEE] |
| CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP., | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR CLAIMS FOR RELIEF THEREIN OR, IN THE ALTERNATIVE, TO STRIKE CERTAIN PORTIONS OF THE FIRST AMENDED COMPLAINT** |
| Defendants. | |
| | Date:  February 9, 2018 |
| | Time: 9:30 AM |
| | Courtroom:  8C |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

I.  CRYTEK'S CLAIM FOR BREACH OF CONTRACT FAILS ...................................... 2

    A.  Section 6.1.4 precludes Crytek's entire claim for breach of contract. .......... 2

    B.  The three allegations Crytek claims were not addressed in isolation by
        Defendants fail to state a claim for breach of contract. ............................. 4

    C.  Crytek's opposition fails to overcome any of the deficiencies with the
        three allegations Defendants specifically highlighted in their opening. ....... 6

        1.  Crytek's construction of the term "exclusively" leads to absurdities
            and contradicts the plain meaning of the GLA. ............................. 6

        2.  CIG does not have to continue crediting Crytek when its Engine is
            no longer being used in the Game. ....................................................... 9

        3.  The GLA permits CIG to use the Engine to develop Squadron 42
            and CIG is no longer using the Engine in Squadron 42 ................... 10

    D.  Crytek's arguments seeking to bind RSI to the GLA fail. ....................... 13

        1.  The stray reference to RSI in the signature block of Exhibit 4 to the
            GLA does not make RSI a party to the GLA. ................................... 13

        2.  No allegations support Crytek's argument that RSI accepted the
            terms of the GLA by its conduct. ....................................................... 14

        3.  CIG may freely sublicense its right to publish the Game to RSI ....... 15

II.  CRYTEK'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS ...................... 15

    A.  Crytek fails to identify which Bugsmashers videos are infringing and
        which code has been infringed. ................................................................. 16

    B.  Crytek fails to allege that Defendants violated any of Crytek's
        exclusive rights by supposedly granting Faceware access to the
        Engine. ..................................................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

III.  THE REMEDIES THAT CRYTEK SEEKS ARE BARRED AS A MATTER OF LAW AND UNDER THE TERMS OF THE GLA..............................................................18

     A.    Section 6.1.4 precludes Crytek's claim for monetary damages...................18

     B.    The FAC alleges neither a basis for equitable relief nor the relief sought. ....................................................................................................................18

     C.    Crytek's late copyright registration precludes statutory damages. ..............19

     D.    Punitive damages are not available for breaches of contract......................20

IV.  THE COURT SHOULD STRIKE THE IMMATERIAL, IMPERTINENT, AND SCANDALOUS ALLEGATIONS FROM THE FAC......................................................21

CONCLUSION ..............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .................................................................. 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................... 5, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 5, 17

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
727 F.3d 917 (9th Cir. 2013) ......................................................... 5

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
528 F.3d 696 (9th Cir. 2008) ....................................................... 19

*Dietz Int'l Pub. Adjusters of California, Inc. v. Evanston Ins. Co.*,
No. 09 Civ. 6662, 2009 WL 10673937 (C.D. Cal. Dec. 14, 2009) .............. 16

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 ........ 22

*Frittelli, Inc. v. 350 N. Canon Drive, LP*,
202 Cal. App. 4th 35 (2011) ..................................................... 3, 4

*Guardian Media Technologies, Ltd. v. Sears, Roebuck & Co.*,
No. 14 Civ. 767, 2014 WL 12588283 (C.D. Cal. July 9, 2014) ............... 10, 11

*Guillot-Vogt Associates., Inc. v. Holly & Smith*,
848 F. Supp. 682 (E.D. La. 1994) ............................................... 19, 20

*Hunt v. United Bank & Trust Co.*,
210 Cal. 108 (1930) ................................................................... 10

*Johnson v. Fed. Home Loan Mortg. Corp.*,
793 F.3d 1005 (9th Cir. 2015) ..................................................... 12

*Kennedy v. Las Vegas Sands Corp.*,
17 Civ. 880, 2017 WL 4227941 (D. Nev. Sept. 22, 2017) ..................... 22

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*,
   107 Cal. App. 4th 516 (2003) ........................................................................ 7

*Miller v. City of Los Angeles*,
   No. 13 Civ. 5148, 2014 WL 12610195 (C.D. Cal. Aug. 7, 2014) ................... 5

*Phillips v. Murdock*,
   543 F. Supp. 2d 1219 (D. Haw. 2008) ........................................................ 17

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
   No. 05 Civ. 08891, 2013 WL 12080306 (C.D. Cal. Oct. 8, 2013) .................. 6

*S. California Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc.*,
   359 F.3d 1127 (9th Cir. 2004) .................................................................. 15

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) .................................................................... 8

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .................................................................... 12

*Vault Corp. v. Quaid Software, Ltd.*,
   847 F.2d 255 (5th Cir. 1988) .................................................................... 17

**Statutes**

17 U.S.C. § 107 ............................................................................................ 17

17 U.S.C. § 412 ............................................................................................ 19

Cal. Civ. Code § 3294(a) ............................................................................. 20

17 U.S.C. § 501(a) ....................................................................................... 18

**Other Authorities**

Local Rule 7-3 .............................................................................................. 16

Federal Rule of Civil Procedure 11 .............................................................. 21

Federal Rule of Civil Procedure 12 (b)(6) ................................................... 12

# **INTRODUCTION**

The opposition underscores that the FAC, like its predecessor, cannot support a responsible proceeding before the Court.  Crytek seeks to escape from Rule 12 by arguing breaches of provisions (*e.g.*, GLA ¶ 2.4) never alleged breached in the FAC.  It contrives that the GLA does not grant CIG an exclusive right to use the Engine in the Game but rather crams upon CIG a mandatory duty to use the Engine when the plain language of the GLA, and every common sense notion of exclusive licensing, says otherwise.  Crytek refuses to acknowledge clear contract language that the collective definition of "Game" is a "game" (Star Citizen) *and* a "related game" (Squadron 42).  It tries to save its single defective theory of copyright infringement alleged in the FAC (use of the Engine in Squadron 42) by arguing other matters never alleged to be copyright infringements in the FAC or its predecessor (using Engine code in the Bugsmashers videos and granting Faceware access to the Engine code).

Courts do not allow opposition briefs to substitute for the role of pleadings.  Pleadings must frame unmistakable dispute parameters for courts to administer, and parties to conduct, serious and responsible litigation proceedings.  The opposition rambles over ground not set forth clearly or at all in the FAC.  By repeatedly attempting to justify getting waved through Rule 12 by arguing phantom allegations, by proffering absurd interpretations of now-revealed plain contract language, by asserting ever-shifting claims for copyright infringement without identifying the allegedly infringing works, and by seeking remedies that are palpably improper under black letter law (*e.g.*, punitive damages for breach of contract and statutory damages for pre-registration infringement), the opposition demonstrates that both efforts at pleading in this case have been an unmanageable, incoherent mess unworthy of proceeding beyond the pleading stage and all of the attendant time and expense thereafter.

The Court should straighten that mess by granting the motion.

# I.   CRYTEK'S CLAIM FOR BREACH OF CONTRACT FAILS

The charging allegations of Count I in the FAC, alleging breach of contract (FAC ¶¶ 55-59), enumerate four alleged breaches:  (1) using the Engine in Squadron 42 (¶ 55-56); (2) not delivering the bug fixes (¶ 57); (3) removing Crytek's trademarks and copyrights (¶ 58); and (4) not using the Engine in the Game (¶ 59).[1]  Contrary to Crytek's contention that Defendants left certain claims unaddressed, Defendants' motion established that *all* of these claims fail because every single alleged breach seeks monetary damages above and beyond the agreed-upon buyout license fee in contravention of Section 6.1.4 of the GLA.  They also fail for other reasons, as discussed below.

## A.   Section 6.1.4 precludes Crytek's entire claim for breach of contract.

Section 6.1.4 of the GLA prevents either party from being held liable for "any damages . . . whether in an action for contract or tort (including negligence) or otherwise, even if the relevant party has been advised of the possibility of such damages."  GLA § 6.1.4.  Confronted with this unambiguous language that is fatal to Crytek's claim for breach of contract, Crytek cosmetically amended its initial pleading by peppering the FAC with the word "intentionally," in an apparent attempt to morph its run-of-the-mill breach of contract claim into an "intentional act or omission," which is an exception to Section 6.1.4's damages exemption.  Crytek's opposition fails to overcome Section 6.1.4.

Crytek argues that the Section 6.1.4 "differentiate[s] between remedies available for intentional or grossly negligent breaches of contract, on the one hand, and negligent breaches, on the other."  Opp. at 16.  Not so.  Section 6.1.4 does not speak of "intentional breaches" or "negligent breaches."  Rather, Section 6.1.4 excludes "***intentional acts or omissions or gross negligent acts***."  GLA § 6.1.4 (emphasis added).  As explained in Defendants' opening memorandum, these terms are associated with ***tort*** remedies, not contract remedies.  Def. Mem. at 13-14.  Crytek's admission that it "does not seek tort

---

[1] Count I does not state as breaches the allegations related to Bugsmashers or Faceware. *See* FAC ¶¶ 53-60.

1   remedies for Defendants' breach of contract" is fatal to its claim for damages.  Opp. at

2   16.  Crytek cites no authority that recognizes a distinction between "intentional" and

3   "negligent" breaches of contract because no such authority exists.  The law does not

4   recognize the concept of an intentional breach of contract and neither does the GLA.

5       Defendants' "construction" of Section 6.1.4 (which is not a construction at all — it

6   is exactly what the provision says) does not make the remaining provisions capping

7   Crytek's liability superfluous because CIG still may be held liable for "intentional acts or

8   omissions or gross negligent acts," GLA § 6.1.4, and Crytek is free to seek specific

9   performance to enforce CIG's obligations, GLA § 10.7.  Moreover, the fact that the

10  parties agreed to limit their liability for negligent acts and breaches of the GLA does not

11  render their obligations under the GLA illusory.  Under long-established California law,

12  parties are free to contractually exempt themselves from liability for breaches of contract

13  and ordinary negligence, but prohibited from disclaiming liability for future intentional

14  wrongs and gross negligence.  *See Frittelli, Inc. v. 350 N. Canon Drive, LP*, 202 Cal.

15  App. 4th 35, 43 (2011) (citing Cal. Civ. Code § 1668).  That is precisely what the parties

16  agreed to here.  In exchange for a significant buyout license fee (almost €2 million),

17  Crytek agreed to limit CIG's exposure to the maximum extent allowable by law:  to

18  damages caused only by "intentional acts or omissions or gross negligence."  GLA §

19  6.1.4.  This provision is valid and enforceable under California law.

20      In *Frittelli*, a shopping center tenant sued its landlord for, *inter alia*, negligence

21  and breach of the lease's express covenant of quiet enjoyment, alleging that the

22  landlord's renovations to the shopping center completely destroyed the tenant's donut

23  business.  *See Frittelli*, 202 Cal. App. 4th at 40-42.  The lease provided that "the lessor

24  had no liability under 'any circumstances' for breaches of the lease and negligence for

25  damages or injury arising from 'any . . . cause' in the areas of the shopping center outside

26  the leased premises or for injuries to the lessee's business."  *Id.* at 45.  Based on this

27  provision and the longstanding right of parties in California to limit their liability for

28  breaches of contract and negligence, the trial court granted summary judgment in favor of

the landlord and the Court of Appeal affirmed.  The court held that "the parties' intent, as expressed in the agreement, was to exempt the lessor from liability for breach of the lease and ordinary negligence." *Id*.  The court further held that the conduct the tenant attributed to the landlord, though characterized as gross negligence, did not rise to that level based on the facts pleaded in the complaint and affirmed the dismissal of that claim as well.  *Id.* at 52-53.

Just like the parties in *Frittelli*, the intent of Crytek and CIG, as expressed in Section 6.1.4 of the GLA, was to exempt the parties from liability for breaches of the GLA and ordinary negligence, while preserving the parties' rights to seek damages in the event of intentional torts or gross negligence.  GLA § 6.1.4.  And just like the tenant in *Fritelli*, whose claim for gross negligence was dismissed because the facts pleaded in its complaint did not meet the high standard for that cause of action, Crytek has failed to plead ***any*** facts in the FAC to show that Crytek's ordinary claim for breach of contract constitutes "an intentional act or omission or gross negligence" that allows the claim to fall outside the damages exemption of Section 6.1.4.  Accordingly, Crytek's claim for breach of contract should be dismissed in its entirety, with prejudice.

**B.**     **The three allegations Crytek claims were not addressed in isolation by Defendants fail to state a claim for breach of contract.**

As discussed above, Crytek's ***entire*** claim for breach of contract fails because the GLA expressly precludes Crytek's claim for monetary damages — an essential element of any claim for breach of contract.  While CIG did not specifically address certain theories of liability (the bug fixes, Bugsmashers and Faceware claims) on factual grounds, each of these claims suffer from the same damages problem in addition to other deficiencies.

Crytek's allegation that Defendants failed to deliver the "bug fixes" pursuant to Section 7.3 of the GLA fails because Section 6.1.4 precludes Crytek from seeking any damages from CIG for that alleged breach, and claiming that CIG's alleged failure to deliver the bug fixes was "intentional" does not turn that alleged breach of contract into

---

an "intentional act or omission" for which Crytek' can seek damages.[2]  The same obstacles extinguish the Bugsmashers and Faceware claims, neither of which are enumerated as breaches of contract in the charging allegations of Count I, *see* FAC ¶¶ 55-59, and Crytek cannot use its opposition to allege claims that are absent from its pleading.

Crytek's claim related to Faceware fails for another reason.  Crytek admits that the sole basis for its "information and belief" that Defendants gave Faceware access to Crytek's source code is Defendants' announcement of a partnership with Faceware.  FAC ¶ 51.  But entering into a partnership with a third-party developer does not provide any ground for Crytek to be informed or believe that Defendants shared Crytek's source code with the developer.  The Faceware claim is based on pure speculation, is conclusory, and should be dismissed.[3]  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint will not survive a motion to dismiss if it "tenders naked assertions devoid of further factual enhancement"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) (dismissing allegations asserted "upon information and belief" as conclusory and insufficient to state a claim under *Twombly* and *Iqbal*); *Miller v. City of Los Angeles*, No. 13 Civ. 5148, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) ("The Court recognizes that 'information and belief' pleading is allowed — indeed, necessary at times — but the words are not talismanic, and a plaintiff cannot avoid Rule

---

[2] If the Court allows the claim to proceed, Defendants will demonstrate that CIG tendered delivery of the bug fixes more than two years ago, but that tender was ignored and then forgotten by Crytek.  CIG satisfied any remaining obligation under Section 7.3 of the GLA by delivering an updated version of the bug fixes on January 23, 2018, a delivery that CIG planned to make before Crytek jumped the gun and sued.

[3] It is also false.  If the Court allows the claim to proceed, Defendants will show that they did not provide Faceware with access to Crytek's source code.

12 simply by slapping the 'information and belief' label onto speculative or conclusory allegations.").[4]

**C.   Crytek's opposition fails to overcome any of the deficiencies with the three allegations Defendants specifically highlighted in their opening.**

Defendants' opening memorandum demonstrated that, in addition to the fundamental damages problem, three of the breaches alleged by Crytek (switching engines, not crediting Crytek and using the Engine in Squadron 42) fail under the plain language of the omitted but now incorporated GLA and 2016 Press Release.  In response, Crytek concedes that the Court may consider these documents, but tries to overcome their dispositive impact by raising a litany of arguments (many absent from the FAC), hoping that one of them sticks.  None of them do.

**1.   Crytek's construction of the term "exclusively" leads to absurdities and contradicts the plain meaning of the GLA.**

Pursuant to Section 2.1.2 of the GLA, Crytek grants CIG a license "to exclusively embed CryEngine in the Game and develop the Game which right shall be freely sub-licensable pursuant to Sec. 2.6."  GLA § 2.1.2.  As demonstrated in Defendants' opening memorandum, the word "exclusively" in this provision makes clear that the rights granted to CIG therein are *exclusive* to CIG — meaning that CIG, and only CIG, has the right to embed the Engine in the Game and to develop the Game.  Under this construction, CIG agreed to pay Crytek a buyout license fee of €1.8 million for the ***right***

---

[4] Defendants properly raise this argument on reply in response to the arguments raised in Crytek's opposition.  *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, No. 05 Civ. 08891, 2013 WL 12080306, at *4 (C.D. Cal. Oct. 8, 2013) ("The court may properly consider evidence and argument submitted with a reply that is responsive to points raised in the non-moving party's opposition[.]") (citing, *inter alia*, *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991) ("reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party who took it upon himself to argue those previously unforeseen issues"), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992)).

to use the Engine in the Game, but retained the right to switch to another engine, or to build and use its own engine, whenever it was in CIG's interest to do so.

Crytek's proffered interpretation — that the word "exclusively" means that CIG is duty bound to use the Engine no matter what — leads to absurdities. Under Crytek's construction, CIG agreed to pay Crytek a buyout license fee of €1.8 million for an *obligation* to use the Engine forever, irrespective of the level of support being provided by Crytek, irrespective of Crytek's future prospects, and irrespective of better alternatives available in the market. Under Crytek's construction, CIG remains forever shackled to Crytek's Engine, even if CIG has reason to believe Crytek is a sinking ship. Crytek's suggestion, that an obligation of this magnitude is not expressly called out with specific language in Section 2.2 ("Restrictions on Use") or anywhere else in the GLA, but rather should be implied by Section 2.1.2's use of the word "exclusively," a word that carries a universally-accepted definition in the context of license agreements as being *desirable* for licensees, is unfathomable.

The absurdity of Crytek's interpretation is further apparent under the "same meaning rule," which is "a rule of contract interpretation requiring that an identical phrase or word used in a contract be given the same meaning throughout the contract in the absence of anything in the contract suggesting otherwise." *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 526 (2003). The word "exclusively" appears in the same position in Section 2.1.3, which provides CIG the right "to *exclusively* manufacture, market, promote, sell, license, publish and exploit the Game in any way which right shall be freely sublicensable." GLA § 2.1.3 (emphasis added). Under Crytek's construction, the word "exclusively" in Section 2.1.3 means that CIG is *required* to "manufacture, market, promote, sell, license, publish and exploit the Game" and *prohibited* from manufacturing, marketing, promoting, selling, licensing, publishing or exploiting any other game — even one that does not use Crytek's Engine. That is absurd. In contrast, under CIG's construction, the word "exclusively" in Section 2.1.3 simply means that CIG has the exclusive right to manufacture, market, promote, sell,

license, publish and exploit the Game.  That is logical and comports with the well-understood concept of an exclusive license.

Scrambling to bolster its contrived interpretation of "exclusively," Crytek falls back on Section 2.4 of the GLA, a provision not once mentioned in the FAC.  *See* Opp. at 9-10; FAC, *passim*.  However, in its block quote of that provision, Crytek again seeks to mislead the Court by de-emphasizing key language in the provision that is critical to understanding its true meaning.  Contrary to Crytek's assertion, Section 2.4 does ***not*** restrict CIG from "designing, developing, creating, supporting, maintaining, promoting, selling or licensing (directly or indirectly) any game engine or middleware which compete with CryEngine."  GLA § 2.4.  Rather, pursuant to the GLA, CIG, its principals, and its "Affiliates" agree not to "***engage in the business of*** designing, developing, creating, supporting, maintaining, promoting, selling or licensing (directly or indirectly) any game engine or middleware which compete with CryEngine."  *Id.* (emphasis added).  Thus, Section 2.4 prevents CIG and its principals and Affiliates from ***engaging in a business*** that competes with Crytek's game engine business; it does not restrict CIG from incidentally engaging in the enumerated activities in connection with a game engine provided by another supplier.  In any event, the FAC does not even mention Section 2.4, much less plead that Defendants are in breach of it or engage in such a business.

Finally, the Court should reject Crytek's fallback position that the word "exclusively" is ambiguous and requires factual development to determine the parties' intent.  Opp. at 11.  As demonstrated above and in Defendants' opening memorandum, the word "exclusively" in Section 2.1.2 is unambiguous and reasonably susceptible to only one interpretation: it means that CIG has the exclusive right to embed the Engine in the Game.  *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012) ("A party's assertion of ambiguity does not require the district court to allow additional opportunities to find or present extrinsic evidence if the court considers the contract language and the evidence the parties have presented and concludes that the language is reasonably susceptible to only one interpretation.").

2.    **CIG does not have to continue crediting Crytek when its Engine is no longer being used in the Game.**

In their opening memorandum, Defendants made the common sense point, backed by California law regarding implied conditions [Cal. Civ. Code. § 1655], that the GLA does not require Defendants to provide credit to Crytek in the Game in the event that CIG stops using Crytek's Engine (which was CIG's absolute right). Crytek's sole response is to argue that the GLA manifests a "contrary intention" in Section 2.4, Crytek's new favorite provision (though not once mentioned in the FAC). Crytek contends: "Section 2.4 of the GLA, which prohibited Defendants' switch to an alternative engine in the first place, also squarely prohibits the promotion of other engines via Star Citizen's splash screen, marketing materials, or other medium." Opp. at 13-14. Crytek's response fails for at least three reasons.

*First*, Section 2.4 does *not* prohibit "Defendants' switch to an alternative engine." Indeed, it appears Crytek cannot keep its own arguments straight. Crytek's argument is that Section 2.1.2 (not Section 2.4) prohibits Defendants from switching game engines. That argument is wrong, for the reasons stated, but it has nothing to do with Section 2.4. Indeed, if there were a logical place to restrict CIG from using a competing engine, Section 2.4 would have been the place to do it, but there is no such restriction.

*Second*, Section 2.4 does *not* prohibit "the promotion of other engines via Star Citizen's splash screen, marketing materials, or other medium." Rather, as explained above, Section 2.4 prohibits CIG and its principals and Affiliates from engaging in a competing game engine business. Section 2.4 says nothing about promoting another engine through the Star Citizen splash screen, marketing materials or other medium. If that restriction existed, Section 2.4 would have been the place to do it, but it is not there.

*Third*, the FAC does not allege that Defendants are promoting Amazon Lumberyard through the Star Citizen splash screen, marketing materials or other medium. But even if they were, that would have no bearing on Crytek's claim regarding Defendants' alleged breach of Sections 2.8.1, 2.8.2 and 2.8.3 of the GLA.

In response to Defendants' point that continuing to credit Crytek after switching to another engine would be misleading, Crytek asserts yet another fallback argument, claiming that "even if Defendants were contractually permitted to remove CryEngine from Star Citizen — they were not — Crytek's technology would remain foundational to Defendants' software."  Opp. at 14.  Following Crytek's argument, CIG would be required to display Crytek's copyright and trademark notices *on someone else's engine*. That cannot be right, and the GLA does not require it.

### 3.  The GLA permits CIG to use the Engine to develop Squadron 42 and CIG is no longer using the Engine in Squadron 42.

The allegations in the FAC suggest that Defendants took Crytek's Engine and used it, without authorization, to develop a game called Squadron 42 that was completely unrelated to Star Citizen.  FAC ¶¶ 19-27.  By presenting the actual GLA, Defendants showed that Crytek's story is a work of fiction.  In fact, the first page of the GLA defines the "Game" as "the game currently entitled '[Star] Citizen' *and its related space fighter game 'Squadron 42.'*"  GLA at 2 (emphasis added).  Thus, the parties always intended that the license would cover use of the Engine in both Star Citizen and Squadron 42.

In its opposition, Crytek tries to run from this definition, arguing that the Court should disregard it because it is contained in a recital and not in the "body" of the GLA. Opp. at 12-13.  However, where, as here, the definition is included on the first page of the contract and then used repeatedly throughout the document, it has binding force under California law even though it is in a recital.  *See Hunt v. United Bank & Trust Co.*, 210 Cal. 108, 115 (1930) ("If [recitals] form part of the operative covenants of the instrument in such a way as to show it was designed and intended that they should form part of it, they will be so construed.").

Crytek's reliance on *Guardian Media Technologies, Ltd. v. Sears, Roebuck & Co.*, No. 14 Civ. 767, 2014 WL 12588283 (C.D. Cal. July 9, 2014) is misplaced.  In that case, there was no "incompatibility" between the definition of a term in the recitals and the definition of that same term in the operative covenant of the contract, as Crytek claims to

---

be the case here.  The defendant in *Guardian* urged the Court to read a particular condition precedent into the contract, even though that condition precedent was ***neither*** in the recitals ***nor*** in the body of the contract.  *Id.* at *6.  The Court declined to deviate from the plain language of the contract, noting that ***even if*** the language of the recitals supported defendant's reading, the Court still would decline to adopt defendant's interpretation of the agreement because that interpretation would conflict with the language in the operative covenant of the contract.  *Id.* at *7.

Here, Defendants do not ask the Court to read a particular definition into the contract that does not appear in the recitals or in the operative covenant of the contract; they are asking the Court to interpret a particular defined term ***as it is expressly defined on the first page of the contract***.  Moreover, contrary to Crytek's assertion, the definition of "Game" in the GLA's recitals does not "conflict with" the definition of "Game" in Section 1.6 or Exhibit 2.  Rather, the two definitions supplement one another:  the recitals define "Game" as "the game currently entitled 'Space Citizen' and its related space fighter game 'Squadron 42,'" and then additional details about the Game are provided in Section 1.6 and Exhibit 2 (which also specifically refers to Squadron 42 as a separate feature of the Game).

Crytek also tries to escape the devastating impact of the incorporated 2016 Press Release, which made clear that CIG was switching to the Amazon Lumberyard game engine for both Star Citizen and Squadron 42 as of December 23, 2016.  Crytek argues that "[e]ven if the Court determines that Defendants were permitted to switch engines and did in fact do so, Defendants' argument fails to account for the full year of infringing conduct between Defendants' announcement of the separate, standalone Squadron 42 on December 16, 2015, and Defendants' eventual engine switch on December 23, 2016."  *Id.*

However, this argument fails because, as of December 23, 2016, ***Squadron 42 was still in development and had not yet been released*** — a fact admitted by Crytek and contained in the incorporated 2016 Press Release.  *See* FAC ¶ 26 ("Both games are currently in development. . . .") (quoting 2016 Press Release).  The sole basis for

Crytek's claim that the alleged spinoff of Squadron 42 violates the GLA is a clause in Exhibit 2 to the GLA stating that "the Game does not include any content *being sold and marketed separately, and not being accessed through the Star Citizen Game client*." GLA at 18 (emphasis added).  To exceed the scope of the license pursuant to this provision, not only must Squadron 42 be "sold and marketed separately," it also must be "accessed through the Star Citizen Game client."  *Id.*  As of December 23, 2016, Squadron 42 was not "being accessed" *at all*, either "through" or outside "the Star Citizen Game client." Accordingly, Crytek's claim that Defendants breached the GLA (or engaged in copyright infringement) merely by announcing that Squadron 42 would be *sold* as a standalone game fails as a matter of law.

Crytek further argues that the Court need not accept Defendants' "representation that they no longer use CryEngine in any way" and that, because "Crytek alleges that Defendants' use of CryEngine is ongoing," Crytek "should be permitted to obtain discovery to test the truth of Defendants' assertions that they have completely abandoned the use of CryEngine."  Opp. at 20.  The problem with this argument is that the incorporated 2016 Press Release relied upon by Crytek to support its claim that Defendants breached the GLA by switching to Amazon Lumberyard belies Crytek's unsubstantiated assertion that "Defendants' use of CryEngine is ongoing."  *Id.*

While, as a general rule, the Court must accept the truth of Crytek's allegations on a motion to dismiss, that rule does not apply where, as here, a document incorporated by reference into the FAC (the 2016 Press Release) contradicts the allegation.  *See Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015) (rejecting factual allegation asserted in complaint that was contradicted by express language of deed incorporated by reference into complaint).  Furthermore, "the district court may treat [the 2016 Press Release] as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Crytek cannot have it both ways: relying on a statement in the 2016 Press Release to support its claim that CIG breached the GLA by

1  not using the Engine, then wishing away that same statement when it contradicts its

2  inconsistent claim that CIG is still using the Engine.

3        **D.    Crytek's arguments seeking to bind RSI to the GLA fail.**

4        In its opening memorandum, Defendants showed that the only parties to the GLA

5  are Crytek and CIG; thus, under well-established law, RSI cannot be sued for breach of

6  the GLA.  All of Crytek's arguments seeking to keep RSI in the case fail.

7        **1.    The stray reference to RSI in the signature block of Exhibit 4 to**

8                **the GLA does not make RSI a party to the GLA.**

9        Crytek's first argument, completely absent from the FAC, is that because RSI is

10  referenced in the signature block of Exhibit 4 to the GLA, RSI should be treated as a

11  party to the GLA itself.  Crytek cites no legal authority for this illogical proposition.  *See*

12  Opp. at 6-7.  Nor does the argument withstand scrutiny in light of the document itself.

13  Exhibit 4 to the GLA contains terms and conditions that "apply to Licensee's use of

14  Autodesk Materials made available to License [sic] under the license agreement [*i.e.*, the

15  GLA] between Licensee and [Crytek]" ("Autodesk Terms" or "ToC").  GLA at 21.

16        Crytek contends that because the single signature block at the end of Exhibit 4

17  names both CIG and RSI, RSI should be deemed bound by the whole GLA.  This

18  argument fails for at least three reasons.  ***First***, nothing in Exhibit 4 suggests that simply

19  by signing Exhibit 4, a separate agreement which relates to the use of "Autodesk

20  Materials," the parties intended RSI to be bound by the terms of the GLA.  To the

21  contrary — the statement before the signature block reads "[i]ntending to be bound to the

22  terms of ***this Amendment***, each of the parties has caused its duly authorized

23  representative to execute this document."  GLA at 24 (emphasis added).  Thus, at most,

24  RSI was agreeing to be bound by the terms of the Autodesk Terms, not the GLA.

25        ***Second***, contrary to Crytek's contention, the Autodesk Terms' definition of

26  "Licensee" does ***not*** include RSI.  Crytek contends that "'Licensee' is defined as 'the

27  individual or entity executing this ToC.'"  Opp. at 7.  This is false.  In fact, the Autodesk

28  Terms define "Licensee" as "the individual or entity executing this ToC . . . ***that is***

*licensing the Integrated Product under the [GLA]."*[5] GLA at 21 (emphasis added).  The only party that "is licensing the Integrated Product" under the GLA is CIG, the sole licensee under the GLA, not RSI.  Thus, the sole "Licensee" under the Autodesk Terms is CIG, not RSI.

*Third*, even if RSI agreed to be bound by the Autodesk Terms, Crytek provides no authority for the proposition that signing a separate agreement that is an exhibit to, and made part of, an overarching agreement, operates to bind that party to the overarching agreement.  *See* Opp. Mem. at 6-7.  Crytek's argument that the signature block of the Autodesk Terms should "prevail" over the conflicting signature block of the GLA is unavailing.  *Id.* at 7.  The Autodesk Terms state that "if any *provisions* of the Agreement conflict with any *provisions* of these ToC, the *provisions* of these ToC prevail." GLA at 21 (emphasis added).  A signature block is not a "provision" of either the GLA or the Autodesk Terms.

## 2. No allegations support Crytek's argument that RSI accepted the terms of the GLA by its conduct.

Crytek contends that RSI accepted the terms of the GLA by its conduct, arguing that "RSI, not CIG, made the public announcements and published the content cited in the First Amended Complaint."  Opp. at 7.  As an initial matter, the FAC attributes this conduct to "Defendants," not RSI.  *See* FAC ¶¶ 22-23, 25-26, 32, 50.  Indeed, the entire FAC attributes no particular conduct to RSI, asserting only the glib and conclusory allegation that, "[b]y their actions and conduct, Defendants established that RSI was bound by the GLA as if it were a signatory thereto."  FAC ¶ 54.  Crytek cannot use its opposition to assert new allegations that are absent from the FAC.

Moreover, even if the FAC attributed this conduct just to RSI, none of the alleged conduct manifests an intent by RSI to be bound by the terms of the GLA.  "To determine whether a party has adopted a contract by its conduct, the relevant inquiry is whether the

---

[5] "Integrated Product" is defined as "the bundling of the Autodesk Materials with CryEngine."  GLA at 21.

party has displayed conduct manifesting an intention to abide by the terms of the agreement."  *S. California Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1133 (9th Cir. 2004) (internal quotation marks and citations omitted).  Making public announcements regarding the Game does not manifest an intention to abide by the terms of the GLA, which does not regulate CIG's right to make public announcements about the Game.  Likewise, Crytek is unable to explain how posting videos containing Crytek's source code manifests an intention to abide by the terms of the GLA.[6]

### 3. CIG may freely sublicense its right to publish the Game to RSI.

Crytek asserts that "Defendants' suggestion that RSI is not bound by the GLA ignores the implications that holding would have for Crytek's claims of copyright infringement."  Opp. at 8.  Not so.  The GLA grants CIG a license "to exclusively manufacture, market, promote, sell, license, publish and exploit the Game in any way *which right shall be freely sub-licensable*."  GLA § 2.1.3 (emphasis added).  Crytek does not and cannot allege that RSI engaged in any activities in connection with the Game that do not fall within one of these categories that are freely sub-licensable by CIG.

## II. CRYTEK'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS

The charging allegations of Count II (FAC ¶¶ 63-66) identify a single act of alleged copyright infringement:  use of the Engine in Squadron 42.  *See* FAC ¶ 63.  As discussed above and in Defendants' opening memorandum, that claim fails because the GLA expressly allows CIG to use the Engine to develop Squadron 42, Squadron 42 is still under development (and thus has not been released as a standalone game), and CIG is no longer using the Engine in Squadron 42.

---

[6] The cases cites by Crytek are inapposite.  *See* Opp. at 8.  The issue in each of those cases was whether a party's conduct manifested an intent to be bound by an otherwise unformed contract.  None of the cases addressed the issue presented here:  whether the Court may impose upon a non-signatory the terms of an existing written agreement executed by two other parties.

1    In its opposition, Crytek attempts to paste two new theories of liability to Count II

2    claiming copyright infringement, arguing that Defendants infringed Crytek's copyright in

3    the Engine by posting the unspecified Bugsmashers videos and granting Faceware access

4    to the Engine source code.  Opp. at 19.  However, neither of these theories are pleaded as

5    claims for copyright infringement in the FAC and Crytek cannot use its opposition to

6    allege new claims.  *See Dietz Int'l Pub. Adjusters of California, Inc. v. Evanston Ins. Co.*,

7    No. 09 Civ. 6662, 2009 WL 10673937, at *3 (C.D. Cal. Dec. 14, 2009) ("A plaintiff

8    cannot cure deficiencies in a complaint through allegations provided in its opposition to a

9    motion to dismiss.") (citing *Barbera v. WMC Mortgage Corp.*, No. 04 Civ. 3738, 2006

10   WL 167632, *2 n. 4 (N.D. Cal. Jan. 19, 2006) ("It is axiomatic that the complaint may

11   not be amended by briefs in opposition to a motion to dismiss.")).  If this case is to

12   proceed further at all, at minimum, the Court should order Crytek to make a more definite

13   statement to clarify the bases for its copyright infringement claim.[7]  In any event, both

14   sets of allegations fail to state a claim for copyright infringement.

15        **A.    Crytek fails to identify which Bugsmashers videos are infringing and**

16              **which code has been infringed.**

17        In addition to not being included in its claim for copyright infringement, the

18   Bugsmashers claim is deficient for another reason:  Crytek fails to specify ***which***

19   videos allegedly infringe Crytek's copyright (or any specific video or footage

20   whatsoever) or ***which*** code allegedly was infringed.  Without knowing the videos

---

21   [7] Prior to Crytek's filing of the FAC, CIG intended to move for a more definite statement

22   with respect to Crytek's claim for copyright infringement as pleaded in its initial

23   complaint because, among other problems, the charging allegation of Count II only

24   recited the bare legal elements of a copyright infringement claim, making it impossible to

     determine which of the many allegations in the pleading formed the basis for Crytek's

25   copyright infringement claim.  Counsel for Defendants raised this deficiency during the

26   Local Rule 7-3 conference.  In its FAC, Crytek added a single paragraph to the charging

     allegations of Count II that referred only to Squadron 42.  *See* FAC ¶ 63.  From this, CIG

27   understood that the sole basis for Crytek's copyright infringement claim was its

     allegations regarding Squadron 42 and did not move for a more definite statement.  The

28   opposition introduces pleading chaos once again.

that allegedly include Crytek's copyright-protected source code, it is impossible for CIG to defend itself against the claims.  For example, to the extent CIG displayed any snippets of Crytek's (as opposed to CIG's) proprietary code in the videos, that display very well may have been *de minimis* or constitute fair use.  *See, e.g., Vault Corp. v. Quaid Software, Ltd.*, 847 F.2d 255, 267 (5th Cir. 1988) (snippets of source code held *de minimis*); 17 U.S.C. § 107 (enumerating "comment," "teaching," "scholarship," and "research" as illustrative fair uses).  Crytek also might have abandoned its copyright interest in the code by making it available to the public.  *See A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).  But without knowing which videos or code is at issue, CIG and the Court are hampered from applying these defenses.  Accordingly, any purported claim related to Bugsmashers requires at minimum an intelligible, unmistakable and definitive amendment identifying, without ambiguity, the allegedly infringing and infringed works.  See *Phillips v. Murdock*, 543 F. Supp. 2d 1219, 1226 (D. Haw. 2008) (granting motion to dismiss where copyright claim failed to "identify any specific text in [plaintiff's] work that is copied in [defendant's] publications").

> **B.** **Crytek fails to allege that Defendants violated any of Crytek's exclusive rights by supposedly granting Faceware access to the Engine.**

In addition to failing to meet the pleading standard under *Twombly* and *Iqbal*, *see supra* at 5, the sole allegation in the FAC regarding Faceware does not state a claim for copyright infringement, even if it were pleaded as such in the FAC.  Paragraph 51 states, in relevant part:

> On August 26, 2017, news reports announced a partnership between Defendants and a third party developer, Faceware Technologies.  Upon information and belief, as a result of the partnership, ***Faceware received access to the underlying technology for CryEngine*** (including computer source code).

FAC ¶ 51 (emphasis added).  A claim for copyright infringement arises only when a person violates one of the exclusive rights enumerated in Section 106 of the Copyright Act.  17 U.S.C. § 501(a).  Here, the sole allegation in the FAC is that "Faceware received access to the underlying technology for CryEngine (including computer source code)."  Even assuming the truth of this allegation,[8] merely granting another party "access" to a copyrighted work does not violate any of the owner's exclusive rights.  Accordingly, the Faceware allegations in the FAC fail to state a claim for copyright infringement.

## III.   THE REMEDIES THAT CRYTEK SEEKS ARE BARRED AS A MATTER OF LAW AND UNDER THE TERMS OF THE GLA

Crytek's opposition attempts, but fails, to justify Crytek's demands for remedies in the FAC that are unavailable as a matter of law and under the terms of the GLA.

### A.   Section 6.1.4 precludes Crytek's claim for monetary damages.

As set forth above in Section I.A, the GLA unequivocally bars Crytek from seeking monetary damages "except for intentional acts or omissions or gross negligent acts."  GLA § 6.1.4.  Crytek does not and cannot contend that Defendants engaged in any intentional acts or omissions or gross negligence, and thus its claims for monetary damages must be dismissed with prejudice.

### B.   The FAC alleges neither a basis for equitable relief nor the relief sought.

Crytek admits that Section 10.7 of the GLA expressly prohibits Crytek from attempting to "enjoin the publishing or other exploitation of the Game."  Opp. at 21.  To the extent that Crytek seeks some other form of equitable relief short of enjoining the publishing or exploitation of the Game, it must plead facts in the FAC that establish its entitlement to such equitable relief.  But the FAC fails to allege either grounds for equitable relief or the specific relief sought.  Most conspicuously, Crytek fails to allege how or why available remedies at law are inadequate to compensate it for any irreparable

---

[8] If this claim is permitted to proceed, Defendants will show they did not share Crytek's source code with Faceware.

1    injury that it allegedly suffered.  Indeed, the FAC repeatedly seeks monetary damages.

2    *See, e.g.*, FAC ¶¶ 5, 60, and Prayer for Relief (a) and (c).

3              **C.    Crytek's late copyright registration precludes statutory damages.**

4              Crytek attempts to minimize the impropriety of its baseless request for statutory

5    damages by stating that "at this stage, it would be premature to foreclose the availability

6    of statutory damages."  Opp. at 22.  In fact, this is the most appropriate time for the Court

7    to assess the merits of Crytek's damage requests and dismiss them if, as here, they are

8    barred as a matter of law.

9              Statutory damages are unavailable to Crytek because the FAC does not and cannot

10   allege that "independent acts" of infringement occurred after Crytek obtained its

11   copyright registration on December 11, 2017. 17 U.S.C. § 412. All of the acts alleged in

12   the FAC commenced well before the registration.  To the extent that these acts continued

13   after registration, they were still part of an ongoing series of infringements and are not

14   subject to statutory damages.  *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d

15   696, 701 (9th Cir. 2008) (award of statutory damages not available under the Copyright

16   Act for post-registration infringements when the initial act of infringement occurred prior

17   to the copyright registration date and there was no legally significant difference between

18   pre-registration and post-registration infringement).

19             The Louisiana district court case cited by Crytek, *Guillot-Vogt Associates., Inc. v.*

20   *Holly & Smith,* 848 F. Supp. 682, 690 (E.D. La. 1994), is easily distinguishable.  In that

21   case, a subcontractor prepared architectural drawings that were copied, revised, and

22   distributed by defendants without authorization, but the subcontractor failed to register

23   the copyright for the drawings for more than three months after the date of their first

24   publication.  *Id.* at 690.  The Court declined to dismiss the subcontractor's statutory

25   damages claim,[9] noting that the subcontractor had alleged that "many other ***independent***

26   _____

27   [9] The Court, however, noted that "every case that this Court has reviewed or been
     referred to has denied the award of statutory damages where pre-registration infringement

28   occurred and registration was more than three months after publication."  *Id.* at 691.

_____

REPLY ISO DEFENDANTS' MOTION TO DISMISS AND STRIKE THE FAC

acts of infringement occurred after" the registration date. *Id.* (emphasis added). Here, Crytek does not contend that any of Defendants' alleged acts of infringement (pleaded or brand new in the opposition) — the unauthorized use of the Engine in Squadron 42, the posting of the Bugsmashers videos, or the announcement of the Faceware partnership — commenced after the registration date of December 11, 2017. *See* FAC ¶¶ 22-26 (alleged unauthorized use of the Engine in Squadron 42 commenced on December 16, 2015), ¶ 50 (posting of Bugsmashers videos commenced on May 6, 2015), and ¶ 51 (Faceware partnership announced on August 26, 2017). Accordingly, Crytek's claim for statutory damages must be dismissed.

### D. Punitive damages are not available for breaches of contract.

Punitive damages are not available for Crytek's breach of contract claim nor its copyright claim as a matter of the blackest of blackletter California law.

Crytek argues that punitive damages are available for breach of contract in "limited circumstances." Opp. at 22. But Crytek's opposition fails to suggest what these "limited circumstances" are, and its FAC fails to state any facts to show that this is one of those unstated "limited circumstances." Exemplary damages in California are simply not allowed in contract actions. They are only available (under rigorous standards) in actions "for the breach of an obligation ***not*** arising from contract." Cal. Civ. Code § 3294(a) (emphasis added). Crytek admits that it does not assert any tort claims against Defendants. *See* Opp. at 17 ("Here, Crytek does <u>not</u> seek tort remedies for Defendants' breaches of contract.") (emphasis in original). That Crytek is not simply dropping this completely unsupportable claim underscores the overall irresponsibility of the two pleadings so far, compelling a decisive and instructive dismissal.

Crytek further admits that "the Copyright Act does not provide for punitive damages," but misguidedly attempts to equate punitive damages with enhanced ***statutory damages*** for willful infringement. Opp. at 22. As discussed above, statutory damages are unavailable. Plus, every lawyer knows punitive damages and statutory damages are

1   different things.  Crytek's argument that its claim for punitive damages is just

2   masquerading as a claim for statutory damages should be dismissed most forcefully.

3   ## IV.   THE COURT SHOULD STRIKE THE IMMATERIAL, IMPERTINENT,

4   ## AND SCANDALOUS ALLEGATIONS FROM THE FAC

5   Crytek contends that it deleted certain allegations about Defendants' co-founder,

6   Mr. Freyermuth, from the initial pleading to avoid "wasteful motion practice."  Opp. at

7   22.  The only reason (besides a Rule 11 violation) such motion practice would have been

8   wasteful is because the allegations against Mr. Freyermuth had no bearing whatsoever on

9   either of Crytek's claims.  The same is true for the aspersions against Messrs. Freyermuth

10   and Jones that remain in the FAC.  Crytek includes these Offending Allegations (as

11   defined in Defendants' opening memorandum) not because they are material or pertinent

12   to the claims at issue, but in order to intimidate, harass, and disparage individuals

13   employed by Defendants.

14   Crytek spends nearly an entire page of its opposition discussing all the ways in

15   which the conflict waiver between Crytek and Mr. Freyermuth's law firm was allegedly

16   deficient.  *Id.* at 23.  But the sufficiency of this conflict waiver is not at issue in this case,

17   which is about (1) an alleged breach of the GLA and (2) alleged copyright infringement.

18   The FAC does not even mention the ***existence*** of the conflict waiver, let alone allege that

19   it was somehow deficient.  These are new backpedaling arguments that Crytek

20   improperly attempts to raise for the first time in its opposition, in an effort to defend its

21   inappropriate inclusion of the immaterial, impertinent, scandalous, and false Offending

22   Allegations in the FAC.

23   Crytek's argument that, at some point in the future, the Court ***might*** hold that the

24   terms of the GLA were ambiguous and that, in that instance, the back-story regarding the

25   negotiation of the GLA ***might*** become relevant, is unavailing.  The standard on a motion

26   to strike is not whether the allegations in the pleading ***might*** have some relevance to a

27   claim at some point down the line, or whether a matter is discoverable or potential fodder

28   for impeachment, but whether the allegations are "material" or "pertinent" to any claim in

the operative complaint.  Here, the Offending Allegations are neither material nor pertinent.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 ("Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.") (internal citations and quotations omitted); *Kennedy v. Las Vegas Sands Corp.*, 17 Civ. 880, 2017 WL 4227941, at *6 (D. Nev. Sept. 22, 2017) ("While these allegations could potentially be tenuously related to Plaintiffs' allegations regarding marijuana use, these allegations are too attenuated to bear an essential or important relationship to Plaintiffs' claim for relief . . .  Therefore, Defendants' motion to strike is granted as to Paragraphs 158-183.").  Additionally, the Offending Allegations are scandalous because they are personal attacks on the integrity of two individuals who are employed by Defendants but who are not parties to this lawsuit.  Accordingly, the Court should strike the Offending Allegations from the FAC.

///

///

1
2
## CONCLUSION

3        For the reasons stated herein and in Defendants' opening memorandum, the Court
4 should dismiss Crytek's FAC in its entirety with prejudice or, in the event anything
5 remains or leave to amend is granted, order Crytek to strike the identified portion of
6 paragraph 15 of the FAC, to clarify the bases for its copyright claim and refrain from
7 pleading claims remedies prohibited as a matter of California or federal law.

8
9 Dated: January 26, 2018                 FRANKFURT KURNIT KLEIN & SELZ P.C.

10                                        BY:  */s/ Jeremy S. Goldman*
                                              Joseph R. Taylor (SBN 129933)
11                                            Jeremy S. Goldman (SBN 306943)
                                              Azita M. Iskandar (SBN 280749)
12                                            2029 Century Park East, Suite 1060
                                              Los Angeles, California 90067
13                                            Telephone: (310) 579-9600
                                              Facsimile: (347) 438-2156
14                                            E-Mail: jtaylor@fkks.com
15                                                    jgoldman@fkks.com
                                                      aiskandar@fkks.com
16                                        Attorneys for Defendants CLOUD IMPERIUM
17                                        GAMES CORP. and ROBERTS SPACE
                                          INDUSTRIES CORP.
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of January, 2018, I electronically filed the foregoing REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR CLAIMS FOR RELIEF THEREIN OR, IN THE ALTERNATIVE, TO STRIKE CERTAIN PORTIONS OF THE FIRST AMENDED COMPLAINT, with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:


Kurt Wm Hemr
Skadden Arps Slate Meagher and Flom LLP
Four Times Square
New York, NY 10036
kurt.hemr@skadden.com

Kevin James Minnick
Skadden Arps Slate Meagher and Flom LLP
300 South Grand Avenue Suite 3400
Los Angeles, CA 90071
kevin.minnick@skadden.com

James Young Pak
Skadden Arps Slate Meagher and Flom LLP
525 University Avenue Suite 1400
Palo Alto, CA 94301
James.Pak@skadden.com

Paramjeet Singh Sammi
Skadden Arps Slate Meagher and Flom LLP
Four Times Square
New York, NY 10036
anthony.sammi@skadden.com

Azniv Khararjian