JAMES Y. PAK (SBN 304563)
*james.pak@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

KEVIN J. MINNICK (SBN 269620)
*kevin.minnick@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

P. ANTHONY SAMMI
(admitted *pro hac vice*)
*anthony.sammi@skadden.com*
KURT WM. HEMR
(admitted *pro hac vice*)
*kurt.hemr@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

***Attorneys for Plaintiff,
Crytek GmbH***

JOSEPH R. TAYLOR (SBN 129933)
*jtaylor@fkks.com*
JEREMY S. GOLDMAN (SBN 306943)
*jgoldman@fkks.com*
AZITA M. ISKANDAR (SBN 280749)
*aiskandar@fkks.com*
FRANKFURT KURNIT KLEIN &
SELZ, P.C.
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (347) 438-2156

***Attorneys for Defendants Cloud
Imperium Games Corp. and Roberts
Space Industries Corp.***

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CRYTEK GMBH,<br><br>                Plaintiff,<br><br>      v.<br><br>CLOUD IMPERIUM GAMES CORP.<br>and ROBERTS SPACE INDUSTRIES<br>CORP.,<br><br>                Defendants. | Case No. 2:17-cv-08937-DMG-FFM<br><br>**JOINT RULE 26(f) REPORT**<br><br>Judge:  Hon. Dolly M. Gee |

**JOINT RULE 26(F) REPORT**

1   Pursuant to Federal Rule of Civil Procedure Rule 26(f), Local Rule 26-1, and
2   the Court's December 13, 2017 Order, Plaintiff Crytek GmbH ("Crytek") and
3   Defendants Cloud Imperium Games Corporation ("CIG") and Roberts Space
4   Industries Corporation ("RSI") (together, "Defendants"), by and through their
5   undersigned counsel, having conducted a conference in accordance with Rule 26(f)
6   on February 13, 2018, hereby submit the following Joint Report:

7   **I.      STATEMENT OF THE CASE**

8       **A.      Crytek's Position**

9       Plaintiff Crytek is an industry-leading video game developer, publisher, and
10  technology provider.  The instant suit against Defendants CIG and RSI stems from
11  Defendants' breach of contract and copyright infringement in connection with their
12  use of Crytek technology, including CryEngine, a cutting-edge, powerful, and
13  feature-filled video game development platform and computer program.

14      Crytek commenced this action on December 12, 2017.  Crytek identifies the
15  specific breaches of contract and acts of copyright infringement by Defendants in the
16  First Amended Complaint ("FAC", ECF No. 18).  (*E.g.*, FAC ¶¶ 13-52.)  It seeks
17  money damages in excess of $75,000 and equitable relief.

18      Defendants have not made readily known all related persons and entities
19  connected with Defendants.  As discovery progresses and Crytek's investigation
20  continues, Crytek may add additional defendants or amend its pleadings.

21      Crytek declines to respond in this Joint Report to Defendants' lengthy and
22  abusive statement of position set forth *infra*, which — Crytek respectfully submits —
23  misapprehends the purpose of this Joint Report and largely reiterates arguments set
24  forth in Defendants' motion to dismiss.  That motion should be denied for the reasons
25  set forth in Crytek's opposition to the motion.  (ECF No. 25.)  Crytek will further
26  address Defendants' assertions in an appropriate setting as may be required.

27

28

**JOINT RULE 26(F) REPORT**

## B.   Defendants' Position

Defendants cannot understand Crytek's allegations of breach or infringement and the above description of "Crytek's Position" is so conclusory as to underscore the problem.  It is impossible for any case to proceed on the allegations in the FAC.

Defendant CIG is developing a video game called *Star Citizen* and a related game called *Squadron 42* ("*SQ42*").  CIG and Crytek entered into a Game License Agreement ("GLA") (concealed by Crytek in its two pleadings), granting CIG the exclusive right to use Crytek's game engine, called "CryEngine," for exactly these purposes.  In December 2016, CIG announced that it had begun to use another game engine, licensed to CIG by Amazon, called "Lumberyard" for both its *Star Citizen* and *SQ42* games.  Defendants should not have to guess at what is at issue in this case, but the fragments found in the FAC lead to the guesses briefly described below by Defendants.

It is not clear whether Crytek sued Defendants for ***not*** using CryEngine, for ***using*** CryEngine, or both.  It also is not clear why Crytek sued RSI for breaching a contract to which it is not a party.  Crytek complains that Defendants are ***not using*** CryEngine and switched to Lumberyard, but ignores the fact that the GLA grants CIG a ***license***, not an obligation, to use CryEngine.  At the same time, Crytek complains that Defendants ***are using*** CryEngine to develop *SQ42*, even though the GLA expressly allows just that.  Crytek further complains about Defendants' announcement that *SQ42* would be distributed as a standalone game, but ignores the fact that Defendants are using Lumberyard to develop *SQ42* and, in any event, *SQ42* has not yet been distributed at all, either with or without *Star Citizen*.  Crytek also complains about Defendants not using Crytek's copyright and trademark notices for a game that uses Amazon's licensed engine.

Crytek tacks on several additional fragmented allegations, each of which is equally confusing and baseless.  Crytek contends that Defendants failed to deliver certain bug fixes but omits the fact that Defendants tendered them years ago and

**JOINT RULE 26(F) REPORT**

recently delivered them to Crytek.  Crytek complains about Defendants posting instructional videos called "Bugsmashers" that purportedly display Crytek's source code, but fail to identify the videos or code at issue.  Crytek also ignores that any use of the source code likely is *de minimis*, fair use and duplicative of source code already available to the public.  Finally, Crytek complains about Defendants granting third-party developer Faceware Technologies access to Crytek's source code, but this is simply not true and Crytek has no basis to contend otherwise.

Given the hodgepodge Defendants must guess at in the FAC, and the lack of merit to any of these fragments, Defendants deduce that Crytek sues out of: wounded pride resulting from Defendants' move from CryEngine to Lumberyard; rapacity toward the crowdfunding amounts raised by Defendants to develop and produce the products; hope that filing this lawsuit will cause Defendants so much distraction and legal expense that they would rather pay Crytek, a company that has experienced a significant financial downturn in the last several years, a much-needed infusion of capital to make the lawsuit go away; and resentment over the fact that many of its employees abandoned Crytek which could not afford to pay them.

## II.   SUBJECT MATTER JURISDICTION

This action arises under 28 U.S.C. §§ 1331 and 1338(a) because federal courts have exclusive jurisdiction in copyright cases, and because those claims are federal questions.  This Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332 because Defendants are citizens of California, Plaintiff is a citizen of a foreign state, and the amount in controversy substantially exceeds $75,000.

## III.   LEGAL ISSUES

### A.   Crytek's Position

The primary issues in this case are (i) whether the Defendants breached the Game License Agreement; (ii) whether Defendants infringed upon Crytek's copyrighted work; and (iii) the amount of damages to which Crytek may be entitled.

**JOINT RULE 26(F) REPORT**

1  **B.     Defendants' Position**

2       CIG and Crytek entered into a binding and enforceable GLA under which CIG

3  has fully performed.  The threshold legal issue is for Crytek to articulate, in a manner

4  sufficient under the Federal Rules of Civil Procedure and the pleading standards set

5  by the Supreme Court in *Twombly* and *Iqbal*:  what if any promises Crytek alleges

6  were not performed, and which of Defendants' works, if any, infringe which of

7  Crytek's registered copyright-protected works, if any — subject to all defenses

8  including those under the Copyright Act and the GLA.

9  **IV.   <u>SCHEDULING MATTERS AND DISCOVERY PLAN</u>**

10      **A.     Initial Disclosures**

11      Cognizant of Section 3(b) of the Court's Initial Standing Order, Crytek served

12 initial disclosures on Defendants on January 19, 2018.  Defendants will serve their

13 initial disclosures on February 27, 2018.  The parties do not propose any changes to

14 the form or requirement for disclosures under Federal Rule of Civil Procedure 26(a).

15      **B.     Discovery Subject, Timing, and Phasing**

16      The parties expect to conduct discovery requiring the production of documents,

17 electronic materials, and things, interrogatories, requests for admission, and

18 deposition testimony. The parties do not believe that discovery needs to be phased.

19      Cognizant of Section 3(b) of the Court's Initial Standing Order, Crytek served

20 its First Set of Requests for Production of Documents and Inspection of Documents

21 and Things ("First RFPs") and First Set of Interrogatories ("First Interrogatories") on

22 Defendants on January 19, 2018.  Defendants objected to the First Interrogatories as

23 premature under Rule 26(d)(1).  Crytek re-served the First Interrogatories by hand on

24 Defendants on February 13, 2018.

25      Counsel for each party has instructed their respective clients to preserve

26 discoverable information.

27

28

**JOINT RULE 26(F) REPORT**

### 1.    Crytek's Position

At this time, Crytek contends that discovery will be needed on at least the following subjects:

- Defendants' products, including Star Citizen and Squadron 42;
- marketing and promotion of Defendants' products;
- revenue, profits, and crowdfunding obtained by Defendants;
- Defendants' use of Crytek property, including CryEngine;
- contracts and communications between the Defendants;
- ownership, management, and structure of Defendants;
- Defendants' communications with its customers;
- operative contracts between Crytek and Defendants; and
- technology transferred from Crytek to Defendants.

Crytek disputes Defendants' description *infra* of the parties' discussions during the Rule 26(f) conference, including because that description is incomplete and inaccurate.  (For example, Crytek's counsel stated during the conference that facts concerning crowdfunding are relevant to damages and the value of the game engine.)  Crytek will further respond to those allegations at an appropriate time as may be required.

### 2.    Defendants' Position

Defendants believe that the parties should commence discovery after the Court rules on Defendants' motion to dismiss, to the extent the case is not dismissed in its entirety.  Moreover, Defendants strongly contest the relevance of many of the above topics.  Among other things, it remains entirely unclear how "crowdfunding" or the "ownership, management and structure of Defendants" is relevant to any claim or defense in this matter.  Their inclusion of these and other irrelevant topics serves only to underscore Crytek's ulterior motives in this lawsuit.  During the Rule 26(f) conference, Defendants asked Crytek to explain why, for example the "crowdfunding obtained by Defendants" is relevant to any claim or defense.  Crytek's only response

was that this topic is relevant "for all the obvious reasons."  When Defendants asked Crytek to clarify this statement, Crytek declined to engage any further on the subject.

### C.    Summary of Schedule

The parties' respective proposals for a schedule of pretrial and trial dates, as well as the proposed timing of discovery, are addressed in Exhibit A.

## V.    ADDITIONAL ISSUES DISCUSSED PURSUANT TO RULE 26(F) AND LOCAL RULE 26-1

### A.    Electronically Stored Information

The parties represent that they have complied with their preservation obligations relating to electronically stored information ("ESI"), pursuant to Federal Rule of Civil Procedure 34.

The parties agree that ESI shall be produced pursuant to the Document Production Format Agreement in Exhibit B.  To the extent not addressed in Exhibit B, the parties intend to meet and confer in good faith on production protocols and other technical details as necessary before involving the Court.

Defendants state that the above should be subject to the Court's protections regarding the proprietary of discovery at all, and any limitations on timing or other restrictions thereon.

### B.    Privilege or Confidentiality

In accordance with the Federal Rules of Civil Procedure, the parties have agreed that information withheld for privilege or as attorney work product will be listed on a privilege log, with the exception that privileged or attorney work product information involving litigation counsel on or after the date the above-entitled action was filed does not need to be logged.

The parties are working on a draft form of protective order so that the parties can jointly seek an order limiting disclosure of sensitive materials, such as the parties' confidential trade secrets, to anyone but outside litigation counsel.  The parties intend to submit a joint stipulated protective order for the Court's approval.

**JOINT RULE 26(F) REPORT**

1    The parties have agreed that consistent with Rule 26(b)(4) of the Federal Rules

2 of Civil Procedure, attorney communications with experts, both testifying and non-

3 testifying, and drafts of expert reports are not discoverable unless the expert relies on

4 such communications pursuant to Rule 26(b)(4)(C)(ii) and (iii).

5    **C.    Changes In Limitations On Discovery**

6    At this stage of the litigation, the parties do not see a need to modify the

7 limitations on discovery set forth in the Federal Rules of Civil Procedure, but reserve

8 the right to request such modification should the need arise.  Specifically, each party

9 reserves the right to move to increase the amount, scope and timing of any discovery.

10   Defendants state that the above should be subject to the Court's guidance on

11 whether discovery should proceed at all and, if so, when and under what conditions.

12   **D.    Orders Under Rules 16(b), 16(c), or 26(c)**

13   Defendants intend to seek a protective order to stay or limit the timing or scope

14 of discovery while their Motion to Dismiss is pending.  The parties are not otherwise

15 seeking any additional orders from the Court under Rules 16(b) or (c), or 26(c).

16   **E.    Settlement/ADR**

17        **1.    Crytek's Position**

18   The parties have not yet discussed settlement or resolution of this case.  With

19 respect to the ADR options available, Crytek elects mediation with a neutral from the

20 Court Mediation Panel.  Crytek proposes that the mediation with a neutral occur by

21 January 29, 2019.

22   Crytek disputes Defendants' description *infra* of the parties' discussions during

23 the Rule 26(f) conference as incomplete and inaccurate.  (In particular, Crytek's

24 counsel stated that Crytek was open both to mediation with a neutral from the Court

25 Meditation Panel or with a private mediator, but declined to respond to Defendants'

26 insistence that Crytek make a settlement demand during the Rule 26(f) conference.)

27 Crytek will further respond to those allegations at an appropriate time as may be

28 required.

7

**JOINT RULE 26(F) REPORT**

### 2.     Defendants' Position

Defendants do not understand Crytek's "Position" set forth above.  During the Rule 26(f) conference, Defendants asked Crytek what it wanted from this case and whether it had a settlement demand.  Crytek said it was not prepared to make a settlement demand or tell Defendants what it hoped to achieve from the lawsuit. Defendants asked Crytek what method of settlement procedure Crytek preferred; Crytek would not state.  If this case is not fully dismissed, when Crytek is able to articulate its substantive settlement position, Defendants believe a constructive approach would be for the parties to appear before Magistrate Judge Mumm for a settlement conference.  Defendants believe that Magistrate Judge Mumm is particularly well suited to assist the parties with their settlement discussions given his extensive experience with intellectual property, media and entertainment litigation in his prior private litigation practice.

### F.     Complex Cases

While it is early in the litigation, the parties do not foresee the need to use procedures in the Manual for Complex Litigation.  Should the need arise, the parties agree to meet and confer as necessary to discuss whether complex issues, difficult legal questions or unusual proof problems require use of the manual.

### G.     Issues to be Determined by Motion

Defendants' Motion to Dismiss was filed on January 5, 2018.  (ECF No. 20.) Briefing on that motion was completed on January 26, 2018.  (ECF Nos. 25, 26.)  A hearing on the motion was vacated on February 8, 2018.  (ECF No. 27.)  No other motions are currently on the calendar.

The parties anticipate that they may need to seek the Court's assistance in discovery disputes should the parties be unable to resolve them informally.  Should that need arise, the parties will comply with Section 3(a) of the Initial Standing Order.

1    In the event Defendants' Motion to Dismiss is denied in whole or in part,
2  Defendants state that they intend to bring motions for full summary judgment or
3  partial summary judgments on any remaining issues at the earliest possible time once
4  they are clearly at issue.

5    **H.    Trial Estimate**

6       **1.    Crytek's Position**

7    Crytek has demanded a jury trial.  Crytek estimates that the jury trial will last
8  approximately five to ten (5-10) court days.

9       **2.    Defendants' Position**

10    Defendants are unable to estimate the length of trial (or any matter of schedule
11  or budget) until there is meaningful clarity regarding any of Crytek's claims against
12  Defendants that are allowed past the pleading stage.  With respect to Crytek's demand
13  for a jury trial, the GLA precludes Crytek from recovering monetary damages.
14  Accordingly, because Crytek may be entitled to equitable relief only, Crytek may not
15  be entitled to a jury trial.

16    **I.    Severance, Bifurcation or Other Ordering of Proof**

17       **1.    Crytek's Position**

18    At this time, Crytek does not intend to request severance, bifurcation or other
19  ordering of proof.  Crytek expressly reserves its right to request severance,
20  bifurcation, or other ordering of proof as information is uncovered during discovery.

21       **2.    Defendants' Position**

22    To the extent any issues remain for discovery after the Court decides
23  Defendants' Motion to Dismiss, Defendants request that the Court bifurcate discovery
24  into two phases: *first*, discovery as it relates to any of Crytek's remaining theories of
25  liability against Defendants, and *second*, and only if necessary, discovery as it relates
26  to Crytek's claim for damages.  As is apparent from the list of topics above that
27  Crytek believes to be discoverable, including "revenue, profits, and crowdfunding
28  obtained by Defendants," as well as the discovery requests already propounded by

**JOINT RULE 26(F) REPORT**

Crytek, Crytek intends to conduct intrusive discovery regarding Defendants' fundraising and other financial matters that bear no relevance to any claim or defense and relate solely, if at all, to damages.  At this stage, when Crytek's theories of liability remain in doubt, and in light of the plain language of the GLA expressly precluding either party from seeking monetary damages, the Court should limit any discovery to the issues of liability before allowing Crytek to seek highly-sensitive financial information related to Defendants' business that relates solely, if at all, to the issue of damages.

Defendants expressly reserve their right to request severance, additional bifurcation, or other ordering of proof as information is uncovered during discovery.

**J.    Expert Witnesses**

**1.    Crytek's Position**

Crytek may offer expert testimony related to the technical subject matter of this case (including source code), copying of copyrighted works, and damages.  The timing of these disclosures is set forth in the proposed schedule attached as Exhibit A.

**2.    Defendants' Position**

Defendants are unable to predict what expert testimony it may offer until there is meaningful clarity regarding any of Crytek's claims against Defendants that are allowed past the pleading stage.

**K.    Electronic Service**

The parties agree that service by electronic means shall be allowed as set forth in Rule 5(b)(2)(E).  Service by electronic means shall be considered the same as hand delivery for purposes of calculating the time to respond, provided service is made using the email(s) listed below, which may be supplemented or changed by written notice.  The parties agree to refer to the parties and/or case name in the subject line for documents served by electronic means.

1    Service on Crytek shall be made to dlpcrytkip@skadden.com.  Service on

2  Defendants shall be made to jtaylor@fkks.com, jgoldman@fkks.com,

3  aiskandar@fkks.com and docket@fkks.com.

4    As a professional courtesy, Crytek proposes that the parties serve documents

5  not filed with the Court on or before 6:00 p.m. Pacific Time, including discovery-

6  related materials and expert reports.  If such documents are not served on or before

7  6:00 p.m. Pacific Time, such documents would be deemed to have been served on the

8  next business day.  Defendants have not agreed to that proposal.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT RULE 26(F) REPORT**

1    Dated: February 27, 2018              Respectfully submitted,

2

3      */s/ Jeremy S. Goldman*              */s/ James Y. Pak*
       JOSEPH R. TAYLOR (SBN 129933)      JAMES Y. PAK (SBN 304563)
4      *jtaylor@fkks.com*                   *james.pak@skadden.com*
       JEREMY S. GOLDMAN (SBN             SKADDEN, ARPS, SLATE,
5      306943)                              MEAGHER & FLOM LLP
       *jgoldman@fkks.com*                 525 University Avenue, Suite 1400
6      AZITA M. ISKANDAR (SBN 280749)     Palo Alto, CA 94301
       *aiskandar@fkks.com*                (650) 470-4500
7      FRANKFURT KURNIT KLEIN &           (650) 798-4570
       SELZ, P.C.
8      2029 Century Park East, Suite 1060  KEVIN J. MINNICK (SBN 269620)
       Los Angeles, California 90067       *kevin.minnick@skadden.com*
9      Telephone: (310) 579-9600          SKADDEN, ARPS, SLATE,
       Facsimile: (347) 438-2156            MEAGHER & FLOM LLP
10                                         300 South Grand Avenue, Suite 3400
       ***Attorneys for Defendants Cloud   Los Angeles, CA 90071
11     Imperium Games Corp. and Roberts    Telephone: (213) 687-5000
       Space Industries Corp.***           Facsimile:  (213) 687-5600
12
                                           P. ANTHONY SAMMI
13                                         (admitted *pro hac vice*)
                                           *anthony.sammi@skadden.com*
14                                         KURT WM. HEMR
                                           (admitted *pro hac vice*)
15                                         *kurt.hemr@skadden.com*
                                           SKADDEN, ARPS, SLATE,
16                                           MEAGHER & FLOM LLP
                                           Four Times Square
17                                         New York, New York 10036
                                           Telephone: (212) 735-3000
18                                         Facsimile: (212) 735-2000

19                                         ***Attorneys for Plaintiff
                                           Crytek GmbH***
20

21

22

23

24

25

26

27

28

**JOINT RULE 26(F) REPORT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ATTESTATION**

I, James Y. Pak, attest that the signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By:   */s/ James Y. Pak*
James Y. Pak

**JOINT RULE 26(F) REPORT**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which sent notification of such filing to all counsel of record.

By:   /s/ *James Y. Pak*
James Y. Pak

**Exhibit A**

Judge Dolly M. Gee

**SCHEDULE OF PRETRIAL & TRIAL DATES WORKSHEET**

Case No.                           Case Name:
2:17-cv-08937-DMG-FFM        Crytek GmbH v. Cloud Imperium Games Corp. et al.

### 1. Crytek's Position

**(Set forth in table below.)**

| MATTER | JOINT REQUESTED DATE | TIME |
|---|---|---|
| **TRIAL** ☐ Court ☒ Jury<br>Duration Estimate: 5-10 days | July 16, 2019<br>(Tuesday) | 8:30 a.m. |
| **FINAL PRETRIAL CONFERENCE ("FPTC")**<br>4 wks before trial | June 18, 2019<br>(Tuesday) | 2:00 p.m. |

| MATTER | TIME COMPUTATION | JOINT REQUESTED DATE |
|---|---|---|
| Amended Pleadings and Addition of Parties Cut-Off (includes hearing of motions to amend) | 90 days after scheduling conference | May 14, 2018 |
| Non-Expert Discovery Cut-Off (includes hearing of discovery motions) | at least 14 wks before FPTC | Jan. 15, 2019 |
| Motion Cut-Off (filing deadline) | at least 13 wks before FPTC | Feb. 12, 2019 |
| Initial Expert Disclosure & Report Deadline | at least 9 wks before FPTC | Feb. 19, 2019 |
| Rebuttal Expert Disclosure & Report Deadline | at least 5 wks before FPTC | March 19, 2019 |
| Expert Discovery Cut-Off (includes hearing of discovery motions) | at least 3 wks before FPTC | April 30, 2019 |
| Settlement Conference Completion Date | at least 4 wks before FPTC | May 28, 2019 |
| Motions in Limine Filing Deadline | at least 3 wks before FPTC | May 21, 2019 |
| Opposition to Motion in Limine Filing Deadline | at least 2 wks before FPTC | June 4, 2019 |
| Other Dates: (e.g., class cert motion cut-off, early mediation, etc.) | | (no proposed deadlines) |

**JOINT RULE 26(F) REPORT**

1

## 2.    Defendants' Position

2  Defendants are unable to participate in scheduling discovery and trial dates until there
3  is meaningful clarity regarding any of Crytek's claims against Defendants that are
allowed past the pleading stage.  At this stage, Defendants express no view on the
4  dates proposed above by Crytek.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Exhibit B</u>**

**DOCUMENT PRODUCTION FORMAT AGREEMENT**

**De-duplication.**  The parties will globally de-duplicate documents by MD5 hash across the universe of collected custodial documents for review and production. The Custodians metadata field will identify all custodians for whom any duplicate copies of a document are not being produced.  If custodians are added to the production after the initial de-duplication has occurred, or other changes occur that affect the completeness of the Custodians field, the parties will produce replacement metadata consistent with the new information.

**TIFF Images**. Unless otherwise stated in this Stipulation, each document will be produced in Group IV Tagged Image File Format ("TIFF"), regardless of whether such documents are stored in electronic or hard copy form.  Each TIFF image file should be one page and should reflect how the source document would appear if printed to hard copy in black-and-white.  Native files from which produced TIFF format files are created shall be preserved and remain unchanged.  Each TIFF format file of an electronic document will be endorsed by a unique Bates number and any applicable confidentiality legend on the bottom of each image page in such a way so as not to obliterate, conceal, or interfere with any information from the source document.

17

**JOINT RULE 26(F) REPORT**

**Load File(s)**.  Document productions shall include Concordance-compatible load file(s) that indicate document breaks of the TIFF images and additional fields as identified below ("Metadata Fields").

**File Name**.  Each document image file will be named with the unique Bates Number of the page of the document in question followed by the file extension "TIF." File names should not contain spaces or underscore symbols.

**Document Unitization**.  If a document is more than one page, the unitization of the document and any attachments and/or affixed notes will be maintained as they existed in the original document.

**Searchable Text**.  In addition to TIFF images, each production will include text files corresponding to the TIFF image files described above.

**Hard Copy Documents.**  Hard copy documents shall be converted to searchable text using Optical Character Recognition ("OCR") technology and searchable ASCII text (or Unicode text if the text is in a language requiring characters outside of the ASCII character set, if requested) files shall be produced. Each file will be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT."  A single document-level *.TXT file shall be produced for each document.  Text will not be produced in page-level text files or as a field in the Metadata Load File.

**Electronic Documents**.  The full text of each native electronic document shall be extracted ("Extracted Text") and produced in a text file.  The Extracted Text will

be provided in searchable ASCII text format (or Unicode text format if the text is in a language requiring characters outside of the ASCII character set, if requested) and will be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT."  A single document-level *.TXT file shall be produced for each document.  Text will not be produced in page-level text files or as a field in the Metadata Load File.

**Redactions.**  Searchable text files corresponding to the TIFF image files for redacted Electronic Documents and Hard Copy Documents will include Extracted Text or OCR text only to the extent that it will not disclose redacted information.

**Production Media**.  Documents will be produced on encrypted external hard drives or readily accessible computer or electronic media (the "Production Media"). Each piece of Production Media will identify: (1) the producing party's name; (2) the production date; (3) the highest confidentiality designation reflected on the documents contained within the production;  and (4) the Bates Number range of the materials contained on the Production Media.  For productions with a total volume of 5 GB or less (in a compressed or uncompressed transfer format), production by File Transfer Protocol ("FTP") or a similar file sharing service is an acceptable alternative to production by hard media and need not be accompanied by hard media.  Data produced through electronic transfer will also be encrypted.

**Native Production**.  The parties will produce spreadsheet files and presentations (*e.g.*, Excel, PowerPoint), and sound, video, and other files not practical

**JOINT RULE 26(F) REPORT**

for the TIFF format in native form or in another reasonably usable form.  Such native file productions shall include metadata as set forth below and a single-page TIFF image indicating that the associated file was produced in native form.  Each produced native file shall be named with a unique Bates Number (*e.g.*, ABC00000001.xls).  The confidentiality stamp on the TIFF image file should be considered as being applied to the linked native file.  To the extent either party believes that certain documents or groups of documents should be produced in an alternative format, the parties agree to meet and confer in good faith concerning such alternative production arrangements.

**Additional Native Production**.  The parties reserve the ability to request other files be produced in native form or in another reasonably usable form upon review of the other party's production.  The parties reserve their respective rights to object to any such request.

**Text Messages**.  The parties intend to meet and confer in good faith at a future date regarding the production of  mobile phone text messages on a custodian-by-custodian basis.

**Metadata**.  For all Electronic Documents, an ASCII text (or Unicode text if the text is in a language requiring characters outside of the ASCII character set) Load File shall be produced setting forth the data fields listed below ("Metadata Fields"), to the extent such metadata exists.  Additive fields such as Custodian must be produced even though not otherwise existing.  The parties further agree that other metadata

**JOINT RULE 26(F) REPORT**

fields may be requested by either party, to be produced on a document-by-document basis.

| DATA FIELD | DESCRIPTION |
| --- | --- |
| BEGDOC | Beginning Bates number assigned to each document |
| ENDDOC | Ending Bates number assigned to each document |
| BEGATTACH | Beginning Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| ENDATTACH | Ending Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| CUSTODIANS | The custodian (or multiple custodians for globally de-duped documents) of a document |
| RECORDTYPE | The type of record (*e.g.,* email, email attachment, edoc or calendar item) |
| APPLICATION | Document type as identified by metadata associated with the native document indicating the application that created the native document (*e.g.,* Google Docs, Microsoft Word 6.0, Gmail, Outlook Email, etc.) |
| EMAILSUBJECT | The subject line of a produced email |
| DOCAUTHOR | The Author of a document |
| FROM | The "From" line of a produced email |
| TO | The "To" line of a produced email |
| CC | The "CC" line of a produced email |
| BCC | The "BCC" line of a produced email |
| DATESENT | The date (MMDDYYYY) an email was sent |
| TIMESENT | The time that an email was sent |
| DATECREATED | The date that a document was created |
| DATELASTMOD | The date that a document was last modified |
| FILENAME | The filename of a produced document |
| TITLE | The title of a document |
| DOCEXT | The file extension (*e.g.,* .txt or .pdf) of a produced document |

21

| | |
|---|---|
| FILESIZE | The file size (in KB\MB\GB) of a produced document |
| NATIVEFILE | The location of the produced native version of a document |
| TEXTFILE | The location of the extracted text/OCR text for a document |
| CONFIDENTIALITY | The text of confidentiality language (per the parties' agreed-upon Protective Order) stamped on images of a document |

**JOINT RULE 26(F) REPORT**