UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | | Date | August 14, 2018 |
|---|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | | Page | 1 of 22 |
|---|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS - ORDER RE DEFENDANT'S MOTION TO DISMISS OR STRIKE [Doc # 20-3.]**

On January, 2, 2018, Plaintiff Crytek GMBH ("Crytek") filed the operative First Amended Complaint ("FAC") against Defendants Cloud Imperium Games Corp. ("CIG") and Roberts Space Industries Corp. ("RSI"), which alleges breach of contract and copyright infringement.  [Doc. # 18].  On January 5, 2018, Defendants filed the motion now before the Court ("MTD"), which seeks dismissal of the FAC or, in the alternative, a more definite statement and to strike certain portions of the FAC.  [Doc. ## 19, 20 (corrected version).]

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** the MTD.

## I.
## FACTUAL ALLEGATIONS[1]

Crytek, a German corporation, is a "video game developer, publisher, and technology provider."  FAC at ¶¶ 2, 6.  Central to this lawsuit is Crytek's CryEngine, a video game development platform and computer program.  *Id.* at ¶ 2.  Crytek owns the copyright for CryEngine and received its Certificate of Registration from the U.S. Copyright Office on December 11, 2017.  *Id.* at ¶ 6; Ex. 1 to FAC ("CryEngine Copyright Certificate") [Doc. # 18-1].[2]

In 2012, Defendants sought to develop a new game called Star Citizen, which would use Plaintiff's CryEngine development platform as its foundation.  FAC at ¶ 3.  Because Defendants sought to use CryEngine as Star Citizen's foundation, the parties agreed to a preliminary licensing arrangement to support Star Citizen's development.  *Id.*  This arrangement is at the heart of the dispute.

---

[1] The Court accepts all factual allegations in the FAC as true solely for the purpose of deciding the motion to dismiss, except where documents properly considered at this stage contradict those allegations.

[2] The CryEngine software was first published on February 23, 2012.  Ex. 1 to FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | | Date | August 14, 2018 |
|---|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | | Page | 2 of 22 |
|---|---|---|---|---|

Defendants initiated a crowdfunding campaign to raise money to develop Star Citizen. *Id.* at ¶ 13. As part of the crowdfunding campaign, Crytek created "demonstrations and proofs-of-concept" for Defendants, which Defendants used in the campaign. *Id.* at ¶ 14. On October 10, 2012, the crowdfunding campaign began. *Id.* at ¶ 13. Ultimately, the campaign raised over $150 million dollars. *Id.* at ¶ 3.

On November 20, 2012, Crytek and CIG entered into the Game License Agreement ("GLA") central to this suit. *Id.* at ¶ 15; Exhibit A to Goldman Decl. (GLA) [Doc. # 20-3 at 7–36].[3] The GLA defines the parties to the agreement as CIG and Crytek, but RSI signed Exhibit 4 to the GLA, which presents the terms and conditions of the GLA ("ToC"). *See* GLA at 1 (defining the parties to the GLA) [Doc. # 20-3 at 7], 16 (GLA signature line) [Doc. # 20-3 at 23], 21–24 (ToC) [Doc. # 20-3 at 28–31]. In defining several terms used in the GLA, including "Licensee," the ToC indicates that if "any provisions of the [GLA] conflict with any of the provisions of the[] ToC, the provisions of the[] ToC prevail." *Id.* at 21. The ToC defines "'Licensee' [to] mean[] the individual or entity executing th[e] ToC . . . that is licensing the Integrated Product under the [GLA]." *Id.* Plaintiff also contends both Defendants are subject to the GLA's requirements by virtue of their conduct. FAC at ¶ 54.

Specific contractual provisions and Defendants' alleged conduct relevant to those provisions are discussed further below.

**1.      Exclusive Use of CryEngine**

According to the FAC, the GLA gives Defendants "access to and use of" CryEngine for, and only for, Star Citizen.[4] *Id.* at ¶¶ 16, 19. In exchange, Defendants paid a "below-market" licensing fee. *Id.* at ¶ 16. Crytek alleges that it "made . . . clear" during negotiation of the GLA "that the game license would not cover anything more" than Star Citizen. *Id.* at ¶ 19.

As relevant here, the GLA's exclusive license provision provides that, subject to certain conditions, Crytek grants to CIG a "world-wide, license only . . . to exclusively embed CryEngine in [Star Citizen] and develop [Star Citizen]." GLA at § 2.1.2; *see also* FAC at ¶¶ 19–20 (alleging

---

[3] The Court will consider, through the incorporation by reference doctrine, two exhibits attached to the MTD: (1) the GLA, its exhibits, and amendments, which the FAC expressly references and relies upon; and (2) CIG's December 23, 2016 press release, which the FAC quotes. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[4] The recitals to the parties' formalized Game Licensing Agreement erroneously refer to the Game as "Space Citizen" not "Star Citizen." Neither party contests that the GLA applies to the game titled Star Citizen and, in any event, the GLA states that a pure name change "will still be deemed the same Game." GLA at § 1.6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | | Date | August 14, 2018 |
|---|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | | Page | 3 of 22 |
|---|---|---|---|---|

that this section of the GLA "contained a promise by Defendants to use CryEngine for the development of only one video game" and "limits the use of the CryEngine computer program to a single video game called Star Citizen").

Exhibit 2 to the GLA also provides that Star Citizen "does not include any content being sold and marketed separately, and not being accessed through the Star Citizen Game client," such as "a fleet battle RTS sold and marketed as a separate, standalone PC game that does not interact with the main Star Citizen game (as opposed to an add-on / DLC to [Star Citizen])."  GLA at Ex. 2.[5]  Exhibit 2 also lists "Squadron 42" as a "[f]eature[]" of Star Citizen.  *Id.*

On September 4, 2014, Crytek and CIG entered into an Amendment to the GLA.  *See* Ex. B to Goldman Decl. ("Amendment") [Doc. # 20-3 at 33–36].  The Amendment altered the language of GLA's original section 2.1.1 so that the exclusive license provision reads, "Crytek grants to [CIG] a world-wide, license only . . . to non-exclusively develop, support, maintain, extend and/or enhance CryEngine such right being exclusive only with respect to [Star Citizen], and non-sub-licensable except as set forth" elsewhere in the GLA.  *Id.*

In December 2015 and January 2016, Defendants announced that Squadron 42, a single-player video game involving space combat, would be sold separately from Star Citizen as a stand-alone video game.  FAC at ¶¶ 21–23.  In early February 2016, Crytek notified Defendants that this plan violated the GLA because, according to Crytek, the license only permitted Defendants to embed CryEngine in Star Citizen and not in any other game.  *Id.* at ¶ 24.  That month, Defendants moved forward with their plan to distribute Squadron 42 separately, despite the limited license. *Id.* at ¶ 25.  In December 2016, Defendants announced that both Star Citizen and Squadron 42 were in development, backed by the crowd-funding effort.  *Id.* at ¶ 26.  Defendants have not compensated Crytek for CryEngine's use in Squadron 42.  *Id.* at ¶ 27.  Thus, says Crytek, "Defendants are intentionally and willfully using CryEngine without a license and in violation of copyright laws."  *Id.* at ¶ 25.

### 2.    Use of Other Software in Star Citizen

Relatedly, the FAC alleges that the exclusive license contemplated by the GLA was also intended to limit Star Citizen's video game platform foundation.  In other words, the parties not only agreed that Defendants would use CryEngine in Star Citizen, and Star Citizen alone, but also that no other software "engine" would be used in Star Citizen.  *See id.* at ¶¶ 36–37 (citing and interpreting section 2.1.2 of the GLA).

---

[5] The GLA does not appear to define "RTS" or "DLC."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 4 of 22 |
|---|---|---|---|

Yet, on December 23, 2016, Defendants announced in a press release that they were using a different engine in Star Citizen—the Amazon Lumberyard video game engine. *Id.* at ¶ 38; Ex. C to Goldman Decl. ("Press Release") [Doc. # 20-3 at 39–41].  Plaintiff contends that this constitutes a breach of the GLA. *Id.* at ¶ 39.

### 3.    Display of Crytek's Trademark and Copyright

Under the GLA, Defendants allegedly agreed to display Crytek's trademarks and copyright notices in Star Citizen's video game and related marketing materials. *Id.* at ¶ 16; *see also* GLA at §§ 2.8.1–2.8.3 (provisions governing display of Crytek's intellectual property).  Plaintiff contends this aspect of the GLA is "a critical component" of the agreement. FAC at ¶ 33.  In support, Crytek points out that the licensing fee charged to Defendants reflects a "substantial" reduction from Crytek's usual licensing fees, and that the promotional value of the game justified the reduced fee. *Id.* at ¶ 35.

Defendants initially complied with the GLA's intellectual property-display terms. *Id.* at ¶ 32.  Shortley after September 24, 2016, however, Defendants removed the trademark and copyright notices from Star Citizen's game and marketing materials, in violation of the GLA. *Id.* at ¶¶ 33–34.

### 4.    Collaboration

Defendants also allegedly agreed to collaborate with Crytek on CryEngine's development. *Id.* at ¶¶ 4.  For example, the GLA requires CIG to provide Plaintiff annually, during Star Citizen's development period, with "any bug fixes, and optimizations made to the CryEngine's original source code files . . . as a complete compilable version."  GLA at § 7.3; FAC at ¶¶ 40–41 (discussing this provision).  Recognizing that this technology, coined Reverse Technology Transfer, would be CIG's property, this provision grants Crytek a "non-exclusive, royalty-free and perpetual license" to the technology.  GLA at § 7.3.

On November 15, 2015, Crytek requested from Defendants these bug fixes and optimizations, but Defendants "did not make a good faith effort" to provide Crytek with the required reverse technology. FAC at ¶ 42.  A little over a year later, on November 24, 2016, Crytek informed Defendants that they were thus in breach of section 7.3 of the GLA. *Id.* at ¶ 43. Defendants said that they were "ready and willing" to comply with this part of the GLA, but they never provided Plaintiff with the Reverse Technology Transfer. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 5 of 22 |
|---|---|---|---|

On June 22, 2017, Crytek sent Defendants a letter requesting the Reverse Technology Transfer. *Id.* at ¶ 44. As of the filing of the FAC, Defendants had not yet complied. *Id.*

### 5.      Protection of Crytek's Intellectual Property

Finally, the GLA allegedly requires Defendants to ensure protection of Crytek's intellectual property. *Id.* at ¶ 4. The GLA expressly restricted CIG's use of CryEngine by precluding Defendant CIG from "publish[ing] or distribut[ing] the CryEngine in any way, be it in source code or object code," except as expressly permitted in the agreement. GLA at § 2.2.1; *see also id.* at § 2.2.2 (prohibiting CIG from "us[ing] CryEngine in any manner which may disclose the CryEngine source code or other Crytek proprietary information to any third party not otherwise authorized"). The GLA permitted CIG to subcontract the development of Star Citizen to third party developers subject to Crytek's prior written approval and the execution of non-disclosure and non-competition agreements between the third party developer and Plaintiff. *Id.* at § 2.6.

On May 6, 2015, Defendants posted a series of online videos entitled "Bugsmashers." FAC at ¶ 50. The videos contain excerpts of CryEngine's confidential source code, which Plaintiff alleges constitutes a breach of the GLA. *Id.*

On August 26, 2017, a partnership between Defendants and third-party developer Faceware Technologies was announced. *Id.* at ¶ 51. Crytek alleges that Faceware has received access to CryEngine's underlying technology, including source code, as a result of the partnership. *Id.* Defendants allegedly never disclosed or obtained prior written approval for this third party's involvement in Star Citizen's development. *See id.* Plaintiff contends this constitutes a breach of the GLA. *Id.*

## II.
## LEGAL STANDARD

### A.      Dismissal Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 6 of 22 |
|---|---|---|---|

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations in original)).

**B.     Striking Allegations Under Rule 12(f)**

Federal Rule of Civil Procedure 12(f) allows the Court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014); *see also Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)) (determining that "[m]otions to strike are generally disfavored" and should not be granted unless the matter stricken has no possible bearing on the subject matter of the litigation). Ultimately, however, granting a motion to strike is subject to the district court's sound discretion. *Holmes*, 966 F. Supp. 2d at 930; *see also Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

**III.**
**DISCUSSION**

**A.     Defendants' Request for Dismissal**

Defendants first assert that Crytek fails to state a claim for breach of contract. Defendants advance three theories in support: (1) RSI is not a party to the GLA; (2) the GLA expressly permits the conduct that Crytek contends constitutes a breach; and (3) the GLA expressly precludes the claim for damages. The Court addresses each argument in turn, and then turns to Defendants' challenges to Plaintiff's claim for copyright infringement. Lastly, if necessary, the Court turns to Defendants' request to strike allegations in the FAC.

Because the GLA is "governed and construed by" California law, California law guides the Court's analysis of the breach of contract claim. GLA at § 10.8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 7 of 22 |
|---|---|---|---|

### 1.     RSI is a Party to the Contract

Defendants argue that because RSI did not sign the GLA, and the GLA and Amendment define the "parties" as Crytek and CIG, RSI is not a party to the GLA.  Thus, say Defendants, the Court should dismiss the breach claims as alleged against RSI.  In response, Crytek points to the fact that RSI signed the ToC, and also argues that RSI's other conduct—including publishing the Press Release and Bugsmashers video series, and distributing and marketing Star Citizen with and without display of Crytek's trademark and copyright notices—amounts to the manifestation of acceptance of the GLA.  The Court first considers whether RSI's signature on the ToC makes it a party to the GLA.

The goal of contract interpretation is to determine and enforce the parties' mutual intent at the time the contract was formed.  *Thor Seafood Corp. v. Supply Mgmt. Servs.*, 352 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005).  The language of the contract alone governs the parties' intention and the contract's meaning, so long as the language is clear, explicit, and does not involve an absurdity.  Cal. Civ. Code §§ 1638, 1639, *see Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18, 19 (1995) ("Courts will not strain to create ambiguity where none exists.").

Here, the contractual language at issue is clear, and RSI's signature to the ToC indicates that RSI was a party to the GLA.  As explained in the Factual Background, the ToC's term definitions prevail in the face of a conflict between the ToC's terms and those presented and defined in the GLA.  GLA at 21 [Doc. # 20-3 at 28].  "Licensee" in the ToC means the signatories to the ToC, i.e., RSI and CIG.  *See id.* at 21 (definition) [Doc. # 20-3 at 28], 24 (signature) [Doc. # 20-3 at 31].  "Licensee" as defined in the GLA is only CIG.  Thus, the terms in the ToC prevail, and "Licensee" as used in the GLA means both RSI and CIG.  Moreover, the Amendment did not alter any key terms as set forth in the GLA and its exhibits, including the ToC.  *See* Amendment at ¶¶ 1 ("Definitions[—]All capitalized terms herein shall be defined as set forth in the [GLA]."), 7.1 ("Except as expressly set forth herein, the [GLA] shall remain in full force and effect and is hereby ratified.").

Because Defendants are both parties to the GLA and other governing documents by virtue of RSI's signing the ToC, the Court **DENIES** the MTD insofar as it seeks dismissal of Plaintiff's claims as to RSI.  The Court need not consider Plaintiff's remaining arguments as to why RSI is party to the GLA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | | Date | August 14, 2018 |
|---|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | | Page | 8 of 22 |
|---|---|---|---|---|

**2.      Some of Defendants' Alleged Conduct Constitutes Breach of Contract**

Defendants' primary argument against breach is that the GLA expressly allows their conduct.  The Court turns first to the parties' dispute over Defendants' ability to use CryEngine, and the limits to such use, if any.

**a.      The Scope of the Grant of License to Embed CryEngine**

Part of Crytek's claim for breach of contract is predicated on the parties' alleged agreement that Defendants would develop Star Citizen using only the CryEngine software, pointing to section 2.1.2 of the GLA's "exclusively" language.  *See* FAC at ¶¶ 36–39.  Defendants move to dismiss this aspect of the breach claim, contending that section 2.1.2 of the GLA grants them, and only them, the right to embed CryEngine in Star Citizen.  It does not, according to Defendants, create the obligation to develop Star Citizen with only the CryEngine platform and no other.  As amended, the grant of license states,

> 2.1.   Grant:  Subject to strict and continuous compliance with the restrictions in the [GLA] and the timely payment . . . by Licensee [Defendants], Crytek grants to Licensee a world-wide, license only:

> 2.1.1.   to non-exclusively develop, support, maintain, extend and/or enhance CryEngine such right being exclusive only with respect to [Star Citizen], and non-sub-licensable except as set forth in [sections] 2.5 and 2.6 below;

> 2.1.2.   to exclusively embed CryEngine in [Star Citizen] and develop [Star Citizen] which right shall be sub-licensable pursuant to [section] 2.6;

> 2.1.3.   to exclusively manufacture, market, promote, sell, license, publish and exploit [Star Citizen] in any way which right shall be freely sub-licensable.

> . . . .

> 2.2   Restrictions on Use:  Except as expressly permitted under the [GLA], Licensee shall not:  [five clauses limiting Defendants' use of CryEngine].

The contested issue is the meaning of "exclusively" in section 2.1.2's grant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 9 of 22 |
|---|---|---|---|

Under California law, the contract's meaning must be derived from the whole contract and individual provisions must be interpreted together "in order to give effect to all provisions" and avoid rendering some meaningless. *Maples v. SolarWinds*, Inc., 50 F. Supp. 3d 1221, 1228 (N.D. Cal. 2014) (quoting *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (2011)). When the contract's language is disputed, the court must decide whether the language is "reasonably susceptible to the interpretation urged by the party." *Halicki Films, LLC v. Sanderson Sales and Marketing*, 547 F. 3d 1213, 1223 (9th Cir. 2008) (quoting *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.,* 107 Cal. App. 4th 516, 524 (2003)). The interpretation of a contract is a question of law "unless the interpretation turns upon the credibility of extrinsic evidence." *Thor*, 352 F. Supp. 2d at 1131; *accord Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1172 (S.D. Cal. 2015) ("[I]f a contract provision is capable of two or more reasonable interpretations, the provision is ambiguous, and the court should deny the motion to dismiss.").

Additionally, the words of a contract are to be understood in their ordinary and popular sense that a lay person would attach to them. *Valencia v. Smyth*, 185 Cal. App. 4th 153, 162 (2010). When parties intend to use the word in a technical sense or apply a special meaning based on usage, however, that meaning of the word or words controls. *See* Cal. Civ. Code. §§ 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."), 1645 ("Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense.").

The GLA's plain language and context support Defendants' technical interpretation of "exclusively." A license is a grant of permission or authority to do any particular thing. *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007). In the copyright context, "exclusive" and "nonexclusive" qualify the scope of the licensor's grant and therefore the licensee's rights as against third parties. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1004 (9th Cir. 2015) (holder of a nonexclusive license "has been granted rights only *vis-à-vis* the licensor, not *vis-à-vis* the world," whereas holder of an exclusive license "has been granted rights *vis-à-vis* the world"). As the Ninth Circuit explained recently, "the essence of an 'exclusive' license under the [Copyright] Act is that 'the copyright holder permits the licensee to use the protected material for a specific use and *further promises that the same permission will not be given to others*.'" *Id.* at 1005 (emphasis added) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996)) ("Under the [relevant agreements], [plaintiff] is the 'sole and exclusive agent and representative with respect to the Licensing of any and all uses' of the photographs. That is, the photographers have promised that [plaintiff], and only [plaintiff], will have the power, as the photographers' licensing agent, to authorize third parties to reproduce,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 10 of 22 |
|---|---|---|---|

distribute, and display the photographs."). Thus, in the GLA—a licensing agreement concerning the use of a work protected in copyright—"exclusively" retains its specialized, legal meaning. Accordingly, section 2.1.2's grant to Defendants "to exclusively embed CryEngine in [Star Citizen]" means that only Defendants have the right to use Crytek's software in the manner prescribed. The term is not used to compel Defendants to use the software.

The GLA's structure also supports this interpretation. The opening recitals indicate that Defendants want to use CryEngine and Crytek wants to grant Defendants a license to use the software. GLA at 2 [Doc. # 20-3 at 8]. Section 1 follows with definitions. *Id.* at § 1. Immediately thereafter, section 2 governs the scope of the license grant, with section 2.1 governing the "[g]rant" of a number of permitted uses of CryEngine, some exclusive and some non-exclusive. *See id.* at §§ 2.1.1–2.1.4. Section 2.2 next outlines Defendants' "[r]estrictions on [u]se." *Id.* at §§ 2.2.1–2.2.5. As Defendants argue, this structure strongly suggests that section 2.1 protects, rather than limits, Defendants' authority to use CryEngine.

Further, this interpretation of "exclusively" gives full effect to the GLA's surrounding provisions. For example, section 2.1.1's non-exclusive grant allows Defendants to "develop, support, maintain, extend and/or enhance CryEngine" without precluding Crytek from permitting others to improve upon the software as well. *Id.* at § 2.1.1. Yet, the grant of authority is expressly "exclusive" to Defendants "with respect to [Star Citizen]" because Defendants own Star Citizen and Crytek presumably lacks the independent authority to grant third parties the right to improve any software in connection with Defendants' game. *Id.* In fact, Crytek appears to agree with this point, even if Plaintiff misunderstands why it supports Defendants' interpretation. *See* Opp'n at 15 ("Defendants' interpretation of the word 'exclusively' in Section 2.1.2 is that Crytek gave only Defendants—not some unrelated third party—the right to embed CryEngine in Defendants' game Star Citizen. That is absurd: How could Crytek license a third party to do anything at all with Defendants' software?" (citation omitted)).

Crytek points to section 2.4 in support of its argument that section 2.1.2's grant prohibits Defendants from using any other software platform in Star Citizen. *See id.* at § 2.4 ("During the Term of the License, or any renewals thereof, and for a period of two years thereafter, Licensee, its principals, and Affiliates shall not directly or indirectly engage in the business of designing, developing, creating, supporting, maintaining, promoting, selling or licensing (directly or indirectly) any game engine or middleware which compete with CryEngine."). Yet, section 2.4 precludes Defendants from engaging in certain competitive conduct regardless of sections 2.1's and 2.2's directives. Indeed, section 2.4 supplements the preceding contractual provisions. Accordingly, as explained above, Defendants' interpretation of "exclusively" in section 2.1.2 of

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 11 of 22 |
|---|---|---|---|

the GLA best gives meaning to section 2.4 rather than rendering it, in part, superfluous, as Plaintiff's definition does.[6]

Because section 2.1.2 of the GLA neither requires Defendants to embed CryEngine in Star Citizen nor precludes Defendants from embedding other software platforms into the game, Plaintiff's cause of action for breach of contract, insofar as it is predicated on section 2.1.2, fails. The Court therefore **GRANTS** the MTD in connection with this aspect of Plaintiff's cause of action for contract breach.

### b.    Obligation to Display Crytek's Trademarks and Copyright Notices

Defendants next argue that Crytak cannot maintain a claim for breach of contract in connection with Defendants' non-inclusion of Plaintiff's trademarks and copyright notices in Star Citizen and the game's marketing materials. Specifically, Defendants contend that sections 2.8.1, 2.8.2, and 2.8.3 of the GLA were "subject to an implied condition that [Defendants] actually use [CryEngine] in [Star Citizen]" under California Civil Code section 1655. MTD Memo. at 17 [Doc. # 20-2] (quoting Cal. Civ. Code § 1655 ("Stipulations which are necessary to make a contract reasonable or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention.")). Plaintiff counters that, in light of its technology's "foundational" role in Defendants' software, Crytek's intellectual property notices should appear on the game regardless of CryEngine's use. *See* Opp'n at 19.

The Court need not decide at this juncture whether Defendants' obligations with regard to the display of Crytek's intellectual property was subject to the implied condition precedent that Defendants use CryEngine. The FAC alleges that by September 2016, Defendants minimized Crytek's contribution to Star Citizen and "[s]hortly thereafter" removed the trademarks and copyright notices from the game and its marketing materials. FAC at ¶¶ 33–34. The FAC also

---

[6] In this regard, section 2.4 may support Plaintiff's theory of breach in connection with Defendants' alleged use of another software engine in Star Citizen. *See, e.g.*, FAC at ¶¶ 38–39; *see also* Opp'n at 15 ("[E]ven if the Court were to construe Section 2.1.2 to permit Defendants to abandon CryEngine in favor of another engine . . . that same abandonment and concomitant development . . . of that other engine would constitute breaches of Section 2.4."). The MTD does not move to dismiss any cause of action for breach in connection with section 2.4 of the GLA, and the FAC predicates no theory of liability on that section. Indeed, the FAC does not even mention section 2.4. Because Crytek did not allege any cause of action for breach in connection with section 2.4 of the GLA, and Defendants did not move for dismissal with regard to that provision, the Court will not consider the merits of such a claim. Thus, to the extent that Defendants' Reply seeks dismissal of any alleged claim for breach predicated on section 2.4, the Court does not consider the argument. *See FT Travel—NY, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) (collecting cases on the rule that courts decline to consider arguments raised for the first time in a reply brief).

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | | Date | August 14, 2018 |
|---|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | | Page | 12 of 22 |
|---|---|---|---|---|

alleges that Defendants announced in December 2016 that they had abandoned the use of CryEngine in Star Citizen. *Id.* at ¶ 38; *see also* Press Release (dated December 23, 2016). Thus, there is a factual question as to timing—specifically, when the trademark and copyright notices were removed from Star Citizen and its marketing materials, and when Defendants switched game development platforms.

In light of this uncertainty and the Court's obligation to construe the FAC in Plaintiff's favor, Crytek has sufficiently alleged a cause of action for breach of contract with respect to Defendants' obligation to display Plaintiff's intellectual property notices. The MTD is therefore **DENIED** insofar as it is premised on California Civil Code section 1655.

### c.      Use of CryEngine in Squadron 42

As alleged in the FAC, Defendants used CryEngine to "market, develop, and incentivize funding" for two separate games—Star Citizen and Squadron 42—in violation of section 2.1.2 of the GLA. FAC at ¶¶ 19–27, 55–56. Defendants move to dismiss this aspect of the cause of action, contending that the GLA's recitals and Exhibit 2 permit CryEngine's use in Squadron 42.

Section 2.1.2 allows Defendants to embed CryEngine in "the Game." GLA at § 2.1.2. The GLA's second recital states, "WHEREAS Licensee desires to use, and Crytek desires to grant the license to use, the 'CryEngine' for the game currently entitled '[Star] Citizen' and its related space fighter game 'Squadron 42,' together hereafter the 'Game,' pursuant to the terms and conditions of" the GLA. *Id.* at 2 [Doc. # 20-3 at 8].

Section 1 defines the terms in the GLA, including "Game." *See id.* at § 1.6. Section 1.6 defines "Game" as "the interactive software product developed and published for the certain platforms as further defined in Exhibit 2 attached hereto and incporated by reference herein." *Id.*

Exhibit 2 of the GLA, entitled "Description of the Game with platform(s)," states:

For the avoidance of doubt, the Game *does not* include any content being sold and marketed separately, and not being accessed through the Star Citizen client, e.g. a fleet battle RTS sold and marketed as a separate, standalone PC game that does not interact with the main Star Citizen game (as opposed to an add-on/DLC to the Game).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 13 of 22 |
|---|---|---|---|

*Id.* at 18 [Doc. # 20-3 at 25] (emphasis added). Exhibit 2 goes on to list "Squadron 42: Single Player – Offline or Online ((Drop in / Drop out co-op play)" as one of the Game's "[f]eatures." *Id.*

The recital suggests that the parties intended to have CryEngine embedded in both Star Citizen and Squadron 42, and Exhibit 2 calls Squadron 42 a mere feature of Star Citizen. Yet, Exhibit 2, which forms part of the GLA's Definitions, makes clear—"[f]or the avoidance of doubt"—that the "Game" as used in the GLA does not include any "separate, stand-alone" game "that does not interact with the main Star Citizen game." *Id.*; *see also Emeryville Redev. V. Harcros Pigments, Inc.*, 101 Cal. App. 4th 1083, 1101 (2002) ("The law has long distinguished between a 'covenant' which creates legal rights and obligations, and a 'mere recital' which a party inserts for his or her own reasons into a contractual instrument. Recitals are given limited effect even as between the parites.").

According to Plaintiff, Defendants announced in December 2015 and January 2016 that Squadron 42 would be sold separately as a stand-alone game, apart from Star Citizen, and they began selling Squadron 42 as a separate game in February 2016. FAC at ¶¶ 22–23, 25. If ultimately proven, the use of CryEngine in the stand-alone game of Squadron 42 would constitute breach of the GLA.

While Defendants point to a December 2016 press release that purports to establish Defendants' use of the Amazon Lumberyard game engine, not CryEngine, in Star Citizen and Squadron 42, there is nothing currently before the Court that contradicts Plaintiff's allegations regarding Defendants' late 2015 and early 2016 use of CryEngine in the stand-alone game of Squadron 42. It may well turn out in discovery that CryEngine was not used in a separate, stand-alone Squadron 42 game, but the Court must take as true the FAC's allegations unless contradicted by materials properly before the Court at the motion-to-dismiss stage.[7] Based on the current record, Plaintiff has stated a claim for breach of contract in connection with the alleged unauthorized use of CryEngine in the stand-alone game of Squadron 42.

---

[7] The Press Release's statement (in December 2016) that Squadron 42 was "in development" does not wholly contradict Crytek's allegations that the game was being offered for purchase as a stand-alone game 10 months earlier. Press Release; FAC at ¶ 25. Given the uncertain nature of the video or computer game software at issue, it is not unreasonable to infer that Defendants may have sold one version of Star Citizen or Squadron 42 in early 2016 with the CryEngine software while continuing to develop and update the games later that same year using a different game engine, particularly given that the Court at this stage of litigation must construe all allegations and inferences therefrom in favor of Plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 14 of 22 |
|---|---|---|---|

The Court **DENIES** the MTD insofar as it seeks dismissal of Plaintiff's cause of action for breach of contract in connection with CryEngine's unauthorized use in Squadron 42.

### 3.      The GLA Allows Plaintiff's Contract Claim for Damages

Next, Defendants move to dismiss Crytek's contract claims based on section 6.1.4 of the GLA, arguing that the provision prevents monetary recovery for any action in contract. Crytek argues that section 6.1.4 allows either party to recover damages for intentional or grossly negligent breaches of contract. As relevant, the GLA states:

> INDEMNIFICATION DISCLAIMER. Except for intentional acts or omissions or gross negligent acts, in no event shall either party hereto be liable for any damages, including but not limited to indirect, incidental, special or consequential damages, or damages for loss of profits, revenue, data or use, incurred by either party or any third party, whether in an action in contract or tort (including negligence) or otherwise, even if the relevant party has been advised of the possibility of such damages. Crytek's maximum aggregate liability to Licensee in connection with or in any manner related to this agreement (whether in an action in contract or tort [including negligence, except gross negligence] or otherwise) will be limited to the total amount paid by or on behalf of Licensee to Crytek under this agreement. The foregoing allocation of risk is reflected in the amount of the compensation contemplated under this agreement.

GLA at § 6.1.4.[8]  This language appears in section 6 of the GLA, which is entitled "Limited Warranty and Indemnification." *Id.* at § 6.

Defendants argue that the "exception 'for intentional acts or omissions' applies solely to claims sounding in tort, not contract." MTD Memo. at 20. In support, Defendants cite to case law differentiating tort claims and remedies from those sounding in and stemming from contract. *See id.* at 20–21. Plaintiff counters by distinguishing each case and pointing out that Defendants' interpretation of section 6.1.4 renders mere surplusage the portion of the indemnification clause that limits Crytek's liability.

Plaintiff's reasoning prevails. Section 6.1.4's express language, "in no event shall either party hereto be liable for any damages . . . *whether in an action in contract or tort*," defies Defendants' position on the exception as being applicable only to tort claims. GLA at § 6.1.4

---

[8] In the GLA, this language is written in all capital letters. The Court has modified the typeface for ease of reading.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 15 of 22 |
|---|---|---|---|

(emphasis added). Further, as explained above, the words of a contract are to be understood in the ordinary and popular sense that a lay person would attach to them unless the parties clearly intend to use words in a technical sense or to assign them special meaning. There is no indication anywhere in the GLA that the parties to the agreement intended for the exception language— "except for intentional acts or omissions or gross negligent acts"—to reflect purportedly "well-established principles distinguishing between contract and tort." MTD Memo. at 20.

Moreoever, as Crytek argues, Defendants' interpretation of the exception language renders the provision limiting Crytek's maximum aggregate liability meaningless, which California contract law seeks to avoid. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, *so as to give effect to every part*, if reasonably practicable, each clause helping to interpret the other." (emphasis added)). The GLA's anticipation of actions "in contract" predicated on intentional or grossly negligent conduct further bolsters Plaintiff's interpretation. *See* GLA at § 6.1.4 ("Crytek's maximum aggregate liability to Licensee in connection with or in any manner related to this agreement (*whether in an action in contract* or tort [including negligence, except gross negligence] or otherwise) . . . ." (emphasis added)).

In any event, each case cited by Defendants is distinguishable. Those cases discuss the unavailability of tort remedies for breach of contract claims when here Crytek does not seek tort remedies in connection with Defendants' alleged breaches. *See, e.g., Erlich v. Menezes*, 21 Cal. 4th 543, 551–58 (1999) (homeowner plaintiffs could not recover emotional distress damages in connection with contractor's negligent performance under the contract, and outlining when a tortious breach of contract may be found and give rise to tort damages); *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 102–03 (1995) (overruling Court's earlier opinion in *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.*, 36 Cal. 3d 752 (1984), "in favor of a general rule precluding tort recovery for noninsurance contract breach, at least in the absence of violation of" an independent tort duty "other than the bad faith denial of the existence of, or liability under, the breached contract");[9] *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510, 514–18 (1994) (only contract damages recoverable in action for breach of contract, and party to a contract cannot be liable for tortious interference and conspiracy to interfere with the contract it breached). None of the cases holds that the exception language present in the GLA applies exclusively to tort claims. Nor does any case Defendants cite provide that parties to an agreement are forbidden from contractually relieving themselves of liability for monetary damages for mere accidental or negligent breaches of contract.

---

[9] As Plaintiff points out, Defendants cite this case for the proposition that "the intentional breach of contract has come to be viewed as a morally neutral act, as exemplified in Justice Holmes's remark that '[t]he duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it—and nothing else,'" which appears in Justice Mosk's concurring and dissenting opinion, not the majority. *Freeman*, 11 Cal. 4th at 106.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 16 of 22 |
|---|---|---|---|

Well established California law on indemnity contracts further supports the Court's interpretation of the indemnification disclaimer at issue. *See* Cal. Civ. Code § 2772 ("Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."). While under California law, "the motive of the breaching party *generally* has no bearing on the scope of damages that the injured party may recover for breach," California law makes clear that parties to an indemnity contract "have great freedom to allocate such [indemnification] responsibilities as they see fit" subject only to public policy concerns. *Crawford v. Weather Shield Mfg. Inc.*, 44 Cal. 4th 541, 551 (2008); *Foley*, 47 Cal. 3d at 699. Indeed, it is commonplace for such agreements to account for negligent and non-negligent conduct. *See Crawford*, 44 Cal. 4th at 551 ("[Parties to an indemnity contract] may agree that the promisor's indemnity and/or defense oblitations will apply only if the promisor was negligent, or, conversely, even if the promisor was not negligent."); *E.L. White, Inc. v. City of Huntington Beach*, 21 Cal. 3d 497, 506–07 (1978) (where indemnity obligations arise from express contractual language, there is "great freedom of action to the parties in establishment of the indemnity arrangements," including ability to "establish a duty in the indemnitor to save the indemnity harmless from the results of even active negligence on the part of the latter"); *Continental Heller Corp. v. Amtech Mech. Servs., Inc.*, 53 Cal. App. 4th 500, 505 (1997) ("The language of the agreement leaves no doubt the parties intended Amtech should indemnify Continental irrespective of whether Continental's loss arose by reason of Amtech's negligence or for any other reason except for the sole negligence or willful misconduct of Continental.").

In sum, section 6.1.4 does not preclude Plaintiff's claims for breach of contract. The Court therefore **DENIES** the MTD insofar as it is premised on section 6.1.4.

### 4.    The FAC States a Claim for Copyright Infringement

As relevant to the MTD, Crytek alleges that Defendants infringed on its copyright by using CryEngine in Squadron 42 (when Squadron 42 was sold as a stand-alone game separate and apart from Star Citizen), use which falls outside of the scope of the GLA and therefore amounts to willful copyright infringement. FAC at ¶¶ 25, 62–63, 65–70. CIG and RSI defend against this claim by asserting that the GLA "expressly authorized" their "prior use of [CryEngine] to develop Squadron 42," and that they are not using CryEngine in either Star Citizen or Squadron 42 as of December 23, 2016. MTD Memo. at 22–23.

To establish copyright infringement based on breach of a licensing agreement, the plaintiff must prove that "(1) the copying . . . exceed[ed] the scope of the defendant's license; and (2) the copyright owner's complaint is grounded in an exclusive right of copyright." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 940 (9th Cir. 2010). Defendants' sole challenge to these elements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | | Date | August 14, 2018 |
|---|---|---|---|---|
| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | | Page | 17 of 22 |

is the factual contention that they are not using CryEngine in Squadron 42. Yet, for the reasons stated in Section III.A.2.c, *supra*, Plaintiff has alleged a plausible claim for copyright infringement under the GLA based on Defendants' alleged use of CryEngine without a license.

More specifically, the Ninth Circuit has explained that "if the licensee acts outside the scope of the license, the licensor may sue for copyright infringement." *MDY*, 629 F.3d at 939. "[C]ontractual terms that limit a license's scope [are] 'conditions,' the breach of which constitute copyright infringement," whereas "all other license terms [are] 'covenants,' the breach of which is actionable only under contract law. . . . To establish copyright infringement, then, [the plaintiff] must demonstrate that the violated term . . . is a condition rather than a covenant." *Id.* The relevant provision, section 2.1.2, grants Defendants the exclusive right to embed CryEngine into "the Game" and is therefore a condition because it limits the scope of Defendants' license to use CryEngine in "the Game," and not in any stand-alone software such as Squadron 42, as discussed above. *See* GLA at § 2.1.2; Ex. 2 to GLA. Defendants' alleged embedding of CryEngine into Squadron 42, when Squadron 42 was sold and marketed as a stand-alone game separate from Star Citizen, was thus an act outside of the license's scope and therefore constitutes copyright infringement. Further, there is no doubt that the requisite "nexus between the condition [section 2.1.2] and the licensor's exclusive rights of copyright" is present here. *MDY*, 629 F.3d at 941.

Because Crytek sufficiently alleges copyright infringement, the Court **DENIES** the MTD on this issue.

**5.     Dismissal for Prayers for Relief**

Finally, Defendants move to dismiss Crytek's prayer for monetary damages, injunctive relief, statutory damages and attorney's fees, and punitive damages. The Court briefly addresses each challenged remedy in turn.

**a.     Monetary Damages**

Defendants assert in a single conclusory sentence that section 6.1.4 of the GLA precludes Crytek's recovery of monetary damages. *See* MTD at 23. For the same reasons discussed in Section III.A.3 of this Order, *supra*, the MTD is **DENIED** in connection with Crytek's prayer for monetary damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | | Date | August 14, 2018 |
|---|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | | Page | 18 of 22 |
|---|---|---|---|---|

  **b.**  **Injunctive Relief**

  Defendants argue that section 10.7 of the GLA precludes Crytek's request for injunctive relief. *See* FAC at Prayer for Relief ¶ b (requesting the entry of "a permanent injunction enjoining and restraining Defendants from continuing to possess or use the Copyrighted Work [CryEngine, *see* FAC at ¶ 6] and a preliminary and permanent injunction requiring Defendants, and all those acting in concert or participation with Defendants, from infringing or encouraging, aiding or abetting others to infringe the Copyrighted Work [CryEngine]"); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1208 (C.D. Cal. 2007) (Copyright Act empowers a court to grant a temporary and permanent injunction "as it may deem reasonable to prevent or restrain infringement of a copyright." (quoting 17 U.S.C. § 502(a))). As relevant here, the GLA states that "under no circumstances . . . shall Crytek be entitled to enjoin the publishing or other exploitation of the Game." GLA at § 10.7; *see also id.* ("[W]here a breach of certain provisions of this Agreement may cause either Party irreparable injury or may be inadequately compensable in monetary damages, either Party will be entitled to obtain equitable relief . . . ."). Notably, Plaintiff's request that the Court stop and preclude Defendants from continued possession, use, and infringement of CryEngine in violation of copyright law does not run afoul of the plain language of section 10.7, which appears only to preclude Crytek from interfering with Star Citizen.

  Pointing to the standard for a preliminary injunction, Defendants also argue that the FAC's factual allegations cannot support any claim for injunctive relief. As Defendants are surely aware, there is not currently any pending motion for permanent or preliminary injunction in this case. Crytek simply includes injunctive relief among its prayers for relief in the complaint to provide notice of the remedies it may seek throughout the litigation. In any event, Defendants are incorrect. Crytek sufficiently pleads facts that plausibly support entitlement to injunctive relief. For example, the FAC alleges that Defendants published a series of online videos that contained confidential CryEngine information, and Defendants entered into a partnership with a third-party developer that received access to CryEngine's underlying technology, all in violation of the GLA as explained in the Factual Background, *supra*. *See also* FAC at ¶¶ 46–50. Such disclosure and access, if proven, may support Crytek's entitlement to a permanent injunction. *See Apple Inc. v Psystar Corp*, 673 F. Supp. 2d. 943, 948–50 (N.D. Cal 2009) (discussing Apple's entitlement to permanent injunctive relief in connection with copyright infringement under a licensing agreement).

  The Court therefore **DENIES** the MTD insofar as it seeks dismissal of Plaintiff's prayer for injunctive relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 19 of 22 |
|---|---|---|---|

### c.    Statutory Damages and Attorney's Fees

The FAC seeks actual damages as well as "all remedies" section 504 of the Copyright Act provides, which includes statutory damages.  FAC at Prayer for Relief ¶¶ a, e.  Crytek also seeks attorney's fees.  *Id.* at Prayer for Relief ¶¶ a, c.  Defendants argue that the Copyright Act precludes recovery of statutory damages and attorney's fees because Crytek registered its copyright after the alleged infringements.  *See id.* at ¶¶ 22–26 (infringement allegedly began in 2015 or 2016); CryEngine Copyright Certificate (date of registration December 11, 2017).

Section 412 of the Copyright Act provides that "no award of statutory damages or of attorney's fees . . . shall be made for[] any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412(2).  The Ninth Circuit has held that "the first infringing act in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under [section] 412."  *Derek Andrew, Inc. v Proof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir. 2008).  Under the circumstances here, then, Crytek likely cannot recover statutory damamges or attorney's fees pursuant to the Copyright Act.

Nonetheless, two considerations preclude the Court from granting Defendants' motion.  First, the GLA provides that "the prevailing party will be entitled to recover from the other party . . . attorneys' fees and other expenses reasonably incurred" in litigation.  GLA at § 10.8.  The Ninth Circuit has held that where a contract includes a fee-shifting provision, attorney's fees are recoverable despite their preclusion under section 412 of the Copyright Act.  *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 760–62 (9th Cir. 2015).

Second, as Crytek argues in opposition, there may be discoverable post-registration independent acts of infringement not expressly alleged in the FAC.  The Court is not prepared to grant the MTD and preclude recovery of statutory damages as a matter of law before the parties engage in discovery on the copyright infringement allegations this Court has already deemed sufficient under Rule 12(b)(6).  *See Guillot-Vogt Assocs., Inc. v. Holly & Smith*, 848 F. Supp. 682, 691 (E.D. La. 1994) (declining to grant defendant's Rule 12(b)(6) motion on statutory damages and attorney's fees where plaintiff argued that defendants committed independent acts of infringement after the copyright registration date, noting that the plaintiff's argument on premature dismissal "appears to be technically correct" and "all unresolved issues must be viewed in the light most favorable to the nonmovant").  Disputing the applicability of this case, Defendants state that the *Guillot-Vogt* plaintiff "alleged" the existence of additional post-registration acts of infringement.  Reply at 24.  Not so.  The District Court characterized the plaintiff's challenge to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 20 of 22 |
|---|---|---|---|

dismissal as "argu[ment]," not allegations in the operative pleading, and the Court specifically noted that defendants appeared to "have the better of the argument" regarding entitlement to statutory damages. *Guillot-Vogt*, 848 F. Supp at 690.

In any event, the liberal pleading standards that govern in federal court require only sufficient notice to Defendants that they may be liable for damages flowing from their alleged copyright infringement. Here, Plaintiff has provided such notice. While it is unlikely that Crytek ultimately will recover statutory damages based on the alleged infringing conduct in the FAC, the Court is reluctant to foreclose the possibility at the pleading stage.

The MTD is **DENIED** in connection with the FAC's prayer for recovery of statutory damages and attorney's fees.

### d.     Punitive Damages

Crytek seeks punitive damages.  FAC at Prayer for Relief ¶ d.  California law does not permit recovery of punitive damages for breach of contract claims. Cal. Civ. Code § 3294(a) ("In an action for the breach of an obligation *not arising from contract* . . . the plaintiff . . . may recover damages for the sake of example and by way of punishing the defendant." (emphasis added)); *City of Hope Nat. Medical Ctr. v. Genetech, Inc.*, 43 Cal. 4th 375, 392 (2008) ("[P]unitive damages may not be awarded for breach of contract . . . .").

Additionally, punitive damages are not available under the Copyright Act—only actual damages, the infringer's profits, and statutory damages with enhancement for willful infringement. *See* 17 U.S.C. § 504; *e.g.*, *Reinicke v. Creative Empire, LLC*, No. 12cv1405-GPC(KSCx), 2013 WL 275900, at *5 (S.D. Cal. Jan. 24, 2013) (collecting cases); *Saregama India Ltd. v. Young*, No. CV 0219856 RJK, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 3, 2003) (same).

The Court therefore **GRANTS** Defendants' MTD insofar as it seeks to dismiss Crytek's prayer to recover punitive damages.

### B.     Defendants' Request to Strike

In the alternative, Defendants move to strike under Federal Rule of Civil Procedure 12(f) the third and fifth sentences from paragraph 15 of Crytek's FAC .  Paragraph 15 states:

> On November 20, 2012, Crytek and Defendants entered into a Game License Agreement ("GLA") that was extensively negotiated.  The

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | August 14, 2018 |
|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | Page | 21 of 22 |
|---|---|---|---|

> negotiations on behalf of the Defendants were led by one of the Defendants'
> co-founders, Freyermuth. **In prior years, Freyermuth had represented
> Crytek in negotiations of similar license agreements with third parties
> and had confidential information about Crytek's licensing practices.**
> The negotiations on behalf of Crytek were led by Carl Jones, then an
> employee of Crytek. **Jones later left Crytek and became an employee of
> Defendants**.

FAC at ¶ 15 (emphasis added).  Defendants argue that the allegations emphasized above are "immaterial, impertinent, or scandalous" within the meaning of Rule 12(f) because they are neither necessary nor important to any of Crytek's claims and they cast a derogatory light on the Defendants.  MTD at 26.  After a long-winded description of a possible conflict of interest and signed conflict waiver, Crytek counters that the allegations are useful to guide the Court's contractual interpretation in the event the Court finds certain GLA provisions ambiguous.

The Court concludes that the relationship between the parties and their executives may prove relevant to Plaintiff's claims for relief, *i.e.*, Defendants' state of mind in committing the alleged misconduct.  *See In re 2TheMart.com, Inc. Secs. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) ("If there is *any doubt* as to whether the allegations might be an issue in the action, courts will deny the motion [under Rule 12(f)].").  Further, the allegations do not "cast a cruelly derogatory light on a party or other person." *Id.*

Therefore, the MTD's request to strike is **DENIED**.

## IV.
## CONCLUSION

In light of the foregoing, the Court **GRANTS in part** and **DENIES in part** the MTD as follows:

1.    The MTD is **DENIED** insofar as it seeks dismissal of all causes of action alleged against Defendant RSI;

2.    The MTD is **GRANTED** insofar as it seeks dismissal of the aspect of Plaintiff's cause of action for breach that is based on section 2.1.2's "exclusive" grant to embed CryEngine in the Game;

3.    The MTD is **DENIED** insofar as the request to dismiss the cause of action for breach of contract is premised on California Civil Code section 1655's implied

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | | Date | August 14, 2018 |
|---|---|---|---|---|

| Title | *Crytek GMBH, v. Cloud Imperium Games Corp.* | | Page | 22 of 22 |
|---|---|---|---|---|

condition and on section 6.1.4 of the GLA, and insofar as Plaintiff's claim for breach is predicated on CryEngine's allegedly unauthorized use in Squadron 42;

4.   The MTD is **DENIED** with respect to Plaintiff's cause of action for copyright infringement;

5.   The MTD's request that the Court dismiss Plaintiff's prayers for relief is **DENIED** with respect to monetary damages, injunctive relief, and statutory damages and attorney's fees, and **GRANTED** with respect to punitive damages;

6.   The MTD's alternative request that the Court strike allegations in paragraph 15 of the FAC is **DENIED**.

Crytek is granted leave to file an amended complaint that cures the deficiencies discussed in this Order, or alert Defendants and the Court of its intent not to file an amended pleading, within 21 days from the date of this Order.  Defendants shall file their response within 21 days from the filing and service of the amended complaint.  The Court will schedule a Rule 16 Scheduling Conference once the pleadings are finalized.

**IT IS SO ORDERED.**