1

**JOSEPH R. TAYLOR** (SBN 129933)
**JEREMY S. GOLDMAN** (SBN 306943)

2

**MARK R. SWIECH** (SBN 311601)
**FRANKFURT KURNIT KLEIN & SELZ, P.C.**

3

2029 Century Park East, Suite 1060
Los Angeles, California 90067

4

Telephone: (310) 579-9600
Facsimile: (347) 438-2156

5

E-Mail:  jtaylor@fkks.com
        jgoldman@fkks.com

6

        mswiech@fkks.com

7

Attorneys for Defendants CLOUD IMPERIUM GAMES CORP.
and ROBERTS SPACE INDUSTRIES CORP.

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11

12

CRYTEK GMBH,

13

        vs.

14

CLOUD IMPERIUM GAMES CORP. and
ROBERTS SPACE INDUSTRIES CORP.,

15

      Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:17-CV-08937

[HON. DOLLY M. GEE]

**MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO
DISMISS THE SECOND
AMENDED COMPLAINT IN
PART**

Date:         October 12, 2018
Time:         9:30 AM
Courtroom:  8C

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF RELEVANT ALLEGATIONS .......................................... 1

LEGAL STANDARD ..................................................................................... 6

ARGUMENT .................................................................................................. 7

I.     The SAC Fails To State A Claim For Breach Of Section 2.4 Of The GLA Because
       Crytek Has Not Alleged Any Facts To Support A Claim That Defendants Have
       Engaged In A Competing Game Engine Business.......................................... 7

       A.     The Plain Language Of The GLA Only Prohibits Defendants From
              *Engaging In The Business Of* Promoting Competing Game Engines . 7

       B.     The SAC Fails To Allege Any Facts To Support A Claim That
              Defendants Have Engaged In The Business Of Promoting A
              Competing Game Engine.................................................................   10

CONCLUSION............................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Alternative Ins. Corp. v. Superior Court*,
   135 Cal. App. 4th 1239 (2006)....................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 554 (2007) ....................................................................................6

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010)....................................................................2

*County of Marin v. Assessment Appeals Bd.*,
   64 Cal. App. 3d 319 (1976) ......................................................................10

*Epic Commc'ns, Inc. v. Richwave Tech., Inc.*,
   237 Cal. App. 4th 1342 (2015)....................................................................9

*Lyons v. Fire Ins. Exch.*,
   161 Cal. App. 4th, 880 (2008) ....................................................................9

*Nat'l City Police Officers' Ass'n v. City of Nat'l City*,
   87 Cal. App. 4th 1274 (2001) ....................................................................9

*Scheenstra v. Cal. Diaries, Inc.*,
   213 Cal. App. 4th 370 (2013) ..................................................................10

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ....................................................................7

*Transp. Guar. Co. v. Jellins*,
   29 Cal. 2d 242 (1946) ................................................................................9

*Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   255 F. Supp. 3d 970 (N.D. Cal. 2017)........................................................9

*Zindel v. Fox Searchlight Pictures, Inc.*,
No. CV 18-1435 PA (KSx), 2018 WL 3601842 (C.D. Cal. July 23, 2018) ...................7

**Statutes**

Cal. Civ. Code § 1638 ...........................................................................................9

Cal. Civ. Code § 1641 ...........................................................................................8

**Other Authorities**

*Competition*, Merriam-Webster.com (Aug. 31, 2018), https://www.merriam-
webster.com/dictionary/competition ...............................................................7

**PRELIMINARY STATEMENT**

Crytek does not, and could never, allege that Defendants engaged in the game engine business or improperly competed against Crytek by promoting a competing game engine to potential third party developers.  Nevertheless, on its third try, Crytek contorts a different provision in the parties' Game License Agreement ("GLA") to impede Defendants from its actual and alleged business of developing and marketing its own video game.

The Court already rejected Crytek's claim that the GLA prohibits Defendants from using in its game any engine other than "CryEngine" because of the plain language of GLA Section 2.1.2.  Now, in its Second Amended Complaint ("SAC"), Crytek attempts to exhume its dismissed claim by misusing GLA Section 2.4, a provision referenced in neither of Crytek's first two pleadings, which only prohibits Defendants from *engaging in a competitive game engine business*.  Crytek now contends, for the first time, that Defendants' decision to switch to Amazon's Lumberyard game engine—a decision the Court just ruled did *not* violate the GLA—along with Defendants' announcement to their customers explaining their decision, somehow violate Section 2.4.  The plain language of the GLA again dooms Crytek's new breach theory.  Crytek attempts to read out of Section 2.4 the key language conditioning any breach on Defendants *engaging in the game engine business*.  Crytek alleges no facts that would support this claim.  The Court should dismiss Crytek's fallback Section 2.4 attempt at attacking Defendants' switch to Lumberyard.

**STATEMENT OF RELEVANT ALLEGATIONS**

Defendants are a video game company that, since 2012, has been developing a new game called *Star Citizen*, described as an epic space adventure, trading, and dogfighting video game, and a related game called *Squadron 42*.  *See* SAC ¶ 3.  On November 20, 2012, CIG entered into the GLA with Crytek, another video game company that owns

rights in a game engine called "CryEngine." *Id.* ¶¶ 2, 15 [ll. 25-26].[1]  Pursuant to the GLA, Defendants agreed to pay Crytek a buyout license fee for access to and use of CryEngine in connection with the "Game."  *Id.* ¶ 16.

Crytek alleges that, on or before September 24, 2016, Defendants "announced that they were using what they described as 'Star Engine' as a video game engine in Star Citizen in place of CryEngine." *Id.* ¶ 37.  Crytek bases this allegation on a quote from an interview given by Defendants' co-founder Chris Roberts, in which he stated that "we don't call [the video game engine] CryEngine anymore, we call it Star Engine." *See Id.* ¶ 33.[2]  On December 23, 2016, Defendants announced that they had stopped using CryEngine in both *Star Citizen* and *Squadron 42*, and were now using the Amazon Lumberyard game engine.  *Id.* ¶ 37; *see also* Goldman Decl. [ECF 20-3] at 38-41.[3]  In the

---

[1] The Court previously incorporated the GLA and Amendment #1 to the GLA into the FAC by reference.  *See* Order [ECF 38] at 2 n.3.  These documents are attached as Exhibits A and B to the Declaration of Jeremy S. Goldman in Support of Defendants' Motion to Dismiss the First Amended Complaint or Claims for Relief Therein or, in the Alternative, to Strike Certain Portions of the First Amended Complaint ("Goldman Decl.") [ECF 20-3] at 6-36.

[2] Paragraph 33 selectively quotes from Mr. Roberts' interview appearing in the YouTube video cited in the SAC.  The full quote is "we don't call [the video game engine] CryEngine anymore, we call it Star Engine. ***It's quite detached now from what the base CryEngine is.***"  Gamers Nexus, *Chris Roberts on CitizenCon, Procedural Planets V2, Alpha 3*, YouTube (Sept. 24, 2016), https://www.youtube.com/watch?v=fDROliuDczo (emphasis added).  Because Crytek cites to and relies upon the YouTube video in its SAC, the video is incorporated by reference into the SAC.  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (extending the doctrine of incorporation by reference in situations where the complaint necessarily relies on outside material, authenticity is not in question, and there are no relevance disputes).  The Court may properly consider the entire YouTube video for the same reasons the Court previously considered other materials that Crytek expressly referenced and relied on in the FAC.  *See* Order [ECF 38] at 2 n.3.

[3] The Court previously incorporated by reference into the FAC the December 23, 2016 announcement.  *See* Order [ECF 38] at 2 n.3.  A copy of the December 23, 2016

---

December 23, 2016 announcement, Defendants stated their reasons for switching to the Lumberyard engine and explained why it believed the Lumberyard engine was a good fit for *Star Citizen* and *Squadron 42*.  *See* Goldman Decl. [ECF 20-3] at 38-41.

Crytek's initial complaint and its First Amended Complaint ("FAC") alleged various claims for breach of contract and copyright infringement against Defendants in connection with the GLA.  *See, e.g.*, Compl. ¶¶ 53-67; FAC ¶¶ 53-70.  Crytek's contract claim was based heavily on the allegation that the GLA prohibited Defendants from using any other game engine besides CryEngine in *Star Citizen* or *Squadron 42* (the "Exclusivity Claim").  *E.g.*, FAC ¶¶ 36-39.  The Exclusivity Claim relied solely on Section 2.1.2 of the GLA, which provides: "Crytek grants to [CIG] a world-wide, license only . . . to exclusively embed CryEngine in the Game and develop the Game which right shall be sub-licensable pursuant to Sec. 2.6[.]"  *See* Goldman Decl. [ECF 20-3] at 9-10.

Defendants moved to dismiss the FAC in its entirety.  With respect to the Exclusivity Claim, Defendants argued that Crytek failed to state a claim because the GLA does not support Crytek's allegation that Section 2.1.2 prohibits Defendants from using another game engine.  Mem. ISO Mot. to Dismiss FAC [ECF 20-2] at 7-10.  In its opposition, Crytek retreated, for the first time, to a "backup" argument that Section 2.4 of the GLA supported its Exclusivity Claim.  *See* Opp'n Mem. [ECF 25] at 9-10.  Section 2.4 states, in its entirety:

> During the Term of the License, or any renewals thereof, and for a period of two years thereafter, Licensee, its principals, and Affiliates shall not directly or indirectly ***engage in the business of*** designing, developing, creating, supporting, maintaining, promoting, selling or licensing (directly or indirectly) any game engine or middleware ***which compete with CryEngine***.

---

announcement is attached as Exhibit C to the Goldman Declaration.  *See* Goldman Decl. [ECF 20-3] at 37-41.

GLA [ECF 20-3 at 11] (emphasis added).  In reply, Defendants addressed Crytek's new Section 2.4 argument, explaining that Crytek's reliance on Section 2.4, which prohibits Defendants from engaging in a competing game engine business, was misplaced, and had no bearing on the merits of Crytek's Exclusivity Claim.  *See* Reply Mem. [ECF 26] at 8.

On August 14, 2018, the Court dismissed the Exclusivity Claim, holding that Section 2.1.2 means only that "Defendants have the right to use Crytek's software in the manner prescribed" and that "the term is not used to compel Defendants to use the software."  Order [ECF 38] at 10.  The Court further held that "[t]he GLA's structure also supports this interpretation" and that Defendant's interpretation of Section 2.1.2 "gives full effect to the GLA's surrounding provisions."  *Id.*  The Court rejected Crytek's argument that Section 2.4 supported the Exclusivity Claim.  *See id.*  "[S]ection 2.4 precludes Defendants from engaging in certain competitive conduct regardless of sections 2.1 and 2.2's directives.  Indeed, section 2.4 supplements the preceding contractual provisions."  *Id.*

In a footnote, the Court noted that it was declining to address the substance of Crytek's breach of contract theory premised on Section 2.4, stating that "[b]ecause Crytek did not allege any cause of action for breach in connection with section 2.4 of the GLA, and Defendants did not move for dismissal with regard to that provision, the Court will not consider the merits of such a claim."  *Id.* at 11 n.6.

On August 16, 2018, Crytek filed the SAC.  *See* ECF 39.  Crytek ostensibly removed the Exclusivity Claim, but in fact, regurgitated it by pleading essentially the same claim and calling it a Section 2.4 claim.  *See id.* ¶¶ 36-39.  In the facts section, Crytek replaced the subheading "Defendants Broke Its Promise to Exclusively Use CryEngine for the Game," with "Defendants Broke Their Promise Not to Compete with CryEngine by Adopting And Promoting a Competing Game Engine."  *Compare* FAC p. 8, *with* SAC p. 8.  The only allegations Crytek added to or modified in the SAC in support of its "new" Section 2.4 claim are set forth below.  The language in bold represents new or amended allegations:

- "**In the GLA, Defendants promised that they would not adopt or promote another game engine in connection with Star Citizen. Among other provisions, Section 2.4** of the GLA contained a critical promise from Defendants that, **in connection with StarCitizen, they would not engage in various activities that might benefit game engines which compete with CryEngine**[.]" (SAC ¶ 36).[4]

- A direct quotation of GLA Section 2.4. (*Id.* (new allegation)).

- "By at least September 24, 2016, Defendants had announced that they were using what they described as 'Star Engine' as a video game engine in Star Citizen in place of CryEngine." (*Id.* ¶ 37 (new allegation)).

- "On December 23, 2016, Defendants **further** announced that they **had licensed and intended to use** the Amazon Lumberyard video game engine for Star Citizen **in place of CryEngine, and promoted Lumberyard extensively in that announcement**." (*Id.*).

- "The GLA **does not permit Defendants to promote** any other video game engine in **connection with** Star Citizen **until at least two years after the GLA's termination, including by announcing and promoting their adoption of a different game engine**." (*Id.*).[5]

- "Since that announcement, Defendants have continued to breach Section 2.4 of the GLA by directly or indirectly developing, creating, supporting, maintaining, and promoting not only Lumberyard but also the so-called 'Star Engine.'" (*Id.* ¶ 38 (new allegation)).[6]

---

[4] Of course, Crytek's characterization of Section 2.4 conspicuously omits the "engaging in the business of" language.

[5] *See supra* note 4.

[6] *See supra* note 4.

- "Crytek has been damaged by Defendants' breach of **Section 2.4** of the GLA, including for the reason that Crytek has failed to receive the benefit of the favorable attention that it otherwise would have derived from Defendants' use of CryEngine in Star Citizen **and attendant promotion of CryEngine**."  (*Id.* ¶ 39).

In the Causes of Action section of the SAC, Crytek pleads no additional facts. Instead, Crytek changed *one* allegation in *one* paragraph to remove the Exclusivity Claim, changing "Defendants further intentionally breached the GLA by breaking their promise to exclusively use CryEngine in the Star Citizen video game" (FAC ¶ 59) to "Defendants further intentionally breached the GLA by breaking their promise to not directly or indirectly engage in the business of designing, developing, creating, supporting, maintaining, promoting, selling or licensing (directly or indirectly) any game engine or middleware which compete with CryEngine" (SAC ¶ 59).

The only two times "engage in the business of" is mentioned in the SAC is in the full recitation of Section 2.4 (SAC ¶ 36) and the aforementioned conclusory allegation in the Cause of Action section (SAC ¶ 59).

## <u>LEGAL STANDARD</u>

Federal Rule 12(b)(6) permits a party to move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted."  To survive a motion to dismiss under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  "In construing the *Twombly* standard, the Supreme Court has advised that 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth.'"  *Zindel v. Fox Searchlight Pictures, Inc.*, No. CV 18-1435 PA (KSx), 2018 WL 3601842 at *2 (C.D. Cal. July 23, 2018) (citing *Iqbal*, 445 U.S. at 679).  *Twombly* thus "rejected the notion that 'a wholly conclusory statement of [a] claim would

survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery.'" *Id.* (citing *Twombly*, 550 U.S. at 561) (alterations in original).

Under the law of the Ninth Circuit: (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## ARGUMENT

### I.   The SAC Fails To State A Claim For Breach Of Section 2.4 Of The GLA Because Crytek Has Not Alleged Any Facts To Support A Claim That Defendants Have Engaged In A Competing Game Engine Business

By definition, a non-compete clause like Section 2.4 prohibits licensees from engaging in a competitive business that targets ***third parties*** who are potential additional customers of the licensor. *See, e.g.*, *Competition*, Merriam-Webster.com (Aug. 31, 2018), https://www.merriam-webster.com/dictionary/competition (defining "competition" as "the effort of two or more parties acting independently to secure the business of a ***third party*** by offering the most favorable terms.") (emphasis added). A non-compete clause does not prohibit the licensee from engaging in activities for its own purposes. The SAC fails to state a claim for breach of Section 2.4 because Crytek alleged no facts to support a claim that Defendants ***engaged in the business of*** designing, developing, creating, supporting, maintaining, promoting, selling or licensing a game engine that ***competes*** with CryEngine.

### A.   The Plain Language Of The GLA Only Prohibits Defendants From *Engaging In The Business Of* Promoting Competing Game Engines

Crytek tries to read one word—"promoting"—in Section 2.4 in isolation to the exclusion of everything else in the GLA that renders its newfound interpretation

untenable.  According to Crytek, Section 2.4 "contained a critical promise" that Defendants "would not engage in various activities that might benefit game engines that compete with CryEngine[.]"  SAC ¶ 36.  Crytek further alleges that Section 2.4 "does not permit Defendants to promote any other video game engine in connection with Star Citizen until at least two years after the GLA's termination, including by announcing and promoting their adoption of a different engine."  *Id.* ¶ 37.  But these allegations improperly read the crucial "in the business of" language out of the GLA.  The conduct proscribed by Section 2.4 is ***engaging in the business*** of eight different activities (designing, developing, creating, supporting, maintaining, promoting, selling or licensing a competing game engine) that collectively describe the activities of ***a competing game engine business*** that, by definition, targets potential third-party licensees of CryEngine.  GLA § 2.4 [ECF 20-3 at 10].  Section 2.4 does ***not*** proscribe the mere act of ***promoting*** another game engine or the other activities that are incidental to Defendants' business as a game developer and publisher.  The Court should reject Crytek's attempt to impose an onerous restriction upon Defendants that finds no support in the GLA and to which Defendants did not agree.

Crytek's omission of the "in the business of" clause from Section 2.4 and failure to read the provision and GLA as a whole violate well-established California law regarding contract interpretation.  *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practical, each clause helping to interpret the other."); *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 255 F. Supp. 3d 970, 976 (N.D. Cal. 2017) ("[T]he correct method of interpretation under California law is examining the provision as a whole.").  Indeed, it is black letter law that "a court cannot read a contract so as to ignore certain of its provisions, as 'such a reading would be contrary to the rule that all words in a contract are to be given meaning.'"  *Lyons v. Fire Ins. Exch.*, 161 Cal. App. 4th, 880, 886-87 (2008); *see Nat'l City Police Officers' Ass'n v. City of Nat'l City*, 87 Cal. App. 4th 1274, 1279 (2001) ("An interpretation which renders part of the instrument to be surplusage should be avoided.");

1   *see also Epic Commc'ns, Inc. v. Richwave Tech., Inc.*, 237 Cal. App. 4th 1342, 1349

2   (2015) (quoting *Transp. Guar. Co. v. Jellins*, 29 Cal. 2d 242, 247 (1946) ("[T]he

3   character of a contract is not interpreted by isolating any single clause or group of

4   clauses[.]"); *Am. Alternative Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1245

5   (2006) ("We consider the contract as a whole and interpret the language in context, rather

6   than interpret a provision in isolation.").

7        Crytek's proffered interpretation of Section 2.4 also leads to absurdities.  *See* Cal.

8   Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the

9   language is clear and explicit, and does not involve an absurdity."); *County of Marin v.*

10  *Assessment Appeals Bd.*, 64 Cal. App. 3d 319, 325 (1976) ("The court shall avoid an

11  interpretation . . . which would result in absurdity.").  The Court already rejected Crytek's

12  baseless Exclusivity Claim, holding that the GLA does not restrict Defendants' right to

13  use other software applications to develop its game.  Order, [ECF 38] at 11 ("[S]ection

14  2.1.2 of the GLA neither requires Defendants to embed CryEngine in Star Citizen nor

15  precludes Defendants from embedding other software platforms into the game[.]").

16  Adopting Crytek's interpretation of Section 2.4 would, as a practical matter, impose the

17  same restriction.  Under Crytek's reading of Section 2.4, Defendants would not be

18  permitted to design, develop, create, support, or maintain any other game engine or

19  middleware.  But Defendants could not possibly use a third-party engine or middleware

20  in a video game if they are prohibited from, for example, "maintaining" or "supporting"

21  that integrated software.  Similarly, Defendants could not possibly distribute a video

22  game that embeds a third-party engine or middleware if they are prohibited from

23  "promoting, selling, or licensing" that game with the integrated third-party software.

24        Since the GLA grants Defendants the ***right***, not the ***obligation*** to use CryEngine,

25  and since the GLA does ***not*** prohibit Defendants from using another game engine,

26  Section 2.4 is reasonably susceptible to only one interpretation:  Defendants may not

27  engage in a competing game engine business that performs any of the activities

28  enumerated in Section 2.4.  *See Scheenstra v. Cal. Diaries, Inc.*, 213 Cal. App. 4th 370,

390 (2013) ("If the court determines there is no ambiguity—that is, the language is reasonably susceptible to only one interpretation—then the judicial inquiry into meaning is finished and the clear and explicit meaning governs.").  Accordingly, the Court should reject Crytek's construction of Section 2.4.

**B.      The SAC Fails To Allege Any Facts To Support A Claim That Defendants Have Engaged In A Competing Game Engine Business**

The SAC alleges no facts to support a claim that Defendants have engaged in the business of promoting a competing game engine in violation of Section 2.4.  Rather, at most, Crytek alleges that two public statements by Defendants support a claim that Defendants "promoted" other game engines.  Even accepting the truth of these allegations, neither statement supports a claim for breach of Section 2.4.

*First*, Crytek alleges that Defendants "announced that they were using what they described as 'Star Engine' as a video game engine in Star Citizen in place of CryEngine." SAC ¶ 37.  This is highly misleading and a red herring.  In fact, as discussed above, Defendants' co-founder Chris Roberts stated during an interview that Defendants had begun to refer internally to CryEngine as "Star Engine" because, due to the volume of modifications made by Defendants for use in their game, the engine was "quite detached now from what the base CryEngine is."  *See* Gamers Nexus, *supra* note 2 at 17:00-18:44 (cited and incorporated by reference in Paragraph 33 of the SAC).  Crytek does not and could not allege that Defendants ever attempted to promote, license, or sell its modified version of CryEngine to any third party.  Defendants' internal use of the "Star Engine" label to describe their reworked version of CryEngine does not even support a claim that Defendants were ***promoting*** a competing game engine, much less that Defendants were ***engaged in the business*** of promoting a competing game engine.

*Second*, Crytek alleges that Defendants promoted Amazon's Lumberyard game engine in their December 23, 2016 announcement related to their switch from CryEngine to Lumberyard.  SAC ¶ 37.  Again, Crytek mischaracterizes the nature and purpose of Defendants' statements.  The December 23, 2016 announcement provided important

news to Defendants' customers—video game players, not potential licensees of CryEngine—about the development of *Star Citizen* and *Squadron 42*.  Because the game engine is a critical component of a video game, Defendants used the announcement to explain why the switch to Lumberyard was a good move for the company that would benefit its customers.  Goldman Decl. [ECF 20-3] at 39.  Crytek does not and could not allege that Defendants ever attempted to promote, license, or sell Lumberyard to any third party.  Defendants' statements about Lumberyard served Defendants' own business needs.  They do not support Crytek's claim that Defendants "promoted" Lumberyard; *a fortiori*, they do not support a claim that Defendants **engaged in the business** of promoting Lumberyard.

In short, neither the September 24, 2016 statement nor the December 23, 2016 announcement, either in isolation or taken together, provide any support for Crytek's claim that Defendants promoted a competing game engine, much less a claim that Defendants **engaged in the business** of designing, developing, creating, supporting, maintaining, promoting, selling or licensing a competing game engine.  Indeed, Crytek does not allege a single fact to support a claim that Defendants engaged in a business that in any way competes with Crytek's game engine business.

///
///
///
///
///
///
///
///
///
///
///

## CONCLUSION

For the reasons stated herein, the Court should dismiss Crytek's claim for breach of contract based on Section 2.4 of the GLA.

Dated: September 6, 2018                  FRANKFURT KURNIT KLEIN & SELZ P.C.


                                          BY:  */s/ Jeremy S. Goldman*
                                               Joseph R. Taylor (SBN 129933)
                                               Jeremy S. Goldman (SBN 306943)
                                               Mark R. Swiech (SBN 311601)
                                               2029 Century Park East, Suite 1060
                                               Los Angeles, California 90067
                                               Telephone: (310) 579-9600
                                               Facsimile: (347) 438-2156
                                               E-Mail: jtaylor@fkks.com
                                                       jgoldman@fkks.com
                                                       mswiech@fkks.com

                                          Attorneys for Defendants CLOUD IMPERIUM
                                          GAMES CORP. and ROBERTS SPACE
                                          INDUSTRIES CORP.