JAMES Y. PAK (SBN 304563)
*james.pak@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

KEVIN J. MINNICK (SBN 269620)
*kevin.minnick@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

P. ANTHONY SAMMI
(admitted *pro hac vice*)
*anthony.sammi@skadden.com*
KURT WM. HEMR
(admitted *pro hac vice*)
*kurt.hemr@skadden.com*
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

***Attorneys for Plaintiff,
Crytek GmbH***

JOSEPH R. TAYLOR (SBN 129933)
*jtaylor@fkks.com*
JEREMY S. GOLDMAN (SBN 306943)
*jgoldman@fkks.com*
MARK R. SWIECH (SBN 311601)
*mswiech@fkks.com*
FRANKFURT KURNIT KLEIN &
SELZ, P.C.
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (347) 438-2156

***Attorneys for Defendants Cloud
Imperium Games Corp. and Roberts
Space Industries Corp.***

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CRYTEK GMBH, <br><br> Plaintiff, <br><br> v. <br><br> CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP., <br><br> Defendants. | Case No. 2:17-cv-08937-DMG-FFM <br><br> **JOINT RULE 26(f) REPORT** <br><br> Judge:  Hon. Dolly M. Gee |

Pursuant to Federal Rule of Civil Procedure Rule 26(f), Local Rule 26-1, and the Court's Order of September 6, 2018 (ECF No. 43), Plaintiff Crytek GmbH ("Crytek") and Defendants Cloud Imperium Games Corporation ("CIG") and Roberts Space Industries Corporation ("RSI") (together, "Defendants"), by and through their undersigned counsel, having conducted a conference in accordance with Rule 26(f) on February 13, 2018, hereby submit the following Joint Report:

## I.    STATEMENT OF THE CASE

### A.    Crytek's Position

Plaintiff Crytek is an industry-leading video game developer, publisher, and technology provider.  The instant suit against Defendants CIG and RSI stems from Defendants' breach of contract and copyright infringement in connection with their use of Crytek technology, including CryEngine, a cutting-edge, powerful, and feature-filled video game development platform and computer program.

Crytek commenced this action on December 12, 2017.  Crytek identifies the specific breaches of contract and acts of copyright infringement by Defendants in the Second Amended Complaint ("SAC", ECF No. 39).  (*E.g.*, SAC ¶¶ 13-52.)  It seeks money damages in excess of $75,000 and equitable relief.

Defendants have not made readily known all related persons and entities connected with Defendants.  As discovery progresses and Crytek's investigation continues, Crytek may add additional defendants or amend its pleadings.

### B.    Defendants' Position

Defendant CIG is developing a video game called *Star Citizen* and a related game called *Squadron 42*.  CIG and Crytek entered into a Game License Agreement ("GLA") granting CIG the exclusive right to use Crytek's game engine, called "CryEngine," for exactly these purposes.  CIG has fully performed under the GLA. Defendants deny that they breached any part of the GLA or infringed Crytek's copyright in CryEngine.  At the conclusion of this action, Defendants intend to seek

1

**JOINT RULE 26(f) REPORT**

1  recovery of their attorney's fees and costs pursuant to the GLA and the Copyright
2  Act.

3  **II.    SUBJECT MATTER JURISDICTION**

4      This action arises under 28 U.S.C. §§ 1331 and 1338(a) because federal courts
5  have exclusive jurisdiction in copyright cases, and because those claims are federal
6  questions.  This Court also has diversity jurisdiction over this action under 28 U.S.C.
7  § 1332 because Defendants are citizens of California, Plaintiff is a citizen of a foreign
8  state, and the amount in controversy substantially exceeds $75,000.

9  **III.   LEGAL ISSUES**

10      **A.    Crytek's Position**

11      The primary issues in this case are (i) whether the Defendants breached the
12  Game License Agreement; (ii) whether Defendants infringed upon Crytek's
13  copyrighted work; and (iii) the amount of damages to which Crytek may be entitled.

14      **B.    Defendants' Position**

15      Defendants agree that these are primary issues in this case but Defendants deny
16  that Crytek is entitled to any damages.  An additional issue is the amount of
17  attorney's fees and costs to which Defendants may be entitled as the prevailing party
18  in this lawsuit.

19  **IV.   SCHEDULING MATTERS AND DISCOVERY PLAN**

20      **A.    Initial Disclosures**

21      Cognizant of Section 3(b) of the Court's Initial Standing Order, Crytek served
22  initial disclosures on Defendants on January 19, 2018.  Defendants served initial
23  disclosures on February 27, 2018.  The parties do not propose any changes to the
24  form or requirement for disclosures under Federal Rule of Civil Procedure 26(a).

25      **B.    Discovery Subject, Timing, and Phasing**

26      The parties expect to conduct discovery requiring the production of documents,
27  electronic materials, and things, interrogatories, requests for admission, and

28

**JOINT RULE 26(f) REPORT**

1  deposition testimony. Plaintiff does not believe that discovery needs to be phased.
2  Defendants seek bifurcation of discovery as set forth in Section I.2, below.

3  Cognizant of Section 3(b) of the Court's Initial Standing Order, Crytek served
4  its First Set of Requests for Production of Documents and Inspection of Documents
5  and Things ("First RFPs") and First Set of Interrogatories ("First Interrogatories") on
6  Defendants on January 19, 2018.  Defendants objected to the First Interrogatories as
7  premature under Rule 26(d)(1).  Crytek re-served the First Interrogatories by hand on
8  Defendants on February 13, 2018.  In accordance with Magistrate Judge Mumm's
9  order dated April 17, 2018 (ECF No. 34), Defendants intend to serve their first set of
10  discovery requests following the Court's issuance of a Scheduling Order.

11  Counsel for each party has instructed their respective clients to preserve
12  discoverable information.

13  **1.    Crytek's Position**

14  At this time, Crytek contends that discovery will be needed on at least the
15  following subjects:

16  • Defendants' products, including Star Citizen and Squadron 42;
17  • marketing and promotion of Defendants' products;
18  • revenue, profits, and crowdfunding obtained by Defendants;
19  • Defendants' use of Crytek property, including CryEngine;
20  • contracts and communications between the Defendants;
21  • ownership, management, and structure of Defendants;
22  • Defendants' communications with its customers;
23  • operative contracts between Crytek and Defendants; and
24  • technology transferred from Crytek to Defendants.

25  Crytek disputes Defendants' characterization (*infra*) of Crytek's discovery
26  requests as overbroad and unduly burdensome.  In particular, Crytek notes that
27  Defendants' crowdfunding is relevant to demonstrate the benefits that Crytek's artistic
28

3

**JOINT RULE 26(f) REPORT**

1 and technological assistance conferred on Defendants.  Discovery concerning

2 Defendants' byzantine corporate family structure is necessary to ensure that all

3 necessary entities are joined in this action.  However, to the extent that Defendants

4 have genuine disputes over particular requests, Defendants should meet and confer

5 with Crytek in the usual fashion and otherwise comply with Local Rules 7-3, 37-1,

6 and 37-2 before seeking the Court's assistance in resolving those particularized

7 disputes.  The Court may then assess whether Defendants' concerns with those

8 particular requests are justified or whether Defendants should be directed to comply

9 with those discovery requests.

10      Consistent with that approach, while Crytek would dispute whether certain of

11 Defendants' proposed discovery topics, as set forth *infra*, are appropriate, once

12 Defendants serve discovery requests, Crytek will respond and/or object in the usual

13 fashion and expects that the parties will confer regarding any disputes before seeking

14 the Court's assistance, in accordance with the Rules.

15      **2.   Defendants' Position**

16      Defendants strongly contest the relevance of many of the above topics and

17 believe that the written discovery requests Crytek served to date are exceedingly

18 overbroad and unduly burdensome, a belief confirmed by Magistrate Judge Mumm

19 when the parties appeared before him on Defendants' motion for a protective order.

20 *See* Apr. 17, 2018 Hr'g (ECF No. 37) ("The Court notes that the promulgated

21 discovery is extremely broad, including such things as all source code for anything

22 ever made or sold by defendants, all documents concerning any representation made

23 by defendants to any party regarding intellectual property in any product ever made

24 or sold, funds, contributions, or support provided to defendants by any person or

25 entity, et cetera[.]").  Among other things, Crytek has provided no legal authority or

26 good faith explanation establishing that "crowdfunding" or the "ownership,

27 management and structure of Defendants" is relevant to any claim or defense in this

28

**JOINT RULE 26(f) REPORT**

matter.  Their inclusion of these and other irrelevant topics serves only to underscore Crytek's ulterior motives in this lawsuit and support Defendants' request to bifurcate this case into separate phases for liability and damages.

At this time, based on the current state of the pleadings, Defendants contend that discovery is needed on at least the following topics:

- Drafting and negotiation of the GLA;
- Crytek's licensing history of CryEngine;
- Crytek's agreement with Amazon regarding CryEngine;
- Defendants' alleged marketing, sale, and use of CryEngine to develop *Squadron 42* as a standalone game;
- Defendants' tender and delivery of "bug fixes and optimizations" to Crytek;
- Crytek's use of "bug fixes and optimizations" from Defendants or other licensees;
- Defendants' alleged disclosure of CryEngine source code to third parties;
- Crytek's public disclosure of CryEngine source code;
- Crytek's alleged damages resulting from Defendants' alleged breaches and alleged infringement.

**C.    Summary of Schedule**

The parties' respective proposals for a schedule of pretrial and trial dates, as well as the proposed timing of discovery, are addressed in Exhibit A.

**JOINT RULE 26(f) REPORT**

# V.   ADDITIONAL ISSUES DISCUSSED PURSUANT TO RULE 26(F) AND LOCAL RULE 26-1

## A.   Electronically Stored Information

The parties represent that they have complied with their preservation obligations relating to electronically stored information ("ESI"), pursuant to Federal Rule of Civil Procedure 34.

The parties agree that ESI shall be produced pursuant to the Document Production Format Agreement in Exhibit B.  To the extent not addressed in Exhibit B, the parties intend to meet and confer in good faith on production protocols and other technical details as necessary before involving the Court.

## B.   Privilege or Confidentiality

In accordance with the Federal Rules of Civil Procedure, the parties have agreed that information withheld for privilege or as attorney work product will be listed on a privilege log, with the exception that privileged or attorney work product information involving litigation counsel on or after the date the above-entitled action was filed does not need to be logged.

The parties are working on a draft form of protective order so that the parties can jointly seek an order limiting disclosure of sensitive materials, such as the parties' confidential trade secrets, to anyone but outside litigation counsel.  The parties intend to submit a joint stipulated protective order for the Court's approval.

The parties have agreed that consistent with Rule 26(b)(4) of the Federal Rules of Civil Procedure, attorney communications with experts, both testifying and non-testifying, and drafts of expert reports are not discoverable unless the expert relies on such communications pursuant to Rule 26(b)(4)(C)(ii) and (iii).

## C.   Changes In Limitations On Discovery

At this stage of the litigation, the parties do not see a need to modify the limitations on discovery set forth in the Federal Rules of Civil Procedure, but reserve

**JOINT RULE 26(f) REPORT**

the right to request such modification should the need arise.  Specifically, each party reserves the right to move to increase the amount, scope and timing of any discovery.

### D.   Orders Under Rules 16(b), 16(c), or 26(c)

The parties are not currently seeking any additional orders from the Court under Rules 16(b) or (c), or 26(c).

### E.   Settlement/ADR

#### 1.   Crytek's Position

The parties have had preliminary discussions concerning settlement or resolution of this case.  With respect to the ADR options available, Crytek elects mediation with a neutral from the Court Mediation Panel.  Crytek proposes that the mediation occur at an early convenient time but in any event before the conclusion of fact discovery.  With regard to Defendants' proposal to appear before Magistrate Judge Mumm for a settlement conference:  Crytek prefers to engage in mediation with a neutral prior to any settlement conference before Magistrate Judge Mumm.

#### 2.   Defendants' Position

The parties had preliminary discussions concerning settlement or resolution of this action in July 2018 but did not reach an agreement regarding their outstanding issues.  With respect to the ADR options available, Defendants believe that appearing before Magistrate Judge Mumm for a settlement conference would be a constructive approach.  Defendants believe that Magistrate Judge Mumm is particularly well suited to assist the parties with their settlement discussions given his extensive experience with intellectual property, media, and entertainment litigation in his prior private litigation practice.

### F.   Complex Cases

While it is early in the litigation, the parties do not foresee the need to use procedures in the Manual for Complex Litigation.  Should the need arise, the parties

1  agree to meet and confer as necessary to discuss whether complex issues, difficult

2  legal questions or unusual proof problems require use of the manual.

3  **G.    Issues to be Determined by Motion**

4  Defendants' Motion to Dismiss The Second Amended Complaint In Part was

5  filed on September 6, 2018.  (ECF No. 42.)  Crytek's Opposition to that motion was

6  filed on September 21, 2018 (ECF No. 45), and Defendants' Reply is scheduled to be

7  filed on September 28, 2018.  A hearing on the motion is set for October 12, 2018.

8  No other motions are currently on the calendar.

9  The parties anticipate that they may need to seek the Court's assistance in

10  discovery disputes should the parties be unable to resolve them informally.  Should

11  that need arise, the parties will comply with Section 3(a) of the Initial Standing

12  Order.

13  Defendants intend to bring a motion for summary judgment or partial summary

14  judgment at the earliest possible time.

15  **H.    Trial Estimate**

16  Crytek has demanded a jury trial.  The parties estimate that the trial will last

17  approximately five to ten (5-10) court days.

18  **I.    Severance, Bifurcation or Other Ordering of Proof**

19  **1.    Crytek's Position**

20  At this time, Crytek does not intend to request severance, bifurcation or other

21  ordering of proof.  Crytek expressly reserves its right to request severance,

22  bifurcation, or other ordering of proof as information is uncovered during discovery.

23  Crytek objects to Defendants' proposal (*infra*) to bifurcate discovery into two

24  phases.  Crytek's initial discovery requests have already been pending for more than

25  eight months notwithstanding the Court's admonishment that "it is advisable for

26  counsel to begin to conduct discovery actively before the Scheduling Conference."

27  (ECF No. 14.)  Further delay would be even more unwarranted.  "In general,

28

8

**JOINT RULE 26(f) REPORT**

bifurcation is the exception, not the norm." *Gravity Defyer Corp. v. Under Armor, Inc.*, No. 13-cv-01842, 2013 WL 12138987, at *2 (C.D. Cal. July 23, 2013). Crytek's damages are an essential element of its claims and discovery as to that aspect of the case should not be arbitrarily delayed. Further, Defendants cannot "show that bifurcation will result in a significantly more efficient proceeding." *Id.* at *3. Indeed, bifurcation would likely result in increased costs, including but not limited to multiple depositions of the same individuals concerning liability and then damages and additional rounds of discovery disputes. *Id.*; *see also Reed v. AutoNation, Inc.*, No. 16-cv-08916, 2017 WL 6940519, at *7 (C.D. Cal. Apr. 20, 2017) (emphasizing that a party seeking to bifurcate discovery must show that bifurcation of discovery will promote judicial economy and will not unfairly prejudice any party). Defendants' concern with "highly sensitive" discovery materials can be addressed with an appropriate protective order.

## 2. Defendants' Position

Defendants request that the Court bifurcate discovery into two phases: ***first***, discovery as it relates to Crytek's theories of liability against Defendants that remain after the Court decides Defendants' Motion to Dismiss the SAC, and ***second***, discovery as it relates to Crytek's claim for damages. As is apparent from the list of topics above that Crytek believes to be discoverable, including "revenue, profits, and crowdfunding obtained by Defendants," as well as the discovery requests already propounded by Crytek, Crytek intends to conduct intrusive discovery regarding Defendants' fundraising and other financial matters that bear no relevance to any claim or defense and relate solely, if at all, to damages. Accordingly, Defendants believe it would be prudent and further the interests of efficiency and justice for the Court to limit any discovery to the issues of liability before allowing Crytek to seek highly-sensitive financial information related to Defendants' business that relates solely, if at all, to the issue of damages.

9

**JOINT RULE 26(f) REPORT**

Federal Rule 42(b) gives the Court broad discretion to bifurcate proceedings "[f]or convenience or to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b).  Under appropriate circumstances, courts in this district have bifurcated discovery regarding liability and damages into separate phases.  *Moreno v. NBCUniversal Media, LLC*, No. 13 Civ. 1038 (BRO), 2013 WL 12123988, at *3 (C.D. Cal. Sept. 30, 2013) (granting motion to bifurcate discovery into liability and damages phases in copyright infringement action).  If the Court is not inclined to bifurcate these proceedings as part of the Scheduling Order, Defendants request the opportunity to brief the issue.

Defendants expressly reserve their right to request severance, additional bifurcation, or other ordering of proof as information is uncovered during discovery.

### J.    Expert Witnesses

#### 1.    Crytek's Position

Crytek may offer expert testimony related to the technical subject matter of this case (including source code), copying of copyrighted works, and damages.  The timing of these disclosures is set forth in the proposed schedule attached as Exhibit A.

#### 2.    Defendants' Position

Based on the current state of the pleadings, Defendants may offer expert testimony related to: (1) any source code at issue in the case; and (2) damages.

### K.    Electronic Service

The parties agree that service by electronic means shall be allowed as set forth in Rule 5(b)(2)(E).  Service by electronic means shall be considered the same as hand delivery for purposes of calculating the time to respond, provided service is made using the email(s) listed below, which may be supplemented or changed by written notice.  The parties agree to refer to the parties and/or case name in the subject line for documents served by electronic means.

10

**JOINT RULE 26(f) REPORT**

1    Service on Crytek shall be made to dlpcrytkip@skadden.com.  Service on

2  Defendants shall be made to jtaylor@fkks.com, jgoldman@fkks.com,

3  aiskandar@fkks.com, mswiech@fkks.com, and docket@fkks.com.

4    The parties agree to serve documents not filed with the Court on or before 6:00

5  p.m. Pacific Time, including discovery-related materials and expert reports.  If such

6  documents are not served on or before 6:00 p.m. Pacific Time, such documents will

7  be deemed to have been served on the next business day.

8

9  Dated: September 28, 2018                    Respectfully submitted,

10

11   _/s/ Jeremy S. Goldman_                         _/s/ James Y. Pak_
     JOSEPH R. TAYLOR (SBN 129933)        JAMES Y. PAK (SBN 304563)
12   _jtaylor@fkks.com_                            _james.pak@skadden.com_
     JEREMY S. GOLDMAN (SBN              SKADDEN, ARPS, SLATE,
13   306943)                                        MEAGHER & FLOM LLP
     _jgoldman@fkks.com_                         525 University Avenue, Suite 1400
14   MARK R. SWIECH (SBN 311601)         Palo Alto, CA 94301
     _mswiech@fkks.com_                          (650) 470-4500
15   FRANKFURT KURNIT KLEIN &          (650) 798-4570
     SELZ, P.C.
16   2029 Century Park East, Suite 1060       KEVIN J. MINNICK (SBN 269620)
     Los Angeles, California 90067            _kevin.minnick@skadden.com_
17   Telephone: (310) 579-9600               SKADDEN, ARPS, SLATE,
     Facsimile: (347) 438-2156                    MEAGHER & FLOM LLP
18                                               300 South Grand Avenue, Suite 3400
     ***Attorneys for Defendants Cloud***      Los Angeles, CA 90071
19   ***Imperium Games Corp. and Roberts***  Telephone: (213) 687-5000
     ***Space Industries Corp.***             Facsimile:  (213) 687-5600
20
                                                 P. ANTHONY SAMMI
21                                               (admitted *pro hac vice*)
                                                 _anthony.sammi@skadden.com_
22                                               KURT WM. HEMR
                                                 (admitted *pro hac vice*)
23                                               _kurt.hemr@skadden.com_
                                                 SKADDEN, ARPS, SLATE,
24                                                  MEAGHER & FLOM LLP
                                                 Four Times Square
25                                               New York, New York 10036
                                                 Telephone: (212) 735-3000
26                                               Facsimile: (212) 735-2000

27                                               ***Attorneys for Plaintiff***
                                                 ***Crytek GmbH***
28                                                      11
                                   **JOINT RULE 26(f) REPORT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ATTESTATION**

I, James Y. Pak, attest that the signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: <u>   /s/ *James Y. Pak*        </u>
      James Y. Pak

**JOINT RULE 26(f) REPORT**

## Exhibit A

Judge Dolly M. Gee

**SCHEDULE OF PRETRIAL & TRIAL DATES WORKSHEET**

Case No.                                   Case Name:
2:17-cv-08937-DMG-FFM          Crytek GmbH v. Cloud Imperium Games Corp. et al.

| MATTER | JOINT REQUESTED DATE | TIME |
|---|---|---|
| **TRIAL** ☐ Court ☒ Jury<br>Duration Estimate: 5-10 days | March 24, 2020<br>(Tuesday) | 8:30 a.m. |
| **FINAL PRETRIAL CONFERENCE ("FPTC")**<br>4 wks before trial | February 25, 2020<br>(Tuesday) | 2:00 p.m. |

| MATTER | TIME COMPUTATION | JOINT REQUESTED DATE |
|---|---|---|
| Amended Pleadings and Addition of Parties Cut-Off (includes hearing of motions to amend) | 90 days after scheduling conference | January 10, 2019 |
| Non-Expert Discovery Cut-Off (includes hearing of discovery motions) | at least 14 wks before FPTC | August 20, 2019 |
| Motion Cut-Off (filing deadline) | at least 13 wks before FPTC | September 17, 2019 |
| Initial Expert Disclosure & Report Deadline | at least 9 wks before FPTC | September 24, 2019 |
| Rebuttal Expert Disclosure & Report Deadline | at least 5 wks before FPTC | October 22, 2019 |
| Expert Discovery Cut-Off (includes hearing of discovery motions) | at least 3 wks before FPTC | December 3, 2019 |
| Settlement Conference Completion Date | at least 4 wks before FPTC | December 20, 2019 |
| Motions in Limine Filing Deadline | at least 3 wks before FPTC | December 17, 2019 |
| Opposition to Motion in Limine Filing Deadline | at least 2 wks before FPTC | January 7, 2020 |
| Other Dates: (e.g., class cert motion cut-off, early mediation, etc.) | | (no proposed deadlines) |

**Exhibit B**

**DOCUMENT PRODUCTION FORMAT AGREEMENT**

**De-duplication.**  The parties will globally de-duplicate documents by MD5 hash across the universe of collected custodial documents for review and production. The Custodians metadata field will identify all custodians for whom any duplicate copies of a document are not being produced.  If custodians are added to the production after the initial de-duplication has occurred, or other changes occur that affect the completeness of the Custodians field, the parties will produce replacement metadata consistent with the new information.

**TIFF Images**. Unless otherwise stated in this Stipulation, each document will be produced in Group IV Tagged Image File Format ("TIFF"), regardless of whether such documents are stored in electronic or hard copy form.  Each TIFF image file should be one page and should reflect how the source document would appear if printed to hard copy in black-and-white.  Native files from which produced TIFF format files are created shall be preserved and remain unchanged.  Each TIFF format file of an electronic document will be endorsed by a unique Bates number and any applicable confidentiality legend on the bottom of each image page in such a way so as not to obliterate, conceal, or interfere with any information from the source document.

**Load File(s)**.  Document productions shall include Concordance-compatible load file(s) that indicate document breaks of the TIFF images and additional fields as identified below ("Metadata Fields").

**File Name**.  Each document image file will be named with the unique Bates Number of the page of the document in question followed by the file extension "TIF." File names should not contain spaces or underscore symbols.

**Document Unitization**.  If a document is more than one page, the unitization of the document and any attachments and/or affixed notes will be maintained as they existed in the original document.

**Searchable Text**.  In addition to TIFF images, each production will include text files corresponding to the TIFF image files described above.

**Hard Copy Documents.**  Hard copy documents shall be converted to searchable text using Optical Character Recognition ("OCR") technology and searchable ASCII text (or Unicode text if the text is in a language requiring characters outside of the ASCII character set, if requested) files shall be produced. Each file will be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT."  A single document-level *.TXT file shall be produced for each document.  Text will not be produced in page-level text files or as a field in the Metadata Load File.

**Electronic Documents**.  The full text of each native electronic document shall be extracted ("Extracted Text") and produced in a text file.  The Extracted Text will be provided in searchable ASCII text format (or Unicode text format if the text is in a language requiring characters outside of the ASCII character set, if requested) and will be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT."  A single document-level *.TXT file shall be produced for each document.  Text will not be produced in page-level text files or as a field in the Metadata Load File.

**Redactions.**  Searchable text files corresponding to the TIFF image files for redacted Electronic Documents and Hard Copy Documents will include Extracted Text or OCR text only to the extent that it will not disclose redacted information.

**Production Media**.  Documents will be produced on encrypted external hard drives or readily accessible computer or electronic media (the "Production Media").  Each piece of Production Media will identify: (1) the producing party's name; (2) the production date; (3) the highest confidentiality designation reflected on the documents contained within the production;  and (4) the Bates Number range of the materials contained on the Production Media.  For productions with a total volume of 5 GB or less (in a compressed or uncompressed transfer format), production by Secure File Transfer Protocol ("SFTP") is an acceptable alternative to production by

**JOINT RULE 26(f) REPORT**

hard media and need not be accompanied by hard media.  Data produced through electronic transfer will also be encrypted.

**Native Production**.  The parties will produce spreadsheet files and presentations (*e.g.*, Excel, PowerPoint), and sound, video, and other files not practical for the TIFF format in native form or in another reasonably usable form.  Such native file productions shall include metadata as set forth below and a single-page TIFF image indicating that the associated file was produced in native form.  Each produced native file shall be named with a unique Bates Number (*e.g.*, ABC00000001.xls).  The confidentiality stamp on the TIFF image file should be considered as being applied to the linked native file.  To the extent either party believes that certain documents or groups of documents should be produced in an alternative format, the parties agree to meet and confer in good faith concerning such alternative production arrangements.

**Additional Native Production**.  The parties reserve the ability to request other files be produced in native form or in another reasonably usable form upon review of the other party's production.  The parties reserve their respective rights to object to any such request.

**Text Messages**.  The parties intend to meet and confer in good faith at a future date regarding the production of  mobile phone text messages on a custodian-by-custodian basis.

**JOINT RULE 26(f) REPORT**

**Metadata**.  For all Electronic Documents, an ASCII text (or Unicode text if the text is in a language requiring characters outside of the ASCII character set) Load File shall be produced setting forth the data fields listed below ("Metadata Fields"), to the extent such metadata exists.  Additive fields such as Custodian must be produced even though not otherwise existing.  The parties further agree that other metadata fields may be requested by either party, to be produced on a document-by-document basis.

| <u>DATA FIELD</u> | <u>DESCRIPTION</u> |
| --- | --- |
| BEGDOC | Beginning Bates number assigned to each document |
| ENDDOC | Ending Bates number assigned to each document |
| BEGATTACH | Beginning Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| ENDATTACH | Ending Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| CUSTODIANS | The custodian (or multiple custodians for globally de-duped documents) of a document |
| RECORDTYPE | The type of record (*e.g.,* email, email attachment, edoc or calendar item) |
| APPLICATION | Document type as identified by metadata associated with the native document indicating the application that created the native document (*e.g.,* Google Docs, Microsoft Word 6.0, Gmail, Outlook Email, etc.) |
| EMAILSUBJECT | The subject line of a produced email |
| DOCAUTHOR | The Author of a document |
| FROM | The "From" line of a produced email |
| TO | The "To" line of a produced email |

18

| | | |
|---|---|---|
| 1 | CC | The "CC" line of a produced email |
| 2 | BCC | The "BCC" line of a produced email |
| 3 | DATESENT | The date (MMDDYYYY) an email was sent |
| 4 | TIMESENT | The time that an email was sent |
| 5 | DATECREATED | The date that a document was created |
| | DATELASTMOD | The date that a document was last modified |
| 6 | FILENAME | The filename of a produced document |
| 7 | TITLE | The title of a document |
| 8 | DOCEXT | The file extension (*e.g.*, .txt or .pdf) of a produced document |
| 9 | FILESIZE | The file size (in KB\MB\GB) of a produced document |
| 10 | | |
| 11 | NATIVEFILE | The location of the produced native version of a document |
| 12 | TEXTFILE | The location of the extracted text/OCR text for a document |
| 13 | CONFIDENTIALITY | The text of confidentiality language (per the parties' agreed-upon Protective Order) stamped on images of a document |