**JOSEPH R. TAYLOR** (SBN 129933)
**JEREMY S. GOLDMAN** (SBN 306943)
**MARK R. SWIECH** (SBN 311601)
**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (347) 438-2156
E-Mail:  jtaylor@fkks.com
         jgoldman@fkks.com
         mswiech@fkks.com

Attorneys for Defendants CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYTEK GMBH, | Case No. 2:17-CV-08937 |
| vs. | [HON. DOLLY M. GEE] |
| CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP., | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT IN PART** |
| Defendants. | Date:       October 12, 2018<br>Time:       9:30 AM<br>Courtroom:  8C |

# TABLE OF CONTENTS

I. Section 2.4 Prevents Defendants From Engaging In A Competing Game Engine Business, Not From Developing And Promoting Their Own Game ...................... 1

   A. The Cases Cited By Crytek Establish That "Engaging In Business" Requires Engaging In An Activity With Frequency And Continuity .......... 2

      1. Contract Interpretation Is Not Statutory Interpretation .................... 2

      2. *Advance Transformer Co. v. Superior Court* ...................................... 3

      3. *In re Vizio Consumer Privacy Litigation* ........................................... 4

      4. Another Statutory Example ................................................................ 5

      5. Summary Of Statutory Interpretation Of "Engaged In Business" ..... 6

   B. The SAC Does Not Support Crytek's Argument That Defendants Are Indirectly Engaged In A Business That Competes With CryEngine ........... 6

   C. Neither The SAC Nor The GLA Support Crytek's Argument That Defendants Promised To Devote Their Promotional And Development Efforts To CryEngine ....................................................... 8

II. Crytek's Allegations Regarding "Star Engine" And Lumberyard Do Not State A Claim For Breach Of Section 2.4 ........................................................................... 9

   A. The SAC Does Not Allege That "Star Engine" Competes With CryEngine ................................................................................................ 10

   B. The SAC Does Not Allege That Defendants Engaged In A Competing Game Engine Business When They Announced Their Decision To Use Lumberyard ..................................................................................... 11

   C. The SAC Does Not Allege Any "Frequent And Continuous" Conduct By Defendants ........................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance Transformer Co. v. Superior Court*,
   44 Cal. App. 3d 127 (1974) ................................................................. 3, 4, 6, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 9, 10, 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 554 (2007) ....................................................................................... 10, 12

*Benitez v. Hutchens*,
   No. SACV 12-550 AG(JC), 2016 WL 7468037 (C.D. Cal. Dec. 26, 2016) .................. 9

*Comedy Club, Inc. v. Improv West Associates*,
   553 F.3d 1277 (9th Cir. 2009) ................................................................................ 7

*Dietz International Public Adjusters of California, Inc. v. Evanston Insurance Co.*,
   No. 09 Civ. 6662, 2009 WL 10673937 (C.D. Cal. Dec. 14, 2009) ...................... 2, 12

*E.T. Products, LLC v. D.E. Miller Holdings, Inc.*,
   872 F.3d 464 (7th Cir. 2017) ............................................................................ 7, 8, 10

*GSI Technology, Inc. v. United Memories, Inc.*,
   No. 5:13-cv-01081-PSF, 2016 WL 3107544 (N.D. Cal. May 26, 2016) .................... 4

*Holguin v. Dish Network LLC*,
   229 Cal. App. 4th 1310 (2014) ................................................................................ 1

*Howard v. Babcock*,
   6 Cal. 4th 409 (1993) ............................................................................................... 7

*In re Vizio Consumer Privacy Litigation*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................ 4, 5, 6

*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*,
   191 Cal. App. 4th 435 (2010) ................................................................................... 2

*Yang v. ActioNet, Inc.*,
   No. CV 14-00792-AB (SHx), 2015 WL 13385917 (C.D. Cal. July 21, 2015) ............. 10

**<u>Statutes</u>**

18 U.S.C. § 921(a)(21) ................................................................................................ 6

18 U.S.C. § 922(a)(1)(A) ............................................................................................. 5

Cal. Bus. & Prof. Code § 16600 .................................................................................. 7

The GLA does not require Defendants to use Crytek's game engine. It allows such use because that is what licenses do. Crytek already lost its bid to deny Defendants their freedom to use a different game engine on the last motion. The SAC and opposition now try to block Defendants' right to develop and promote their video game as they wish through the back door of Section 2.4, a non-compete clause that prevents Defendants from competing against Crytek in the game engine business. When examining the GLA as a whole, Crytek's construction of Section 2.4 would once again yield the absurdity of changing a license into a shackle. There is and can be no allegation Defendants are in the game engine business. Statutory interpretation cases do not apply, but if they did, they would overwhelmingly support Defendants' motion. Crytek's scant allegations in the SAC do not come close to supporting a claim that Defendants have engaged in any business that competes with CryEngine. The motion should be granted.

## ARGUMENT

**I.     Section 2.4 Prevents Defendants From Engaging In A Competing Game Engine Business, Not From Developing And Promoting Their Own Game**

Section 2.4 lists activities which Defendants may not "engage in the business of." "Using" a competing game engine is ***not*** one of them. *See* GLA § 2.4. Reading Section 2.4 to prohibit Defendants from using another game engine and engaging in conduct that would flow naturally from such use would effectively rewrite the GLA by imposing an onerous restriction upon Defendants to which the parties did not agree. The Court should reject Crytek's second improper attempt to misconstrue the GLA as a means of stifling Defendants' right to develop and promote their game as they deem fit. *Holguin v. Dish Network LLC*, 229 Cal. App. 4th 1310, 1324 (2014) (courts "do not have the power to create for the parties a contract they did not make and cannot insert language that one party now wishes were there").

Crytek cries that Defendants "repeatedly accuse Crytek of ignoring or omitting" Section 2.4's "engage in the business of" requirement, retorting that the "language is rendered in bold type" in the SAC. *See* Opp'n 3. Font choice for quotations of Section

2.4 does not paper over Crytek's failure to plead *any facts* in the SAC to support a claim that Defendants have engaged in a business that competes with CryEngine.[1] While Crytek tries to fix that defect through its opposition, it is the SAC that must, but fails to, pass muster. *Dietz Int'l Pub. Adjusters of Cal., Inc. v. Evanston Ins. Co.*, No. 09 Civ. 6662, 2009 WL 10673937, at *3 (C.D. Cal. Dec. 14, 2009) ("A plaintiff cannot cure deficiencies in a complaint through allegations provided in its opposition to a motion to dismiss."). The Court should reject Crytek's attempt to characterize Defendants' statements about "Star Engine" and Lumberyard as signaling Defendants' foray into the game engine business.

## A. The Cases Cited By Crytek Establish That "Engaging In Business" Requires Engaging In An Activity With Frequency And Continuity

### 1. Contract Interpretation Is Not Statutory Interpretation

Crytek tacitly admits that it could not locate any contract cases interpreting the term "engaged in business" in the context of a non-compete clause—or even in the context of a contract at all. *See* Opp'n 3 ("[C]ourts that have construed the phrase 'engage in the business of' *in other contexts* have not given that phrase such a narrow construction.") (emphasis added). Since Crytek cites cases interpreting only statutes with this phrase, the cases are of limited import here. *See Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*, 191 Cal. App. 4th 435, 461 (2010) (holding "canons of statutory interpretation do not apply" where action concerns interpretation of agreement between private parties). However, to the extent the Court considers the interpretation of the "engaged in the business" language in the statutory context useful, the cases cited by

---

[1] Crytek *twice* omits the "engage in the business of" language in sentences attempting to reconstitute that language on *the same page* of its opposition where Crytek argues that it did not ignore that language. *See* Opp'n 3, ll. 1-3 ("Section 2.4 of the GLA expansively prohibits Defendants from *engaging in numerous forms of conduct* that could harm CryEngine's competitive standing among competing game engines[.]"); *id.*, ll. 13-16 ("Crytek's complaint sufficiently alleges that Defendants . . . *engaged in numerous business activities* enumerated in Section 2.4[.]") (emphases added).

Crytek, as well as other statutes, overwhelmingly establish that Crytek has *not* alleged facts to support a claim that Defendants have engaged in a business that competes with Crytek's game engine business.

### 2. *Advance Transformer Co. v. Superior Court*

In *Advance Transformer Co. v. Superior Court*, 44 Cal. App. 3d 127 (1974), the issue was whether a supplier could obtain an attachment remedy against the individual owners of a corporation who personally guaranteed the corporation's debt obligation. *Id.* at 129-31. The relevant statute limited the remedy to business entities and "individuals engaged in trade or business." *Id.* In determining whether the personal guarantors "engaged in trade or business" within the meaning of the statute, the court examined numerous cases that interpreted "engage in business." *Id.* at 134-39. The court observed that while the term "business" may "embrace[] any activity engaged in for profit or gain," the phrase "*engaged in business*" requires something more: it "generally is held to imply *business activity of a frequent or continuous nature*." *See id.* at 134 (emphasis added). With respect to the case at hand, the court concluded that the guarantor may be considered to have "engaged in trade or business" only if he occupied himself with guaranteeing credit "*to a substantial degree and on a continuing basis in promoting his own profit*." *Id.* at 144 (emphasis added).

Here, Crytek alleges only two incidents give rise to the purported breach of Section 2.4: Defendants' September 2016 statement referring to their modified version of CryEngine as "Star Engine" and Defendants' December 2016 announcement regarding their switch to Lumberyard. SAC ¶ 37. But these two isolated incidents, even when construed in the light most favorable to Crytek, do not support a claim that Defendants engaged in any proscribed activity "of a frequent or continuous nature" or that such activity occupied Defendants' attention "to a substantial degree and on a continuing basis."[2] *Advance Transformer*, 44 Cal. App. 3d at 134, 144; *see also id.* at 135 ("It is, of

---

[2] Crytek's allegation in SAC ¶ 38 that Defendants engaged in "continuous activity" is entirely conclusory, as discussed *infra* at Part II.

course, well established that a single or occasional disconnected act does not constitute 'engaging in a business.'").

Crytek also ignores *Advance Transformer*'s recognition that the meaning of "engaged in business" "is to be determined not in vacuo," but in reference to the overall context in which it appears. *Id.* at 139. The context in which "engaged in business" appears here is in the non-compete clause of a licensing agreement. *See* Order [ECF 38] at 9 ("A license is a grant of permission or authority to do any particular thing."). Section 2.4 is a non-compete clause that prohibits Defendants from using their access to the CryEngine code to expand into the video game engine business during the license term and for two years after. *See GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-cv-01081-PSF, 2016 WL 3107544, at *7 (N.D. Cal. May 26, 2016) ("The purpose of a non-compete agreement is to protect one party from competition by others and/or to protect trade secrets."). Section 2.4 does not prohibit Defendants from developing and promoting their own video game, which is the very purpose of the GLA. *See* GLA p. 2 ("WHEREAS Licensee desires to use, and Crytek desires to grant the license to use, the "CryEngine" for the game currently entitled ["Star Citizen"] and its related space fighter game "Squadron 42[.]").

### 3.   *In re Vizio Consumer Privacy Litigation*

Crytek leans heavily on *In re Vizio Consumer Privacy Litigation*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017), but that case also supports Defendants' motion. In *Vizio*, the issue was whether a manufacturer of TVs containing software that collected data regarding consumers' viewing habits violated the Video Privacy Protection Act (the "VPPA") by sharing that information with third-party advertisers. *See id.* at 1212-13, 1220. The VPPA applies only to "person[s] engaged in the business . . . of rental, sale, or delivery" of video content. *Id.* at 1221. Vizio moved to dismiss on the ground that it was not "engaged in the business" of anything other than manufacturing TVs; only the streaming platforms (e.g., Netflix and Hulu) were covered by the statute. *Id.* at 1220-22.

The *Vizio* court held that, under the VPPA, being "engaged in the business" of video delivery required Vizio's product to "not only be ***substantially involved*** in the conveyance of video content to consumers but also ***significantly tailored*** to serve that purpose." *Id.* at 1221 (emphasis added). Under this standard, the court held that the complaint sufficiently alleged that Vizio's TVs were "intimately involved in the delivery of video content to consumers," where Vizio marketed its TVs as "a 'passport' to this video content" and created "a supporting ecosystem to seamlessly deliver video content to consumers (including entering into agreements with content providers such as Netflix and Hulu)" on its TVs. *See id.* at 1222.

Crytek's allegations in the SAC do not come close to meeting *Vizio*'s construction of "engaged in business." The only products Crytek alleges Defendants are developing are *Star Citizen* and *Squadron 42*. *See* SAC ¶ 3. The SAC does not and cannot allege that Defendants or its products are "intimately involved in the delivery" or promotion of a competing game engine. Nor does the SAC allege that Defendants marketed themselves or *Star Citizen* as a "passport" to access a competing game engine or that, through their products, Defendants have created "a supporting ecosystem" to provide a competing game engine. The SAC fails to state a claim that Defendants are engaged in a competing game engine business because the SAC does not and cannot allege that Defendants or their products are "substantially involved" in or "significantly tailored" toward that business. *See Vizio*, 238 F. Supp. 3d at 1222.[3]

### 4. Another Statutory Example

The use of the term "engaged in the business of" in other statutes further supports Defendants' position. For example, it is a federal crime for any person "to engage in the business of importing, manufacturing, or dealing" in firearms or ammunition without a license. 18 U.S.C. § 922(a)(1)(A). Congress defined "engaged in the business" in this

---

[3] Contrary to Crytek's suggestion, Defendants do not contend, as Vizio did, that "only one party may be 'engaged in' a particular business at any given time." Opp'n 6 (citing *Vizio*, 238 F. Supp. 3d at 1222).

REPLY MEM. OF PTS. & AUTHS. ISO DEFENDANTS' MOT. TO DISMISS THE SAC IN PART
5

context to mean "a person who devotes time, attention, and labor" to importing, manufacturing, or dealing in firearms or ammunition "*as a regular course of trade or business* with the principal objective of livelihood and profit through the sale or distribution" therefrom. 18 U.S.C. § 921(a)(21) (emphasis added). Thus, to be *engaged in the business of* firearms dealing, a person must do something more than, for example, merely import or sell firearms or ammunition. A person must engage in these activities "as a regular course" of his or her "trade or business with the principal objective of livelihood and profit" in order to fall within the statute. *Id.* Incidental engagement is not enough. *See id.*

### 5. Summary Of Statutory Interpretation Of "Engaged In Business"

In sum, legal authorities interpreting "engaged in business" in statutes universally define the term as requiring more than just engaging in defined activities. *See Advance Transformer*, 44 Cal. App. 3d at 135 ("It is, of course, well established that a single or occasional disconnected act does not constitute 'engaging in business.'"). Engaging in business requires "frequent or continuous" activity (*see id.* at 134) that occurs in the "regular course" of one's trade or business (*see* 18 U.S.C. § 921(a)(21)) and evidences one's "substantial involvement" in that business due to efforts that are "significantly tailored" to achieving those business objectives (*see Vizio*, 238 F. Supp. 3d at 1221).

The SAC does not come close to pleading these thresholds. Crytek alleges no facts to support its claim that Defendants have engaged in a competing game engine business. At most, Defendants' statements about "Star Engine" and Lumberyard are "occasional disconnected acts" that do not constitute "engaging in business." *Advance Transformer*, 44 Cal. App. 3d at 135. Thus, Crytek's allegations in the SAC are plainly insufficient under its own cases to plausibly allege that Defendants have violated Section 2.4.

### B. The SAC Does Not Support Crytek's Argument That Defendants Are Indirectly Engaged In A Business That Competes With CryEngine

Crytek argues that Section 2.4's "directly or indirectly" language serves to "restrict all competitive activity in any capacity," but cites no cases applying California law in

support of its expansive interpretation.  *See* Opp'n 6-8.  This likely is because of California's strong public policy against enforcing overbroad non-compete provisions.  *See* Cal. Bus. & Prof. Code § 16600 ("[E]very contract by which anyone is restrained from engaging in a lawful . . . business of any kind is to that extent void."); *Howard v. Babcock*, 6 Cal. 4th 409, 416 (1993) ("California has a settled policy in favor of open competition.").  Indeed, the Ninth Circuit has held that, under California law, non-compete clauses in licensing agreements must be "narrowly tailored to relate to the areas in which" the licensee is operating under the license agreement.  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1289-94 (9th Cir. 2009).

*E.T. Products, LLC v. D.E. Miller Holdings, Inc.*, 872 F.3d 464 (7th Cir. 2017), Crytek's main case, once again supports dismissal.  The issue in that case was whether a seller of a business violated a broad non-compete clause that prohibited him from "assisting anyone involved in any company either directly or indirectly engaged in the same industry[.]"  *Id.* at 466-67.  The buyer claimed the seller breached the non-compete clause by assisting one of the buyer's own distributors and by continuing to honor the distributor's lease after the distributor started selling competing products.  *Id.* at 469-470.  While the court upheld the enforceability of the non-compete clause, the court concluded the seller did not breach it, holding that the buyer's expansive interpretation of the clause's "indirectly" language was "a bit much" given the attenuated nature of the seller's allegedly competitive behavior.  "We're required to give the noncompete clause a reasonable construction that doesn't entail a limitless reach[,]" held the court.  *Id.* at 470.

Here, Crytek's claim that Defendants engaged in the business of promoting a competing game engine by referring to their modified version of CryEngine as "Star Engine" also is "a bit much."  The GLA expressly authorizes Defendants to develop and modify CryEngine.  GLA § 2.1.1.  The GLA further authorizes Defendants to distribute the modified CryEngine code via the *Star Citizen* video game.  *See* GLA §§ 2.1.1, 2.1.2, 2.1.3.  The fact that Defendants chose to attach a name to their authorized CryEngine derivative "can't possibly violate" Section 2.4.  *See E.T. Prods.*, 872 F.3d at 469-70

(authorized distributor whose sole conduct in the relevant market consists of distributing one manufacturer's product "plainly isn't that manufacturer's competitor").

Moreover, the non-compete clause in *E.T. Products* was much broader and is easily distinguishable because it does ***not*** contain the "engage in the business of" requirement found in Section 2.4. The non-compete clause in *E.T. Products* prohibited the seller from "***assisting anyone*** involved in any company either directly or indirectly engaged ***in the same industry***" as the buyer. *Id.* at 466 (emphasis added). This is a far cry from the restriction in Section 2.4, which prohibits Defendants from "directly or indirectly engaging ***in the business of***" a competing game engine business.

Finally, Crytek argues the "directly or indirectly" language "forecloses the narrow interpretation of [Section 2.4] that Defendants urge this Court to adopt." Opp'n 7. But, as *E.T. Products* explains, "directly or indirectly" only means "that complete overlap isn't required." 872 F.3d at 470. *E.T. Products* does not hold, as Crytek suggests, that "directly or indirectly" should be read so expansively as to capture conduct that bears only an attenuated relationship to competitive activity; indeed, it expressly cautions against such an interpretation. *Id.* ("The broadest possible reading of the noncompete would preclude all sorts of innocuous behavior, making the agreement overbroad and unenforceable.").

### C. Neither The SAC Nor The GLA Support Crytek's Argument That Defendants Promised To Devote Their Promotional And Development Efforts To CryEngine

Crytek argues that the "context of the parties' negotiations" supports its broad interpretation of Section 2.4. *See* Opp'n 8-9. Crytek asserts that it bargained for not only licensing fees, but also "the benefit of Defendants' promotional efforts concerning the game engine used in Star Citizen" and "the benefit of Defendants' work to develop and maintain that game engine." *Id.* at 8. But other claims in the SAC already cover Defendants' alleged breaches of their "promotional" and "development" obligations to Crytek. *See* SAC ¶¶ 28-35, 58 (alleged breach of GLA Section 2.8's "promotional"

obligations); *id.* ¶¶ 40-45, 57 (alleged breach of GLA Section 7.3's "developmental" obligations). Defendants did not make any other "promotional" or "development" promises under the GLA or otherwise. *See* GLA § 10.1 ("This Agreement and the exhibits hereto reflect the entire agreement and understanding of the Parties with respect to its subject matter[.]").

Crytek then argues that "[r]egardless of how they now describe their business in the context of this litigation, when the parties negotiated the GLA, Defendants promised that they would devote their promotional and development efforts concerning Star Citizen's game engine to CryEngine . . . . That was the deal." Opp'n 8. Crytek cites nothing in support of this statement, let alone any allegation in the SAC now under scrutiny. And, as just discussed, the GLA comprehensively sets forth Defendants' promises and obligations to Crytek. GLA § 10.1. Essentially, Crytek complains that Defendants did not ***solely*** devote their promotional and development efforts concerning *Star Citizen*'s game engine to CryEngine. But the GLA imposes no such duty on Defendants. Section 2.4 restricts Defendants from engaging in a competing game engine business, not from naming their modified version of CryEngine, using another game engine, or telling their customers they have done so.

## II. Crytek's Allegations Regarding "Star Engine" And Lumberyard Do Not State A Claim For Breach Of Section 2.4

Crytek effectively concedes that the SAC's allegations regarding Section 2.4 are threadbare. *See* Opp'n 9 ("Crytek need not allege every piece of evidence that it already has or that it may obtain in discovery to advance beyond the pleading stage."). But as Crytek doubtlessly knows, it must plead enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Benitez v. Hutchens*, No. SACV 12-550 AG(JC), 2016 WL 7468037, at *1 (C.D. Cal. Dec. 26, 2016) ("The Rule 8 pleading standards are not relaxed based on speculation that a plaintiff will be able to provide more specificity after he obtains more discovery."). Crytek's claim that Defendants have

engaged in a competing game engine business is pure speculation. *Yang v. ActioNet, Inc.*, No. CV 14-00792-AB (SHx), 2015 WL 13385917, at *4 (C.D. Cal. July 21, 2015) (a complaint "must allege facts sufficient to raise a right to relief that rises above the level of mere speculation[.]") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

### A. The SAC Does Not Allege That "Star Engine" Competes With CryEngine

Recognizing the dearth of facts supporting its complaint about "Star Engine," Crytek contends that the issue "cannot be resolved at the pleading stage" and "must be addressed in discovery." Opp'n 9-10. But in order to get past the pleading stage, Crytek must allege *some* facts plausibly suggesting that "Star Engine" competes with CryEngine. *See Iqbal*, 556 U.S. at 678. Crytek does not and cannot plausibly allege that "Star Engine" in any way *competes* with CryEngine. As discussed, "Star Engine" is nothing more than the label Defendants gave to their customized build of CryEngine. *See* Mot. 2 n.2; *see also* SAC ¶ 33. No facts in the SAC contradict this truth. Further, Defendants were fully authorized to modify and improve CryEngine. *See* GLA § 2.1.1. Indeed, Crytek alleges Defendants breached their obligations to provide those modifications and improvements to CryEngine as the basis for another one of its claims. *See* SAC ¶¶ 40-45, 57.[4] Simply put, "Star Engine" *is* CryEngine, modified by Defendants.

Without a single allegation that Defendants have taken any steps to market or sell "Star Engine," Crytek's claim, that referring to CryEngine as "Star Engine" violates Section 2.4, is "a bit much" and does not support an inference that Defendants are engaged in a competitive game engine business. *E.T. Prods.*, 872 F.3d at 469-70 ("We're required to give the noncompete a reasonable construction that doesn't entail a limitless reach.")

---

[4] Contrary to Crytek's suggestion (Opp'n 9), nothing about referring to Defendants' modified version of CryEngine as "Star Engine" would prevent Defendants from complying with their obligation to deliver bug fixes and optimizations to Crytek.

**B.     The SAC Does Not Allege That Defendants Engaged In A Competing Game Engine Business When They Announced Their Decision To Use Lumberyard**

Defendants' December 2016 announcement regarding their switch to Lumberyard also is insufficient to support a reasonable inference that Defendants have engaged in a game engine business that competes with CryEngine. The announcement itself makes clear that, first and foremost, it was a promotional and informational statement about *Star Citizen*. *See, e.g.*, Goldman Decl. [ECF 20-3] at 39 (announcing "Star Citizen and Squadron 42 Utilize Amazon Lumberyard Game Engine"), *id.* (announcing release of "2.6 Alpha update for *Star Citizen*" running on Lumberyard). Even the statements made by Lumberyard's representatives are about *Star Citizen*, not Lumberyard. *See, e.g.*, *id.* ("'Star Citizen and Squadron 42 are incredibly ambitious projects which are only possible with great engine technology . . . . We love how CIG's bold vision has already inspired a massive community, and we're thrilled to see what they create with Lumberyard . . . .' said Dan Winters, head of business development for Amazon Games."). Nothing in the GLA prohibits Defendants from promoting their own video game. Nor do Defendants' statements explaining their reasons for switching to Lumberyard and describing Lumberyard's capabilities within *Star Citizen* support an inference that Defendants are engaging in a business that competes with CryEngine.

To the extent that Defendants' announcement can be viewed as promoting Lumberyard, Section 2.4 does not prohibit isolated acts of promotion; it prohibits Defendants' wholesale movement into the video game engine business. *See supra* Part I; *Advance Transformer*, 44 Cal. App. 3d at 135 ("single or occasional disconnected act[s]" not enough; engaging in business requires "frequent and continuous" conduct). The SAC pleads no facts for the Court to infer that Defendants have crossed the line into a

competing game engine business. *Twombly,* 550 U.S. at 567 (complaint did not plausibly suggest illicit behavior when facts alleged just as likely to suggest lawful behavior).[5]

### C. The SAC Does Not Allege Any "Frequent And Continuous" Conduct By Defendants

Finally, Crytek tries to meet the "engaged in the business" standard by relying on Paragraph 38 of the SAC, which alleges that "Defendants have continued to breach Section 2.4 of the GLA by directly or indirectly developing, creating, supporting, maintaining, and promoting not only Lumberyard but also the so-called 'Star Engine.'" Opp'n 10 (citing SAC ¶ 38). In addition to Crytek's omission of the "engaged in the business of" requirement from this allegation, the SAC alleges no facts in support of Crytek's broad claim of continuous conduct; only the isolated incidents regarding "Star Engine" and Lumberyard are pleaded. Thus, Paragraph 38 is a classic example of a conclusory statement that is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). Regardless of what Crytek "expects the proof to show" (Opp'n 10), Crytek is under a present obligation to plausibly suggest that Defendants violated Section 2.4. *Twombly,* 550 U.S. at 567 (complaint did not plausibly suggest illicit behavior when facts alleged just as likely to suggest lawful behavior). Because Crytek has not done so, "the doors of discovery" must remain locked. *Iqbal*, 556 U.S. at 678-79.

---

[5] Crytek also claims that "the prominent display of Lumberyard's trademarks in Star Citizen" give rise to the same inference. Opp'n 10. These allegations are found nowhere in the SAC and Crytek cannot supplement its defective pleading via attorney argument in its motion papers. *Dietz*, 2009 WL 10673937, at *3 ("A plaintiff cannot cure deficiencies in a complaint through allegations provided in its opposition to a motion to dismiss."). Moreover, if the GLA prohibited Defendants from crediting third-party software used in the game, it would have said so. The GLA contains no such provision. *See* GLA §§ 2.4 (no mention of "crediting"), 2.8.1 (same), 2.8.2 (same), 2.8.3 (same).

## **CONCLUSION**

For the reasons stated herein and in Defendants' opening memorandum, the Court should dismiss Crytek's claim for breach of contract based on Section 2.4 of the GLA.

Dated: September 28, 2018         FRANKFURT KURNIT KLEIN & SELZ P.C.

BY: */s/ Jeremy S. Goldman*
Joseph R. Taylor (SBN 129933)
Jeremy S. Goldman (SBN 306943)
Mark R. Swiech (SBN 311601)
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (347) 438-2156
E-Mail: jtaylor@fkks.com
          jgoldman@fkks.com
          mswiech@fkks.com

Attorneys for Defendants CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP.