UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 17-8937-DMG (FFMx)** | Date | December 6, 2018 |
|---|---|---|---|
| Title | *Crytek GMBH v. Cloud Imperium Games Corp., et al.* | Page | 1 of 10 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANTS' MOTION TO DISMISS [42]**

On August, 16, 2018, Plaintiff Crytek GMBH ("Crytek") filed the operative Second Amended Complaint ("SAC") against Defendants Cloud Imperium Games Corp. ("CIG") and Roberts Space Industries Corp. ("RSI"), alleging breach of contract and copyright infringement. [Doc. # 39.]  On September 6, 2018, Defendants filed their motion to dismiss ("MTD"), now before the Court, seeking dismissal of Crytek's claim for breach of contract based on Section 2.4 of the GLA. [Doc. # 42.]  Having considered the parties' written submissions, the Court **GRANTS** Defendants' motion with leave to amend.

I.
FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiff, a German corporation, is a "video game developer, publisher, and technology provider."  SAC at ¶¶ 2, 6.  Central to this lawsuit is Plaintiff's CryEngine, a video game development platform and computer program.  *Id.* at ¶ 2.  In 2012, Defendants sought to develop a new game called Star Citizen, which would use Plaintiff's CryEngine development platform as its foundation.  SAC at ¶ 3.  Because Defendants sought to use CryEngine as Star Citizen's foundation, the parties agreed to a Game Licensing Agreement ("GLA") to support Star Citizen's development.  *Id.*  This arrangement is at the heart of the dispute.

---

[1] The Court restates only those facts pertinent to the issues on this motion.  For background purposes, the Court hereby incorporates the facts and procedural history stated in its previous order.  *See* Doc. # 38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | December 6, 2018 |
|---|---|---|---|
| Title | *Crytek GMBH v. Cloud Imperium Games Corp., et al.* | Page | 2 of 10 |

Plaintiff alleges that around September, 2016, Defendants announced they were using what they described as "Star Engine" as a video game engine in Star Citizen in place of CryEngine. SAC at ¶ 37.[2] In December of that year, Defendants announced in a press release they had licensed and intended to use Amazon's Lumberyard game engine in Star Citizen in place of CryEngine. *Id.*

Plaintiff's initial complaint and its First Amended Complaint alleged various theories of breach of contract and copyright infringement against the Defendants in connection with the GLA. Crytek's principle allegation was that the GLA prohibited Defendants from using any other game engine besides CryEngine in Star Citizen or a spinoff game, Squadron 42. Defendants filed a motion to dismiss [Doc. # 20-3], which the Court granted in part and denied in part. [Doc. # 38.] Although the Court granted Defendants' motion with respect to Plaintiff's allegation that section 2.1.2 of the GLA required Defendants to build their game using only CryEngine and prohibited them from using another game engine, the Court stated in a footnote that "section 2.4 may support Plaintiff's theory of breach in connection with Defendants' alleged use of another software engine in Star Citizen." [Doc. # 38 at 11 n. 6.] The Court did not "consider the merits of such a claim." *Id.*

On August 16, 2018, Plaintiff filed the SAC alleging a breach of section 2.4 of the GLA. Plaintiff alleges that under section 2.4 of the GLA, Defendants agreed not to "adopt or promote another game engine in connection with Star Citizen," or "engage in various activities that might benefit game engines which compete with CryEngine." SAC at ¶ 36.

## II.
## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) states that a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*,

---

[2] Plaintiff alleges that StarEngine is a game engine in competition with CryEngine. SAC at ¶ 33. Defendants argue that materials incorporated into the SAC show that Star Engine is merely Defendants' internal name for their modified and customized version of CryEngine. MTD at 2 n. 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | December 6, 2018 |
|---|---|---|---|
| Title | *Crytek GMBH v. Cloud Imperium Games Corp., et al.* | Page | 3 of 10 |

250 F.3d 729, 732 (9th Cir. 2001)). On a motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

To survive a 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Id.* (citing *Twombly* at 557).

In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Iqbal*, 556 U.S. at 678 (internal citation omitted). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id*. Additionally, the court is not required to accept as true allegations that contradict documents that are attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824, n. 3 (9th Cir. 2011) (citing Fed. R. Evid. 201(b)) (at the motion to dismiss stage, courts may take judicial notice of facts that are not subject to reasonable dispute and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

## III.
## DISCUSSION

The interpretation of a contract is a question of law "unless the interpretation turns upon the credibility of extrinsic evidence." *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 799 (1998). Courts apply general principles of contract interpretation when interpreting the terms and scope of a licensing agreement. *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 989 (9th Cir. 2006) (citing *Mendler v. Winterland Production, Ltd.*, 207 F.3d 1119, 1121 (9th Cir. 2000). California

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-8937-DMG (FFMx)** | Date | December 6, 2018 |
| Title | ***Crytek GMBH v. Cloud Imperium Games Corp., et al.*** | Page | 4 of 10 |

law guides the analysis of the breach of contract claim. GLA at § 10.8. In California, the words of a contract are to be understood in their ordinary and popular sense that a lay person would attach to them. *Valencia v. Smyth*, 185 Cal. App. 4th 153, 162 (2010). Courts must give a "reasonable and commonsense interpretation" of a contract consistent with the parties' apparent intent. *See People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 526 (2003) (*citing Cf. Renee J. v. Superior Court* 26 Cal. 4th 735, 744, 110 (2001)).

The contract's meaning must be derived from the whole contract and individual provisions must be interpreted together "in order to give effect to all provisions" and avoid rendering some meaningless. *Maples v. SolarWinds*, Inc., 50 F. Supp. 3d 1221, 1228 (N.D. Cal. 2014) (quoting *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (2011)). When the contract's language is disputed, the court must decide whether the language is "reasonably susceptible to the interpretation urged by the party." *Halicki Films, LLC v. Sanderson Sales and Marketing*, 547 F. 3d 1213, 1223 (9th Cir. 2008) (quoting *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.,* 107 Cal. App. 4th 516, 524 (2003)).

**A.     GLA Section 2.4**

The arguments before the Court focus primarily on whether Plaintiff has alleged Defendants violated section 2.4 by promoting other game engines, but section 2.4's language implicates more than just promotional activity. It states:

> During the Term of the License, or any renewals thereof, and for a period of two years thereafter, Licensee, its principals, and Affiliates shall not directly or indirectly engage in the business of designing, developing, creating, supporting, maintaining, promoting, selling or licensing (directly or indirectly) any game engine or middleware which compete with CryEngine.

SAC at ¶ 36. Plaintiff alleges that Defendants breached section 2.4 in connection with two different game engines, Star Engine and Lumberyard. Because Defendants' interaction with each engine implicates different language within section 2.4, the Court will discuss each separately.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | December 6, 2018 |
|---|---|---|---|
| Title | *Crytek GMBH v. Cloud Imperium Games Corp., et al.* | Page | 5 of 10 |

1. **Star Engine**

Plaintiff does not allege that Defendants have sold or licensed Star Engine to any third party. It is also unclear from Plaintiff's allegations whether "supporting" or "maintaining" applies in this context. The relevant provisions of section 2.4 therefore read:

> During the Term of the License, or any renewals thereof, and for a period of two years thereafter, Licensee, its principals, and Affiliates shall not directly or indirectly engage in the business of **designing, developing, creating [or] promoting** . . . (directly or indirectly) any game engine or middleware which compete with CryEngine.

   i.  **Promoting**

Plaintiff alleges that Defendants improperly promoted a competing game engine by announcing "by at least September 24, 2016" that Defendants were "using what [it] described as 'Star Engine' as a video game engine in Star Citizen in place of CryEngine." SAC at ¶ 37. Defendants first argue that whether or not they ever promoted Star Engine, Plaintiff can only state a claim under section 2.4 if Defendants have "engage[d] in the business" of doing so. MTD at 7. The Court agrees with Defendants. The plain language of section 2.4 does not prohibit a single act of promotion, or even multiple acts. It prohibits licensees from directly or indirectly engaging in the business of taking competitive action against CryEngine. *See Lockyer*, 107 Cal. App. 4th at 526. Moreover, while Plaintiff argues that at least two courts have interpreted "engaged in the business" broadly, those cases actually work in Defendants' favor.[3]

Plaintiff is correct that its first case, *Advanced Transformer Co. v. Superior Court*, interprets "engaged in the business" to have a "a wide variety of meanings." 44 Cal. App. 3d 127, 139 (1974). But the court limits those meanings to "almost any activity engaged in for profit with *frequency and continuity*." *Id.* (emphasis added); *see also Nakasone v. Randall,* 129 Cal. App. 3d 757, 764 (1982) (holding that a woman who merely "dabbled in real estate" was not "engaged in

---

[3] Defendants argue that the Court should disregard Plaintiff's two cases because those courts interpret "engaged in the business" in the statutory, rather than the contract, context. Yet, Defendants do not provide the Court with any cases interpreting the phrase in the contract context. Even though, as Defendants point out, the "canons of statutory interpretation do not apply" in the contract context, the Court nonetheless finds the courts' interpretations of "engaged in the business" instructive. *See Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*, 191 Cal. App. 4th 435, 458 (2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | December 6, 2018 |
|---|---|---|---|
| Title | *Crytek GMBH v. Cloud Imperium Games Corp., et al.* | Page | 6 of 10 |

a trade, business or profession of selling real estate"). Similarly, Plaintiff's second case, *In re Vizio, Inc., Consumer Privacy Litigation* ("*Vizio*"), states that for a defendant to be "engaged in the business of delivering video content, the defendant's product must not only be *substantially involved* in the conveyance of video content to consumers but also *significantly tailored* to serve that purpose." 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (emphasis added). Translated into language relevant to this motion, under the *Vizio* rule, in order for Defendants to be engaged in the business of promoting a competing game engine, Defendants must not only be "substantially involved" in the promotion of a competing game engine, but also must take actions "significantly tailored" to serve that purpose.

Plaintiff has not alleged any frequent or continuous promotional activity with respect to Star Engine. It points to a single statement by Defendants' founder in a single interview. SAC at ¶ 33. That one interview also falls short of *Vizio*'s "substantial involvement" test. There, the court held that the defendant, a television manufacturer, was substantially involved in the delivery of video content because the defendant's product was the conduit through which consumers accessed video content. *Vizio*, 238 F. Supp. 3d at 1021-22. That describes a far higher level of involvement than simply mentioning Star Engine in an interview one time. Defendants also argue that its founder's statements do not amount to an act of promotion, but even assuming that they did, a single promotional act does not establish that Defendants engaged in the business of promoting Star Engine under *Advanced Transformer* and *Vizio*. Defendants' motion is therefore **GRANTED** as to Plaintiffs allegations of improper promotion with respect to Star Engine.

### ii. Designing, Developing, or Creating

Plaintiff alleges that "Defendants have continued to breach Section 2.4 . . . by directly or indirectly developing, creating . . . the so-called 'Star Engine.'" SAC at ¶ 38. The Court determines these allegations are completely conclusory. They merely parrot the language of section 2.4 itself and state, without more factual detail, that Defendants have breached the GLA. Such conclusions are not entitled to the assumption of truth at the pleading stage. *See Iqbal*, 556 U.S. at 678.

But even to the extent the SAC contains other allegations sufficient to support a claim that Defendants breached section 2.4 by designing, developing, or creating Star Engine, they still fail. Plaintiff bases its argument that Defendants designed, developed, or created Star Engine in breach of section 2.4 on Defendant's founder's statement that "we don't call [our video game engine] CryEngine anymore, we call it Star Engine. It's quite detached now from what the base CryEngine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | December 6, 2018 |
|---|---|---|---|
| Title | *Crytek GMBH v. Cloud Imperium Games Corp., et al.* | Page | 7 of 10 |

is."[4] But that allegation indicates that Star Engine is a product of the original CryEngine source code. And other sections of the GLA expressly permit Defendants to "optimize" CryEngine's "original source code files" and to "develop, support, maintain, extend and/or enhance" CryEngine. GLA §§ 2.1.1, 7.3; *see also* [Doc. 38 at 3]. Those provisions' plain language authorize Defendants to modify CryEngine to suit their own needs. And given the contract interpretation maxim that courts must interpret contract provisions to give effect to all provisions and avoid meaningless surplus language, the Court cannot interpret section 2.4 to prohibit precisely what sections 2.1.1 and 7.3 authorize. *See Maples,* 50 F. Supp. 3d at 1228 (quoting *Zalkind,* 194 Cal. App. 4th at 1027 (2011)). Therefore, Plaintiff has not stated a claim that Defendants breached section 2.4 under these provisions. The Court **GRANTS** Defendants' motion in this respect as well.

### 2. Lumberyard

Plaintiff also alleges that Defendants breached section 2.4 by announcing it had "licensed and intended to use the Amazon Lumberyard video game engine for Star Citizen in place of CryEngine, and promoted Lumberyard extensively in that announcement." SAC at ¶ 37. Plaintiff aims the same conclusory allegations described above at Defendants' purported development, design, or creation of Lumberyard, but those allegations are inadequate for the same reasons. Plaintiff also argues in its Opposition that Defendants impermissibly developed Lumberyard, but the Court will not entertain factual assertions in an opposition to a motion to dismiss that are absent from the SAC. Opp. at 6; *see U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (on a motion to dismiss, a court may only consider the face of the complaint, documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice). Plaintiff does not allege Defendants sold Lumberyard to any third party. Therefore, section 2.4's language as it pertains to the non-conclusory allegations in the SAC reads as follows:

> During the Term of the License, or any renewals thereof, and for a period of two years thereafter, Licensee, its principals, and Affiliates shall not directly or indirectly engage in the business of . . . **promoting . . . or licensing**

---

[4] The Court obtained the quoted language from watching the YouTube video Plaintiffs incorporated into the SAC. SAC at ¶ 33 (incorporating the video located at https://www.youtube.com/watch?v=fDROliuDczo). The Court may take into consideration at the pleading stage materials incorporated by reference into the Complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine "permits us to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.") (internal quotations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | December 6, 2018 |
|---|---|---|---|
| Title | *Crytek GMBH v. Cloud Imperium Games Corp., et al.* | Page | 8 of 10 |

(directly or indirectly) any game engine or middleware which compete with CryEngine.

### i.  Promoting

Similar to Plaintiff's "promotion" argument regarding Star Engine, Plaintiff alleges Defendants promoted Lumberyard only once in connection with its announcement on December 23, 2016 that it intended to replace CryEngine as its game engine. And just like the single instance of purported promotion pertaining to Star Engine, this solitary act is insufficient to establish that Defendants engaged in the business of promoting Lumberyard. The Court therefore **GRANTS** MTD as to their promotion of Lumberyard for the same reasons it granted the motion with respect to Plaintiff's allegations that Defendants improperly promoted Star Engine.

### ii.  Licensing

The parties' arguments pertaining to Lumberyard focus on whether Defendant promoted Lumberyard in violation of section 2.4, but the SAC also alleges that section 2.4 prohibits Defendants from engaging in the business of *licensing* any game engine that competes with CryEngine. *Id.* at ¶ 36. It also alleges that Defendants "announced that they had licensed . . . the Amazon Lumberyard video game engine for Star Citizen in place of CryEngine." *Id.* at ¶ 37.

Defendants assume that the "licensing" language in section 2.4 only prohibits it from licensing a competing game engine *to* a third party. *See* MTD at 11 ("Crytek does not and could not allege that Defendants ever attempted to promote, license, or sell Lumberyard to any third party."). While certain passages from Plaintiff's Opposition imply they believe section 2.4 also prohibits Defendants from licensing *from* a third party, Plaintiff does not squarely address the issue. *See* Opp. at 5, ("The public record further suggests that they have engaged in conduct consistent with having both (a) entered into a similar agreement directed at a competing game engine, Lumberyard . . ."), 10 ("Defendants announced that they would no longer use CryEngine for Star Citizen and would instead use a competing game engine, Lumberyard.").

To the extent Plaintiff alleges that Defendants violated section 2.4 by licensing Lumberyard *from* Amazon, the Court agrees with Defendants' interpretation of the GLA. In California, the "whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other. Cal. Civ. Code § 1641 (West); *Badie*, 67 Cal. App. 4th at 800, 79 ("We ascertain the intent of the parties by considering an agreement as a whole, not by interpreting a provision in isolation."). When taken in context with the rest of section 2.4, the word "licensing" most appropriately only prevents Defendants from licensing competing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | December 6, 2018 |
|---|---|---|---|
| Title | *Crytek GMBH v. Cloud Imperium Games Corp., et al.* | Page | 9 of 10 |

game engines *to* a third party. "Licensing" directly follows "selling," implying that Plaintiff was concerned with other game engine businesses competing against them by providing game engines to potential Crytek customers. The section does not include "buying," which makes it less likely that Plaintiff intended this clause to prevent licensees from obtaining the rights to use other game engines *from* third parties. "Licensing" also fits far better with the words "designing, developing, [and] creating" if the whole section is read to preclude licensees from bringing game engines they designed, developed, or created to market to compete with CryEngine.

The Court therefore determines that "licensing" in section 2.4 prohibited Defendants from licensing a competing game engine *to* a third-party licensee, but did not preclude Defendants from licensing Lumberyard *from* Amazon. The Court **GRANTS** in the MTD in that respect.

### iii. Trademark-Related Arguments

Finally, Plaintiff alleges that Defendants breached section 2.4 because Plaintiff now will not receive the benefit "it otherwise would have derived from Defendants' use of CryEngine in Star Citizen and attendant promotion of CryEngine." SAC at ¶ 39. Plaintiff also argues in its Opposition that Defendants breached section 2.4 through its "prominent display of Lumberyard's trademarks in Star Citizen." Opp. at 10. Neither of these theories is sufficient to state a claim. First, nothing in section 2.4 obligates Defendants to promote CryEngine in any way. While it prohibits Defendants from engaging in the business of promoting a competing game engine, it does not force Defendants to take any promotional action on Plaintiff's behalf. Thus, Plaintiff's failure to receive promotional benefits, to the extent Defendants owed them a promotional duty at all, does not implicate section 2.4.

Second, while Plaintiff argues in its opposition that Defendants "coupled" their Lumberyard announcement with the "prominent display" of the Lumberyard trademark, the SAC contains no allegations that this actually occurred. To the extent the trademark display was a part of Defendants' December 23, 2016 announcement, it would still only establish a single promotional event insufficient to show Defendants engaged in the business of promoting Lunberyard. Defendants' motion is therefore **GRANTED** with respect to these issues.

### B. Leave to Amend

Should a court dismiss certain claims, it must also decide whether to grant leave to amend. Courts should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Moss v. Secret*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937-DMG (FFMx) | Date | December 6, 2018 |
|---|---|---|---|
| Title | *Crytek GMBH v. Cloud Imperium Games Corp., et al.* | Page | 10 of 10 |

*Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (leave to amend should be granted with "extreme liberality"). Courts should grant leave to amend unless "the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)). The decision to grant leave to amend a dismissed complaint lies "within the sound discretion of the trial court." *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981). Because it is possible that Plaintiff could cure the deficiencies identified in this Order by alleging other or different facts, the Court concludes that a final opportunity to amend is warranted.

## IV.
## CONCLUSION

In light of the foregoing, the Court **GRANTS with leave to amend** Defendants' MTD. Within 21 days from the date of this Order, Plaintiff shall file a Third Amended Complaint addressing the deficiencies discussed in this Order or notify Defendants and the Court that it does not intend to amend. Thereafter, Defendants shall file their response within 21 days.

**IT IS SO ORDERED.**