**JOSEPH R. TAYLOR** (SBN 129933)
**JEREMY S. GOLDMAN** (SBN 306943)
**MARK R. BUTLER-SWIECH** (SBN 311601)
**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650
E-Mail: jtaylor@fkks.com
         jgoldman@fkks.com
         mswiech@fkks.com

Attorneys for Defendants CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRYTEK GMBH,<br><br>    Plaintiff,<br><br>    vs.<br><br>CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP.,<br><br>    Defendants.<br>_____ | Case No. 2:17-CV-08937<br><br>[HON. DOLLY M. GEE]<br><br>**ANSWER TO SECOND AMENDED COMPLAINT** |

For their answer to Plaintiff Crytek GmbH's ("Crytek") Second Amended Complaint [ECF 39] ("SAC"), Cloud Imperium Games Corp. ("CIG") and Roberts Space Industries Corp. ("RSI") (together, "Defendants") state as follows:

## SECOND AMENDED COMPLAINT[1]

The non-numbered paragraph that appears under the heading "Second Amended Complaint" is a preamble that pleads no facts to which a response is required. To the extent a response may be required, Defendants admit that Crytek brought a civil action against Defendants in the United States District Court for the Central District of California captioned *Crytek GmbH v. Cloud Imperium Games Corp.*, No. 2:17-CV-08937, and that the operative pleading in that action is the SAC. Defendants deny that they are liable to Crytek for any of the conduct alleged in the SAC and specifically deny that they are liable to Crytek for allegedly breaching the parties' Game License Agreement ("GLA") or for copyright infringement. Defendants deny any and all remaining assertions in this paragraph.

## NATURE OF ACTION

1. Paragraph 1 consists of legal conclusions to which no response is required. To the extent a response may be required, Defendants admit that this Court has exclusive subject matter jurisdiction over certain purported claims within this action under 28 U.S.C. §§ 1131 and 1338(a). Defendants further admit that they are citizens of California and that Crytek asserts that it is a citizen of a foreign state. Defendants further admit that Crytek asserts that the amount in controversy exceeds $75,000. Defendants deny any and all of Crytek's remaining assertions in Paragraph 1.

2. Defendants are without knowledge or information sufficient to form a belief about the truth of Crytek's assertions in Paragraph 2 and on that basis deny them.

---

[1] Defendants' Answer reproduces the headings from the SAC verbatim solely for the Court's convenience and ease of reference. Defendants' use of these headings is not an admission as to the truth of any assertions contained therein. To the extent these headings are construed as assertions to which a response may be required, Defendants deny the assertions contained therein.

3. Defendants admit that, in or about 2012, they or their predecessors-in-interest (for convenience, also referred to herein as "Defendants") began to develop a new game called "Star Citizen" and its related space fighter game "Squadron 42." Defendants further admit that they decided to use the CryEngine video game development platform to develop "Star Citizen" and its related space fighter game "Squadron 42." Defendants further admit they first used CryEngine under a standard evaluation license offered by Crytek until the parties entered into a license term sheet on or about October 10, 2012. Defendants further admit that their crowdfunding campaign for "Star Citizen" and its related space fighter game "Squadron 42" raised over 150 million dollars and that amount represents a record for video game crowdfunding projects. Defendants deny Crytek's remaining assertions in Paragraph 3 and specifically deny that Crytek undertook any special, unusual, or extraordinary efforts with respect to Defendants that went beyond the level of support and engagement that Crytek provides to its licensees that Crytek considers likely to produce a triple-A game, or that Defendants' success is attributable to Crytek's alleged efforts, or anything other than Chris Roberts' authorship and Defendants' unique and unprecedented approach to involve the community in the creation of "Star Citizen" and its related space fighter game "Squadron 42."

4. Defendants admit that Crytek and CIG entered into the GLA and refer to the GLA for the terms therein. On information and belief, Defendants aver that the terms of the GLA are standard for Crytek in most or all licenses that Crytek enters into with other game developers for their use of CryEngine. Defendants deny Crytek's remaining assertions in Paragraph 4 and specifically deny that they breached the GLA or infringed any copyright owned by Crytek.

5. Defendants deny Crytek's assertions in Paragraph 5 and specifically deny that Crytek is entitled to any relief in this action.

## THE PARTIES

6. Defendants are without knowledge or information sufficient to form a belief about the truth of Crytek's assertions in Paragraph 6 and on that basis deny them.

7. Defendants admit that CIG is a corporation organized under the laws of Delaware and registered to do business in California with its principal place of business in Los Angeles, California.

8. Defendants admit that, at the time this action was filed, RSI was a corporation organized under the laws of Delaware and was registered to do business in California with its principal place of business in Los Angeles, California. Defendants deny any and all of Crytek's remaining assertions in Paragraph 8.

## JURISDICTION AND VENUE

9. Paragraph 9 consists of legal conclusions to which no response is required. To the extent a response may be required, Defendants admit that this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). Defendants deny any and all of Crytek's remaining assertions in Paragraph 9.

10. Paragraph 10 consists of legal conclusions to which no response is required. To the extent a response may be required, Defendants admit that they are citizens of California and that Crytek asserts that it is a citizen of a foreign state. Defendants further admit that Crytek asserts that the amount in controversy exceeds $75,000. Defendants deny any and all of Crytek's remaining assertions in Paragraph 10.

11. Paragraph 11 consists of legal conclusions to which no response is required. To the extent a response may be required, Defendants admit that this Court has personal jurisdiction over them. Defendants deny that they have engaged in any actionable conduct within the State of California or anywhere else. Defendants are without knowledge or information sufficient to form a belief about the truth of the Crytek's remaining assertions in Paragraph 11 and on that basis deny them.

12. Paragraph 12 consists of legal conclusions to which no response is required. To the extent a response may be required, Defendants admit that venue is proper in this

District pursuant to 28 U.S.C. § 1391. Defendants deny any and all of Crytek's remaining assertions in Paragraph 12.

### FACTS GIVING RISE TO THIS ACTION

13. Defendants admit that Chris Roberts is a video game designer. Defendants further admit that Ortwin Freyermuth is an attorney who has represented clients in the entertainment industry. Defendants further admit that Mr. Roberts and Mr. Freyermuth are Defendants' co-founders. Defendants further admit that, on or about October 10, 2012, they initiated a crowdfunding campaign to raise money for "Star Citizen" and its related space fighter game "Squadron 42." Defendants deny any and all of Crytek's remaining assertions in Paragraph 13.

14. Defendants deny Crytek's assertions in Paragraph 14 and specifically deny that Crytek undertook any special, unusual, or extraordinary efforts with respect to Defendants that went beyond the level of support and engagement that Crytek provides to its licensees that Crytek considers likely to produce a triple-A game, or that Defendants' success is attributable to Crytek's alleged efforts, or anything other than Chris Roberts' authorship and Defendants' unique and unprecedented approach to involve the community in the creation of "Star Citizen" and its related space fighter game "Squadron 42."

15. Defendants admit that Crytek and Defendants entered into the GLA, which is dated as of November 20, 2012. Defendants further admit that Mr. Freyermuth played a lead role in negotiating the GLA on behalf of Defendants. Defendants further admit that, prior to co-founding Defendants, when Mr. Freyermuth was in private practice, he represented Crytek on matters unrelated to the GLA or Defendants' business and aver that, before representing Defendants in their negotiations with Crytek, Crytek executed a written conflict-of-interest waiver with respect to Mr. Freyermuth's previous representation of Crytek on unrelated matters. Defendants further admit that Carl Jones was an employee of Crytek and is now an employee of Defendants. Defendants are

without knowledge or information sufficient to form a belief about the truth of Crytek's remaining assertions in Paragraph 15 and on that basis deny them.

16. Defendants admit that, under the GLA, they agreed to pay Crytek a license and "royalty buy-out" fee for access to and use of CryEngine in the "Star Citizen" ***and*** "Squadron 42" video games. Defendants deny any and all of Crytek's remaining assertions in Paragraph 16 and specifically deny they paid a "below-market license rate" for CryEngine and aver, on information and belief, that the GLA's provisions obligating Defendants to display Crytek's copyright and trademark notices are standard in Crytek's CryEngine licensing agreements.

17. Defendants admit that they met their initial crowdfunding goal for "Star Citizen." Defendants further admit that they added additional "stretch goals" to the "Star Citizen" crowdfunding campaign. Defendants further admit that they raised over $50 million by 2014, over $100 million by 2015, and over $150 million by 2017. Defendants further admit that "Star Citizen" has hit a record for video game crowdfunding projects and is one of the highest-funded crowdfunding campaigns of all time. Defendants deny that they "made . . . use of Crytek's materials" in the "Star Citizen" crowdfunding campaign in any manner for which they did not otherwise have the rights to use those materials. Defendants deny any and all of Crytek's remaining assertions in Paragraph 17.

18. Defendants deny Crytek's assertions in Paragraph 18 and specifically deny that they breached the GLA or infringed any copyright owned by Crytek.

**A.    Defendants Are Developing a Separate Game Using CryEngine Without Permission[2]**

19. Defendants deny that Section 2.1.2 of the GLA contained a promise to use CryEngine for the development of only one video game and refer to the GLA for the complete terms therein, including the GLA's definition of the term "Game" as "Star

---

[2] To the extent this subheading is deemed an allegation to which Defendants' response may be required, Defendants deny the Crytek's assertions contained in this subheading and specifically deny that they are developing a separate game using CryEngine.

1  Citizen *and its related space fighter game 'Squadron 42'*" (emphasis added).
2  Defendants deny any and all of Crytek's remaining assertions in Paragraph 19.
3       20.   Defendants admit that Section 2.1.2 of the GLA contains the quoted
4  language and refer to the GLA for the complete terms therein.  Defendants deny that the
5  GLA limits the use of the CryEngine computer program to a single video game called
6  "Star Citizen" and refer to the GLA for the terms therein, including the GLA's definition
7  of the term "Game" as "Star Citizen *and its related space fighter game 'Squadron 42'*"
8  (emphasis added).  Defendants deny any and all of Crytek's remaining assertions in
9  Paragraph 20.
10      21.   Defendants admit that Exhibit 2 of the GLA contains the quoted language,
11 but aver that Crytek failed to quote the relevant language in full.  The full sentence reads:
12 "For the avoidance of doubt, the Game does not include any content being sold and
13 marketed separately, *and not being accessed through the Star Citizen Game client*, e.g.,
14 a fleet battle RTS sold and marketed as a separate, standalone PC game *that does not*
15 *interact with the main Star Citizen game (as opposed to an add-on / DLC to the*
16 *Game)*" (emphasis added).  Defendants deny any and all of Crytek's remaining assertions
17 in Paragraph 21.
18      22.   Defendants deny that on December 16, 2015, they announced that
19 "Squadron 42" would be sold separately from "Star Citizen" and aver that, on December
20 16, 2015, Defendants announced that they would be offering a package in which "Star
21 Citizen" and "Squadron 42" would be available together as a crowdfunding incentive for
22 $30 and that, in 2016, that package would no longer be available.  Defendants admit that,
23 pursuant to Exhibit 2 of the GLA, "STAR CITIZEN (the 'Game')" is described as
24 featuring "Squadron 42: Single Player – Offline or Online ((Drop in / Drop out co-op
25 play)" in addition to "Star Citizen:  Persistent Universe (hosted by CIG)."  Defendants
26 deny that they had promised in the GLA that "Squadron 42" would not "be sold
27 separately"; and aver that Exhibit 2 of the GLA states that "the Game does not include
28 any content being sold and marketed separately, *and not being accessed through the*

*Star Citizen Game client*, e.g., a fleet battle RTS sold and marketed as a separate, standalone PC game *that does not interact with the main Star Citizen game (as opposed to an add-on / DLC to the Game)*" (emphasis added).  Defendants deny any and all of Crytek's remaining assertions in Paragraph 22.

23. Defendants admit that, on January 29, 2016, they made a public announcement, clarified shortly thereafter, that Squadron 42 would be available "as either a stand alone game or an optional addon for Star Citizen rather than be included by default."  Defendants aver that, on February 8, 2016, they made another announcement clarifying that "Star Citizen" and "Squadron 42" would still be "functionally connected," would continue to be accessed "though the same game client," and that "performance in Squadron 42 [would] still have an impact on [players'] career[s] in [Star Citizen]."  Defendants deny any and all of Crytek's remaining assertions in Paragraph 23.

24. Defendants admit that, on a February 5, 2016 telephone call, Crytek's counsel expressed to Mr. Freyermuth Crytek's concern about Defendants distributing "Squadron 42" as a standalone game.  Defendants aver that, on this phone call, Mr. Freyermuth clarified Defendants' plans with respect to "Squadron 42," which Crytek's counsel agreed would not violate the GLA.  Defendants further aver that, on February 7, 2016, Mr. Freyermuth sent an email to Crytek's counsel memorializing their telephone conversation and stating that Defendants would publish a corrective statement to clarify that "Squadron 42" would remain functionally tied to "Star Citizen" and only accessible through the "Star Citizen" game client, which Defendants did on February 8, 2016.  Defendants deny Crytek's characterization of its February 5, 2016 communication to Defendants and deny any and all of Crytek's remaining assertions in Paragraph 24.

25. Defendants admit that, on February 14, 2016, they began to raise additional crowdfunding by offering "Squadron 42," as explained in their February 8, 2016 announcement described in Paragraph 23 above.  Defendants deny Crytek's remaining assertions in Paragraph 25 and specifically deny that they "fail[ed] to obtain a license" from Crytek for "Squadron 42," that "Squadron 42" has actually ever been made

available as a "standalone" game, and that any of the conduct Crytek alleges in the SAC constitutes an "intentional[] and willful[]" breach of the GLA or "intentional[] and willful[]" copyright infringement.

26. Defendants admit that, on December 23, 2016, in reference to Star Citizen and Squadron 42, Defendants announced that "[b]oth games are currently in development and are backed by a record-breaking $139 million crowd funded effort." Defendants deny any and all of Crytek's remaining assertions in Paragraph 26.

27. Defendants deny Crytek's assertions in Paragraph 27 and specifically deny that the GLA does not permit Defendants to use CryEngine to develop "Squadron 42," that Defendants are obligated to pay Crytek any additional compensation for any of their use of CryEngine, or that Crytek has suffered any actionable harm as a result of any of Defendants' use of CryEngine in connection with "Squadron 42" or otherwise.

**B.    Defendants Removed Crytek Trademarks and Copyright Notices from Their Games and Marketing Materials Without Permission[3]**

28. Defendants admit that Sections 2.8.1, 2.8.2, and 2.8.3 of the GLA generally concern the display of Crytek's trademarks and copyright notices in the "Star Citizen" video game and related marketing materials, but deny Crytek's characterization of those provisions and refer to the GLA for the complete terms therein. Defendants aver, on information and belief, that Sections 2.8.1, 2.8.2, and 2.8.3 of the GLA are standard in Crytek's CryEngine licensing agreements. Defendants deny any and all of Crytek's remaining assertions in Paragraph 28.

29. Defendants admit that Section 2.8.1 of the GLA contains the quoted language, but deny Crytek's characterization of the provision and refer to the GLA for the complete terms therein. Defendants deny any and all of Crytek's remaining assertions in Paragraph 29.

---

[3] To the extent this subheading is deemed an allegation to which Defendants' response may be required, Defendants deny Crytek's assertions contained in this subheading.

30. Defendants admit that Section 2.8.2 of the GLA contains the quoted language, but deny Crytek's characterization of the provision and refer to the GLA for the complete terms therein. Defendants deny any and all of Crytek's remaining assertions in Paragraph 30.

31. Defendants deny Crytek's assertions in Paragraph 31 that Section 2.8.3 of the GLA states that any changes to Crytek's trademarks and copyright notices in "Star Citizen" requires Crytek's prior written approval and a ten-day approval period and refer to the GLA for the terms therein.

32. Defendants admit that, pursuant to the GLA, "Star Citizen" initially contained a splash screen that included Crytek's trademarks and copyright notices. Defendants further admit that the screenshot in Paragraph 32 appears to be an accurate reproduction of what this splash screen looked like. Defendants deny any and all of Crytek's remaining assertions in Paragraph 32.

33. Defendants deny that they "knew Crytek's right to display its trademarks and copyright notices in the Star Citizen video game and related marketing materials was a critical component of the GLA." Defendants admit that, in a video dated September 24, 2016, found at https://www.youtube.com/watch?v=fDROliuDczo, Mr. Roberts stated that "we don't call [the video game engine] CryEngine anymore, we call it Star Engine," a term used internally by Defendants' employees to identify the cumulative code base comprising CryEngine, plus Defendants' substantive modifications, additions, and re-designs to CryEngine, as authorized and contemplated by GLA Section 2.1.1. Defendants deny any and all of Crytek's remaining assertions in Paragraph 33 and specifically deny that, in making this statement, Mr. Roberts "publicly sought to minimize Crytek's contribution to Star Citizen."

34. Defendants admit that, after they began operating under the Amazon Lumberyard license, Defendants no longer included Crytek's copyright and trademark notices in "Star Citizen" and related marketing materials. Defendants deny any and all of Crytek's remaining assertions in Paragraph 34 and specifically deny that Defendants'

omission of Crytek's trademarks and copyright notices from "Star Citizen" and related marketing materials breached the GLA.

35. Defendants deny Crytek's assertions in Paragraph 35 and specifically deny that "[t]he licensing fee negotiated under the GLA reflected a substantial reduction from Crytek's usual licensing fees in view of the promotional consideration and other consideration that Defendants promised to Crytek in Sections 2.8.1, 2.8.2, and 2.8.3 of that Agreement," or that Crytek has been damaged in any way as a result of any conduct alleged in the SAC.

### C. Defendants Broke Their Promise Not to Compete with CryEngine by Adopting And Promoting a Competing Game Engine[4]

36. Based on the Court's December 6, 2018 Order Granting Defendants' Motion to Dismiss the SAC in Part [ECF 49], no response to Paragraph 36 is necessary.

37. Based on the Court's December 6, 2018 Order Granting Defendants' Motion to Dismiss the SAC in Part [ECF 49], no response to Paragraph 37 is necessary.

38. Based on the Court's December 6, 2018 Order Granting Defendants' Motion to Dismiss the SAC in Part [ECF 49], no response to Paragraph 38 is necessary.

39. Based on the Court's December 6, 2018 Order Granting Defendants' Motion to Dismiss the SAC in Part [ECF 49], no response to Paragraph 39 is necessary.

### D. Defendants Broke Their Promise to Collaborate On CryEngine Development[5]

40. Defendants admit that Section 7.3 of the GLA generally concerns Defendants' obligation to provide "bug fixes and optimizations" to Crytek, but deny Crytek's characterization of that provision, and specifically deny that such an obligation

---

[4] Based on the Court's December 6, 2018 Order Granting Defendant's Motion to Dismiss the SAC in Part [ECF 49], no response to this subheading is necessary.

[5] To the extent this subheading is deemed an allegation to which Defendants' response may be required, Defendants deny the assertions contained in this subheading and specifically deny that they broke their promise to collaborate on CryEngine development.

to deliver bug fixes and optimizations, which is standard in game license agreements, constitutes "collaboration," and refer to the GLA for the complete terms therein. Defendants deny any and all of Crytek's remaining assertions in Paragraph 40.

41.     Defendants admit that Section 7.3 of the GLA contains the quoted language, but deny Crytek's characterization of that provision and refer to the GLA for the complete terms therein. Defendants deny any and all of Crytek's remaining assertions in Paragraph 41.

42.     Defendants admit that, on or about November 16, 2015, more than three years after entering into the GLA, Crytek for the first time requested bug fixes and optimizations from Defendants. Defendants aver that, between November 18, 2015 and December 4, 2015, Crytek and Defendants exchanged multiple emails regarding the bug fixes and optimizations, but Crytek failed to respond to Defendant's December 4, 2015 email tendering delivery of the requested bug fixes and optimizations. Defendants deny any and all of Crytek's remaining assertions in Paragraph 42.

43.     Defendants admit that, on or about November 24, 2016, almost a year after Defendants tendered the bug fixes and optimizations to Crytek, Defendants received a letter from Crytek contending Defendants were in breach of Section 7.3 of the GLA. Defendants deny that they were in breach of Section 7.3 of the GLA. Defendants aver that, by letter dated November 30, 2016, Defendants reminded Crytek that Defendants had tendered the bug fixes and optimizations in December 2015, but Crytek never accepted delivery or responded to the tender. Defendants further aver that, by letter dated December 2, 2016, Crytek acknowledged its failure to respond to Defendants' December 2015 email and notified Defendants that Crytek was withdrawing its November 24, 2016 breach notice. Defendants deny any and all of Crytek's remaining assertions in Paragraph 43 and specifically deny that they did not comply with their obligations under Section 7.3 of the GLA.

44.     Defendants admit that, by letter dated June 22, 2017, more than six months after Crytek's last communication on the topic, Crytek again requested bug fixes and

optimizations under Section 7.3 of the GLA.  Defendants deny that, "to date," they "have not made a good faith effort to provide Crytek with the promised bug fixes and optimizations."  Defendants aver that, on or about January 23, 2018, approximately six months after receiving Crytek's request, Defendants delivered their "bug fixes and optimizations" to CryEngine as a complete compilable version.  Defendants deny any and all of Crytek's remaining assertions in Paragraph 44.

45.     Defendants deny Crytek's assertions in Paragraph 45 and specifically deny that they have failed to provide "the technology to Crytek that they promised to Crytek under the GLA" or that Crytek has been damaged in any way as a result of any conduct alleged in the SAC.

### E.  Defendants Disclosed CryEngine Technology to Third Parties Without Permission[6]

46.     Defendants admit that Sections 2.2.1, 2.2.2, and 2.6 of the GLA generally concern the confidentiality of the underlying technology for CryEngine (including computer source code), but deny Crytek's characterization of that provision and refer to the GLA for the complete terms therein.  Defendants deny any and all of Crytek's remaining assertions in Paragraph 46.

47.     Defendants admit the GLA contains the quoted language, but refer to the GLA for the complete terms therein.

48.     Defendants admit the GLA contains the quoted language, but refer to the GLA for the complete terms therein.

49.     Defendants admit the GLA contains the quoted language, but refer to the GLA for the complete terms therein.

---

[6] To the extent this subheading is deemed an allegation to which Defendants' response may be required, Defendants deny Crytek's assertions in this subheading and specifically deny that they disclosed CryEngine technology to third parties without permission.

50. Defendants admit that, on or about May 6, 2015, they began posting a series of videos online titled "Bugsmashers." Defendants deny any and all of Crytek's remaining assertions in Paragraph 50.

51. Defendants admit that, on or about August 26, 2017, they announced a partnership with third-party developer Faceware Technologies. Defendants deny any and all of Crytek's remaining assertions in Paragraph 51 and specifically deny that they gave Faceware Technologies access to CryEngine source code or had any obligation to disclose to Crytek their partnership with Faceware Technologies.

52. Defendants deny Crytek's assertions in Paragraph 52.

## COUNTS

### COUNT 1: BREACH OF CONTRACT

53. Defendants incorporate by reference their responses to the assertions in the preceding paragraphs of this Answer.

54. Defendants deny Crytek's assertions in Paragraph 54.

55. Defendants deny Crytek's assertions in Paragraph 55.

56. Defendants deny Crytek's assertions in Paragraph 56.

57. Defendants deny Crytek's assertions in Paragraph 57.

58. Defendants deny Crytek's assertions in Paragraph 58.

59. Based on the Court's December 6, 2018 Order Granting Defendants' Motion to Dismiss the SAC in Part [ECF 49], no response to Paragraph 59 is necessary.

60. Defendants deny Crytek's assertions in Paragraph 60.

### COUNT 2: COPYRIGHT INFRINGEMENT

61. Defendants incorporate by reference their responses to the assertions in the preceding paragraphs of this Answer.

62. Defendants are without knowledge or information sufficient to form a belief about the truth of Crytek's assertions in Paragraph 62 and on that basis deny them.

63. Defendants deny Crytek's assertions in Paragraph 63.

64. Defendants deny Crytek's assertions in Paragraph 64.

65. Defendants deny Crytek's assertions in Paragraph 65.

66. Defendants deny Crytek's assertions in Paragraph 66.

67. Defendants deny Crytek's assertions in Paragraph 67.

68. Defendants deny Crytek's assertions in Paragraph 68.

69. Defendants deny Crytek's assertions in Paragraph 69.

70. Defendants deny Crytek's assertions in Paragraph 70.

## PRAYER FOR RELIEF

Defendants deny that Crytek is entitled to the relief sought, or any relief, in this action.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The SAC fails to state facts sufficient to constitute a claim upon which relief can be granted against Defendants.

## SECOND AFFIRMATIVE DEFENSE

### (Express License)

The GLA expressly permits the conduct of which Crytek complains in the SAC.

## THIRD AFFIRMATIVE DEFENSE

### (No Breach)

Defendants performed all duties owed to Crytek under the GLA, other than duties which were prevented or excused by Crytek's actions or inactions.

## FOURTH AFFIRMATIVE DEFENSE

### (Lack of Privity)

There is no privity of contract between Crytek and RSI, as RSI is not a party to the GLA.

## FIFTH AFFIRMATIVE DEFENSE

### (Prevention of Performance)

Crytek prevented Defendants from performing under the GLA by refusing to accept Defendants' tender of its "bug fixes and optimizations" to CryEngine pursuant to the GLA.

## SIXTH AFFIRMATIVE DEFENSE

### (Non-intentional Breach)

To the extent Defendants are determined to have breached any provision of the GLA, any such breach was not intentional and therefore no damages are recoverable under Section 6.1.4 of the GLA.

## SEVENTH AFFIRMATIVE DEFENSE

### (Implied Condition)

Defendants' obligation to display Crytek's copyright and trademark notices in "Star Citizen" and its related space fighter game "Squadron 42" or their related marketing materials is subject to the implied condition that Defendants are actually using CryEngine in "Star Citizen" and/or "Squadron 42."

## EIGHTH AFFIRMATIVE DEFENSE

### (Copyright Preemption)

Crytek's state law claims for breach of contract are preempted, in whole or in part, by the federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*

## NINTH AFFIRMATIVE DEFENSE

### (Fair Use)

Crytek's copyright claims are barred, in whole or in part, by the fair use doctrine, 17 U.S.C. § 107.

## TENTH AFFIRMATIVE DEFENSE

### (Failure to Register)

Crytek has failed to register the copyrights in one or more of the versions of the CryEngine computer program it alleges Defendants infringed and thus is not permitted to file this suit or maintain this action as to those unregistered works.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Invalid Subject Matter)

To the extent that parts of CryEngine, Crytek's purported copyrighted work, constitute facts, ideas, or scenes-à-faire, such parts lack copyright protection and cannot form the basis of a copyright infringement claim against Defendants.

## TWELFTH AFFIRMATIVE DEFENSE

### (Merger Doctrine)

Crytek's copyright claims are barred, in whole or in part, by the merger doctrine.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (*De Minimis* Use Doctrine)

Crytek's copyright claims are barred, in whole or in part, by the *de minimis* use doctrine.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (No Statutory Damages or Attorney's Fees)

Crytek is barred by 17 U.S.C. § 412 from claiming statutory damages or attorney's fees under the Copyright Act because all alleged acts of infringement began before first registration of Crytek's copyrighted work.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Crytek has failed to take reasonable steps to reduce or minimize its alleged damages.

### SIXTEENTH AFFIRMATIVE DEFENSE

**(Laches)**

Crytek's claims are barred, in whole or in part, by the doctrine of laches.

### SEVENTEENTH AFFIRMATIVE DEFENSE

**(Unclean Hands)**

Crytek's claims are barred, in whole or in part, by the doctrine of unclean hands.

### EIGHTEENTH AFFIRMATIVE DEFENSE

**(Waiver)**

Crytek's claims are barred, in whole or in part, by the doctrine of waiver.

### NINETEENTH AFFIRMATIVE DEFENSE

**(Estoppel)**

Crytek's claims are barred, in whole or in part, by the doctrine of estoppel.

### TWENTIETH AFFIRMATIVE DEFENSE

**(Ripeness)**

At least some of Crytek's claims in the SAC are not ripe for adjudication by this Court.

Dated: February 6, 2019          FRANKFURT KURNIT KLEIN & SELZ P.C.

BY: */s/ Jeremy S. Goldman*
Joseph R. Taylor (SBN 129933)
Jeremy S. Goldman (SBN 306943)
Mark R. Butler-Swiech (SBN 311601)
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650
E-Mail: jtaylor@fkks.com
jgoldman@fkks.com
mswiech@fkks.com

Attorneys for Defendants CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP.