**JOSEPH R. TAYLOR** (SBN 129933)
**JEREMY S. GOLDMAN** (SBN 306943)
**AZITA ISKANDAR** (SBN 280749)
**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650
E-Mail: jtaylor@fkks.com
        jgoldman@fkks.com
        aiskandar@fkks.com

Attorneys for Defendants CLOUD IMPERIUM GAMES CORP.
and ROBERTS SPACE INDUSTRIES CORP.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRYTEK GMBH,<br><br>    Plaintiff,<br>vs.<br><br>CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP.,<br><br>    Defendants. | Case No. 2:17-CV-08937<br><br>[HON. DOLLY M. GEE]<br><br>**DECLARATION OF JEREMY S. GOLDMAN IN SUPPORT OF DEFENDANTS' MOTION FOR A BOND PURSUANT TO CAL. CIV. P. CODE § 1030**<br><br>Date:    April 26, 2019<br>Time:    9:30 AM<br>Courtroom: 8C |

I, JEREMY S. GOLDMAN, declare as follows:

1. I am an attorney licensed to practice law in the State of California, and a partner at the law firm Frankfurt Kurnit Klein & Selz P.C., counsel of record for Cloud Imperium Games Corp. ("CIG") and Roberts Space Industries Corp. ("RSI") (together, "Defendants"), the defendants in the above-captioned lawsuit.

2. I make this declaration on the basis of personal knowledge, except where indicated otherwise.

### Amazon's Lumberyard

3. Attached hereto as **Exhibit 1** is a true and correct copy of a February 9, 2016 article entitled "Amazon launches new, free, high-quality game engine: Lumberyard," which my paralegal obtained under my supervision from http://gamasutra.com/view/news/265425/Amazon_launches_new_free_%highquality_game_engine_Lumberyard.php.

### Crytek's Withdrawal of the Offending Allegations in the Initial Complaint

4. On December 12, 2017, Crytek filed its initial complaint in this action [ECF 1] (the "Initial Complaint").

5. Among other deficiencies with the Initial Complaint, paragraph 15 of the Initial Complaint included the false and improper allegation that Ortwin Freyermuth, an attorney who co-founded CIG and RSI, had negotiated the GLA on behalf of Defendants and against Crytek without resolving a conflict of interest with Crytek. *See* Initial Compl. [ECF 1] ¶ 15, lines 25-28 ("Notwithstanding that he had confidential information about Crytek's licensing practices that would unfairly advantage Defendants, Freyermuth never recused himself from those negotiations and never resolved that conflict of interest with Crytek.") (the "Offending Allegation").

6. Upon learning of the filing of the Initial Complaint, on December 14, 2017, our law firm notified Crytek's counsel of the falsity of the Offending Allegation. We pointed out that, contrary to the statement contained in the Offending Allegation, Mr. Freyermuth's law firm had obtained a written conflict waiver signed by Crytek prior to

1  negotiating the GLA on behalf of CIG.  Notwithstanding the existence of the written
2  conflict waiver, a copy of which we provided to Crytek's counsel on December 15, 2017,
3  Crytek initially refused to withdraw the Offending Allegation from the Initial Complaint.

4        7.      On December 28, 2017, I told Crytek attorneys Kurt Wm. Hemr and Kevin
5  J. Minnick that our firm intended to serve upon Crytek a motion, pursuant to Rule 11 of
6  the Federal Rules of Civil Procedure, based upon Crytek's improper inclusion of, and
7  refusal to withdraw, the Offending Allegation.

8        8.      On January 2, 2018, Crytek filed its First Amended Complaint (the "FAC")
9  [ECF 18].  With respect to the Offending Allegation, Crytek omitted from the FAC the
10 false statement alleging that Mr. Freyermuth had negotiated the GLA on behalf of CIG
11 without resolving a conflict interest.

## Crytek's Financial Condition

13       9.      In preparing this motion, I researched publicly-available sources regarding
14 Crytek's financial condition.  Attached hereto as Exhibits 2 though 18 are true and
15 correct copies of those sources, each of which I introduce below.

16       10.    Attached hereto as **Exhibit 2** is a true and correct copy of a June 23, 2014
17 article entitled "Crysis developer Crytek denies 'verge of bankruptcy' claim," which my
18 paralegal obtained under my supervision from https://www.eurogamer.net/articles/2014-
19 06-23-crysis-developer-crytek-claims-bankrupt-report-is-false.

20       11.    Attached hereto as **Exhibit 3** is a true and correct copy of an August 8, 2014
21 article entitled "'The transformation was painful.  We paid the price,'" which my
22 paralegal obtained under my supervision from https://www.eurogamer.net/articles/2014-
23 08-08-the-transformation-was-painful-we-paid-the-price.

24       12.    Attached hereto as **Exhibit 4** is a true and correct copy of a June 24, 2014
25 article entitled "Crytek UK exodus sparks concern over Homefront:  The Revolution,"
26 which my paralegal obtained under my supervision from
27 https://www.eurogamer.net/articles/2014-06-24-crytek-uk-exodus-sparks-concern-over-
28 homefront-the-revolution.

DECL. OF JEREMY S. GOLDMAN ISO DEFS.' MOT. FOR A BOND PURSUANT TO CCP § 1030
2

13.    Attached hereto as **Exhibit 5** is a true and correct copy of a July 30, 2014 article entitled "Sources: Crytek USA's Leadership Quit Last Week," which my paralegal obtained under my supervision from https://kotaku.com/sources-crytek-usas-leadership-quit-last-week-1613456108.

14.    Attached hereto as **Exhibit 6** is a true and correct copy of a July 30, 2014 article entitled "Deep Silver Buys *Homefront* From Crytek," which my paralegal obtained under my supervision from https://kotaku.com/deep-silver-buys-homefront-1613349084.

15.    Attached hereto as **Exhibit 7** is a true and correct copy of Crytek's annual financial statements for the January 1, 2014 through December 31, 2014 financial year, in the German language, filed with the German government on March 30, 2016, which my paralegal obtained under my supervision from https://www.bundesanzeiger.de/ebanzwww/wexsservlet by searching for "Crytek."

16.    Attached hereto as **Exhibit 8** is a true and correct copy of an English-language translation of Crytek's 2014 financial report. My paralegal, under my supervision, obtained each of the English-language versions of Crytek's financial reports attached hereto as Exhibits 8, 10, and 12 by using the "Google Translate" feature on his Google Chrome web browser, which translated the text into English, then he created a PDF of the English-language output to create each of the documents attached as Exhibits 8, 10, and 12.

17.    Attached hereto as **Exhibit 9** is a true and correct copy of Crytek's corrected annual financial statements for the January 1, 2015 through December 31, 2015 financial year, filed with the German government on June 19, 2017, which my paralegal obtained under my supervision from https://www.bundesanzeiger.de/ebanzwww/wexsservlet by searching for "Crytek." Attached hereto as **Exhibit 10** is a true and correct copy of the English-language translation of Crytek's 2015 financial report.

18.    Attached hereto as **Exhibit 11** is a true and correct copy of Crytek's annual financial statements for the January 1, 2016 through December 31, 2016 financial year, filed with the German government on April 23, 2018, which my paralegal obtained under

1 my supervision from https://www.bundesanzeiger.de/ebanzwww/wexsservlet by searching for "Crytek." Attached hereto as **Exhibit 12** is a true and correct copy of the English-language translation of Crytek's 2016 financial report.

19. Attached hereto as **Exhibit 13** is a true and correct copy of a December 10, 2016 article entitled "Crytek employees say they're not being paid, again," which my paralegal obtained under my supervision from https://www.polygon.com/2016/12/10/13908156/crytek-employees-not-paid.

20. Attached hereto as **Exhibit 14** is a true and correct copy of a December 20, 2016 article entitled "Crytek closing five studios, will refocus on 'premium IPs' and CryEngine," which my paralegal obtained under my supervision from https://www.polygon.com/2016/12/20/14023746/crytek-studios-shutdown.

21. Attached hereto as **Exhibit 15** is a true and correct copy of a March 7, 2017 article entitled "Crytek sells off Black Sea studio to Sega, Total War creators," which my paralegal obtained under my supervision from https://www.polygon.com/2017/3/7/14844758/crytek-black-sea-studio-now-creative-assembly-sofia-total-war-sega.

22. Attached hereto as **Exhibit 16** is a true and correct copy of a press release issued by Crytek on February 28, 2018, entitled "Crytek Announces New Leadership Appointment," which my paralegal obtained under my supervision from https://press.crytek.com/crytek-announces-new-leadership-appointment.

23. Attached hereto as **Exhibit 17** is a true and correct copy of a May 29, 2018 article entitled "Hunt Showdown Losing Its Player Base, Is The Game Dying Already?," which my paralegal obtained under my supervision from https://segmentnext.com/2018/05/29/hunt-showdown-losing-its-player-base-is-the-game-dying-already/.

24. Attached hereto as **Exhibit 18** is a true and correct copy of a press release issued by Crytek on February 6, 2019, entitled "We would like to thank all of our Warface players and fans for so many years of support[,]" which my paralegal obtained

under my supervision from https://press.crytek.com/we-would-like-to-thank-all-of-our-warface-players-and-fans-for-so-many-years-of-support.

### Crytek's Mentions of CIG, RSI, and *Star Citizen* on Social Media

25. From May 21, 2013 until January 22, 2015, Crytek's various social media accounts featured or mentioned either CIG, RSI, or *Star Citizen* at least nine times. For example, attached hereto as **Exhibits 19** through **27** are true and correct copies of posts that Crytek made on the CryEngine Twitter account, which my paralegal obtained under my supervision from https://twitter.com/cryengine and which mention either CIG, RSI, or *Star Citizen*.

### Crytek's Public Release of the CryEngine Source Code

26. Attached hereto as **Exhibit 28** is a true and correct copy of a press release issued by Crytek on August 17, 2011, entitled "Crytek releases CryEngine®3 SDK free-of-charge," which my paralegal obtained under my supervision from https://www.crytek.com/news/crytek-releases-cryengine-3-sdk-free-of-charge.

27. Attached hereto as **Exhibit 29** is a true and correct copy of a press release issued by Crytek on March 17, 2016, entitled "Introducing CRYENGINE V: A letter to our community," which my paralegal obtained under my supervision from https://www.cryengine.com/news/introducing-cryengine-v-a-letter-to-our-community.

28. Attached hereto as **Exhibit 30** is a true and correct copy of a conversation that took place on September 8, 2016 in a community forum hosted on Crytek's CryEngine website, which my paralegal obtained under my supervision from https://www.cryengine.com/community_archive/viewtopic.php?f=355&t=134893.

### Litigation Fees and Costs

29. Attached hereto as **Exhibit 31** is a true and correct copy of Crytek's First Set of Requests for Production and Inspection of Documents and Things to Defendants, served on January 19, 2018.

30. Attached hereto as **Exhibit 32** is a true and correct copy of Crytek's Initial Disclosures, served on January 19, 2018.

31. Attached hereto as **Exhibit 33** is a true and correct copy of an excerpt from the transcript of an April 17, 2018 hearing before Magistrate Judge Frederick F. Mumm on CIG's motion for a protective order controlling the timing and scope of discovery.

32. Attached hereto as **Exhibit 34** is a true and correct copy of an Order granting a motion for sanctions and denying recovery of attorneys' fees in the case *Zenimax Media Inc. v. Oculus VR LLC*, No. 14 Civ. 1849, at 21 (N.D. Tex. June 27, 2018), which I downloaded from PACER [ECF 1118].

*Fees to Date*

33. To date, CIG has incurred **$387,528.45** in attorney's fees in this case. While this case only recently moved past the pleading stage, we have already performed a significant amount of work in this case, including:

  a. conducting a substantial fact investigation;
  b. preparing a Rule 11 motion regarding the Offending Allegations (mooted by Crytek's 11th-hour filing of its First Amended Complaint);
  c. preparing and filing a motion to dismiss the First Amended Complaint in its entirety;
  d. preparing and filing a motion to dismiss the Second Amended Complaint in part;
  e. preparing objections to Crytek's prematurely-propounded and voluminous discovery requests;
  f. preparing and serving initial disclosures;
  g. conducting a Rule 26(f) meeting and preparing, conferring with opposing counsel regarding, and filing a joint 26(f) report;
  h. preparing, filing and arguing a motion for a protective order controlling the timing and scope of discovery;
  i. preparing and filing the Answer to Crytek's Second Amended Complaint;

  j. preparing Defendants' first set of discovery requests to be served when appropriate;

  k. researching and interviewing multiple potential confidential consultants who may become declared expert witnesses at the appropriate time; and

  l. preparing the instant motion for a bond pursuant to California Code of Civil Procedure § 1030.

*Estimated Future Fees and Expenses*

34. It is notoriously difficult to estimate legal fees and expenses in a litigation. However, based on our experience, the nature and complexity of the claims at issue, the amount in controversy, the conduct of our adversary and its counsel, and the phases of the case that remain to be litigated, we predict that our clients' legal fees and expenses from the date of this filing through the conclusion of trial could easily reach **$1,592,937.50**.

35. Attached hereto as **Exhibit 35** is a Report of Anticipated Fees and Expenses that I prepared, which sets forth the basis for this calculation. The report provides low and high estimates of the number of hours we anticipate each of Defendants' attorneys of record in this case to bill for each remaining phase of this litigation. The hourly rate listed for each attorney has been approved by Defendants' insurance carrier.

36. We estimate that Defendants' litigation expenses from the date of this filing through the conclusion of trial could easily reach **$212,832.50**. Exhibit 35 provides low and high cost estimates for each expense that we reasonably anticipate at this time. The Report also indicates the expense estimates that are based on price quotes we received from third-party litigation vendors, true and correct copies of which are attached hereto as **Exhibits 36** and **37**.

37. Based on the foregoing, we request that the Court enter an order pursuant to Cal. Civ. P. Code. § 1030 requiring Crytek to post a bond in the amount of **$2,193,298.45** to secure the award of attorney's fees, costs and expenses that Defendants likely will obtain as the prevailing parties at the conclusion of this action.

## Local Rule 7-3 Meet and Confer

38. On December 19, 2018, I informed P. Anthony Sammi (one of Crytek's attorneys of record) by phone that Defendants intended to file a motion for a bond pursuant to Cal. Civ. P. Code. § 1030.

39. During the call, I explained the grounds for the motion, including our belief that Defendants will prevail in the case, that Crytek will be ordered to pay Defendants' attorney's fees and expenses, and that we had serious concerns about Crytek's ability to pay such an award. I said Defendants would prefer to avoid motion practice and could do so if Crytek agreed to post a substantial undertaking. I confirmed that the call should be considered the start of a meet and confer under Local Rule 7-3. Mr. Sammi said he understood and would take our request back to Crytek.

40. We continued our discussion on January 16, 2019. During that call, Mr. Sammi confirmed that Crytek would not voluntarily post a bond. I advised Mr. Sammi that this motion would follow.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on March 29, 2019.

*JEREMY S. GOLDMAN*