# Exhibit 34

Exhibit 34
267

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and | § | |
| ID SOFTWARE, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-1849-K |
| | § | |
| OCULUS VR LLC, PALMER LUCKEY, | § | |
| FACEBOOK, INC., BRENDAN IRIBE, | § | |
| and JOHN CARMACK, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is the Defendants' Motion for Sanctions (Doc. No. 1023). The Court has carefully considered the motion, the arguments of counsel, the pleadings before the Court, and the record. Because the Plaintiffs failed to produce documents in violation of previous Court orders requiring the production, the Court **GRANTS** the motion.

## I.    Background

In their motion, the Defendants ask the Court to sanction the Plaintiffs pursuant to Federal Rule of Civil Procedure 37 for failing to comply with previous Court orders regarding the Plaintiffs' production of documents to the Defendants. During discovery in this matter, the Defendants requested production of documents relating to the Plaintiffs' financial status and business valuations. The Plaintiffs objected to these production requests and did not produce the requested documents.

Exhibit 34
268

The Defendants filed a Motion to Compel (Doc. No. 225) which was referred to United States Magistrate Judge Paul D. Stickney (Doc. No. 228). On April 5, 2016, approximately nine (9) months prior to trial, Magistrate Judge Stickney entered an order (Doc. No. 446)("First Order"), granting the motion in part as to Requests for Production Nos. 168, 169, and 171. These production requests asked for the following documents:

> Request No. 168: All Documents reflecting Plaintiff's audited, reviewed, examined, or compiled financial statements, balance sheets, statements of cash flows, and any footnotes thereto from 2006 to the present.
>
> Request No. 169: All Documents reflecting any valuations of Plaintiffs from 2006 to the present.
>
> Request No. 171: All competitive analysis, budgets, or strategic plans for ZeniMax and id Software from 2006 to present.

*See* Doc. No. 446 at 1. In response to the motion, the Plaintiffs represented to the Court that they "provided responses and produced documents to the extent possible." *See* Doc. No. 249 at 1. Magistrate Judge Stickney rejected the Plaintiffs' arguments and ordered them to produce the responsive information.  *See* Doc. No. 446 at 2.

In January 2017 during the trial of this matter, the Defendants again raised the issue of valuation documents related to ZeniMax after the cross-examination of Mr. Robert Altman, ZeniMax's CEO. Trial Tr. vol. 17, 9:11-25, Jan. 25, 2017. During his cross-examination, Mr. Altman was asked the worth of ZeniMax. Trial Tr. vol. 12, 24:2-18, Jan. 20, 2017. Mr. Altman responded that "[ZeniMax] today is

worth anywhere from $4 billion up to $8 billion." *Id.* at 24:7-8. He was also cross-examined as to how this value was determined and the existence of any actual documents to verify the $4 billion to $8 billion valuation. Trial Tr. vol. 12, 24:2-18, 29:23-32:1; Trial Tr. vol. 13, 10:14-16:21, Jan. 23, 2017. Mr. Altman responded, "There are documents, yes." *Id.* at 16:16.

As a result of this testimony, the Defendants raised the same issues they had presented in their previous motion to compel regarding the production of valuation documents as to ZeniMax, the production of which Magistrate Judge Stickney had ordered nine months earlier. Trial Tr. vol. 17, 9:11-25, Jan. 25, 2017.  Outside the presence of the jury, the Defendants argued that the Plaintiffs' previous production was obviously insufficient and did not comply with the Court's First Order because the Plaintiffs never produced the documents that Mr. Altman testified did exist. *Id.* After hearing the Plaintiffs' response, the Court agreed with the Defendants and orally ordered the Plaintiffs to produce those documents by 9:00 a.m. the following morning. *Id.* at 9:11-18:13 ("Second Order"). The Court also specifically and repeatedly warned the Plaintiffs that the consequences of not making a full production in compliance with this Second Order would be "grave." *Id.* at 15:25-16:1, 16:18-23. The Court's Second Order was clear and unequivocal and the Plaintiffs' counsel specifically acknowledged that he understood the Court's order. *Id* at 16:21. Not only were several of the Plaintiffs' attorneys present to hear the Court's Second Order, Mr. Altman was also present to hear it. Mr. Altman is a licensed attorney.

Exhibit 34
270

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 5 of 23   Page ID
#:1028
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 4 of 22   PageID 61391

Trial Tr. vol. 11, 56:23-57:9, Jan. 20, 2017. As such, Mr. Altman himself should certainly have understood the Plaintiffs' obligations under the Court's Second Order.

The following morning, the Defendants informed the Court that, at 6:30 a.m. that morning, the Plaintiffs had produced approximately 60 new pages of heavily redacted documents in response to the Court's Second Order. Trial Tr. vol. 19, 10:2-11:7, Jan. 26, 2017. The Defendants stated that they had not had sufficient time to thoroughly review the documents or consult experts regarding the content, but their cursory review suggested that the newly produced documents were questionable and the production was still not complete. *Id.* At this point in the trial, all that remained was the parties' closing arguments and the Court's instructions to the jury.  In an attempt to remedy some of the harm done by the Plaintiffs' repeated failure to produce the documents, the Defendants moved the Court to limit the scope of the Plaintiffs' closing arguments regarding the value of ZeniMax, in addition to other possible remedies. *Id* at 10:2-19:10. The Plaintiffs responded that they had actually produced 120 pages of documents and they had fully complied with the discovery requests and the Court's Orders. After a lengthy discussion on the record, the Court granted the Defendants' request to limit the scope of the Plaintiffs' closing arguments but denied all other relief. *Id.* The Court believed this remedy was appropriate and sufficient to address any harm the Plaintiffs' actions caused the Defendants considering the circumstances as the Court understood them to be at that time, particularly in light of the Plaintiffs' representations to the Court.

Exhibit 34
271

Almost a month after the trial concluded, the Defendants filed a Fourth Motion to Compel Production of ZeniMax Valuation Documents (Doc. No. 955). The Defendants again raised the issue of the Plaintiffs' failure to fully produce the requested documents, arguing the record was incomplete and that specific information was needed for post-trial and appellate purposes. After considering the motion and responsive briefing, the Court issued an order (Doc. No. 1005) ("Third Order"), in which the Court once again ordered the Plaintiffs to produce the valuation documents. Specifically, the Plaintiffs were ordered to: (1) produce complete copies of the documents previously produced in redacted form on January 26, 2017, in native format with metadata; (2) produce any and all documents reflecting any valuation of either Plaintiff from 2006 to the present, in native format with metadata; and (3) provide a privilege log to identify any and all redactions made or documents withheld on the basis of any claim of privilege. *See* Doc. No. 1005 at 1.

In response, the Plaintiffs provided another round of production.  In their motion for sanctions, the Defendants allege that the Plaintiffs produced 111 documents, approximately 2,000 pages, in response to the Court's Third Order.  Of these documents, the Defendants identified 72 documents, at least 1,300 pages, which had not previously been produced. According to the Defendants, these documents were in existence prior trial, were in the Plaintiffs' possession, were responsive to the prior discovery requests, and had been ordered by the Court to be produced months before their actual production.

Exhibit 34
272

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 7 of 23   Page ID
#:6022
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 6 of 22   PageID 61393

In addition to the extreme delay in production of those documents, the Defendants assert that the Plaintiffs still have not fully complied with the production requests and, more importantly, the Court's prior Orders. More specifically, the Defendants contend: (1) many of the documents are incomplete; (2) some of the documents indicate there are other related or responsive documents that have not yet been produced; (3) only seven emails have been identified by the Plaintiffs as responsive; and (4) at least some of the remaining redactions are not based on privilege.

## II. Applicable Law for Discovery-Related Sanctions

Federal Rule of Civil Procedure 37 addresses a party's failure to cooperate in discovery, a party's failure to comply with a court's order regarding discovery, and appropriate sanctions for such failures. FED. R. CIV. P. 37. Rule 37 specifically allows a court to "issue further just orders" if a party fails to obey an order to provide discovery. FED. R. CIV. P. 37(b)(2). "Just orders" under Rule 37 may include, but is not limited to:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any

Exhibit 34
273

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 8 of 23   Page ID
#:6073
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 7 of 22   PageID 61394

order except an order to submit to a physical or mental examination.

*Id.*

Rule 37 confers broad discretion on district courts "'to fashion remedies suited to a party's misconduct.'" *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012)(quoting *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990)). Citing standards set forth by the United States Supreme Court, the Fifth Circuit has indicated the following factors are taken into consideration for Rule 37 sanctions: (1) the fairness of the sanction; (2) the relationship between the sanction and the discovery; and (3) the fulfillment of the goals of Rule 37 to punish the offending party and deter others who might be similarly inclined to such behavior. *See Chilcutt v. U.S.*, 4 F.3d 1313, 1321 (5th Cir. 1993)(citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707-709 (1982) and *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

Less severe sanctions do not require a finding of bad faith or willful misconduct, but the severest sanctions, such as striking pleadings or dismissing a case, usually require a finding of bad faith or willful misconduct by the party. *Smith*, 685 F.3d at 488; *see also F.D.I.C. v. Conner*, 20 F.3d 1376, 1381 (5th Cir. 1994)(dismissal of party's claim with prejudice appropriate only where the client's conduct caused violation of the discovery, refusal to comply is willful or in bad faith, the record clearly shows delay or contumacious conduct, and the complaining party suffered substantial prejudice). Sanctions that have the effect of striking complaints or

Exhibit 34
274

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 9 of 23   Page ID
#:1024
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 8 of 22   PageID 61395

dismissing a case must be supported by a finding that (1) the discovery violation was willful and (2) a less severe sanction would not have the effect of deterring these violations. *U.S. v. 200 Acres of Land Near FM 2686*, 773 F.3d 654, 660 (5th Cir. 2014); *see Timms v. LZM, L.L.C.*, 657 F. App'x. 228, 230 (5th Cir. 2016). The court may "consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation." *200 Acres*, 773 F.3d at 660.

While Rule 37 addresses sanctions for a party's discovery-related misconduct, Rule 60(b)(3) permits a court to relieve a party from a final judgment when an adverse party commits fraud, misrepresentation, or misconduct. FED. R. CIV. P. 60(b)(3). The Fifth Circuit has held that Rule 60(b)(3) applies to misconduct related to withholding information within the scope of discovery. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978). A party seeking a new trial based on an adverse party's misconduct during discovery and trial must establish those allegations by clear and convincing evidence. *Id.*; *see Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1358 (5th Cir. 1988). The alleged conduct must have prevented the losing party from fully and fairly presenting its case or defense. *Johnson*, 845 F.2d at 1358; *Rozier*, 573 F.2d at 1339. Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Rozier*, 573 F.2d at 1339. When analyzing a Rule 60(b)(3) motion for a new trial, a court should focus on two questions: (1) did the movant satisfy the threshold requirements for relief and (2)

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 10 of 23   Page ID
#:1975
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 9 of 22   PageID 61396

would granting a new trial effectuate any policy more significant than preserving the finality of judgments. *Id.*

## III. Plaintiffs' Violations of Court's Discovery Orders

The Court finds that the record clearly establishes the Plaintiffs willfully violated the Court's discovery Orders and that sanctions are appropriate under the circumstances of this case. The Plaintiffs were ordered no less than three times to produce the documents responsive to the Defendants' requests for production. After the Third Order for production that came after the conclusion of the trial, the Plaintiffs produced 72 previously unproduced documents (approximately 1,300 pages) that were responsive to the production request. These documents include stock purchase agreements, minutes of the meetings of ZeniMax's board of directors, communications regarding exercising stock options and selling shares, internal and external communications regarding valuations of ZeniMax and ZeniMax's shares, and ZeniMax financial statement information. *See* Defs. Appx. to Motion for Sanctions (Doc. No. 1023-1). The dates of the documents produced range from 2008-2017. *Id.* At least some of these documents were the Plaintiffs' own documents and had been created long before this litigation began. Clearly, the Plaintiffs themselves had these documents in their possession, yet failed to produce them in response to the previous two orders.

The Plaintiffs contend that in response to the Court's Third Order, they invested substantial time and effort to review over 10,000 documents. Plaintiffs

Exhibit 34
276

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 11 of 23   Page ID
#:1076
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 10 of 22   PageID 61397

appear to argue that this is evidence that they took efforts to comply, and therefore sanctions are not warranted. The Court does not agree. The Plaintiffs offer no explanation as to why they did not put this time and effort into complying with the Court's First and Second Orders which addressed the production of those same documents. The Plaintiffs also fail to address the fact that they finally produced these documents almost three (3) months after the jury returned its verdict. The First Order to produce was issued more than eight (8) months prior to the trial of this case. The Second Order was issued during the trial of this case, but before the parties rested and before closing arguments were conducted. These documents should have been produced pursuant to the First Order and most certainly upon the deadline set forth in the Second Order, not well-after the trial ended.

The trial testimony of Mr. Altman, ZeniMax's CEO and the Plaintiffs' corporate representative, establishes he had knowledge that valuation documents existed, yet the Plaintiffs offer no explanation as to why these documents were not produced when Mr. Altman specifically knew of their existence. The Court notes that Mr. Altman was present in the courtroom for the entire trial of this matter. He was present when the Defendants raised the issue of the Plaintiffs' failure to produce these documents after Mr. Altman's testimony confirmed that they existed. He was present when the Defendants explained to the Court the importance of the documents to the Defendants' case. He was present when the Court clearly ordered for a second time that the documents be produced. Furthermore, as the Court

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 12 of 23   Page ID
#:1207
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 11 of 22   PageID 61398

previously noted, Mr. Altman is a licensed attorney. For these reasons, the Court finds that the Plaintiffs themselves were aware of the issue, were aware of the importance of these documents to the Defendants' case, and were aware of the Court's Orders regarding production of the documents. In spite of their knowledge, the Plaintiffs continued to defy the Court's Orders. Considering the totality of these circumstances, the Court finds that this amounts to willfulness and/or bad faith along with a clear record of delay or contumacious conduct that is attributable to the Plaintiffs, not the Plaintiffs' attorneys.

In addition to the Plaintiffs' willful violations of the Court's First and Second Orders, it is not clear to the Court whether the Plaintiffs have yet made a full production of responsive documents in response to the Third Order. The Defendants argue, among other things, that the identification and production of only seven (7) emails regarding ZeniMax's valuation cannot be a full production of responsive emails because it is highly likely that more emails exist on such a subject. In addition, the Defendants argue that the Plaintiffs produced several incomplete documents and redacted certain portions of other documents in violation of the Court's Third Order that required the Plaintiffs to "provide a privilege log to identify any and all redactions made or documents withheld on the basis of any claim of privilege." *See* Doc. No. 1005 at 1. The Plaintiffs' privilege log indicates certain redactions were made to exclude "non-relevant information" to the action, not because a privilege applies. Furthermore, certain documents that were produced appear to be incomplete

Exhibit 34
278

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 13 of 23   Page ID
#:1078
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 12 of 22   PageID 61399

according to the Defendants, yet the Plaintiffs offered no reason, including privilege, for their failure to produce certain documents in full.

Even now, it is not entirely clear to the Court that the Plaintiffs have yet fully complied with the Court's Third Order. What is unmistakably clear to the Court is that the Plaintiffs, not their attorneys, engaged in continued and repeated efforts to resist production of responsive documents in willful violation of at least the Court's First and Second Orders. This is exactly the type of behavior that Rule 37 is intended to address, and the Plaintiffs themselves should be sanctioned for these violations.

## IV.    Appropriate Sanction

The Defendants ask the Court to: (1) find the Plaintiffs in civil contempt, (2) impose a monetary fine to compel the remaining documents to be produced, and (3) grant a partial new trial on the Plaintiffs' claims for copyright infringement and breach of contract against Defendant Oculus, and for false designation against Defendants Oculus, Mr. Palmer Luckey, and Mr. Brendan Iribe.  The Court instead concludes the most appropriate sanction for the Plaintiffs' conduct is striking their pleadings that seek recovery of their attorneys' fees, thereby precluding the Plaintiffs from recovering these additional sums.

The Court must structure an appropriate sanction so that it deters discovery abuses and disregard for the Court's orders, without being excessive. *Smith & Fuller*, 685 F.3d at 488. The Court has taken into consideration a number of case-specific facts in structuring the appropriate sanction in this case. Several factors the Court has

taken into account include the following.  First, this case has already been tried to a jury with a verdict partly in favor of the Plaintiffs.  The precise effect on the trial had the documents been produced in a timely manner is unknown. Certainly, it is reasonable to assume the Defendants would have prepared at least part of their case differently had they had the benefit of these documents. The Court considered the Plaintiffs' repeated failures to obey the Court's Orders, as previously discussed at length. Additionally, the Plaintiffs have repeatedly represented to the Court that they fully complied with the Court's Orders even though it is clear now that they had not. The Court also considers the Plaintiffs' damages request of $6 billion dollars in this case, which could arguably provide a substantial incentive for the Plaintiffs to resist discovery of these valuation documents and ignore the Court's Orders. Finally, the Court took into account Mr. Altman's own trial testimony, including his testimony that valuation documents existed to prove his $4 billion to $8 billion valuation of ZeniMax, although those documents had not been produced at the time of testimony.

The Defendants suggest a finding of civil contempt along with a monetary sanction as a possible remedy for the Plaintiffs' behavior.  The Plaintiffs' actions certainly support a finding of civil contempt. *See Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)(movant seeking a civil contempt finding must prove by clear and convincing evidence "1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) the respondent failed to comply with the court's order."); *see also SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669

Exhibit 34
280

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 15 of 23   Page ID
#:1080
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 14 of 22   PageID 61401

(5th Cir. 1981)("A party commits contempt when he violates a definite and specific order of the court requiring him to perform . . . a particular act or acts with knowledge of the court's order."). The purpose of a civil contempt order is (1) to force the alleged contemnor to comply with the court's order or (2) to compensate the movant for losses it incurred as a result. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.,* 283 F.3d 282, 290-91 (5th Cir. 2002). A sanction imposed for civil contempt is coercive in nature, not punitive, with an aim of compelling a disobedient party to comply with the court's order. *Whitfield v. Pennington,* 832 F.2d 909, 913 (5th Cir. 1987). Considering the circumstances of this case, the Court finds that any sanction for civil contempt at this point would be moot. The Defendants do not claim they should be compensated with sanctions because they suffered a particular loss as a direct result of the Plaintiffs' misconduct.  Also, there is little to no point in ordering compulsory sanctions against the Plaintiffs until they produce any additional documents because the trial has already concluded.  The Court declines to neither hold the Plaintiffs in civil contempt nor impose a compulsory sanction.

The record leaves no doubt that conduct warranting some sanction occurred. As previously described, the Plaintiffs did not produce in compliance with the First Order issued on April 5, 2016, then again did not fully produce in compliance with the Second Order on January 25, 2017, during trial; only after the Third Order which issued post-trial did the Plaintiffs produce approximately 72 documents in response. This conduct is very serious and very concerning, and warrants a verifiable

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 16 of 23   Page ID
#:1084
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 15 of 22   PageID 61402

punishment that is appropriate in light of these specific facts and circumstances.

Looking to Rule 37, several of these sanctions would clearly be insufficient to cure and deter the Plaintiffs' discovery abuse at this point in the case. With the trial having concluded, sanctions such as deeming facts for trial or staying the case until the Plaintiffs comply are moot. Even an award of attorneys' fees incurred by the Defendants for filing multiple motions seeking production of the same documents would be ineffective because at this stage in the case that sanction would not achieve the goals of curing and deterring the discovery abuse.

In addition to seeking a finding of civil contempt along with a monetary fine, the Defendants also seek a new trial under both Rules 37(b) and 60(b)(3) on the Plaintiffs' successful claims for copyright infringement and breach of contract against Defendant Oculus. (In a separate order, the Court entered judgment notwithstanding the jury's verdict in favor of the Defendants on the Plaintiffs' false designation claim, so the Court does not include that claim in this analysis.) The Court has dedicated much time and given thorough consideration to whether a new trial is the appropriate sanction to impose.  This is most certainly a close call. Being mindful of the objectives of sanctions and all considerations for a new trial as a sanction, the Court concludes a new trial would be harsher than necessary and not warranted under these facts.

Turning first to Rule 37(b), the Defendants' argument that Rule 37 "may also include the grant of a new trial" is not persuasive.  The three cases the Defendants cite in support of their argument are either easily distinguishable or non-binding. In

Exhibit 34
282

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 17 of 23   Page ID
#:1082
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 16 of 22   PageID 61403

the first case, *Bradley v. U.S.*, 866 F.2d 120 (5th Cir. 1989), the Fifth Circuit remanded for a new trial after determining the trial court abused its discretion in failing to exclude the government's two expert witnesses who had been designated out of time and in not sanctioning the government for its conduct. *Id.* at 124. The second case, *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272 (Fed. Cir. 2000), reviewed the district court's denial of sanctions in the context of that court's inherent powers, not a sanction pursuant to Rule 37. *Id.* at 1288-89. In the third case, *Tenbarge v. Ames Taping Tools Sys., Inc.*, 190 F.3d 862 (8th Cir. 1999), which is non-binding on this Court, the Eighth Circuit remanded for a new trial as a sanction available under Rule 37 for the appellee's failure to supplement an expert witness's testimony. The expert's deposition testimony varied dramatically from his trial testimony on the source of the appellant's injury, a key issue in that case because the injury formed the basis of the appellant's claims. *Id.* at 865. The vast majority of courts that grant a new trial as a sanction for discovery violations do so under the authority of Rule 60(b)(3), not Rule 37. The Court concludes Rule 60(b)(3) provides the better analysis of whether a new trial is an appropriate sanction for discovery violations.

Under Rule 60(b)(3), a party seeking a new trial for an opposing party's discovery related misconduct must establish by clear and convincing evidence that the party was unable to fully and fairly present its case or defense. *See Rozier*, 573 F.2d at 1339. The court looks to whether the judgment was unfairly obtained, not whether it was factually incorrect, when determining whether a new trial is

appropriate. *Id.* In considering a new trial as a sanction in this case, the Court has given careful thought and has thoroughly weighed several factors, including: (1) the nature of the information that the Plaintiffs failed to timely produce; (2) the claims asserted by the Plaintiffs in this case and the proof required for each of those claims; (3) the Defendants' asserted defenses to the claims; and (4) the Defendants' arguments regarding the effect of the untimely production.

The Court readily admits it has struggled with whether to grant a new trial is an appropriate sanction. The Defendants have established that the Plaintiffs failed to comply with the Court's Orders regarding the production of these documents. However, the Defendants did not meet their burden of establishing that they were prevented from fully and fairly presenting their case and defenses. *See id.* Considering all the circumstances in this case, the Court finds that the Defendants did not make a sufficient showing under Rule 60(b)(3) to warrant granting a new trial on the Plaintiffs' claims for copyright infringement and breach of contract.

The Defendants point the Court to three instances in which they were prejudiced by the Plaintiffs' discovery violations. First, the Defendants argue that they were unable to challenge Mr. Altman's testimony as to the value of ZeniMax and as to his lack of direct financial interest in the outcome of the trial. *See* Defs. Motion for Sanctions (Doc. No. 1023) at 12. ZeniMax's financial status and ability to invest in the technology is, at best, an ancillary issue in this matter. It does not directly relate to any of the elements of the causes of action for which the Defendants

now ask the Court to order a new trial. The issue of the Plaintiffs' financial ability to invest in and further develop the VR technology into a market-ready device has no bearing on whether or not the Plaintiffs invented or owned this technology, whether what the Plaintiffs disclosed under a non-disclosure agreement was used by the Defendants in the technology, or whether the Defendants included the Plaintiffs' copywrited code in the device.

Second, the Defendants argue that they were unable to challenge Mr. Altman's testimony as to his personal interest in the outcome of this case. As with the value of ZeniMax, Mr. Altman's testimony regarding his personal interest in the outcome of this case does not directly relate to the elements of any of the asserted causes of action. At best, if the documents actually reveal the necessary information, the documents could have been used to impeach Mr. Altman's testimony. The Court is also not persuaded that this warrants a new trial. The record shows the Defendants' attorney did effectively cross-examine Mr. Altman on this issue.  Although he initially claimed to have no financial interest in the outcome of the case, Mr. Altman testified in response to very effective cross-examination that he and his family did actually have at least an indirect financial interest in the outcome of the case. Trial Tr. vol. 12, 34:9-36:9. Also while on cross-examination, Mr. Altman testified that he and his family own between 20 to 25 percent of ZeniMax, and that he had a big financial interest and stake in ZeniMax. *Id*. at 34:3-18.

Finally, the Defendants argue that the jury "heard only half the story" because

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 20 of 23   Page ID
#:1085
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 19 of 22   PageID 61406

they were instructed they could consider whether the Defendants had spoliated evidence, but the jury was not instructed about the Plaintiffs' failure to produce these documents. The Court is also not persuaded that this warrants a new trial. The spoliation issue asserted by the Plaintiffs was entirely different in nature than the failure of the Plaintiffs to produce these documents. The Plaintiffs' spoliation argument was directed at the alleged actions of one Defendant erasing computer hard drives, which could have potentially contained information directly relevant to some of the causes of action asserted in this case, such as the Plaintiffs' proprietary information or source code. In comparison, the documents that the Plaintiffs failed to timely produce relate, at best, to either (1) ancillary issues in the case, not direct issues of the asserted claims or (2) issues on which the Defendants were effectively able to cross-examine Mr. Altman.

While the Court does not take lightly the Plaintiffs' failures to produce the documents as ordered, these failures and the subsequent effects do not amount to clear and convincing evidence that the Defendants were prevented from fully and fairly litigating their case. The Supreme Court instructed that two questions a court should address is whether the movant satisfied the threshold requirements for relief and whether a new trial would effectuate any policy more significant than the policy of preserving the finality of a judgment. *Rozier*, 573 F.2d at 1339. The arguments presented by the Defendant, considered individually or collectively, do not satisfy the threshold requirements for relief. Because the Defendants fail on the threshold

requirements, the Court cannot conclude that the policy of preserving the finality of a judgment would be outweighed by any policy supporting a new trial. The effect of the failure to produce the documents is not quite severe enough to overcome the policy of preserving final judgments. The policies implicated by the Plaintiffs' failure to produce these documents would be one of deterring this type of behavior in this case and deterring litigants in other matters from engaging in similar behavior. This is certainly a significant policy of the court system, but, in this case, it can be sufficiently effectuated without ordering a new trial and necessarily interfering with the policy of preserving the finality of judgments.

Because the harm is already done and a new trial is not appropriate, the primary objective of sanctioning the Plaintiffs at this point will be to deter other litigants from engaging in such defiant behavior, a recognized goal of Rule 37. In structuring the sanction, the Court has considered the requirements that the sanction be just, that that the sanction address the wrongdoing and give effect to the purposes of Rule 37, that the violation of the order be willful, and that the violation be attributable to the party as opposed to only the party's attorneys. The Court concludes that striking the Plaintiffs' pleadings as to their recovery of attorneys' fees is an appropriate sanction in this case.

Striking of pleadings, dismissing a party's claims, or entering a default judgment may be an appropriate sanction depending on the facts before the court. *200 Acres*, 773 F.3d at 660; *Tims*, 657 F. App'x. at 228; *see Emerick v. Fenick Indus.,*

Exhibit 34
287

Case 2:17-cv-08937-DMG-FFM   Document 57-50   Filed 03/29/19   Page 22 of 23   Page ID
#:1987
Case 3:14-cv-01849-K   Document 1118   Filed 06/27/18   Page 21 of 22   PageID 61408

*Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976). The Court finds that striking only the Plaintiffs' pleadings as to their recovery of attorneys' fees is the most appropriate, yet least aggressive, sanction available at this time that gives effect to the goals of Rule 37. The Court concludes this sanction will deter these Plaintiffs as well as any future litigants from violating an order issued by the Court.

The Plaintiffs assert that they are entitled to recover attorneys' fees they incurred in prosecuting their successful claims. In the post-trial briefing and at the post-trial hearing, the Plaintiffs asserted they are seeking approximately $40 million in attorneys' fees. The effective result of striking the Plaintiffs' pleadings on attorneys' fees, and consequently their right to recover these fees, is to prevent the Plaintiffs themselves from recovering up to the $40 million requested in addition to the monetary damages awarded by the jury as reflected in the final judgment. As previously discussed, other sanctions permitted under Rule 37 and case law are either moot at this stage or excessive. Having carefully considered various options, the Court determines this sanction is appropriate and sufficient, without being excessive, to address such behavior by these Plaintiffs as well as deter future litigants.

Considering the circumstances of this case, the Court also finds that this sanction is the closest available and most effective sanction that addresses the Plaintiffs' wrong doing. The Court found that the Plaintiffs willfully flouted the Court's Orders in failing to disclose documents in their possession. Although the untimely disclosures were made through their attorneys in this matter, the Plaintiffs

Exhibit 34
288

themselves are directly responsible for this conduct. The Court will not allow the Plaintiffs to use their attorneys to flagrantly disrespect and disobey this Court, and then ask the Court to award them attorneys' fees incurred in this matter. This sanction is designed to address each of the Court's concerns.

## V.   Conclusion

For these reasons, the Court **GRANTS** the motion as to the Defendants' request that the Court impose sanctions upon the Plaintiffs. The Court **ORDERS** that the Plaintiffs' pleadings seeking the recovery of attorneys' fees in this matter are **stricken** and that the Plaintiffs shall not be entitled to recover any attorneys' fees in this case. The Court **DENIES** all other relief requested in the motion and not specifically granted herein.

**SO ORDERED.**

Signed June 27th, 2018.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE

Exhibit 34
289