Joseph R. Taylor, (SBN 129933)
 jtaylor@fkks.com
Jeremy S. Goldman, (SBN 306943)
 jgoldman@fkks.com
Azita Iskandar, (SBN 280749)
 aiskandar@fkks.com
FRANKFURT KURNIT KLEIN + SELZ PC
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone:  (310) 579-9600
Facsimile:   (310) 579-9650

Attorneys for Defendants CLOUD
IMPERIUM GAMES CORP. and
ROBERTS SPACE INDUSTRIES CORP.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CRYTEK GMBH,<br><br>          Plaintiff,<br><br>   vs.<br><br>CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP.,<br><br>          Defendants. | Case No. 2:17-CV-08937-DMG-FFM<br><br>**DEFENDANTS' REPLY TO CRYTEK GMBH'S RESPONSE TO DEFENDANTS' MOTION FOR BOND**<br><br>Date:   June 28, 2019<br>Time:   9:30 a.m.<br>Crtrm.:  8C<br><br>The Hon. Dolly M. Gee<br><br>Trial Date: March 24, 2020 |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. NO SHOWING THAT CRYTEK IS GOOD FOR THE MONEY .............. 1

III. NO SHOWING THAT CIG'S ESTIMATE IS UNREASONABLE ........... 2

IV. NO SHOWING AGAINST "REASONABLE POSSIBILITY" .................. 3

    A. Opposition Argument on Newly-Deflated Objectives is Inconsistent With Crytek's Numerous Pleadings ............................................................ 3

    B. Crytek Makes No Showing on the Merits ...................................................... 6

        i. Crytek ignores the two big wins CIG already achieved. ......................... 6

        ii. Crytek does not even try to back up its Faceware claim. ...................... 6

        iii. Crytek concedes that it cannot prove the essential element of damages on the *Bugsmashers* claim. ......................................................... 6

        iv. Crytek provides no proof or legal support for its bug fixes claim. ...... 7

        v. Crytek fails to show why it should get credited for Amazon's code or how Crytek was damaged by the loss of credit. ...................................... 7

        vi. Crytek fails to show how the development of *Squadron 42* breached the GLA or was impermissible under the Amazon license agreement. 8

V. CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Firoozye v. Earthlink Network*
  153 F. Supp. 2d 1115 (N.D. Cal. 2001) ................................................................. 12

*Hickcox-Huffman v. US Airways, Inc.*
  855 F.3d 1057 (9th Cir. 2017) .................................................................................. 7

*Laws v. Sony Music Entertainment, Inc.*
  448 F.3d 1134 (9th Cir. 2006) ................................................................................ 11

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*
  307 F.3d 775 (9th Cir. 2002) .................................................................................. 11

*Worldwide Church of God v. Philadelphia Church of God, Inc.*
  227 F.3d 1110 (9th Cir. 2000) ................................................................................ 12

**Statutes**

17 U.S.C. § 101 ............................................................................................................ 11

17 U.S.C. § 106 .................................................................................................... 11, 12

17 U.S.C. § 301 ............................................................................................................ 11

17 U.S.C. § 505 .............................................................................................................. 3

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579.9600

## I. INTRODUCTION

CIG supported its motion for a security bond with a detailed and thorough evidentiary showing of: (1) Crytek's financial distress; (2) Crytek's prior defeats eliminating its key "exclusivity" claims; (3) CIG's likelihood of prevailing on Crytek's remaining claims; and (4) the sober forecast of expenses ahead. Crytek offers *no evidence at all* on *any* of these points. It cites virtually no law. Crytek instead points to its change of lawyers (a red flag in and of itself) as somehow eliminating concerns. Crytek pretends specific performance was always its goal, when its three repeated prayers for relief never mention specific performance. Crytek's effort regarding its lamentable financial state is a single unsubstantiated sentence in the Opposition[1] that CIG's concerns are "greatly exaggerated." Crytek submitted no showing to counter the motion, period. CIG's motion for bond security should be granted, as it stands effectively unopposed.

## II. NO SHOWING THAT CRYTEK IS GOOD FOR THE MONEY

CIG submitted multiple public reports, including Crytek's publicly-available financial statements, showing that Crytek suffers serious financial difficulties. CIG cited cases holding that a foreign plaintiff's financial problems weigh heavily in favor of granting security bond relief.

Crytek concedes financial infirmity through virtual silence. Its entire response is the "greatly exaggerated" sentence. Opp. at 1, lines 2-4. Crytek offers no facts or evidence to back up this sentence or explain what Crytek means by it. Crytek's continued and undisputed failure to file its long overdue financial reports in Germany remains unexplained. The sudden exit of the Skadden firm only adds to a row of red flags. Crytek had 70 days from the filing of this motion to prepare a showing that it is good for the money and that there is no reasonable possibility CIG will win anything it has not already won. Crytek did not even try. Crytek's failure

---

[1] CIG will refer to Crytek's "RESPONSE" brief as the "Opposition," or "Opp."

to rebut reinforces the compelling need for the security requested.

## III. NO SHOWING THAT CIG'S ESTIMATE IS UNREASONABLE

CIG supported its request for a $2,193,298.45 bond with a detailed declaration from CIG's counsel. It verified the amount of legal fees and expenses CIG incurred to date. It explained why the sweeping nature of Crytek's claims (especially those now defeated) and Crytek's irresponsible conduct maintaining this lawsuit forced CIG to incur significant legal fees.[2] It provided detailed, forward-looking litigation realities—broken out by litigation phases, attorneys, rates, high and low estimates of hours, and itemized anticipated litigation expenses—providing the best possible forecast of fees and expenses through trial. Expense estimates from outside vendors of e-discovery, trial, and other litigation support services fortified CIG's forecast showing.

Crytek did not attempt to rebut. Crytek's new lawyers say that the old lawyers are gone, so that "render[s] CIG's stated concerns moot." Opp. at 11, lines 13-14. CIG's concerns are that *Crytek*, regardless of which lawyers represent it, has and will run up expenses over whatever quibble it can. At the same time, Crytek argues generally that CIG's legal fees to date have been unreasonable [*id.* at 10], ignoring the specific Crytek behaviors that forced CIG to incur those expenses in the first place, and conspicuously neglecting to contrast the size of Skadden's corresponding bill, whether receivable or otherwise. Crytek cannot identify a single unwarranted step CIG has taken. Crytek does not mention all the relief that CIG has

---

[2] CIG's legal work to date includes preparing a Rule 11 motion in response to Crytek's initial complaint (leading to Crytek amending its pleading), moving to dismiss Crytek's first amended complaint (leading to the dismissal of Crytek's most material claim, that CIG was obligated to exclusively use CryEngine to the exclusion of any other game engine), moving to dismiss Crytek's second amended complaint (leading to the dismissal of Crytek's second most material claim, that CIG breached the GLA by promoting another game engine), and moving for a protective order to stop Crytek's extraordinarily overbroad and premature discovery demands (halting discovery). Declaration of Jeremy Goldman, ¶ 33.

already obtained on substance (dismissals as a matter of law on far-reaching claims) or process (including matters from bringing order to discovery to Crytek's recent ill-fated, non-compliant Memorial Day *ex parte*). Their criticism of CIG's estimate of future legal expenses similarly lacks specificity. *Id.* at 11, lines 16, through p. 12, line 9. Crytek points to no particular item in CIG's calculation, or the vendors' quotes, that it claims is unreasonable. Crytek presents no rebuttal evidence at all.

## IV. NO SHOWING AGAINST "REASONABLE POSSIBILITY"

### A. Opposition Argument on Newly-Deflated Objectives is Inconsistent With Crytek's Numerous Pleadings

CIG showed the "reasonable possibility" it will obtain judgment by submitting evidence, supported by legal authorities, rebutting each of Crytek's claims. CIG cited two independent bases for an award of attorneys' fees and costs: statutory (17 U.S.C. § 505) and contractual (GLA ¶ 10.8). CIG also demonstrated (with respect to contract) that, in the unlikely event the Court finds that CIG committed some kind of breach of the GLA by, for example, displaying snippets of CryEngine code in the *Bugsmashers* videos, CIG will still be deemed the prevailing party because any such pyrrhic victory by Crytek will be far outweighed by the successes CIG has *already* achieved on the most material claims (which Crytek's Opposition ignores) and the victories that there is more than a reasonable possibility CIG *will* achieve against Crytek's remaining claims.

Crytek offers no showing at all on the merits. Crytek does not address the statutory basis for a fee award at all. Crytek solely asserts on the contract fee basis that a mixed result (which is all Crytek can hope for, having already lost its central claims), such as " obtaining equitable relief," would "satisfy many of its litigation objectives and would support a finding that Crytek is the prevailing party, whether or not it ultimately is entitled to monetary relief." Opp. at 10, lines 2-4. Crytek's argument appears to be in opposition to a future fee motion, not the pending bond motion. Rather than submitting evidence to support its remaining claims for

3
DEFENDANTS' REPLY TO CRYTEK GMBH'S RESPONSE TO DEFENDANTS' MOTION FOR BOND

monetary damages, Crytek attempts to lower its bar for success in the litigation by arguing, *for the first time*, that it is not really after CIG's money, but rather that its "litigation objectives" all along have been specific performance.  Crytek complains that CIG did not make "any attempt even to understand what [Crytek's litigation] objectives might be."  Opp. at 1, lines 26-28.

No "attempt" is necessary.  Crytek's litigation objectives are plainly stated, not just to CIG, but also to the Court because Crytek has pleaded the relief sought *three* times.  Not once has it even mentioned specific performance.  Complaint dated December 12, 2017 ("OC"), ECF 1, "**PRAYER FOR RELIEF**," at 12, lines 1-23, ¶¶ a-f (seeking damages, profits, punitive damages, Copyright Act monetary remedies, injunction against possession or use of CryEngine); First Amended Complaint dated January 2, 2018 ("FAC"), ECF 18, "**PRAYER FOR RELIEF**," at 14, lines 1-23, ¶¶ a-f (same); Second Amended Complaint dated August 16, 2018 ("SAC"), ECF 39, "**PRAYER FOR RELIEF**," at 15, lines 1-22, ¶¶ a-e (same, but deleted punitive damages after the Court ruled it was not appropriate as a matter of law).  Not one word in the bodies of these pleadings ever mentioned "specific performance."  The only remedy pleaded in the body of the OC, FAC, or SAC for any imagined "breach of contract" has uniformly been for a *money award only*.  OC, ECF 1, ¶¶ 5 ("By this action, Crytek seeks damages that will fairly and fully compensate it for Defendants' breach and infringement"), 27, 35, 39, 45, 52, and 60 (Crytek "entitled to monetary damages" for alleged breach of contract); FAC, ECF 18, ¶¶ 5, 27, 35, 39, 45, 52, and 60 (same); SAC, ECF 39, ¶¶ 5, 27, 35, 39, 45, 52, and 60 (same).  The only equitable relief Crytek has ever specifically attempted to reference has been injunctive relief "enjoining and restraining Defendants from *continuing to possess or use*" or from "*infringing*" CryEngine.  OC, ECF 1, "**PRAYER FOR RELIEF**," at 12, lines 9-14, ¶ b; FAC, ECF 18, "**PRAYER FOR RELIEF**," at 14, lines 9-14, ¶ b; SAC, ECF 39, "**PRAYER FOR RELIEF**," at 15, lines 9-14, ¶ b (emphasis added).  None of Crytek's three complaints breathed one

word about "credits" being "returned to the splash screen" (Opp. at 5, lines 23-26), delivery of bug fixes (Opp. at 6, lines 10-17), or a take-down of whatever *Bugsmashers* videos Crytek attacks (Opp. at 6, line 26 through p. 7, line 2).

In addition to the pleadings, Crytek's submissions in this case also confirm that its main litigation objective was always, and remains, lots of money. Crytek's Initial Disclosures listed ***ten*** categories of monetary recovery that it "expects" it may be entitled to, including ones (such as punitive damages) that are not even theoretically recoverable as a matter of law. Declaration of Jeremy Goldman, Ex. 32 (Crytek's Initial Disclosures), at 7, lines 13-25; August 14, 2018 Minute Order on Motion to Dismiss, ECF 38, at 20. The Opposition attempts to downplay Crytek's claim for damages, while admitting that the "$200 million in crowdfunding . . . is context for Crytek's eventual calculation of a monetary award." *Id.* at 12.

Crytek's attempt to inflate the importance of obtaining previously unspoken equitable relief on the *Bugsmashers* and credits claims is further undermined by Crytek's failure to complain even once about either issue until it filed this lawsuit. If Crytek was really so concerned about its code appearing in the *Bugsmashers* videos, even after it sold the code to Amazon (which then gave it to Amazon's customers for free), and even after Crytek began releasing the code to the public under a "pay what you want" license, it would seem the record on this motion would contain Crytek's proof of at least a letter or email from Crytek to CIG requesting that whatever code fragments be removed from whatever video. The same is true of Crytek's game credits, which CIG removed from the Game on December 23, 2016. Crytek raised neither issue until it filed this lawsuit more than a year later. Crytek raised other issues in correspondence exchanged with CIG between November 2015 and June 2017 (Declaration of Ortwin Freyermuth, Exs. 6-11), but neither *Bugsmashers* nor the game credits came up once. This lawsuit has always been about getting money, not specific performance.

///

### B. Crytek Makes No Showing on the Merits

For the Court to grant the bond motion, CIG does not have to show that it *will* obtain or even that it is *likely* to obtain judgment. Rather, the Court only needs to determine that there is a ***reasonable possibility*** that CIG will prevail. CIG meticulously laid out the evidentiary showing of far more than a reasonable possibility of defeating each Crytek claim. Crytek responded with no showing at all behind its superficial briefing.

#### i. Crytek ignores the two big wins CIG already achieved.

Crytek's Opposition ignores the fact that CIG has ***already*** prevailed on two of Crytek's most material claims—that CIG was obligated to exclusively use CryEngine to the exclusion of any other game engine, and that CIG breached the GLA by "developing, creating, supporting, maintaining, and promoting" another game engine. CIG also eliminated Crytek's claim for punitive damages.

#### ii. Crytek does not even try to back up its Faceware claim.

In support of its bond motion, CIG submitted sworn declarations not only from CIG but also from non-party Faceware, verifying that, contrary to Crytek's reckless allegations, Faceware did not have access to the CryEngine source code. Caught red-handed, Crytek submits nothing in response. The last gasp that it has "good reason to believe this disclosure occurred" (Opp. at 9, lines 18-23) lacks even an attempt at showing evidence underlying any such belief. This telling, naked, and irresponsible falsehood only underscores the propriety of the requested security.

#### iii. Crytek concedes that it cannot prove the essential element of damages on the *Bugsmashers* claim.

CIG showed that any display of CryEngine code in the *Bugsmashers* videos could not damage Crytek because Crytek already made the code widely available for free. CIG also showed that any code snippets would not carry independent value. Crytek's Opposition *still* does not identify the allegedly infringed code or the videos where that code supposedly appears. Crytek also does not show or argue that any

6
DEFENDANTS' REPLY TO CRYTEK GMBH'S RESPONSE TO DEFENDANTS' MOTION FOR BOND

*Bugsmashers* video caused Crytek any harm. Instead, Crytek retreats, claiming that it primarily seeks injunctive relief, not damages. Damages, however, are not just a remedy but an essential element of every breach of contract claim, regardless of the remedy sought. *Hickcox-Huffman v. US Airways, Inc.,* 855 F.3d 1057, 1062 (9th Cir. 2017). Moreover, Crytek sat on its hands for years before making any objection to the *Bugsmashers* videos. The record is devoid of Crytek demanding that CIG take any video down. That is not the behavior of a party with "meaningful and legitimate concerns" about the confidentiality of its code. Opp. at 7, line 4.

### iv. Crytek provides no proof or legal support for its bug fixes claim.

CIG submitted evidence detailing years of Crytek's slow and disinterested correspondence related to the bug fixes that ultimately culminated in CIG's delivery of the bug fixes to Crytek on January 23, 2018. In response, Crytek pretends these events never happened so it can argue that CIG delivered the bug fixes as a result of the lawsuit. Crytek fails, however, to rebut this proof that CIG delivered the bug fixes *not* in response to the lawsuit, but in response to Crytek's June 22, 2017 letter on the subject. CIG also cited statutes and cases under California law demonstrating that CIG's delivery of the bug fixes complied with its obligations under the GLA. The Opposition ignores that authority, dwelling on the self-serving interpretation of the term "annually," without providing legal support or any evidence of what the parties actually said and did.

### v. Crytek fails to show why it should get credited for Amazon's code or how Crytek was damaged by the loss of credit.

CIG submitted evidence showing that, by the time CIG removed Crytek's credits, CIG was developing *Star Citizen* and *Squadron 42* using the game engine code licensed to CIG under its separate agreement with Amazon, not the GLA. Crytek now argues that, even if Amazon granted CIG a separate license to use the game engine code, the credit requirement in the GLA persists "so long as the

CryEngine is in *Star Citizen*[.]" Opp. at 4, lines 19-20.

The credit requirement in GLA § 2.8.1 exposes the flaw in Crytek's argument. That provision obligates CIG to include the following wording: "Portions of this software are included under license © 2004-201_ Crytek GmbH. All rights reserved." The problem is that the software is "under license" from *Amazon*, not Crytek. Indeed, the source code from Amazon includes the following header: "All or portions of this file Copyright (c) Amazon.com, Inc. or its affiliates or its licensors."[3] Crytek makes much of the fact that the code is the same, but that is only because Crytek cashed out on the code by selling it to Amazon, making CIG's license from Amazon possible. If Crytek did not want Amazon to take credit for the code, Crytek should not have sold the code to Amazon. Suing Amazon's licensees is not the solution.

CIG also submitted evidence demonstrating that Crytek has been trying to disassociate itself from CIG for years. Crytek neither disputed this fact nor explained how Crytek's actions are consistent with its claim of reputational harm. Instead of submitting evidence of harm, Crytek simply asks that the Court take its word that Crytek has suffered monetary and reputational harm as a result of it not receiving credits. On this record, there is at least a "reasonable possibility" that CIG will prevail.

      **vi. Crytek fails to show how the development of *Squadron 42* breached the GLA or was impermissible under the Amazon license agreement.**

CIG demonstrated that the plain language of the GLA does not support Crytek's claim that CIG's use of the game engine code formerly known as "CryEngine" to develop *Squadron 42* breached the GLA. CIG's co-founder Ortwin

---

[3] *See, e.g.*, Lumberyard Code, Github.com, https://github.com/aws/lumberyard/blob/master/dev/Code/CryEngine/CryAction/Main.cpp.

Freyermuth submitted a declaration confirming that CIG's use of the engine source code in *Squadron 42* is independently authorized under a separate license agreement with Amazon. CIG showed that Amazon was able to grant CIG that license only because Amazon paid Crytek an amount in the "high double digits" of millions to acquire the right to rebrand and resell the source code without restriction. Crytek responded with nothing but confusing arguments only about the language of the GLA.

Crytek's pleadings alleged that liability arose from CIG's ***switching*** of game engines.[4] OC, ECF 1, ¶¶ 36-39 (alleging damage due to CIG's use of Lumberyard); FAC, ECF 18, ¶¶ 36-39 (same); SAC, ECF 39 ¶¶ 36-39 (same). Having lost the claims that CIG's switch was prohibited,[5] Crytek now flips to the opposite position: that liability arose from CIG's ***not*** switching game engines (Opp. at 4, lines 11-20). Crytek is making every last-ditch effort to concoct a breach claim, but the record lacks any support for it.

### a) GLA's plain language does not support Crytek's construction of the "no standalone games" provision.

The GLA authorizes CIG to use CryEngine to develop the "Game," defined as including both *Star Citizen* and *Squadron 42*. Thus, there is no question that the GLA grants CIG the right to use CryEngine to develop *Squadron 42*. Exhibit 2 clarifies that the Game does not include "content" that is both "[a] being sold and marketed separately, and [b] not being accessed through the Star Citizen Game

---

[4] These attacks based on switching are exactly what CIG has already defeated (after significant legal expense on two motions) because nothing in the GLA prevents CIG from switching.

[5] Note that after so much accusation, motion practice, and legal expense based upon Crytek's core position that CIG was shackled from switching game engines, Crytek now states that "CIG is no doubt free to take a second license" from Amazon. Opp. at 4, lines 17-19. Crytek made this freedom possible when it sold its game engine to Amazon, allowing Amazon to license it to CIG and any other Amazon licensee.

client[.]" Crytek tries to get around this language in two ways.

*First*, Crytek argues that "the relevant question is whether CIG is ***developing** Squadron 42 **to be*** 'sold and marketed separately and not being accessed through the Star Citizen Game client.'" Opp. at 8, lines 2-4 (bold and italics in original; bold, italics and underlined added for emphasis). But that is not what it says. Rather, under the plain language of the GLA, whether "content" falls outside of the scope of the "Game" depends on whether the content is "*being* accessed through the Star Citizen Game client." This determination can be made only once the content is actually "*being* accessed" (present tense), not while the content is still under pre-access development. Accepting Crytek's construction would lead to the absurd result that CIG could fall in and out of breach depending solely on CIG's mental state, even if CIG's use of the code did not change, and even if, when released, *Squadron 42* is accessible only through *Star Citizen*. CIG's construction, on the other hand, follows the plain language of the GLA and measures breach based on objective, quantifiable criteria and CIG's actual use of the code.

*Second*, Crytek argues that the comma in the phrase "any content being sold and marketed, and not being accessed through the Star Citizen Game client" alters its meaning so that engaging in *either* of these two activities is enough to bring the "content" outside the scope of the Game. Opp. at 8, lines 20-27. Crytek does not and cannot explain why the comma has the supposed effect of converting an "*and*" to an "*or*." With or without the comma, both parameters—"being sold and marketed separately" *and* "not being accessed through the Star Citizen Game client"— modify the same preceding term "content." Thus, the plain language of the provision makes clear that "content" falls outside the scope of the Game only if it satisfies both parameters.

///
///
///

        **b)**     **CIG's separate license from Amazon empowers CIG to develop, sell and release *Squadron 42* as a standalone game.**

Independently, Crytek does not try and will not be able to show that CIG breached the "no standalone games" provision. On April 30, 2016, CIG and Amazon entered into a license agreement that granted CIG the right to use the "Lumberyard Materials" (including CryEngine version 3.6.4, which is the version of CryEngine embedded in the Game) to develop *Star Citizen* **and** *Squadron 42*. Declaration of Ortwin Freyermuth, ¶ 9. From this point forward, CIG had the broad rights to the game engine granted by the Amazon license and was no longer dependent upon the GLA chain of title.

        **c)**     **Crytek's breach of contract claim is preempted by the Copyright Act and the Amazon license provides a complete defense to Crytek's copyright claim.**

Crytek's claim—that CIG breached the GLA by using CryEngine to develop a game outside the scope of the license—is preempted by the Copyright Act. 17 U.S.C. § 301. The Ninth Circuit follows a two-part test to determine whether a state law claim is preempted by the Copyright Act: (1) "whether the 'subject matter' of the state law claim falls within the subject matter of copyright," and (2) "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1138 (9th Cir. 2006).

The first prong is satisfied because Crytek's source code falls within the subject matter of copyright. *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 779 (9th Cir. 2002) ("Computer programs are works of authorship entitled to protection under the Copyright Act."); SAC, ECF 39, ¶ 62 ("The CryEngine computer program constitutes copyright expression protected by 17 U.S.C. § 101, *et seq.*").

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579.9600

The second prong is satisfied because Crytek's contractual right to stop CIG from using CryEngine to develop games outside the scope of the GLA is equivalent to Crytek's exclusive right under the Copyright Act to stop others from using CryEngine to develop games without a license. *See Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1126 (N.D. Cal. 2001) ("Where a plaintiff's breach of contract claim only asserts that a defendant violated a promise not to use a certain work, that breach of contract claim is preempted."). Crytek's own recitation of its copyright infringement claim essentially concedes that the rights are equivalent. *See* SAC, ECF 39, ¶¶ 61-70 (alleging that, by "embed[ding] the copyrighted CryEngine computer program in content sold and marketed as a separate, standalone video game. . . Defendants have . . . violate[d] the exclusive rights of Crytek as the copyright holder to reproduce, display and distribute the CryEngine computer program and to create derivative works from it, as set forth in 17 U.S.C. § 106").

Since the Copyright Act preempts Crytek's claim for breach of contract related to *Squadron 42*, Crytek's sole remedy would have to be a claim for copyright infringement. In turn, that copyright claim will fail because CIG has a complete affirmative defense: its license from Amazon. *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000) ("The existence of a license creates an affirmative defense to a claim of copyright infringement."). Crytek has not argued, much less shown, that Amazon lacked the right to grant CIG a license to use the same CryEngine source code. Crytek cannot use the GLA to deprive CIG of the benefits of its separate license from Amazon.

By demanding that CIG pay a separate license fee for *Squadron 42*, Crytek is trying to have its cake and eat it too. Crytek sold its CryEngine technology to Amazon for many millions of dollars in July 2014, allowing Amazon to license the code to whomever it wanted under whatever terms. As a natural consequence of that sale, Amazon began licensing its rebranded version of the technology to game developers, including CIG. If Crytek did not want Amazon to do that, Crytek

should not have entered into the deal with Amazon. Crytek should not be able to use this litigation to retrade the deals it made with CIG and Amazon. For now, Crytek should not be able to continue this litigation until it deposits an adequate bond securing CIG's future costs and fees.

## V. CONCLUSION

Crytek makes no showing about anything. The need for and propriety of bond security stand effectively undisputed. CIG's broad freedom under the Amazon license was enabled by Crytek's sale of the game engine to Amazon (for a lot of money that Crytek cannot show it even still has). The one-sided record empowers the Court to secure a future award of fees and costs flowing from Crytek's defeats to date and the reasonably possible future defeats as outlined herein.

DATED: June 14, 2019        Respectfully submitted,

FRANKFURT KURNIT KLEIN + SELZ PC


By:      */s/ Jeremy S. Goldman*
         Joseph R. Taylor
         Jeremy S. Goldman
         Azita Iskandar
         Attorneys for Defendants
         CLOUD IMPERIUM GAMES CORP. and
         ROBERTS SPACE INDUSTRIES CORP.

13
DEFENDANTS' REPLY TO CRYTEK GMBH'S RESPONSE TO DEFENDANTS' MOTION FOR BOND