UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-8937 DMG (FFMx)** | Date | July 22, 2019 |
| Title | *Crytek GmbH v. Cloud Imperium Games Corp., et al.* | Page | 1 of 6 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS - ORDER RE DEFENDANTS' MOTION FOR A BOND [57-1]**

  This matter is before the Court on a Motion for a Bond filed by Defendants Cloud Imperium Games Corporation ("CIG") and Roberts Space Industries Corporation ("RSI") pursuant to California Civil Procedure Code Section 1030. [Doc. # 57-1 ("Motion" or "Motion for Bond").] For the following reasons, the Court **GRANTS** Defendants' Motion.

# I.
# BACKGROUND[1]

  Plaintiff Crytek GmbH ("Crytek") is a German corporation that operates as a "video game developer, publisher, and technology provider." Second Amended Complaint ("SAC") [Doc. # 39] at ¶¶ 2, 6.[2] On November 12, 2012, Crytek entered into a Game License Agreement ("GLA") with Defendants CIG and RSI, Delaware corporations that have principal places of business in Los Angeles, California. SAC at ¶¶ 7, 15-16. Under the GLA, Defendants were to pay a licensing fee to use Crytek's video game engine, called CryEngine. SAC at ¶¶ 15-16. Plaintiff claims that Defendants' subsequent conduct violated the GLA and asserts claims for breach of contract and copyright infringement against them. SAC at ¶¶ 53-67. In previous Orders, the Court dismissed two separate theories that the GLA prohibited CIG from using any game engine other than CryEngine. *See* [Doc. ## 38, 49]. The operative SAC now only asserts claims for breach and copyright infringement stemming from: (1) CIG's use of CryEngine in its *Squadron 42* game, (2) CIG's failure to timely deliver "bug fixes and optimizations" to Plaintiff, (3) CIG's decision to remove copyright and trademark notices crediting Crytek in association with CIG's *Star Citizen* game, and (4) the alleged disclosure of CryEngine source code in online videos that CIG publicly released.

---

  [1] The Court set forth a full factual background in its Order resolving Defendants' Motion to Dismiss or Strike [Doc. # 38]. The Court incorporates that background by reference in this Order.

  [2] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 17-8937 DMG (FFMx)** | Date | July 22, 2019 |
|---|---|---|---|
| Title | ***Crytek GmbH v. Cloud Imperium Games Corp., et al.*** | Page | 2 of 6 |

On March 29, 2019, Defendants filed the Motion for Bond, requesting that the Court require Crytek to post a security in the amount of $2,193,298.45. The Motion is now fully briefed. [Doc. # 73 ("Opp."), 74 ("Reply").]

## II.
## LEGAL STANDARD

While the Federal Rules of Civil Procedure do not have a "specific provision . . . relating to security for costs," district courts "have inherent power [and discretion] to require plaintiffs to post security for costs." *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994). The question of whether to impose a bond requires district courts to look to the forum state's law. *Id.* ("Typically federal courts, . . . follow the forum state's practice with regard to security for costs . . . ."); *see also Pittman ex rel. L.P. v. Avish P'ship*, 525 F. App'x 591, 593 (9th Cir. 2013). The California Civil Procedure Code permits courts to require "an undertaking to secure an award of costs and attorney's fees" from a plaintiff. Cal. Civ. Proc. Code § 1030(b). A defendant may move for such an undertaking when: (1) "plaintiff resides out of the state or is a foreign corporation" and (2) "there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding." *Id.* A defendant does not need to show that there is "no possibility" that the plaintiff could win at trial, "but only that it [is] *reasonably possible*" that the defendant will win. *Baltayan v. Estate of Getemyan*, 90 Cal. App. 4th 1427, 1432 (2001).

This hurdle is a "relatively low" one. *AF Holdings LLC v. Navasca*, 2013 WL 450383, at *1 (N.D. Cal. Feb. 5, 2013). Although district courts have suggested the standard is not so generous "as to require every out-of-state litigant who brings a non-frivolous suit in California to post a bond," *see, e.g., Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 3:12-CV-04000-SC, 2015 WL 6638929, at *16 (N.D. Cal. Oct. 30, 2015), the Ninth Circuit has held that district courts do not abuse their discretion by requiring a security when it would not be "illogical, implausible, or without support in the record to conclude that there [is] a reasonable possibility that [the defendant] would prevail" and be entitled to fees and costs. *Pittman*, 525 F. App'x at 593.

Courts should also "balance several factors in assessing the propriety of requiring a plaintiff to post security for costs, including whether the litigation has 'the appearance of vexatiousness' and:

> (i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-8937 DMG (FFMx)** | Date | July 22, 2019 |
| Title | *Crytek GmbH v. Cloud Imperium Games Corp., et al.* | Page | 3 of 6 |

*A. Farber & Partners, Inc. v. Garber*, 417 F. Supp. 2d 1143, 1146 (C.D. Cal. 2006) (citing *Simulnet*, 37 F.3d at 576).[3]

### III.
### DISCUSSION

While Plaintiff, a company based in Germany, unquestionably qualifies as a foreign corporation, the parties dispute whether Defendants can show a reasonable possibility of prevailing on the merits of Plaintiff's remaining claims and whether Defendants have requested too large a bond. The Court concludes that Defendants have a reasonable possibility of prevailing, but that Plaintiff need only post a fraction of the bond Defendants seek.

**A.    Reasonable Possibility of Judgment in Defendants' Favor**

The GLA entitles parties that prevail in litigation arising out of the contract to attorneys' fees and costs. GLA [Doc # 57-3] at ¶ 10.8. In the breach of contract context, the prevailing party is the "the party who recovered a greater relief in the action on the contract." Cal. Civ. Code § 1717(b)(1). The Court must therefore take into account the fact that the Court has already dismissed two of Plaintiff's key breach of contract theories.[4] Defendants have also demonstrated a reasonable possibility that they will prevail on Plaintiff's remaining claims.

Defendants first argue that they are likely to defeat Plaintiff's claim that the GLA prohibited Defendants from using CryEngine to develop *Squadron 42*. Given that the GLA explicitly grants Defendants the right to "exclusively embed CryEngine in the Game and develop the Game," *see* GLA at ¶ 2.1.2, and defines "the Game" as *Space Citizen* and *Squadron 42* "together," *see id* at 2, Defendants' success on this claim is at least reasonably possible.

Defendants next contend that they took action that satisfied their contractual obligation to deliver certain "bug fixes" to Plaintiff "annually." Motion for Bond at 17. Plaintiff makes alternative arguments that CIG's actions did not qualify as annual delivery and that CIG eventually delivered the bug fixes after this lawsuit began, a development which amounts to a win on this issue for Plaintiff. Opp. at 8-9. Answering whether, as a factual matter, CIG met its obligation to deliver bug fixes annually will require the Court to answer fact questions inappropriate for

---

[3] The Court shall refer to these factors as the *Simulnet* factors.

[4] Nothing in this Order shall be construed as a final decision on which party has prevailed or will prevail as a matter of fact. The Court only analyzes here whether Defendants have a reasonable possibility of making such a showing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937 DMG (FFMx) | Date | July 22, 2019 |
|---|---|---|---|

| Title | *Crytek GmbH v. Cloud Imperium Games Corp., et al.* | Page | 4 of 6 |
|---|---|---|---|

resolution at this time. It will also require the Court to decide whether the GLA's language renders moot the parties' jostling over whether and when CIG would deliver the fixes. The fact that either result appears reasonably possible at this stage counsels in favor of requiring a bond.

Even if the Court eventually decides that CIG's delivery of the bug fixes after this litigation began qualifies as a positive result for Plaintiff, the Court would likely look at that result in the context of the litigation as a whole. *See Berkla v. Corel Corp.*, 302 F.3d 909, 920 (9th Cir. 2002) ("a court is entitled to look at more than the issue of liability in determining prevailing party status, and to evaluate litigation success in light of the party's overall demands and objectives."). In light of the Court's dismissal of previous claims and the reasonable possibility of success on the claims the Court discusses herein, Plaintiff's potential victory on this issue is not enough to compel the conclusion that Defendants stand no reasonable chance of prevailing in the end.

Plaintiff also claims that Defendants breached the GLA by removing from *Star Citizen* copyright and trademark notices that indicated that CIG used CryEngine to develop the game. Defendants respond that they no longer need to use such notices because they switched from Plaintiff's game engine to Amazon's Lumberyard game engine. Motion for Bond at 19; Freyermuth Decl. [Doc. # 57-2] at ¶ 27 (stating that by the time CIG switched the notices, "CIG had already entered into, and was developing both Star Citizen and *Squadron 42* under CIG's license agreement with Amazon."). Plaintiff does not dispute that the switch occurred, but contends that Defendants should have credited Plaintiff nonetheless because Amazon based Lumberyard largely on CryEngine source code after Plaintiff sold the the code to Amazon. Opp. at 8. The effect of the similarities in the CryEngine and Lumberyard source code is a merits issue that the Court need not resolve now. It is enough for the Court to decide that the evidence before it indicates that CIG switched the copyright and trademark notices only after it began using Lumberyard instead of CryEngine. Defendants therefore stand a reasonable possibility of success on this claim.

Finally, in response to Plaintiff's claims relating to the alleged unauthorized disclosure of Crytek's code, Defendants aver that the disclosure in the "Bugsmashers" videos caused no damage to Crytek because Crytek had already made a substantial amount of its code publicly available. Motion for Bond at 21. Indeed, the record shows that Plaintiff made CryEngine publicly available on a "pay what you want" basis, allowing users to access the platform without necessarily paying anything. [Doc. ## 52-45, 52-46.] Plaintiff does not dispute this evidence. Since proving breach of contract requires Plaintiff to show that the purported breach actually caused damages, the fact that its source code was publicly available before CIG released its Bugsmashers videos is enough for the Court to conclude that Defendants have a reasonable possibility of success on this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-8937 DMG (FFMx) | Date | July 22, 2019 |
|---|---|---|---|

| Title | *Crytek GmbH v. Cloud Imperium Games Corp., et al.* | Page | 5 of 6 |
|---|---|---|---|

### B.   The *Simulnet* Factors

The first *Simulnet* factor—whether the litigation appears vexatious—does not have much of an effect on this case. Defendants argue that Plaintiff once claimed that CIG's co-founder Ortwin Freyermuth, "an attorney who previously represented Crytek on unrelated transactional matters, engaged in a conflict of interest by negotiating the GLA on behalf of CIG." But they also state that Plaintiff withdrew that claim when CIG produced a valid conflict waiver. Motion for Bond at 6. While the conflict of interest claim was ill-fated, Plaintiff withdrew it when faced with the reality of the waiver. That is not vexatious behavior, in and of itself, to justify a bond.

The second *Simulnet* factor "is similar to the second factor under California Civil [Procedure] Code section 1030." *A. Farber & Partners*, 417 F. Supp. 2d at 1148. Since Defendants have already succeeded on two claims and have a reasonable possibility—if not a greater possibility—of succeeding on others, as discussed above, this factor weighs heavily in favor of requiring a security.

Consideration of the third and fourth factors—the reasonable extent of the security to be posted viewed from both sides' perspectives—requires the Court to substantially reduce the amount Defendants seek. Defendants argue that Crytek is in severe financial distress. *See* Motion for Bond at 10-12. They cite to media reports that Crytek has, for some years, been teetering on the brink of insolvency. *See* Goldman Decl. [Doc. # 16], Ex. 2, 3. They also point to reports of Crytek's downsizing and failure to make payroll. *Id.*, Ex. 3, 4, 5. Further, Crytek experienced a 62.3% revenue drop in 2015. *Id.*, Ex. 9, 10 at 123. Revenue increased slightly in 2016, but Crytek had to take out and modify significant loans to remain solvent. *Id.*, Ex. 11, 12. More reports surfaced that Crytek was unable to make payroll and had to close several production studios that year. *Id.*, Ex. 13, 14. Defendants claim that Crytek has not filed financial reports for the years 2017 or 2018, and Plaintiff does not dispute that fact. Indeed, Plaintiff does not dispute any of Defendants' evidence indicating that Crytek is in financial trouble.

While this evidence may bolster the justification for a bond, it also shows that the $2,193,298.45 Defendants request may not be reasonable when viewed from Plaintiff's perspective. Courts must be careful not to "deprive a plaintiff of access to the federal courts" by forcing them to post an excessive bond. *Simulnet*, 37 F.3d at 575-76 ("toll-booths cannot be placed across the courthouse doors in a haphazard fashion."). If Crytek is in as much distress as Defendants believe it is, requiring it to post a lump sum of over $2 million could push the company closer to financial ruin or effectively bar it from further participating in the suit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 17-8937 DMG (FFMx)** | Date | July 22, 2019 |
|---|---|---|---|
| Title | ***Crytek GmbH v. Cloud Imperium Games Corp., et al.*** | Page | 6 of 6 |

    Defendants claim that they have already spent $387,528.45 in attorneys' fees on this matter and provide an estimate that they may incur an additional $1,592,937.50 over the course of the litigation. Goldman Decl. [Doc. # 57-16] at 7-8. Plaintiff disputes the reasonableness of both amounts, but does not provide the Court with a figure that it could reasonably post as a security—it requests only that "the required bond be substantially decreased" if the Court "find[s] a bond warranted." Opp. at 16. Given the absence of such context, the Court shall require Crytek to post a bond in the amount of $500,000. Such an amount will protect the significant amount of fees that Defendants have already incurred, but will likely not jeopardize Plaintiff's ability to continue its participation in the action.

## IV.
## CONCLUSION

    Accordingly, the Court **GRANTS** Defendants' Motion for a Bond and **ORDERS** that Plaintiff post a bond in the amount of $500,000 within 30 days of the date of this Order. Plaintiff shall refer to Local Rules 65-2 through 65-10 to ensure proper compliance with this Order. *See* C.D. Cal. L.R. 65-2–65-10.

**IT IS SO ORDERED.**