Eric A. Buresh (*pro hac vice*)
eric.buresh@eriseip.com
Clifford T. Brazen (*pro hac vice*)
cliff.brazen@eriseip.com
Chris R. Schmidt
chris.schmidt@eriseip.com
Erise IP, P.A.
7015 College Blvd.
Suite 700
Overland Park, KS 66211
Phone: (913) 777-5600
Facsimile: (913) 777-5601

Ben M. Davidson (Cal. Bar. No. 181464)
ben@dlgla.com
Davidson Law Group, a Law Corporation
4500 Park Granada Boulevard, Suite 202
Calabasas, CA 91302
Telephone: (818) 918-4622
Facsimile: (310) 473-2941

Attorneys for Plaintiff Crytek GmbH

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CRYTEK GMBH, | Case No. 2:17-cv-08937-DMG-FFM |
| Plaintiff, | [HON. DOLLY M. GEE] |
| v. | **CRYTEK GMBH'S MEMORANDUM IN SUPPORT OF CRYTEK'S MOTION FOR VOLUNTARY DISMISSAL** |
| CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP., | |
| Defendants. | DATE: February 21, 2019<br>Time: 9:30 AM<br>Courtroom: 8C |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARDS ....................................................................................... 4

III.  ARGUMENT ....................................................................................................... 5

    A.     Crytek's Motion for Voluntary Dismissal Should be Granted ................. 5

    B.     No Conditions Should be set on Crytek's Dismissal Without Prejudice. 6

IV.  CONCLUSION .................................................................................................. 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*DuFour v. Allen*, No. 2:14-cv-05616-CAS-SS, 2015 WL 1285310 (C.D. Cal. Mar. 19, 2015) ............................................................................. 4, 5, 9

*Gonzalez v. Proctor and Gamble Co.*, No. 06cv869 WQH (WMc), 2008 WL 612746 (S.D. Cal. Mar. 4, 2008) ......................................................... 8

*Koch v. Hankins*, 8 F.3d 650, 952 (9th Cir. 1993) ...................................... 9

*Madsen v. Buffum*, No. ED 12-01605-MWF (SPx), 2013 WL 12140168 (C.D. Cal. Aug. 27, 2013) .......................................................................... 5

*Smith v. Lenches*, 263 F.3d 972 (9th Cir. 2001) ........................................ 5

*Stevedoring Servs. Of Am. v. Armilla Int'l B. V.*, 889 F.2d 919 (9th Cir. 1989) ..... 5, 8

*Viriyapanthus v. Bank of Am., N.A.*, No. SA CV 12-1285-DOC(ANx), 2013 WL 3188848 (C.D. Cal. June 21, 2013) ........................................... 5

*Westlands Water Dist. v. United States*, 100 F.3d 94 (9th Cir. 1996) ............... 4, 5, 9

*Williams v. Peralta*, 227 F.R.D. 538 (N.D. Cal. 2005) ................................. 8

## I.    INTRODUCTION

Crytek based its primary claims in this case on multiple public statements by CIG indicating the release of *Squadron 42* as a standalone game with release set for the first half of 2020. █████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████ Because this fact is central to Crytek's primary claims.█████████

████████████████████████████████████████████████████████████

███████████████████████████████ Crytek seeks to voluntarily dismiss its claims without prejudice to re-filing those claims upon the actual release of *Squadron 42*.  No efforts taken to date will be lost, and no legally cognizable prejudice will occur. Crytek's requested relief will promote judicial economy by allowing all claims to proceed as a unit once the *Squadron 42* claims become fully ripe upon CIG's release of that game.

This case has been marked by a pattern of CIG saying one thing in its public statements and another in this litigation. For example, at the outset of this case, CIG had publicly claimed it had switched to using the Lumberyard Engine for both *Star Citizen* and *Squadron 42*, but was forced to confirm during this litigation that no such switch had taken place. *See Crytek's Response to CIG's Motion for Bond*, Dkt. 74 at 1; *CIG's Reply in support of Motion for Bond*, Dkt. 74, at 8 ("Crytek makes much of the fact that the code is the same . . .").  The fact that CIG denied Crytek the credits to which it was due under the parties GLA without actually switching game engines is the basis for Crytek's "credits claim" in this case.

Similarly, prior to this case, CIG was actively communicating that it was preparing to release *Squadron 42* as a standalone game, which actions would constitute another breach of the GLA referred to herein as the *Squadron 42* claim.  For example, in October of 2016, CIG held its annual CitizenCon event. As part of that event, CIG's CEO, Chris Roberts, provided updates on its games, including *Squadron 42*. *See* **Ex.**

**A**, *Star Citizen: Full CitizenCon 2016 Presentation*. Following that event, numerous outlets wrote about Mr. Robert's presentation and, specifically, his comments about *Squadron 42*. **Ex. B**, *Articles Discussing CitizenCon 2016*. In describing Mr. Robert's discussion on *Squadron 42*, each outlet noted that *Squadron 42* was a "standalone" single-player game being offered by CIG. *Id*. And one outlet even expressly noted that *Squadron 42* would be "separate from *Star Citizen*." *Id*. at 1. Each of these outlets left CIG's CitizenCon with the understanding, conveyed by CIG, that *Squadron 42* would in fact be a separate, standalone game from *Star Citizen*. Crytek, CIG's backers, and the public were all left with that same understanding. Further, just 10 days after Crytek filed this lawsuit, CIG itself seemingly confirmed this fact. In a video CIG uploaded to its *Star Citizen* YouTube page showing *Squadron 42* gameplay, CIG included a description of the video, stating: "Watch the ***standalone*** Squadron 42 Vertical Slice Gameplay Demo showcasing Navy life aboard an Idris frigate and a rescue mission in an abandoned moon outpost." **Ex. C**, *Squadron 42: Pre-Alpha WIP Gameplay - Vertical Slice* (emphasis added).

Similarly, during this litigation, CIG has consistently given the appearance that *Squadron 42* would be a standalone game.  In CIG's Motion for Bond filed in March 2019, rather than denying that CIG would be releasing *Squadron 42* as a standalone game, CIG argued that its entry into the Amazon license would allow it to release *Squadron 42* as a standalone game.   *Memorandum in support of Motion for Bond*, ECF 56-1, at 12-13. Disputing the purported impact of the Amazon license, Crytek noted its understanding that CIG would release *Squadron 42* as a standalone game that is accessible outside of the *Star Citizen* game client and that, on information and belief, the development necessary to achieve that result must have already started. *Crytek's Response to CIG's Motion for Bond*, Dkt. 73, at 8. CIG did not rebut this fact or state that it was not currently developing *Squadron 42* as a standalone game. *CIG's Reply in support of Motion for Bond*, Dkt. 74, at 8-13. Instead, CIG continued to argue that

1  it is free to develop and release *Squadron 42* as a standalone game. *Id*. at 11-13. Crytek
2  had every reason to believe that CIG was developing *Squadron 42* as a standalone
3  game.

4     In October, Crytek served an interrogatory on CIG seeking confirmation that
5  CIG was developing *Squadron 42* as a standalone game:

6  **INTERROGATORY NO. 1:**

7     State whether Squadron 42 is currently being developed to be released as a
8     standalone game (*i.e.*, not accessible through the Star Citizen game client) and, if so,
9     state the date that decision was made, when You began implementing that decision
10    within Squadron 42, whether You secured advice of counsel with respect to that
11    decision, identify all documents and communications concerning that decision, and
      identify the three persons most knowledgeable of the same.

12  *Crytek's First Set of Interrogatories (10-16-2019)*. In late November, CIG served its
13  verified response stating that CIG had not decided how the game would be released:



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   *CIG's Objections and Responses to Crytek's Interrogatories (11-22-2019)*. While this

2   came as a surprise to Crytek (and undoubtedly will to the public who has pre-paid for

3   *Squadron 42*), assuming the truth of CIG's response, Crytek's *Squadron 42* claim is

4   not yet ripe. Following CIG's response, Crytek and CIG discussed this issue and

5   attempted to reach an agreed resolution and path forward. But when it became clear

6   that the parties would be unable to reach agreement, the parties' promptly prepared

7   and filed their Joint Stipulation regarding the briefing for this Motion. *Joint Stipulation*

8   *Regarding Briefing Schedule for Plaintiff's Motion to Dismiss Voluntarily and*

9   *Continuance of Trial and Related Dates*, Dkt. 89.

10          While CIG's ultimate intent to release *Squadron 42* as a standalone game

11   remains clear, it is now equally clear through CIG's Interrogatory response ███████

12   ████████████████████████████████████████████████████████████

13   ██████████. Accordingly, rather than press forward a case that is not likely to

14   resolve the full dispute between the parties, Crytek seeks to voluntarily dismiss its

15   claims without prejudice to re-filing once CIG in fact releases *Squadron 42* as a

16   standalone game. This approach will conserve judicial and party resources by allowing

17   all claims between the parties to be fully adjudicated in a single proceeding with a

18   single round of discovery on a fully developed factual record.

19   **II.    LEGAL STANDARDS**

20          "'Federal Rule of Civil Procedure 41(a)(2) allows a plaintiff, pursuant to an

21   order of the court, and subject to any terms and conditions the court deems proper, to

22   dismiss an action without prejudice at any time.'" *DuFour v. Allen*, No. 2:14-cv-

23   05616-CAS-SS, 2015 WL 1285310 at *2 (C.D. Cal. Mar. 19, 2015) (quoting

24   *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996)). Motions for

25   voluntary dismissal are "'addressed to the district court's sound discretion and the

26   court's order will not be disturbed unless the court has abused its discretion.'"

27   *Viriyapanthus v. Bank of Am., N.A.*, No. SA CV 12-1285-DOC(ANx), 2013 WL

28

3188848 at *2 (C.D. Cal. June 21, 2013) (quoting *Stevedoring Servs. Of Am. v. Armilla Int'l B. V.*, 889 F.2d 919, 921 (9th Cir. 1989)). "A voluntary dismissal under Rule 41(a)(2) should be granted, 'unless a defendant can show that it will suffer some plain legal prejudice as a result.'" *Madsen v. Buffum*, No. ED 12-01605-MWF (SPx), 2013 WL 12140168 at *1 (C.D. Cal. Aug. 27, 2013) (quoting *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001)). The stage of the litigation and the moving party's diligence in moving for voluntary dismissal are also factors the Court may consider. *DuFour*, 2015 WL 1285310 at *2.

### III.   ARGUMENT

#### A. Crytek's Motion for Voluntary Dismissal Should be Granted.

First, CIG will suffer no legal prejudice from a voluntary dismissal of this case. "Legal prejudice is 'prejudice to some legal interest, some legal claim, [or] some legal argument,' and focuses on 'the rights and defenses available to a defendant in future litigation." *DuFour*, 2015 WL 1285310 at *2. "Legal prejudice is not . . . established 'because a dispute remains unresolved' or by the mere 'threat of future litigation[.]'". *Id*. Here, CIG will suffer no legal prejudice because the parties will both be in the same position in any future litigation following the release of *Squadron 42* with the only difference being ███████████████████████████████████████████

███████████. Thus, each of CIG's legal interests, claims, and arguments would remain intact, as would its rights and defenses in the future litigation. The parties will effectively "resume" this litigation following the release of *Squadron 42*.  CIG cannot demonstrate any plain prejudice warranting denial of Crytek's motion in such circumstances. Furthermore, all effort expended to date will be equally useful to any resumed case, and, at any rate, it is well settled in the Ninth Circuit "that the expense incurred in defending against a lawsuit does not amount to legal prejudice." *Westlands Water Dist.*, 100 F.3d at 97.

Next, both the stage of the litigation and Crytek's diligence support granting Crytek's motion. Fact discovery remains open, neither party has taken a deposition, and trial remains nearly six months away under the current schedule. As soon as Crytek learned the position CIG was taking ██████████████████████████ ████, Crytek raised the possibility of dismissal with CIG and began working with CIG to try to agree on a fair and efficient approach. As soon it became clear that was not possible, Crytek filed its motion. Thus, because CIG will not be prejudiced by a voluntary dismissal, because the case is in a relatively early stage of discovery, and because Crytek was diligent in moving to dismiss upon learning that its primary claim was not ripe, Crytek's motion for voluntary dismissal should be granted.

## B. No Conditions Should be set on Crytek's Dismissal Without Prejudice.

Through the parties' discussions on Crytek's intent to seek voluntary dismissal, CIG indicated to Crytek that it would stipulate to a voluntary dismissal if Crytek agreed to five conditions: (1) Crytek's breach of contract claims, including its claim for credits under GLA §§ 2.8.1 and 2.8.2 will be dismissed with prejudice; (2) CIG's obligation to provide copyright and trademark notices under the GLA will be terminated; (3) Crytek's copyright claim for *Squadron 42* will be dismissed without prejudice and any discovery and work product from this litigation may be used in future litigation of this claim; (4) Crytek will release CIG from all claims from the beginning of time through the effective date, provided that the release will not cover any claims arising from the future release of *Squadron 42* outside of the *Star Citizen* game client, if any; and (5) the payment by Crytek of CIG's attorneys' fees in the amount of $500,000. Crytek agrees to condition (3), but CIG's remaining conditions should be rejected.

At the outset, CIG's first proposed "condition" for dismissal ***without prejudice*** is not such a condition at all—it is a demand for dismissal with prejudice. One of

1    Crytek's principal claims in this case is that CIG is in breach of the GLA by releasing
2    *Squadron 42* as a standalone game. This breach claim is exactly what Crytek is seeking
3    to dismiss without prejudice in order to await the actual release of *Squadron 42*.
4    Crytek also has a claim for breach of the GLA based on CIG's failure to give credits
5    to Crytek, i.e., the credits claim under §§ 2.8.1 and 2.8.2 of the GLA. This claim
6    involves many of the same facts and witnesses as Crytek's *Squadron 42* breach claim.
7    It makes no sense, from the perspective of judicial economy, to proceed on the credits
8    claim through discovery and trial and then do it all over again on a closely related
9    *Squadron 42* claim. This is especially true given that Crytek will have a separate
10   credits claim under §§ 2.8.1 and 2.8.2 if CIG releases *Squadron 42*—standalone or
11   not—without properly crediting Crytek. Thus, Crytek seeks to dismiss all its claims
12   without prejudice so that the case only proceeds once in an orderly and efficient
13   fashion. Furthermore, granting Crytek's motion on the condition that some of Crytek's
14   related claims be dismissed with prejudice would result in a hugely disproportionate
15   impact to Crytek's substantive positions, especially here, where CIG has already
16   admitted that it never actually switched to the Lumberyard Engine and is still using
17   the CryEngine despite prior public representations that it did switch engines. In short,
18   CIG's first condition is overreaching and impractical.

19          CIG's second condition (the release of CIG from its obligation to credit Crytek),
20   like its first, is overreaching and fundamentally ignores that Crytek is requesting
21   dismissal of its credits claims simply for purposes of judicial economy, i.e., keeping
22   all claims together in a single proceeding. CIG is seeking a substantive alteration of
23   the parties' rights as a result of what is essentially a procedural motion. There is no
24   way Crytek will abandon its credit claims in the context of the instant motion. Instead,
25   if forced to do so despite the obvious inefficiencies, Crytek would press its credits
26   claims forward in this case while awaiting the release of *Squadron 42* to then pursue
27   a later case directed to that claim as well as a new credits claim. It would be
28

1  ridiculously inefficient for the Court and the parties to follow this path. If Crytek's

2  motion for voluntary dismissal were to carry such a harsh penalty as CIG proposes,

3  future parties would be encouraged to pursue duplicative piecemeal litigation to avoid

4  having otherwise valid contractual obligations cancelled.

5  As for CIG's fourth condition seeking a release of all claims through the

6  effective date excluding claims based on the future release of *Squadron 42* outside of

7  the *Star Citizen* game client, it is unclear how, exactly, this substantively differs from

8  CIG's first condition above and, for the same reasons, it should be rejected.

9  Finally, CIG's condition of fees—which through prior discussions CIG has

10  argued this Court would be likely to impose—should also be rejected. Courts in the

11  Ninth Circuit consider a number of factors to determine whether to condition a

12  dismissal without prejudice on the payment of fees and costs:

13   [A]ny 'excessive and duplicative expense' of a second litigation, the

14  effort and expense incurred by defendant preparing for trial, the extent

15  to which the litigation has progressed, the plaintiff's diligence in

     moving to dismiss, whether awarding costs would discourage plaintiffs

16  from seeking early dismissal of their actions and instead encourage

17  them to take their chances at trial, and whether the imposition of

     attorneys' fees would produce an 'anomalous result' where defendants

18  could not recover fees if they prevailed at trial.

19  *Gonzalez v. Proctor and Gamble Co.*, No. 06cv869 WQH (WMc), 2008 WL 612746

20  at *3 (S.D. Cal. Mar. 4, 2008) (quoting *Stevedoring*, 889 F.2d at 920-921 (9th Cir.

21  1989) and *Williams v. Peralta*, 227 F.R.D. 538, 540 (N.D. Cal. 2005)). Considering

22  these factors, fees are not warranted.

23  First, the expense of a second litigation would not be excessive nor in any way

24  duplicative. Once *Squadron 42* is released, the parties will pick up where they left off.

25  The discovery done by the parties to date is fully useable in the future case. The second

26  and third factors likewise weigh against fees because CIG's expense and effort in

27  preparing for trial is minimal—fact discovery remains open, no depositions have been

28

taken, no dispositive motions have been filed, and preparations for trial have not even begun. As to the fourth factor, Crytek was diligent in seeking to move to dismiss. Once Crytek had a chance to consider CIG's verified interrogatory response, it promptly raised this matter with CIG and engaged in negotiations to determine whether an amicable solution could be reached without the need for motion practice. As soon as it became clear that such an outcome could not be reached, the parties reached an agreement memorialized in their Joint Stipulation (Dkt. 89), and Crytek filed this motion. Finally, much like CIG's other proposed conditions, awarding costs under these circumstances would discourage plaintiffs from appropriately and efficiently managing litigation based on information learned through discovery indicating that one or more claims are not ripe. As a result, parties would be forced to take their cases through to completeness, get a decision that their claim was not ripe, and then file a separate later action once it had ripened. Finally, CIG has continued to insist on pushing forward with discovery despite being aware of Crytek's clear intention to dismiss this case without prejudice. CIG should not be heard to complain about fees it seems so eager to incur.  Under the present circumstances, conditioning Crytek's dismissal on the payment of fees should be rejected.

But even if the Court should choose to "condition dismissal on the payment of costs and attorney fees, the defendants should only be awarded attorney fees for work which cannot be used in any future litigation of these claims." *DuFour*, 2015 WL 1285310 at *4 (quoting *Westlands Water Dist.*, 100 F.3d at 97). In other words, CIG could only obtain fees for work "rendered useless by the dismissal." *Koch v. Hankins*, 8 F.3d 650, 952 (9th Cir. 1993). Here, none of the work done by the parties to date would be rendered useless by the requested dismissal. As discussed above, Crytek's motion for voluntary dismissal without prejudice is premised on CIG's recent interrogatory responses, which indicated Crytek's *Squadron 42* breach of contract claim was unripe. Thus, should CIG release *Squadron 42* as a standalone game, the

case would be in exactly the same position it is currently. In short, granting Crytek's voluntary dismissal now would do nothing more than allow Crytek's *Squadron 42* claim to ripen so that the parties can fully resolve the disputes between them in a single proceeding. Such a result is undoubtedly to the benefit of both the Court and the parties.

## IV.   CONCLUSION

For the foregoing reasons, Crytek respectfully requests that the Court grant its motion for voluntary dismissal, without prejudice and without conditions.

DATED: January 3, 2020

ERISE IP, P.A.

By: */s/ Eric A. Buresh*

Eric A. Buresh (*pro hac vice*)
Attorneys for Plaintiff
CRYTEK GMBH