# Exhibit 2

# REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**JOSEPH R. TAYLOR** (SBN 129933)
**JEREMY S. GOLDMAN** (SBN 306943)
**MATTHEW SAMET** (SBN 311865)
**FRANKFURT KURNIT KLEIN + SELZ PC**
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone:  (310) 579-9600
Facsimile:  (310) 579-9650
E-Mail: jtaylor@fkks.com
          jgoldman@fkks.com
          msamet@fkks.com

Attorneys for Defendants
CLOUD IMPERIUM GAMES CORP. and
ROBERT SPACES INDUSTRIES CORP.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CRYTEK GMBH,<br><br>          Plaintiff,<br><br>     vs.<br><br>CLOUD IMPERIUM GAMES CORP. and ROBERT SPACE INDUSTRIES CORP.,<br><br>          Defendants. | Case No. 2:17-CV-08937-DMG-FFM<br><br>[HON. DOLLY M. GEE]<br><br>**DEFENDANTS' OPPOSITION TO CRYTEK GMBH'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41**<br><br>Date:    February 7, 2020<br>Time:    9:30 A.M.<br>Crtrm.:  8C<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ......................................................... 1

SUMMARY OF RELEVANT FACTS ................................................ 4

    A.   Star Citizen and Squadron 42. .............................................. 4

    B.   Crytek Licenses CryEngine to CIG for *Star Citizen* and *SQ42*. ............. 4

    C.   Crytek Cashes Out of CryEngine Business in Deal With Amazon. ................................................................... 5

    D.   CIG Switches to Amazon Lumberyard. .................................. 5

    E.   CIG Allows Supporters to Contribute Funds for Future Access to *SQ42*. ................................................................ 6

    F.   A Year Later, Crytek Files The Kitchen Sink. ......................... 7

    G.   CIG Pares Case Down to Two Claims. ................................... 7

    H.   CIG Raises Ripeness Defense at Beginning of Litigation. ............. 8

    I.   Court Orders Crytek to Deposit Fee and Cost Security Bond. ........... 9

    J.   Crytek Learns from Amazon that CIG Acquired Broader Rights to CryEngine than Crytek Thought. ............................ 10

    K.   Crytek Seeks Dismissal "Without Prejudice or Conditions" In Year Three ........................................................ 11

ARGUMENT ................................................................ 11

I.   The Action Should Be Dismissed. ........................................ 11

II.   The Action Should Be Dismissed *With* Prejudice. ....................... 12

    A.   The Court Has Wide Discretion to Dismiss With Prejudice Under Rule 41 ........................................................ 12

        1.   Typical Examples Where Courts Dismiss with Prejudice. ......... 13

        2.   Judge Carney's Dismissal in *Toyo Tire*. ............................ 14

    B.   The Facts of this Case Amply Support a Dismissal *With* Prejudice. ........................................................... 14

        1.   CIG Expended Significant Time and Expense to Pare Down Crytek's Meritless Claims and Prepare for Trial. ......... 15

        2.   Crytek Has Excessively Delayed Prosecution of This Action and Acted Without Diligence. ......................... 15

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
T (310) 579 9600

i

3.   The Litigation Is In the Late Stages............................................ 16

4.   Crytek's Stated Reasons for Dismissal Are "Suspect." ............. 16

5.   Crytek Is Swerving From a Near-Certain Adverse Ruling. ....... 17

III.   The Court Should Impose Reasonable Conditions on Dismissal. ................. 18

A.   The Court Has Wide Discretion to Impose Conditions, Typically Including an Award of Attorney's Fees and Costs, on a Dismissal Without Prejudice...................................................................... 19

B.   Each of the Four Factors Favors an Award of Fees and Costs............. 20

1.   CIG Incurred Significant Expense Preparing Work Product That Cannot Be Used in A Future Litigation................ 20

2.   CIG Has Expended Tremendous Effort and Expense. ............... 21

3.   The Action Is Too Far Along to Dismiss Unconditionally. ....... 22

4.   Crytek Did Not Exercise Diligence in Moving to Dismiss. ....... 22

C.   Dismissal of the *SQ42* Claim *Without* Prejudice Should Be Conditioned on Dismissal of the Credits Claim *With* Prejudice........... 23

CONCLUSION........................................................................................................ 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Frankfurt Kurnit Klein + Selz** PC

2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

DEFENDANTS' OPPOSITION TO CRYTEK GMBH'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ............................................................... 16

*Diamond State Ins. Co. v. Genesis Ins. Co.*,
  379 Fed. App'x 671 (9th Cir. 2010) ...................................................... 12

*Esquivel v. Arau*,
  913 F. Supp. 1382 (C.D. Cal. 1996) ...................................................... 20

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
  628 F.3d 157 (5th Cir. 2010) ................................................................. 13

*Fischer v. Zespri Fresh Produce N. Am., Inc.*,
  No. CV 07-5729 ODW (CTX), 2009 WL 10659754
  (C.D. Cal. May 11, 2009) ...................................................................... 18

*Lau v. Glendora Unified Sch. Dist.*,
  792 F.2d 929 (9th Cir. 1986) ................................................................. 20

*Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*,
  299 Fed. App'x 664 (9th Cir. 2008) ................................................. 13, 17

*Microhits, Inc. v. Deep Dish Prods., Inc.*,
  No. CV 10–36 PA (Ex), 2011 WL 13143434
  (C.D. Cal. Jan. 6, 2011) .................................................................. 13, 18

*Nicoli v. Riddell*,
  No. 11 Civ. 999, 2012 WL 13018549 (C.D. Cal. Mar. 7, 2012) ........... 22

*Paulucci v. City of Duluth*,
  826 F.2d 780 (8th Cir. 1987) ................................................................. 12

*Sacchi v. Levy*,
  No. 14 Civ. 08005, 2015 WL 12765637 (C.D. Cal. Oct. 30, 2015) ...... 20

*Santa Rosa Mem'l Hosp. v. Kent*,
  688 Fed. App'x 492 (9th Cir. 2017) ................................................. 19, 20

*Schimmeyer v. 99¢ Only Stores*,
  No. CV 07 08 126, 2008 WL 11342699 ................................................ 22

i

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

*Self v. Equinox Holdings, Inc.*,
   No. 14 Civ. 4241, 2015 WL 13298146 (C.D. Cal. Jan. 5, 2015) ........................ 20

*U.S. ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*,
   151 F.3d 1139 (9th Cir. 1998) ................................................................ 19

*Stevedoring Servs. of Am. v. Armilla Int'l B.V.*,
   889 F.2d 919 (9th Cir. 1989) ......................................................... 11, 19, 20

*Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*,
   No. 15 Civ. 246, 2018 WL 1896310 (C.D. Cal. Mar. 28, 2018) ................. *passim*

*Westlands Water Dist. v. United States*,
   100 F.3d 94 (9th Cir. 1996) ................................................................ 20, 23

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
   655 F.3d 1039 (9th Cir. 2011) ................................................................ 11

## **Statutes**

Fed. R. Civ. P. 41 ................................................................................ *passim*

Fed. R. Civ. P. 54(d) .............................................................................. 18

17 U.S.C. § 505 ...................................................................................... 18

Frankfurt Kurnit Klein+Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

DEFENDANTS' OPPOSITION TO CRYTEK GMBH'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41

**PRELIMINARY STATEMENT**

This action should never have been brought.  Dismissal is long overdue and proper.  What would not be proper is dismissing the action "without prejudice without conditions."[1]  Crytek launched and maintained this attention-seeking action irresponsibly from the outset.  In year three, the case docket is littered with the detritus of reckless Crytek allegations, subject to fee shifting, thrown out as a matter of law or dropped under pressure.  These caused enormous unnecessary expense.  Crytek scrambles for its parachute as the March summary judgment and June trial schedule brought final reckoning ever nearer.

All of the factors applicable to the Court's discretion cry out for the action's dismissal with prejudice.  At the very least, the Court should dismiss Crytek's credits claim with prejudice and order that the security bond be released to CIG.  Crytek should not be allowed to aim its car at CIG's storefront window, stomp the accelerator, smash through, do doughnuts for years, then back out and drive away to maybe circle around and crash CIG again another day.  Crytek richly deserves having its keys taken away for all time, so that CIG can conduct responsible business without further interference from Crytek or its series of lawyers.  The security bond, which the Court generously limited in size so Crytek could make it to the end of a case it now flees, would barely cover a portion of the wreckage.  The "proper" ending is the action's dismissal with prejudice.  Any other dismissal should end with the bond paid over to CIG.

A.    **Crytek's Sudden Exit Explanation Fails Any Red Face Test.**

Crytek's singular pretext for seeking a merciful exit from the Court does not even justify dismissal of the "one of Crytek's existing claims" at which it is aimed.[2]  The evidence has always shown that CIG entered into a separate license

---

[1] Crytek's Notice of Motion, ECF 91, at 1:7-8.

[2] Crytek's Notice of Motion, ECF 91, at 1:9-13.

1

Frankfurt Kurnit Klein+Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
T (310) 579 9600

agreement with Amazon and, since 2016, has been developing *Star Citizen* and *Squadron 42* ("*SQ42*") using the ███████████████ that Amazon licensed and delivered to CIG.  On top of that, from day one of this action, CIG has repeatedly pointed out that Crytek's claim that *SQ42* cannot be released in a separate game client could not even theoretically be ripe because ***SQ42 has not yet been released***.  Even pretending the Amazon license did not exist, the GLA expressly defines the "Game" as both *Star Citizen* "***and*** its related space fighter game 'Squadron 42,'" and whether content falls outside the scope of the license as whether players ***actually access*** the content through the *Star Citizen* game client.  Since *SQ42* has not yet been made available to players at all (a fact Crytek conceded early in discovery),[3] Crytek's claim is and has always been at best premature.[4]

### B.   Crytek Seeks To Avoid Inevitable Adverse Rulings.

The real reason Crytek wants to walk away from its *SQ42* claim is because Crytek can no longer delay the inevitable reckoning that its claim is and has always been meritless for at least two independent reasons.  ***First***, by suddenly seeking a dismissal without prejudice to preserve its right to refile "once CIG ***in fact releases Squadron 42,***"[5] Crytek concedes CIG's long-argued point that no breach could even theoretically occur until actual game release.  ***Second***, evidence uncovered in

---

[3] Declaration of Jeremy S. Goldman, Ex. 1 at 1:12-13.

[4] Crytek does not even attempt a "new information" pretext for dismissing its credits claim.  Instead, Crytek tries to tether it to the false justification for retreating from the *SQ42* claim.  Crytek's true intent is revealed by Crytek's admissions that (1) the GLA does not require CIG to credit CryEngine if CIG switches engines, and (2) it has ***zero evidence*** of damages caused by the removal of its credits.  Goldman Decl., Exs. 1 at 6:16-18 & 2 at 1:26-28, 2:10-11.  If Crytek were actually being damaged, it would not seek to dismiss the credits claim because, according to Crytek, CIG has an acute and ongoing credit obligation that CIG continues to violate.  The credits claim is a vestige that should be eliminated with prejudice.

[5] Crytek Mem., ECF 92, at 7:15 (emphasis added).

Frankfurt Kurnit Klein + Selz PC

2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P: (310) 579-9600

1   discovery on the Amazon license shows that in May 2019—a year and a half after

2   launching the action—Crytek sheepishly and belatedly emailed Amazon to ask if it

3   had truly granted CIG a license covering prior versions of CryEngine, including

4   those licensed to CIG under the GLA.  Goldman Decl., Ex. 3.  In that email, Crytek

5   conceded that an affirmative answer would likely tank its *SQ42* claim.  Amazon

6   confirmed that, yes indeed, it had done just that.  Instead of acting responsibly even

7   at that late moment, Crytek persisted, fought the bond motion, and dithered another

8   seven months before bringing this motion.

9   **C.     Crytek's Motion Aims to Mislead the Court and Confuse the**

10  **Public.**

11      Throughout this case, Crytek has sacrificed legal sufficiency for outlandish

12  allegations designed to ignite incendiary publicity.  Even as Crytek now hobbles

13  toward the exit, it misleads the Court—and in this closely-watched case, that always

14  means misleading the public—by falsely claiming that CIG did not switch to

15  Amazon Lumberyard[6] and pretending that "new information" came out in discovery

16  about the timing of the future release of *SQ42*.  In fact, nothing about release timing

17  for *SQ42* has been shared with Crytek.

18      Crytek tries to twist CIG's interrogatory response, ███████████████████

19  ████████████████████████████████████.  While Crytek suggests

20  that the response would come as a "surprise" to "the public who has pre-paid for

21  Squadron 42," CIG's response did not refer to how the game was marketed but

22  rather stated that CIG simply had not yet determined how players will access the

23  game.  Crytek Mem., ECF 92, at 7:1-3.  It is customary for large games to reserve

24  decisions regarding the parameters of release until closer to the release date in order

25  evaluate the market conditions at that time.  Crytek's contention that CIG's

26  interrogatory response is inconsistent with its prior public statements is unfounded.

27

28  [6] Crytek's inquiry of Amazon as discussed above reveals the truth.

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC

2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

### D.    Crytek Refuses to Negotiate Its Surrender.

The Court entreated counsel on January 10 to confer in aid of finding agreement on proper dismissal.  Crytek's counsel acknowledged they would do so after admitting they likely would refile in response to the Court's questions. Counsel for CIG then attempted to negotiate a compromise on January 14. Goldman Decl. ¶¶ 3-9.  Unfortunately, Crytek's stonewall position remains "without prejudice or conditions" and, frankly, without justification or explanation.  CIG tried to avoid motion practice, and will continue if Crytek ever unfolds its arms.  Failing that, dismissal with prejudice remains the most just conclusion.

### SUMMARY OF RELEVANT FACTS

### A.    Star Citizen and Squadron 42.

Since 2012, CIG has been developing a multiplayer video game called *Star Citizen* and a single-player episodic game called *Squadron 42* that takes place in the *Star Citizen* universe.  Declaration of Ortwin Freyermuth ("OF Decl.") ¶ 4.  While certain playable modules of *Star Citizen* have been released, CIG has not yet made any part of *SQ42* available to the public.  *Id.* ¶ 4.  Crytek admits this fact.  Goldman Decl. ¶ 15, Ex. 1 at 1:10-13 ("Crytek . . . does not contend that any version of Squadron 42 that embeds CryEngine has been made available to the public."). Development of these games has been supported primarily through crowdfunding. OF Decl. ¶ 5.

### B.    Crytek Licenses CryEngine to CIG for *Star Citizen* and *SQ42.*

On November 20, 2012, CIG entered into a game license agreement (the "GLA") with Crytek, which owns rights in the game engine software "CryEngine."  *Id.*, Ex. 1.  Pursuant to the GLA, CIG paid Crytek a $2+ million buyout license fee for the right to use CryEngine in connection with the "Game," expressly defined as both *Star Citizen* "**and** its related space fighter game 'Squadron 42.'"  *Id.* [GLA at 2] (emphasis added).

4

The GLA defines whether content is within the scope of the Game by whether players can access the content outside of the *Star Citizen* game client. *Id.* [GLA at 18]. The GLA provides: "In the event any litigation is brought by either party in connection with this Agreement, the prevailing party will be entitled to recover from the other party all reasonable costs, attorney's fees and other expenses reasonably incurred by such prevailing party in the litigation." *Id.* [GLA § 10.8].

### C.   Crytek Cashes Out of CryEngine Business in Deal With Amazon.

In 2014, reports began to surface that Crytek was experiencing serious financial problems. Goldman Decl. ¶¶ 13-15, Exs. 4-6. Starved for cash, Crytek entered into an unprecedented license agreement with Amazon ███████████ ████████████████████████████████████████████████████ *Id.*, Ex. 7. ███████████████████████████ *Id.*

In February 2016, Amazon publicly announced the launch of "Lumberyard," a game engine derived from CryEngine that Amazon was making available for free, including full source code access, to all Amazon Web Services customers. *Id.*, Ex. 8. Following Amazon's news, Crytek effectively retired from the game engine business, shifting to a "pay what you want model" and ████████████████ ████████████████████████████████████. *Id.*, Exs. 9 & 10.

### D.   CIG Switches to Amazon Lumberyard.

CIG began discussing a potential license agreement with Amazon in March 2015, when Amazon told CIG that it was developing Lumberyard based on CryEngine. OF Decl. ¶ 7. By agreement dated April 30, 2016, Amazon granted CIG the right to use ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████

Frankfurt Kurnit Klein+Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

1  ████████████████████████████

2       On December 23, 2016, after taking multiple steps to effect a switch of its

3  engine code to the ████████████████ under license from Amazon, CIG began

4  displaying the trademark for Lumberyard instead of CryEngine on the opening

5  splash screen for *Star Citizen*.  OF Decl. ¶¶ 9-10.  The same day, CIG announced its

6  switch to Lumberyard.  *Id.*, Ex. 2.  Crytek did not object.  *Id.* ¶ 12.  Crytek admitted

7  that the GLA does not "obligate[] Defendants to provide copyright and trademark

8  notices for CryEngine" if CIG switches to a different game engine.  Goldman Decl.,

9  Ex. 1 at 6:16-18.  Crytek also conceded that it has no evidence of damages, and

10  claims no loss of profits from the removal of Crytek's credits or CIG's switch to

11  Lumberyard.  *Id.*, Ex. 2 at 1:26-28, 2:10-11.

12       **E.    CIG Allows Supporters to Contribute Funds for Future Access to**

13            ***SQ42.***

14       In January 2016, as CIG and Amazon neared an agreement, CIG announced

15  that supporters would be able to support the development of *Star Citizen* by

16  contributing funds for access to *SQ42*.  OF Decl., Ex. 3.  Previously, CIG had

17  included *SQ42* only with the *Star Citizen* game packages.  *Id.* ¶ 14.  The

18  announcement did not specify how players would access *SQ42*.  *Id.*, Ex. 3.

19       Following the news, Crytek contacted CIG to raise a concern about the

20  announcement.  *Id.* ¶ 15.  Crytek pointed out that the GLA did not authorize content

21  released outside of the *Star Citizen* game client.  *Id.*  On February 7, 2016, CIG

22  issued a press release clarifying that "[t]he package split does not change the fact

23  that *Star Citizen* and *Squadron 42* are part of the same game universe, or the fact

24  that the games are functionally connected.  ***You will access Squadron 42 through***

25  ***the same game client***."  *Id.*, Ex. 4 (emphasis added).  This was CIG's last public

26  announcement about how players will access *SQ42*, which remains in development.

27  *Id.* ¶ 16.

28

DEFENDANTS' OPPOSITION TO CRYTEK GMBH'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41

Frankfurt Kurnit Klein + Selz PC

2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
T (310) 579-9600

**F.    A Year Later, Crytek Files The Kitchen Sink.**

Crytek commenced this action on December 12, 2017, almost a full year after CIG publicly announced its switch to Lumberyard.  ECF 1.  Crytek's initial complaint, prepared by a team of lawyers at Skadden Arps, launched a litany of contrived and baseless aspersions and claims at CIG, all smashed together in claims for copyright infringement and breach of contract.  *Id.*  Crytek's meritless lawsuit was designed to inflict upon CIG maximum damage and unnecessary escalation of legal expense through reputational attack and scorched-earth litigation tactics.  CIG has spent more than two years successfully beating back Crytek's claims.  Crytek has achieved none of its litigation objectives.

**G.    CIG Pares Case Down to Two Claims.**

Through significant time, effort, and expense, CIG has disposed of all but two of Crytek's claims:

| Failed Claim | Disposition |
|---|---|
| In its initial complaint, Crytek falsely accused CIG's Co-Founder and General Counsel of engaging in a **conflict of interest** when negotiating the GLA.  Compl. ¶ 15, ECF 1. | ***Withdrawn in Face of Rule 11.***  After CIG produced the written conflict waiver signed by Crytek, Crytek withdrew the allegation on the eve of service of CIG's Rule 11 motion.  Goldman Decl. ¶ 21; ECF 18. |
| Crytek's leading cause of action alleged that CIG violated ***GLA § 2.1.2*** by switching to a different game engine.  Compl. ¶¶ 36-38, ECF 1. | ***Dismissed by Court.***  The Court granted CIG's motion to dismiss the § 2.1.2 claim as unsupported by the plain language of the GLA and anathema to the concept of a license.  ECF 38 at 11. |
| Crytek sought **punitive damages** on its claims for breach of contract and | ***Dismissed by Court.***  The Court granted CIG's motion to dismiss Crytek's claim |

7

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
T (310) 579 9600

| | |
|---|---|
| copyright infringement.  Compl. at 13, ECF 1. | for punitive damages as unsupported by the simplest black letter law.  ECF 38 at 20. |
| In its Second Amended Complaint, Crytek added a new claim alleging that CIG violated *GLA § 2.4* by engaging in a competing game engine business.  SAC ¶ 36, ECF 39. | ***Dismissed by Court.***  The Court granted CIG's motion to dismiss Crytek's § 2.1.2 claim, finding that Crytek had stated no facts in support of the claim.  ECF 49 at 9-10. |
| Crytek claimed that CIG violated the GLA's non-disclosure provisions by sharing CryEngine source code with third-party *Faceware Technologies.*  SAC ¶ 51, ECF 39. | ***Dropped after bond ordered.***  Crytek dropped this claim after Faceware and CIG submitted declarations from both sides denying that Faceware had ever received access to CryEngine, and Crytek admitted it had zero evidence in support of its claim.  Goldman Decl. ¶ 22. |
| Crytek claimed that CIG violated the GLA by failing to deliver certain *bug fixes* and engine optimizations.  SAC ¶ 57, ECF 39. | ***Dropped after bond ordered.***  After CIG showed that it had tendered the code and then actually delivered it, Crytek dropped the claim.  *Id.* |
| Crytek claimed that CIG violated the GLA by posting snippets of CryEngine in the video series *Bugsmashers.*  SAC ¶ 50, ECF 39. | ***Dropped after bond ordered***.  After CIG pointed out that Crytek had already published all of its code and thus could not possibly be damaged by the alleged snippets, Crytek dropped the claim.  *Id.* |

**H.    CIG Raises Ripeness Defense at Beginning of Litigation.**

One of Crytek's two remaining claims that it now seeks to dismiss alleges that CIG breached the GLA and infringed Crytek's copyright by developing *SQ42* to be

8

Frankfurt Kurnit Klein+Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579-9600

released as a standalone game outside the *Star Citizen* game client.  From the outset, CIG has repeatedly pointed out that, in addition to being meritless in light of CIG's separate license with Amazon, Crytek's allegations regarding *SQ42* failed to state a claim and could not possibly be ripe because the GLA expressly grants CIG the right to use CryEngine and to "develop" *SQ42* and measures whether content is within the scope of the GLA by how players actually access the game.  OF Decl., Ex. 1 at § 2.1.2 & Exhibit 2.  Since *SQ42* has not yet been released, no players had accessed the game at all (either through or outside the *Star Citizen* game client), and there is no possible breach.  *E.g.* Reply in Support of Motion to Dismiss, ECF 26, at 17:4-10 ("To exceed the scope of the license . . . [Squadron 42] must be 'accessed through the Star Citizen Game client.'  As of December 23, 2016, Squadron 42 was not 'being accessed' at all, either 'through' or outside 'the Star Citizen Game client.'  Accordingly, Crytek's claim . . . fails as a matter of law." (citation omitted)); *see also* Answer, ECF 53, at 17:13-16 (raising "Ripeness" as affirmative defense); Motion for Bond, ECF 57-1, at 14:13-14 ("Since *Squadron 42* has not been released, CIG is not in breach of the GLA.").

Now, after forcing CIG to litigate this claim for more than two years against the plain language of the GLA and uncontested facts, Crytek at last concedes that its claim is not ripe.  Crytek's Mem., ECF 92, at 12:24-27 ("Crytek's motion for voluntary dismissal without prejudice is premised on CIG's recent interrogatory responses, which indicated Crytek's Squadron 42 breach of contract claim was unripe.").[7]

## I.  Court Orders Crytek to Deposit Fee and Cost Security Bond.

On March 29, 2019, CIG filed its motion for bond, requesting that Crytek post a $2,193,298.45 bond pending resolution of the case.  ECF 57-1 at 4.  CIG

---

[7] Saying the contract claim is "unripe" is a euphemism for admitting **there was never a breach.**

Frankfurt Kurnit Klein + Selz pc

2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
T (310) 579 9600

1   requested the bond to guard against the risk that Crytek would try to walk away

2   from this action without paying CIG contractual and statutory cost and fee awards if

3   and when CIG prevailed in the action.  *Id.* at 10-12.  CIG pointed to evidence

4   showing that Crytek was in steep financial decline and potentially could not afford

5   to pay any award by the end of the case.  *Id.* at 11-12.  CIG also produced evidence

6   demonstrating the strength of its defenses.  *Id.* at 16.

7        The Court granted the bond motion on July 22, 2019.  ECF 81.  The Court

8   agreed that CIG had at least a reasonable possibility of prevailing over Crytek's

9   claims and shared CIG's concerns about Crytek's financial state.  *Id.*  It ordered

10  Crytek to deposit "only" a $500,000 bond, expressing concern that requiring a

11  greater amount would "jeopardize Plaintiff's ability to continue its participation in

12  the action."  *Id.* at 3, 5.  Crytek deposited the $500,000 bond.  ECF 85.

13      **J.**   **Crytek Learns from Amazon that CIG Acquired Broader Rights to**

14            **CryEngine than Crytek Thought.**

15      In addition to being unripe, the evidence shows that Crytek filed its *SQ42*

16  claim based on the false assumption that CIG's license from Amazon covered only

17  the publicly released version of Lumberyard.  What Crytek did not know is that the

18  license also included rights to prior versions of CryEngine itself, rights which

19  Amazon granted in order to minimize the engineering time it would take CIG to

20  migrate to Lumberyard.  It was not until May 22, 2019—a year and a half after

21  filing this lawsuit—that Crytek finally[8] decided to ask Amazon whether it "licensed

22  the Cryengine itself directly to CIG," conceding that the answer "might potentially

23  have ***quite some influence on our evaluation of the legal situation . . . .***"  Goldman

24  Decl., Ex. 3.  Amazon confirmed that yes, it had "included Cryengine (what you

25  licensed to us) as part of that license to CIG."  *Id.*

26

27

28  [8] Crytek's irresponsible shoot-first question-later approach echoes throughout this action (e.g. Faceware).

Frankfurt Kurnit Klein + Selz PC

2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

DEFENDANTS' OPPOSITION TO CRYTEK GMBH'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41

On October 25, 2019, CIG produced a copy of the Amazon license to Crytek so it could see for itself: CIG's separate license with Amazon operates as a complete defense against Crytek's remaining claims so they too never should have been brought. Goldman Decl., Ex. 11.

## K. Crytek Seeks Dismissal "Without Prejudice or Conditions" In Year Three

Crytek first raised the possibility of it seeking a voluntary dismissal during a meet and confer between counsel on December 4, 2019. Goldman Decl. ¶ 23. Crytek's counsel expressed surprise that, in response to one of Crytek's interrogatories, ██████████████████████████████████ ████████████ Crytek's counsel said that, accepting the truth of this response, Crytek was thinking about filing a voluntary motion to dismiss and refiling when *SQ42* was released. *Id.* ¶ 25.[9] Given that CIG had been arguing the ripeness point from day one, and given that the parties had been in hard-fought litigation for over two years, CIG's counsel thought Crytek must be joking. *Id.* ¶ 26. But CIG soon learned that Crytek was not joking, but rather using CIG's interrogatory response as a pretext to justify its request to exit irresponsible litigation without accountability. *Id.* ¶ 27.

## ARGUMENT

## I. The Action Should Be Dismissed.

After a defendant has answered or moved for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, ***on terms that the court considers proper***." Fed. R. Civ. P. 41(a)(2) (emphasis added). "A motion for voluntary dismissal under Rule 41(a)(2) is addressed to the district court's sound discretion." *Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th

---

[9] Crytek makes much of the fact that CIG has argued that the Amazon license gives CIG the right to release *SQ42* as a standalone game. CIG does have that right and has never suggested otherwise.

Frankfurt Kurnit Klein+Selz PC
28/29 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579-9600

1   Cir. 1989).  District courts "enjoy discretion to dismiss claims with or without

2   prejudice."  *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d

3   1039, 1059 n.6 (9th Cir. 2011).

4         In exercising its discretion, "the Court must make three separate

5   determinations: (1) whether to allow dismissal; (2) whether the dismissal should be

6   with or without prejudice; and (3) what terms and conditions, if any, should be

7   imposed."  *Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*, No. 15 Civ.

8   246, 2018 WL 1896310, at *2 (C.D. Cal. Mar. 28, 2018) (dismissing claims for

9   trade dress infringement and unfair competition ***with prejudice*** after tire company

10  moved for voluntary dismissal without prejudice; quoting *Williams v. Peralta Cmty.*

11  *Coll. Dist.*, 227 F.R.D. 538, 539 (N.D. Cal. 2005)).

12        The Court's first determination is easy.  Since Crytek's claims have always

13  been meritless and this entire action never should have been brought, the action

14  should be dismissed.  However, Crytek's proposed dismissal "without prejudice

15  without condition" is not "proper" under Rule 41(a)(2).

16  **II.    The Action Should Be Dismissed *With* Prejudice.**

17        **A.    The Court Has Wide Discretion to Dismiss With Prejudice Under**

18             **Rule 41**

19        The Ninth Circuit has confirmed that district courts are empowered with "***the***

20  ***discretion to dismiss with or without prejudice***."  *Diamond State Ins. Co. v. Genesis*

21  *Ins. Co.*, 379 Fed. App'x 671, 672-73 (9th Cir. 2010) (emphasis added; affirming

22  dismissal with prejudice where insurance company moved for voluntary dismissal

23  without prejudice; citing *Hargis v. Foster*, 312 F.3d 404, 412 (9th Cir. 2002)) .  Said

24  another way, the Court has "authority to convert [plaintiff's] motion to dismiss

25  without prejudice into a motion to dismiss with prejudice" under Rule 41(a)(2).  *Id.*

26  "Dismissal with prejudice maximizes the protection to . . . the defendant, which is

27  the underlying goal of Federal Rule of Civil Procedure 41(a)(2)."  *Toyo Tire*, 2018

28  WL 1896310, at *5 (citing *Smith v. Lenches*, 263 F.3d 972, 976 (9th Cir. 2001));

Frankfurt Kurnit Klein+Selz pc
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

12

1   *Paulucci v. City of Duluth*, 826 F.2d 780, 782 (8th Cir. 1987) ("The purpose of Rule

2   41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other

3   side.").

4   ## 1.      Typical Examples Where Courts Dismiss with Prejudice.

5   "Typical examples" where courts grant voluntary dismissal with prejudice

6   include "when a party proposes to dismiss the case at a late stage of pretrial

7   proceedings." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 628 F.3d 157,

8   169 (5th Cir. 2010) (no abuse of discretion to dismiss bellwether plaintiff's action

9   ***with*** prejudice when she moved for dismissal three months before trial).  Courts also

10  typically grant dismissal with prejudice where plaintiffs seek "to avoid a near-

11  certain adverse ruling."  *Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*, 299

12  Fed. App'x 664, 666 (9th Cir. 2008) (affirming district court's dismissal ***with***

13  prejudice where claimant moved to dismiss third-party claim after court indicated

14  how it would rule; citing *Terrovona v. Kincheloe*, 852 F.2d 424, 429 (9th Cir.

15  1988)).  Dismissal with prejudice is appropriate where "it would be inequitable or

16  prejudicial to defendant to allow plaintiff to refile the action." *Toyo Tire*, 2018 WL

17  1896310, at *4-5 (quoting *Williams,* 227 F.R.D. at 539).

18  In deciding whether to dismiss with prejudice, courts have considered the

19  following list of non-exclusive factors: "(1) the defendant's effort and expense in

20  preparing for trial, (2) excessive delay and lack of diligence on the part of the

21  plaintiff in prosecuting the action, and (3) insufficient explanation of the need to

22  take a dismissal." *Microhits, Inc. v. Deep Dish Prods., Inc.*, No. CV 10–36 PA

23  (Ex), 2011 WL 13143434, at *2 (C.D. Cal. Jan. 6, 2011) (Anderson, J.) (dismissing

24  copyright infringement claim for lack of standing ***with*** prejudice where production

25  company did not act diligently in obtaining document transferring copyright;

26  quoting *Williams,* 227 F.R.D. at 540).

27

28

Frankfurt Kurnit Klein + Selz pc
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 10G0 N
Los Angeles, California 90067
P (310) 579 9600

### 2.     Judge Carney's Dismissal in *Toyo Tire*.

The Central District has dismissed cases with prejudice on a Rule 41 motion before.  For instance, in *Toyo Tire*, Judge Cormac J. Carney of the Central District recently dismissed an action ***with*** prejudice on a motion for dismissal ***without*** prejudice under facts and circumstances similar to this action.  2018 WL 1896310, at *4-5.  In that case, a tire manufacturer brought an action for trade dress infringement and unfair competition against various competitors.  *Id.* at *4.  With trial scheduled "merely seven months away," the tire manufacturer suddenly moved for voluntary dismissal without prejudice.  *Id.*

The court dismissed the case but ***with*** prejudice to plaintiff's claims.  Judge Carney found that the competitor had spent three years litigating its case, including filing "numerous motions" against the manufacturer, who had "objectively suspect evidence" to support its claims.  *Id.*  While the manufacturer sought to dismiss the case based on evidence that "no actual controversy" existed regarding the alleged infringement, the court found that such evidence had existed in the record for over a year before the motion for voluntary dismissal was filed.  *Id.*  Thus, the court found the manufacturer's stated justification "suspect."  *Id.*  "[T]aking into account the late stage of the proceedings, the fact that [defendant] ha[d] invested substantial time and resources . . . and [the manufacturer]'s reasons for dismissing the action," the Central District dismissed the trade dress claims and unfair competition ***with prejudice***.  *Id.*

### B.     <u>The Facts of this Case Amply Support a Dismissal *With* Prejudice.</u>

Allowing Crytek to dismiss without prejudice and potentially bring both these meritless claims again, subjecting CIG to more costly and wasteful litigation, would be inequitable and not "maximize protection" to CIG.  *See Toyo Tire*, 2018 WL 1896310, at *5 (citing *Lenches*, 263 F.3d at 976 (dismissal with prejudice proper because defendant was not prejudiced by such a dismissal)).  Just as the *Toyo Tire* "defendant's effort and expense," the plaintiff's "insufficient explanation" for

1   dismissal, excessive delay, and lack of diligence, and the "late stage of the

2   litigation" led Judge Carney to dismiss the plaintiff's claims **with** prejudice, the facts

3   and circumstances of this case also warrant the same just outcome. *Id.* at *4-5.

### 1.   CIG Expended Significant Time and Expense to Pare Down Crytek's Meritless Claims and Prepare for Trial.

6   By way of understatement, like the competitor in *Toyo Tire*, CIG has spent

7   "substantial time and resources" defending itself through "numerous motions" and

8   other efforts.  2018 WL 1896310, at *5.  Those motions include a draft Rule 11

9   motion, two motions to dismiss, a motion for protective order, a bond motion, and

10  now dealing with this motion (in the face of Crytek's folded arms on the issue of

11  prejudice and reasonable conditions of dismissal).  Goldman Decl. ¶¶ 29-30.  CIG

12  has spent more than $900,000 in attorney's fees and costs whittling down Crytek's

13  case to its two last throes—one of which Crytek has conceded is unripe and another

14  of which is meritless.  *Id.*  The chart above recounts the lamentable trail of Crytek's

15  litany of meritless claims. *Supra* at 8-9.  All of this took great time, effort and

16  expense. *Id.*  Crytek should not be allowed to walk away without prejudice after

17  forcing CIG to expend so much time and effort only to pack up right before the

18  close of discovery.

### 2.   Crytek Has Excessively Delayed Prosecution of This Action and Acted Without Diligence.

21  Like the manufacturer in *Toyo Tire*, Crytek has dragged CIG through the mud

22  on claims based on "objectively suspect evidence," showing even by this motion it

23  prosecuted its action "without diligent research."  2018 WL 1896310, at *4 (citation

24  omitted).  Crytek forced CIG to defend itself against claims that were not ripe (as

25  Crytek now concedes); contrary to the plain language of the GLA (such as the

26  "exclusivity" and "non-compete" claims); without basis in fact (such as the

27  "Faceware" and conflict of interest claims); without basis in law (such as the claim

28  for punitive damages on breach of contract); and without any proof of damages

Frankfurt Kurnit Klein + Selz PC
28/29 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

15

1    (such as the credits and *Bugsmashers* claims).

2        Even if Crytek insisted on ignoring the CIG-Amazon license it inquired

3    about, by its own argument on this motion, Crytek could and should have waited to

4    file suit when the game is actually released.  Crytek never acted with diligence in

5    investigating the two remaining claims, both of which are wholly precluded by the

6    Amazon license.[10]  Even after Crytek learned the dispositive truth from Amazon,

7    Crytek stubbornly maintained it had valid claims through the bond motion, all

8    wasting CIG's and the Court's time.  The scorched earth approach of Crytek easily

9    constitutes "costly meritless maneuvers" resulting in "delay and unnecessary

10   expense in litigation" supporting a "with prejudice" dismissal.  *Christian v. Mattel,*

11   *Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) ("frivolous claim[s]" may constitute

12   unnecessary delay and expense).

13           **3.**      **The Litigation Is In the Late Stages.**

14       Dismissal with prejudice is also appropriate because CIG is in "the late stage

15   of the proceedings." *Id.*  Like in *Toyo Tire*, the litigation has reached its third year.

16   *See id.*  At filing, the trial date here was even closer than the trial date in *Toyo Tire*,

17   which was "merely seven months away." *Id.*  Before Crytek filed its motion for

18   voluntary dismissal, the Court had set the fact discovery deadline for February, the

19   summary judgment deadline for March, and the trial for five months away in June.

20   ECF 88.  Dismissal without prejudice at this point, right before the close of

21   discovery, only for Crytek to exhume its claims later, would be inequitable to CIG.

22           **4.**      **Crytek's Stated Reasons for Dismissal Are "Suspect."**

23       Crytek's stated reasons for dismissal are even more "suspect" than the

24   manufacturer's in *Toyo Tire*.

25

26

---

27   [10] Crytek's pursuit of the Faceware claim with no factual basis or inquiry also

28   exemplifies Crytek's total lack of diligence in this action, as does Crytek's failure to check its own files for the conflict of interest waiver.

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
T (310) 579 9600

**First**, Crytek pins its request for voluntary dismissal on CIG's interrogatory response, suggesting that CIG changed its position regarding the intended method of access to *SQ42*.  In fact, CIG's most recent public statement on the matter noted that *SQ42* would be accessed through the *Star Citizen* game client.  CIG has made no further public statements about how players will access *SQ42*.  Crytek never had ground to claim breach.

**Second**, the breach of the license is not determined by CIG's thought process during development or how it may consider releasing *SQ42*.  As CIG argued on its first motion to dismiss, any alleged breach depends on how players "access" *SQ42*.  ECF 26 at 17:4-10.  Crytek finally concedes this day-one defense by arguing to the Court it may sue again only after CIG "actually *releases* Squadron 42" (ECF 92 at 4 (emphasis added)).

**Third**, Crytek has provided no valid ground to dismiss its "credits claim," which Crytek does not contend pivots on how CIG intends to release *SQ42*.  As recently as the Court's direct question on January 10, 2020, Crytek conceded that it would only consider bringing a second action if and when CIG releases *SQ42*.  Crytek did not even mention its "credits claim."  Crytek's appeal to "judicial economy," an argument for which Crytek provides no legal support, rings hollow after wasting two years litigating unripe and meritless claims.  Judicial economy mandates dismissing the credits claim with prejudice instead of wasting more judicial resources in a future litigation.

### 5.      Crytek Is Swerving From a Near-Certain Adverse Ruling.

With the summary judgment and trial deadline on the horizon, Crytek seeks to "avoid a near-certain adverse ruling" that the last claims are unripe, meritless, or both.  *Maxum*, 299 Fed. App'x at 666.  Crytek admits an adverse ruling is on its way because its excuse for why the *SQ42* claim should be dismissed—that the claim is not ripe—is one of the very adverse rulings it seeks to avoid.  The Court's Order on the bond motion, which found merit in CIG's legal defenses, gave Crytek reason to

Frankfurt Kurnit Klein + Selz PC

2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
(310) 579-9600

17

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P. (310) 579-9600

1   change its tune.  ECF 81 at 3 ("The Court concludes that Defendants have a

2   reasonable possibility of prevailing.").  But as the Ninth Circuit held in *Maxum*, the

3   fact that a party's motion for voluntary dismissal follows a court's indication of how

4   it might rule weighs in favor of dismissal with prejudice.  299 Fed. App'x at 666;

5   *see also Fischer v. Zespri Fresh Produce N. Am., Inc.*, No. CV 07-5729 ODW

6   (CTX), 2009 WL 10659754, at *3 (C.D. Cal. May 11, 2009) (Wright, II, J.) (finding

7   "it appropriate to dismiss [p]laintiffs' claim against [defendant] with prejudice"

8   where "[p]laintiff's motion appear[ed] [to be] a studied response to avoid a final

9   adjudication on the merits").

10        In sum, taking into account CIG's effort and expense defending against

11  Crytek's claims and preparing for trial, Crytek's excessive delay and lack of

12  diligence in investigating and prosecuting its case, the late stage of the proceedings,

13  and Crytek's insufficient explanation for dismissal, it would be inequitable to allow

14  Crytek to refile its claims against CIG.  *See Microhits*, 2011 WL 13143434, at *2

15  (dismissal **with prejudice** proper where defendant "engage[d] in significant pretrial

16  preparation, and possibly even trial preparation, before it was discovered that

17  Plaintiffs did not have standing").

18  **III.   The Court Should Impose Reasonable Conditions on Dismissal.**

19        In the event the Court considers dismissing either of the claims without

20  prejudice, conditions absolutely should be imposed.  ***First***, any dismissal without

21  prejudice should be conditioned on Crytek's payment of the legal fees and expenses

22  Crytek forced CIG to waste in this lawsuit.[11]  CIG submits that, at minimum, it

23  would be just to award CIG the entire $500,000 bond as a condition of dismissal,

24  which would allow CIG to make at least a partial recovery of the fees Crytek forced

---

[11] As requested by CIG's insurance carrier, CIG intends to file a post-judgment motion for an award of its attorney's fees and costs on all claims for which it is the prevailing party under Fed. R. Civ. P. 54(d).  OF Decl., Ex. 1 [GLA § 10.8]; 17 U.S.C. § 505.

DEFENDANTS' OPPOSITION TO CRYTEK GMBH'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41

CIG to waste through this action.  Goldman Decl. ¶¶ 29-30.  The whole reason the Court ordered the bond was to allow CIG to obtain recovery from Crytek if it decided to cut-and-run.  The Court's wisdom is now proven right.  Now is the proper time to apply the protection of the bond in favor of CIG.  ***Second***, since Crytek has provided no justification for voluntarily dismissing its no-merits, no-damages credits claim, at the very least that particular claim should be dismissed ***with*** prejudice as a second condition to dismissing the *SQ42* claim without prejudice.

A.     **The Court Has Wide Discretion to Impose Conditions, Typically Including an Award of Attorney's Fees and Costs, on a Dismissal Without Prejudice.**

"Rule 41 protects defendants from vexatious plaintiffs" by "allow[ing] the court to grant a plaintiff's dismissal motion . . . with appropriate terms and conditions to protect the defendant from prejudice." *U.S. ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998).  The Ninth Circuit has confirmed that courts may condition voluntary dismissal on the plaintiff's payment of the defendant's attorney's fees and costs, and that such an order is "***usually considered necessary*** for the protection of the defendant." *Stevedoring*, 889 F.2d at 921 (emphasis added).  *See also* O'Connell & Stevenson, Fed. Civ. Proc. Before Trial, § 16:366 (The Rutter Group 2019) ("On granting a dismissal without prejudice, the court may, ***and typically does***, condition the dismissal on plaintiff reimbursing defendant for costs and disbursements incurred.") (emphasis added)).

Courts in the Ninth Circuit generally consider the following factors in determining whether to award attorney's fees and costs as a condition of dismissal: "(1) any excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by a defendant in preparing for trial; (3) the extent to which the litigation has progressed; and (4) the plaintiff's diligence in moving to dismiss."

19

Frankfurt Kurnit Klein+Selz PC
20/29 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

*Santa Rosa Mem'l Hosp. v. Kent*, 688 Fed. App'x 492, 494 (9th Cir. 2017) (quoting *Williams*, 227 F.R.D. at 540).[12]

"[W]here a plaintiff obtains a voluntary dismissal without prejudice and fails to comply with the conditions, it is appropriate for the district court to dismiss the action with prejudice." *Lau v. Glendora Unified Sch. Dist.*, 792 F.2d 929, 930 (9th Cir. 1986) (district court may dismiss with prejudice for failure to meet conditions that plaintiff has accepted).

**B.**   **Each of the Four Factors Favors an Award of Fees and Costs.**

Because each of the Ninth Circuit's four factors in *Santa Rosa* weighs in CIG's favor, CIG requests the Court condition dismissal on Crytek's payment of CIG's attorney's fees and costs in the amount of $500,000.  This would cover about half of CIG's legal fees and the entirety of the bond, which the Court required Crytek to deposit for the very purpose of ensuring Crytek could not cut-and-run and leave CIG footing the bill for Crytek's recklessness.

**1.**   **CIG Incurred Significant Expense Preparing Work Product That Cannot Be Used in A Future Litigation.**

At a minimum, the Court should condition dismissal on Crytek's payment of CIG's "costs and attorney fees for work which cannot be used in any future litigation" of either the *SQ42* or credits claims.  *Westlands Water Dist. v. United*

---

[12] To be clear, while CIG is entitled to seek an award of attorney's fees and costs for any claims on which CIG is the prevailing party, the Court's decision whether to condition voluntary dismissal on an award of attorney's fees and costs does ***not*** depend on the merits—*i.e.*, whether CIG would likely prevail on Crytek's two remaining claims (though it certainly would).  *See Stevedoring*, 889 F.2d at 921 ("no court has refused an award of costs and attorney fees under Fed. R. Civ. P. 41(a)(2) on [the] basis" that "defendant could not recover such fees and costs if the defendant prevailed at trial"); *Esquivel v. Arau*, 913 F. Supp. 1382, 1390-91 (C.D. Cal. 1996) (Rea, J.) (holding that attorney's fees and costs under Rule 41(a)(2) "are simply codifications of the 'bad faith' or 'abusive litigation' exception to the [American] rule").

Frankfurt Kurnit Klein + Selz PC
28929 Century Park East, Suite 1060 N
Los Angeles, California 90067
Tel (310) 579-9600

DEFENDANTS' OPPOSITION TO CRYTEK GMBH'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41

1   *States*, 100 F.3d 94, 97 (9th Cir. 1996); *see Sacchi v. Levy*, No. 14 Civ. 08005, 2015

2   WL 12765637, at *9 (C.D. Cal. Oct. 30, 2015) (Morrow, J.) (granting defendant

3   attorney's fees for victories of "no utility" in later litigation); *Self v. Equinox*

4   *Holdings, Inc.,* No. 14 Civ. 4241, 2015 WL 13298146, at *15 (C.D. Cal. Jan. 5,

5   2015) (Morrow, J.) (ruling that defendant is entitled to attorney's fees for work that

6   is "of no benefit" in further litigation).

7   Here, a substantial portion of the work CIG performed in this litigation—at

8   least half—involved CIG's successful efforts in eliminating a litany of meritless

9   claims through extensive motion practice, discovery and engagement.  *See supra* at

10  8-9.  Two of Crytek's most sweeping claims were dismissed on CIG's two

11  successive Rule 12(b)(6) motions.  ECF 38, 49.  Three claims were dropped after

12  Crytek substituted in new counsel[13] but only after CIG fought for the protective

13  bond obtained over Crytek's fight.  Goldman Decl. ¶ 21.  Other claims, such as

14  Crytek's false conflict of interest aspersion and its claim for punitive damages, were

15  also withdrawn or dismissed from the case.  *Id.*  None of the work CIG performed to

16  dispose of these claims, or on discovery related to these claims, will be litigated

17  again.  The significant time and expense that CIG incurred to secure the $500,000

18  bond also will be wasted in future litigation, ECF 81, as will CIG's work in arguing

19  that the *SQ42* claim was not ripe, which Crytek now concedes.

20  **2.      CIG Has Expended Tremendous Effort and Expense.**

21  The expense and effort involved from the time Crytek filed its action has been

22  extensive.  To defend against Crytek's irresponsible lawsuit, CIG has incurred

23  almost a million dollars in legal fees on extensive motion practice, pleadings,

24  discovery (including reviewing tens of thousands of complex emails and other

25  documents for privilege and responsiveness), fact investigation, experts, and a

26  _____

27  [13] CIG agreed not to seek attorney's fees or costs related to the bug fixes or

28  *Bugsmashers* claims.  However, CIG expended a far greater portion of its work on
    the other withdrawn, dismissed, or dropped claims.  Goldman Decl. ¶¶ 29-30.

Frankfurt Kurnit Klein+Selz pc

2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

DEFENDANTS' OPPOSITION TO CRYTEK GMBH'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41

1 mandated Settlement Conference before Judge Alexander F. MacKinnon.  Goldman

2 Decl. ¶¶ 29-30.  While CIG has not yet filed for summary judgment, preparations

3 are underway, and CIG's voluminous bond motion was an equivalent undertaking.

4 *Id.*  These facts weigh heavily in favor of a significant fee condition.

5 **3.  The Action Is Too Far Along to Dismiss Unconditionally.**

6 Crytek permitted this action to progress too far before moving for voluntary

7 dismissal.  The litigation is now in its ***third year***.  The parties exchanged written

8 discovery and documents and CIG is prepared to complete its document production.

9 Goldman Decl. ¶ 29.  Until the Court vacated the schedule, fact discovery was set to

10 end on February 3, 2020 with dispositive motions due in March.  ECF 87.  Crytek

11 seeks to dismiss as this case nears trial, previously set for June 2020.  *Id.*  CIG has

12 been preparing for trial and has already hired two consultants who may serve as

13 testifying expert witnesses.  Goldman Decl. ¶ 29.

14 At this late hour, voluntary dismissal "without conditions" would "unfairly

15 affect" CIG.  *Schimmeyer v. 99¢ Only Stores*, No. CV 07 08 126, 2008 WL

16 11342699, at *2 (Otero, J.) (denying voluntary dismissal without prejudice where

17 employee did not seek conditions, "the case [was] near[ing] trial," and "the parties

18 ha[d] nearly completed discovery"; quoting *Alamance Indus., Inc. v. Filene's*, 291

19 F.2d 142, 146 (1st Cir. 1961)); *Nicoli v. Riddell*, No. 11 Civ. 999, 2012 WL

20 13018549, at *4 (C.D. Cal. Mar. 7, 2012) (Tucker, J.) (conditioning dismissal of

21 action in its "advanced stage" on award of attorney's fees and costs).

22 **4.  Crytek Did Not Exercise Diligence in Moving to Dismiss.**

23 Nothing about Crytek's actions during this litigation has been diligent.  If

24 Crytek had truly been diligent in looking into facts, it never would have filed this

25 sham action out of the blue at all.  If Crytek today can be believed at all, even by its

26 own argument, Crytek should have dismissed years ago awaiting *SQ42*'s release.

27 Far from exercising diligence, Crytek continued to pursue its *SQ42* claim for ***two***

28 ***years*** even though CIG pointed out on its first motion to dismiss that the claim was

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579 9600

Frankfurt Kurnit Klein+Selz PC

2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
T (310) 579 9600

1   not ripe.  ECF 26 at 17:4-10.  Rather than proposing dismissal at that time, Crytek

2   refused to pull over, arguing in vain that breach of the license was not dependent on

3   releasing *SQ42*.  ECF 73 at 10:9-17 ("CIG had no right to use CryEngine in

4   development of a stand-alone game such as Squadron 42.  Because that

5   development has already occurred and continues to occur, CIG is wrong that the

6   "time for performance" has not yet arrived.").  Crytek wasted two years of litigation

7   on a claim that it should have known was unripe and is meritless.

8       **C.**    **Dismissal of the *SQ42* Claim *Without* Prejudice Should Be**

9           **Conditioned on Dismissal of the Credits Claim *With* Prejudice.**

10         In addition to a fee award, if the Court does not dismiss the action with

11   prejudice, CIG requests that the Court condition any dismissal of the *SQ42* claim

12   ***without*** prejudice on the dismissal of the credits claim ***with*** prejudice.  Crytek

13   provides no justification for voluntarily dismissing its credits claim, which Crytek

14   admitted it will not pursue except possibly as an "add-on" to its *SQ42* claim.  Crytek

15   conceded that the GLA did not require CIG to continue crediting CryEngine after

16   switching engines.  Goldman Decl., Ex. 1 at 6:16-18.  Further, Crytek admitted

17   during discovery that it has no evidence of actual damages and is not claiming any

18   "lost sales" or "lost profits" as a result of CIG's removal of Crytek's credits.  *Id.*,

19   Ex. 2 ("Crytek . . . has no documents" "CONCERNING the 'substantial[] damage[]'

20   YOU allegedly suffered from DEFENDANTS' alleged breach of [the] GLA [credit

21   provisions]" and "CONCERNING YOUR valuation of the copyright and trademark

22   notices YOU contend YOU are entitled to have displayed in the PRODUCT").  Just

23   last week, Crytek confirmed that; *id.* ¶ 28.

24         The credits claim, like the others, is meritless, and there is simply no reason to

25   allow Crytek to bring it again.[14]

26   _____

27   [14] In the event the Court elects to dismiss Crytek's credit claim without prejudice,

28   any attempted restraint on CIG's ability to bring a future action for declaratory relief

DEFENDANTS' OPPOSITION TO CRYTEK GMBH'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41

1    **CONCLUSION**

2          This is not a case of a diligent plaintiff sensibly backing out early on.  It is

3    instead a study of an abusive use of litigation and publicity.  For all the above

4    reasons, the Court should dismiss Crytek's two remaining claims with prejudice.  If

5    the Court is not inclined to do so, the Court should condition dismissal of the *SQ42*

6    claim without prejudice on (a) Crytek's payment of CIG's attorney's fees and costs

7    in the amount $500,000, to be disbursed from the bond; and (b) dismissal of the

8    credits claim with prejudice.

9

10   DATED:  January 17, 2020              FRANKFURT KURNIT KLEIN + SELZ PC

11

12

13                                        By:   */s/ Jeremy S. Goldman*

14                                              Joseph R. Taylor
                                                Jeremy S. Goldman
15                                              Matthew Samet
                                                Attorneys for Defendants
16                                              CLOUD IMPERIUM GAMES CORP. and
                                                ROBERT SPACES INDUSTRIES CORP.
17

18

19

20

21

22

23   _____

24   on that claim would constitute "plain legal prejudice" to CIG warranting the Court's
     denial of Crytek's motion for voluntary dismissal.  *See Westlands Water Dist. v.*
25   *United States*, 100 F.3d 94, 97 (9th Cir. 1996) (holding that "plain legal prejudice"
     justifying denial of a motion for voluntary dismissal involves the loss of "rights and
26   defenses available to a defendant in future litigation").  To avoid any such prejudice,
     CIG requests that the Court condition any dismissal of the "credits claim" without
27   prejudice on Crytek's binding covenant that Crytek will never contest CIG's right to
28   assert a future claim against Crytek for declaratory relief on that claim.

24

Frankfurt Kurnit Klein+Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P: (310) 579-9600