**JOSEPH R. TAYLOR** (SBN 129933)
**JEREMY S. GOLDMAN** (SBN 306943)
**MATTHEW SAMET** (SBN 311865)
**FRANKFURT KURNIT KLEIN + SELZ PC**
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone:  (310) 579-9600
Facsimile:   (310) 579-9650
E-Mail: jtaylor@fkks.com
        jgoldman@fkks.com
        msamet@fkks.com

Attorneys for Defendants
CLOUD IMPERIUM GAMES CORP. and
ROBERT SPACES INDUSTRIES CORP.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CRYTEK GMBH,<br><br>    Plaintiff,<br><br>vs.<br><br>CLOUD IMPERIUM GAMES CORP. and ROBERT SPACE INDUSTRIES CORP.,<br><br>    Defendants. | Case No. 2:17-CV-08937-DMG-FFM<br><br>[HON. DOLLY M. GEE]<br><br>**DECLARATION OF JEREMY S. GOLDMAN IN OPPOSITION TO CRYTEK GMBH'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41**<br><br>Date:  February 7, 2020<br>Time:  9:30 A.M.<br>Crtrm.:  8C |

I, JEREMY S. GOLDMAN, declare as follows:

1. I am an attorney licensed to practice law in the State of California, and a partner at the law firm Frankfurt Kurnit Klein & Selz P.C., counsel of record for Cloud Imperium Games Corp. and Roberts Space Industries Corp. (together, "CIG" or "Defendants"), the defendants in the above-captioned lawsuit.

2. I make this declaration in opposition to Plaintiff Crytek GmbH's ("Crytek") Motion for Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41. I make this declaration on the basis of personal knowledge, except where indicated otherwise.

## January 14, 2020 Meet and Confer

3. At the January 10, 2020 teleconference with the Court, the Court requested that the parties meet and confer to negotiate the terms of a dismissal of this action.

4. In accordance with the Court's request, on January 14, 2020, I participated in a telephone conference with Eric Buress and Cliff Brazen, outside counsel for Crytek.

5. Although I participated in the conference in good faith and with authority to discuss a potential compromise, Crytek refused to move from its existing position that the Court dismiss the two remaining claims without prejudice and without conditions.

6. I stated that the conditions CIG previously proposed to Crytek (partially recounted in Crytek's Memorandum) were reasonable in light of the facts and circumstances of this case and the law governing dismissals, and that CIG was willing to discuss these conditions in a negotiation of a dismissal without prejudice. I told Crytek's counsel that CIG was preparing to file its opposition, which would contain strong grounds for dismissing one or both of the remaining claims *with* prejudice and for an award of CIG's attorney's fees and costs. I asked whether Crytek was willing to make any offer other than "no conditions."

7. Mr. Buress responded that Crytek remained unwilling to impose any conditions. Mr. Buress stated that he hoped to negotiate a procedural mechanism that would preserve CIG's right to seek an award of attorney's fees and costs as the prevailing party in future litigation, if any.

8. I told Buress that Defendants already had the right to seek attorney's fees and costs as the prevailing party, so the proposed condition was not a condition or offer at all. I also said that there may never be a future litigation.

9. At the end of the teleconference, I said that if Crytek changes its position and is willing to discuss a compromise, I would be more than happy to continue the discussion. Mr. Buress said he would let me know if that happened.

**Exhibits to Declaration**

10. Attached hereto as **Exhibit 1** is a true and correct copy of an excerpt from Crytek's Amended Responses to CIG's First Set of Interrogatories.

11. Attached hereto as **Exhibit 2** is a true and correct copy of an excerpt from Crytek's Second Amended Responses and Objections to CIG's First Set of Requests for Production.

12. Attached hereto as **Exhibit 3** is a true and correct copy of a document that Crytek produced in discovery that reflects an email exchange between Crytek and Amazon beginning on May 22, 2019.

13. Attached hereto as **Exhibit 4** is a true and correct copy of a June 23, 2014 article entitled "Crysis developer Crytek denies 'verge of bankruptcy' claim," which my associate obtained under my supervision from https://www.eurogamer.net/articles/2014-06-23-crysis-developer-crytek-claims-bankrupt-report-is-false.

14. Attached hereto as **Exhibit 5** is a true and correct copy of a June 24, 2014 article entitled "Crytek UK exodus sparks concern over Homefront: The Revolution," which my associate obtained under my supervision from

https://www.eurogamer.net/articles/2014-06-24-crytek-uk-exodus-sparks-concern-over-homefront-the-revolution.

15. Attached hereto as **Exhibit 6** is a true and correct copy of a July 30, 2014 article entitled "Sources: Crytek USA's Leadership Quit Last Week," which my associate obtained under my supervision from https://kotaku.com/sources-crytek-usas-leadership-quit-last-week-1613456108.

16. Attached hereto as **Exhibit 7** is a true and correct copy of the first page of a license agreement between Crytek and Amazon that Crytek produced in discovery and marked HIGHLY CONFIDENTIAL pursuant to the Protective Order [ECF 88].

17. Attached hereto as **Exhibit 8** is a true and correct copy of a February 9, 2016 article entitled "Amazon launches new, free, high-quality game engine: Lumberyard," which my associate obtained under my supervision from https://www.gamasutra.com/view/news/265425/Amazon_launches_new_free_highquality_game_engine_Lumberyard.php.

18. Attached hereto as **Exhibit 9** is a true and correct copy of a March 15, 2016 article entitled "Crytek Switches CryEngine to Pay What You Want Model and Sets Up 1M Indie Fund," which my associate obtained under my supervision from https://venturebeat.com/2016/03/15/crytek-switches-cryengine-to-pay-what-you-want-model-and-sets-up-1m-indie-fund/.

19. Attached hereto as **Exhibit 10** is a true and correct copy of a document that Crytek produced in discovery and marked HIGHLY CONFIDENTIAL pursuant to the Protective Order [ECF 88]. The document reflects Crytek's spending on marketing for CryEngine from 2012 to 2019.

20. Attached hereto as **Exhibit 11** is a true and correct copy of a license agreement between Amazon and CIG that CIG produced in discovery and marked HIGHLY CONFIDENTIAL pursuant to the Protective Order [ECF 88].

### Dismissal of Crytek's Claims

21. After CIG produced a written conflict waiver signed by Crytek and threatened to bring a Rule 11 motion, Crytek withdrew the conflict of interest allegation regarding Ortwin Freyermuth and filed its First Amended Complaint.

22. On September 3, 2019, Crytek's counsel stipulated by email to dismiss the *Bugsmashers*, bug fixes, and Faceware claims.

### December 4, 2019 Meet and Confer

23. On December 4, 2019, I participated in a meet and confer between counsel. During the call, Crytek's counsel raised the possibility of seeking a voluntary dismissal of Crytek's two remaining claims.

24. Crytek's counsel expressed surprise regarding CIG's response to one of Crytek's interrogatories.

25. Crytek's counsel said that, accepting the truth of this response, Crytek was thinking about filing a voluntary motion to dismiss and refiling when *Squadron 42* is released.

26. Given that CIG had been arguing the ripeness point from day one, and given that the parties had been in hard-fought litigation for over two years, I thought Crytek must be joking.

27. I soon learned that Crytek was not joking, but rather using CIG's interrogatory response as a pretext to justify its motion to dismiss.

### Crytek Is Not Seeking Lost Sales or Profits on Its Credits Claim

28. On January 10, 2020, Crytek's counsel confirmed by email that "Crytek is not seeking damages on a theory of lost profits" and "will not seek damages based on a theory that it has lost sales" on its credits claim.

### Litigation Fees and Costs

29. To date, CIG has incurred over $900,000 in attorney's fees in this case. We have performed a significant amount of work in this case, including:

a. conducting a substantial fact investigation;

b. preparing a Rule 11 motion regarding the Offending Allegations (mooted by Crytek's 11th-hour filing of its First Amended Complaint);

c. preparing and filing a motion to dismiss the First Amended Complaint in its entirety;

d. preparing and filing a motion to dismiss the Second Amended Complaint in part;

e. preparing objections to Crytek's prematurely-propounded and voluminous discovery requests;

f. preparing and serving initial disclosures;

g. conducting a Rule 26(f) meeting and preparing, conferring with opposing counsel regarding, and filing a joint 26(f) report;

h. preparing, filing and arguing a motion for a protective order controlling the timing and scope of discovery;

i. preparing and filing the Answer to Crytek's Second Amended Complaint;

j. engaging in a mandated Settlement Conference before Judge Alexander F. MacKinnon;

k. researching, interviewing, and hiring multiple potential confidential consultants who may become declared expert witnesses at the appropriate time;

l. preparing and filing a motion for a bond (with evidentiary support akin to a motion for summary judgment) pursuant to California Code of Civil Procedure § 1030.

m. reviewing tens of thousands of complex emails and other documents for privilege and responsiveness in discovery and preparing them for production to Crytek;

   n. participating in numerous conferences, written communications, and meet and confers with opposing counsel regarding discovery disputes and settlement

   o. Preparing a motion for summary judgment; and

   p. Preparing this opposition.

30. Upon information and belief, more than $500,000 of the fees incurred in this action were for work product that will not be useful in future litigation, if any, between the parties related to the *Squadron 42* or credits claim.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 17, 2020.

_____
JEREMY S. GOLDMAN

---

7

DECL. OF JEREMY S. GOLDMAN IOT MOT. FOR VOLUNTARY DISMISSAL