Eric A. Buresh (*pro hac vice*)
eric.buresh@eriseip.com
Clifford T. Brazen (*pro hac vice*)
cliff.brazen@eriseip.com
Chris R. Schmidt
chris.schmidt@eriseip.com
Erise IP, P.A.
7015 College Blvd.
Suite 700
Overland Park, KS 66211
Phone: (913) 777-5600
Facsimile: (913) 777-5601

Ben M. Davidson (Cal. Bar. No. 181464)
ben@dlgla.com
Davidson Law Group, a Law Corporation
4500 Park Granada Boulevard, Suite 202
Calabasas, CA 91302
Telephone: (818) 918-4622
Facsimile: (310) 473-2941

Attorneys for Plaintiff Crytek GmbH

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CRYTEK GMBH, | Case No. 2:17-cv-08937-DMG-FFM |
| Plaintiff, | [HON. DOLLY M. GEE] |
| v. | **CRYTEK GMBH'S REPLY IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE** |
| CLOUD IMPERIUM GAMES CORP. and ROBERTS SPACE INDUSTRIES CORP., | DATE: February 7, 2020 Time: 9:30 AM Courtroom: 8C |
| Defendants. | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

1

2

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

   A.    Crytek's Motion Is About Timing and Efficient Case Management............... 1

      1.    Breach of the GLA is based on Development of Squadron 42 as a
          standalone game, not the actual release of Squadron 42 ........................... 2

      2.    Crytek Should not be Faulted for Assuming the Truth of CIG's Public
          Statements ............................................................................................... 3

      3.    Crytek's Motion Positions The Parties to Litigate Only Once ................... 5

      4.    Crytek Proposed Reasonable Conditions on Dismissal .............................. 6

   B.    This Case Remains In Its Early Stages ....................................................... 8

II.   ARGUMENT .............................................................................................. 9

   A.    Crytek's Proposed Conditions for Dismissal without Prejudice Protect both
      Parties' Legal Rights and Interests............................................................. 9

   B.    CIG's Demand of Dismissal With Prejudice is Unsupported ..................... 10

      1.    None of CIG's Expenses Will be Wasted ............................................... 10

      2.    Crytek Has Diligently Prosecuted its Case and This Motion.................... 11

      3.    Crytek's Basis for Dismissal is not "Suspect" ....................................... 11

      4.    This Case Remains in its Early Stages..................................................... 12

      5.    The "Typical Cases" Warranting Dismissal with Prejudice Are Quite
          Different From The Present Case ............................................................ 12

      6.    The Central District's *Toyo Tire* Decision Bears no Resemblance to this
          Case ....................................................................................................... 14

   C.    CIG's Proposed Conditions are Punitive and Unreasonable ..................... 16

      1.    The Payment of Fees is Unnecessary to Protect CIG ............................. 16

      2.    Dismissal of Crytek's Credits Claim along with its Squadron 42 Claim is a
          Matter of Judicial Economy ................................................................... 17

III.  CONCLUSION ......................................................................................... 19

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d 157 (5th Cir. 2010) ..... 13

4

*Nash v. Krauss*, No. CV 05-2293 SVW (JTLx), 2006 WL 8440813 (C.D. Cal.
    Apr. 4, 2006) ................................................................................................ 16

5

6

*Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*, No. 15 Civ. 246,
    2018 WL 1896310 (C.D. Cal. Mar. 28, 2018) ............................. 11, 14, 15, 16

7

8

*Viriyapanthu v. Bank of Am., N.A.*, No. SA CV 12-1285-DOC(ANx), 2013
    WL 3188848 (C.D. Cal. June 21, 2013) ............................................................ 7

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

### A. Crytek's Motion Is About Timing and Efficient Case Management

CIG's Opposition repeatedly suggests, with ample vitriol and hyperbole, that CIG has all but won this case and that Crytek is "surrendering."  Whether CIG is posturing for the Court or the public, CIG's spin could not be less accurate. Crytek filed its motion for the simple reason that CIG, as unbelievable as it sounds several years into game development, purports ████████████████████ ████████████████████████████. While it seems far-fetched that any video game developer, who has been working extensively on a game and is pressing toward a release date, ███████████████, CIG stated this position in a recent verified discovery response. This has suggested to Crytek that CIG has fully embraced a delay strategy. To prevent CIG from running out the clock with its delay strategy, Crytek's motion seeks to dismiss the current case without prejudice so that the exact same case can be re-filed as soon as CIG stops flip-flopping regarding how it is developing *Squadron 42*. This dismissal is a matter of timing, nothing more.

CIG seeks sanctions, not conditions, on the basis that Crytek is taking a cut-and-run approach to avoid an imminent adverse ruling that leads to a fee award. None of CIG's characterizations are true. Crytek is not running, and there is no imminent adverse ruling whatsoever. Crytek, unlike CIG, is willing to back its words with deeds. Crytek has affirmatively offered conditions, set out in Section I.A.4, that conclusively demonstrate it is not running away from this lawsuit, it is not seeking to avoid an adverse ruling, and it is not seeking to avoid a fee award. Crytek's own proposed conditions would not permit any of this to occur. Instead, Crytek simply requests to dismiss its case temporarily to prevent CIG's delay tactics from running out the clock on the current case and creating great inefficiencies. Crytek will refile upon the release of *Squadron 42*, and it firmly believes it will prevail. Crytek seeks dismissal of its

1  entire case, including its independent credits claim, because it is an obvious principle

2  of judicial economy that all claims should proceed together at one time in an efficient

3  manner. Crytek is not losing, it is waiting. Once CIG stops delaying *Squadron 42* and

4  releases it in a manner that constitutes a breach of the GLA, Crytek will re-file its

5  claims with the utmost of confidence.

6          **1.  Breach of the GLA is based on <u>Development</u> of *Squadron 42***

7          **as a standalone game, not the actual release of *Squadron 42***

8        CIG spends much of its Opposition arguing that Crytek had to have known that

9  *Squadron 42* had not yet been released as a standalone game from the start of this case.

10  *See e.g., CIG's Opposition*, at 2, 8-9, 17. The underlying premise of CIG's arguments

11  is the incorrect notion that the restrictions in the GLA only become effective upon

12  release of *Squadron 42*, and CIG repeatedly cites its own pleadings (e.g., ECF 26,

13  17:4-10; ECF 53, 17:13-16; ECF 57-1, 14:13-14) in support of this premise, apparently

14  assuming that its own arguments are evidence.

15        The breach that Crytek has been and will be asserting pertains to Section 2.1.2

16  of the GLA, which gives CIG the right "to exclusively embed CryEngine in the Game

17  and *develop* the Game which right shall be sub-licensable pursuant to Sec. 2.6." *GLA*,

18  ECF 107-1 at § 2.1.2. Exhibit 2 to the GLA further explains that "the Game does not

19  include any content being sold and marketed separately, and not being accessed

20  through the Star Citizen Game client, e.g. a fleet battle RTS sold and marketed as a

21  separate, standalone PC game[.]" *Id.* at Ex. 2. CIG does not have any rights to embed

22  the CryEngine in and *develop* any game that does not fit the GLA's definition of a

23  Game. From the inception of this case, it has been Crytek's position that CIG's

24  development of *Squadron 42* as a standalone game was, by itself, a breach of the GLA

25  whether or not *Squadron 42* was ever released at all.

26        As set forth in the motion and in the next section, Crytek had every reason to

27  believe based on CIG's own public statements that CIG was developing *Squadron 42*

28

CRYTEK'S REPLY IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL WITHOUT
PREJUDICE

2

1  as a standalone game in breach of the GLA. Crytek did not become aware that ███

2  ████████████████████████████████████████████████████████████████

3  ███████████████████ until Crytek received CIG's verified response to Crytek's

4  Interrogatory No. 1 in late November 2019. Crytek intends to re-file its claims after

5  CIG actually releases *Squadron 42*, not because the release is a necessary precondition

6  to Crytek's breach claim, but because CIG will no longer have any ability to hide how

7  it has been developing *Squadron 42* once it releases it. CIG's delay games will end,

8  and once CIG releases *Squadron 42* as a standalone game (in line with its public

9  statements), it will indisputably confirm that CIG has been developing *Squadron 42*

10  as a standalone game in breach of the GLA.

## 2. Crytek Should not be Faulted for Assuming the Truth of CIG's Public Statements

13  Crytek's claims have been guided consistently by CIG's public statements. Yet,

14  in the context of this litigation, CIG has waffled from one position to another with

15  apparent abandon. As explained in Crytek's opening motion, CIG itself described

16  *Squadron 42* with the *exact* language that would exclude it from the definition of "the

17  Game" in the GLA just days after Crytek filed its Complaint. *See Crytek's*

18  *Memorandum in Support of Motion to Dismiss*, ECF 95 at 2; *see also Ex. C to Crytek's*

19  *Memorandum*, ECF 93-3 ("Watch the *standalone* Squadron 42 Vertical Slice

20  Gameplay Demo . . .") (emphasis added). That video was posted more than a year *after*

21  CIG's supposed "most recent public statement on the matter." *See CIG Opposition*,

22  17; *Declaration of Ortwin Freyermuth*, ECF 107 at ¶¶ 13-16. Now, CIG appears to

23  claim in its brief that it is developing *Squadron 42* to be accessed through the *Star*

24  *Citizen* game client. *CIG's Opposition*, 17. Yet, in its verified discovery response from

25  late November 2019, ████████████████████. CIG claims that Crytek had no

26  reason to be confused by CIG's public statements regarding the development of

27  *Squadron 42*, but CIG cannot get its own story straight from one pleading or discovery

28

1  response to another. Until CIG's feet are set in stone by the release of *Squadron 42*, it

2  will proffer whatever suits it in a particular context. That is the whole point of Crytek's

3  motion—if the Court allows Crytek to dismiss and re-file after the release of *Squadron*

4  *42,* CIG will have no further ability to shift from one statement to another at its

5  convenience.  In summary, CIG provided many public statements giving Crytek every

6  reason to believe it was developing *Squadron 42* as a standalone game in violation of

7  the GLA. CIG's recent verified discovery response states that ███████████

8  █████████████████████████████████████. Based on that

9  response, Crytek decided to voluntarily dismiss this present case until CIG's position

10 shifting comes to a hard stop at which point Crytek will re-file.

11        In addition to the mode of development for *Squadron 42*, CIG's flip-flopping

12 also has plagued this case from the start with respect to whether CIG "switched" to

13 Amazon's Lumberyard. Initially, CIG stated to the public that it had switched from

14 CryEngine to Lumberyard. *CIG's Memorandum ISO Motion for Bond*, ECF 57-1, at

15 3 ("On December 23, 2016, CIG publicly announced its switch from CryEngine to

16 Lumberyard."). Crytek brought its lawsuit premised, in part, on this understanding.

17 Because it suited CIG's litigation positions, however, CIG later admitted that it did

18 not actually switch to Amazon's Lumberyard. *CIG's Reply ISO Motion for Bond*, ECF

19 74, at 8. Rather, CIG was still using the CryEngine code itself, just under a separate

20 license from Amazon. *Id*. The issues have now evolved in such a way that CIG once

21 again claims that it has switched to Lumberyard. *CIG's Opposition*, 3 ("[Crytek]

22 misleads the Court . . . by falsely claiming that CIG did not switch to Amazon

23 Lumberyard"). CIG's repeated reversals make it extremely hard to litigate the parties'

24 disputes in an organized fashion or to even decide what discovery is necessary because

25 CIG's litigation statements are discarded at its convenience. Notwithstanding, based

26 on CIG's prior representations to this Court, CIG entered into a license for the

27 Lumberyard engine offered by Amazon, █████████████████████

28

CRYTEK'S REPLY IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE

4

1        which provided a license to use CryEngine ████████████. ECF 105-4 at

2 1. CIG never stopped using the same CryEngine code originally licensed under the

3 GLA, and CIG has never provided a single authority stating that taking a second

4 license from a third party to develop using the same code covered by the first license

5 somehow voids the restrictions of the first license. Crytek thus remains confident that,

6 as soon as CIG admits (or can no longer claim ignorance to the fact) that it is

7 developing a standalone version of *Squadron 42*, it will be in breach of the GLA and

8 that CIG's Amazon license provides CIG no shelter from the GLA.

9                  **3. Crytek's Motion Positions The Parties to Litigate Only Once**

10        Crytek's motion is necessary solely because CIG is delaying the final steps of

11 *Squadron 42* development to run out the clock on this current case, which will only

12 force Crytek to file another case in the near future. This obviously makes no sense

13 when the Federal Rules provide a simple mechanism to dismiss this first case without

14 prejudice so that the litigation can proceed efficiently (only once) in a later case. This

15 is not a case where Crytek is seeking to dismiss because it is losing—Crytek is

16 confident that CIG does, in fact, intend to develop *Squadron 42* into a standalone

17 game. Nor is this a case where Crytek is seeking to dismiss following an adverse ruling

18 from the Court. Instead, as explained above, Crytek is seeking to dismiss to address a

19 timing issue caused by CIG's delay strategy. Despite CIG's assertions to the contrary,

20 Crytek's remaining claims are not only viable, they are more than winnable. To date

21 CIG has never been able to identify any authority for its novel defense that it is excused

22 from its obligations under the GLA simply because it took a separate license ***to the***

23 ***same software*** from a third party.

24        Given those timing issues, the only sensible path forward for Crytek was to

25 bring the present motion. All other alternatives would result in significant waste for

26 both the parties and this Court.

27        <u>First</u>, Crytek could have pressed forward with all of its claims. This path would

28

result in considerable wasted expense to both the parties and the Court. The parties would be forced to press forward through fact and expert discovery as well as dispositive motion briefing until Crytek received an order from the Court on Crytek's *Squadron 42* claim that Crytek learned in November 2019 was not ripe. The case would then press forward through trial on Crytek's credits claims. But even following trial and any subsequent appeals, the parties' dispute would remain. Eventually, CIG will release *Squadron 42* as a standalone game revealing development in breach of the GLA, and those new actions would give rise to a new claim. Crytek's motion simply seeks to wait for those inevitable actions by CIG to take place and then re-file.

Second, Crytek could have sought to dismiss just its claims based on *Squadron 42*. But, following dismissal of its *Squadron 42* claim, all of the same problems with pressing forward would remain in this approach. At some point, either during the pendency of the parties' existing case or after its conclusion, CIG would release *Squadron 42*. At that time, a second case (including a new credits claim), duplicative discovery, duplicative motions, and a duplicative trial would all follow.

The path represented by Crytek's motion eliminates all of this potential waste. The requested dismissal without prejudice will cure the recently disclosed ripeness issue with Crytek's *Squadron 42* claim. Once CIG releases *Squadron 42* as a standalone game revealing the violative development activity, Crytek will refile this action and the parties will be in exactly the same position as they are now—with all legal rights and defenses intact—with the only difference being that Crytek's breach claim relating to *Squadron 42* will be fully ripe. All of the parties work to date would be preserved, and the case could efficiently proceed through an appropriate discovery period before proceeding to dispositive motions and trial.

### 4.  Crytek Proposed Reasonable Conditions on Dismissal

Immediately following the parties' status conference with the Court on January 10, Crytek reached out to CIG to discuss *appropriate* conditions for its proposed

dismissal. Ex. A, *Correspondence from C. Brazen to J. Goldman dated 1/10/2020 and 1/13/2020.* On a subsequent call, Crytek renewed its offer of reasonable conditions originally raised with CIG during the parties' prior meet and confer on December 30, 2019. Brazen Decl. ¶¶ 4–5. CIG rejected Crytek's proposals. *Id*. at ¶ 5.

Crytek's proposed conditions eliminate any prejudice that could result to CIG as a result of the requested dismissal without prejudice. In essence, Crytek proposed conditions designed to place both parties in the same position as they are currently. Specifically, Crytek proposed the following:

1.   The parties could rely upon any and all claims from the current action in support of or in defense of a motion for fees/prevailing party motion following the conclusion of the second action;

2.   Crytek would agree to leave its posted bond of $500,000 intact until the conclusion of the second action or resolution of any motion under condition 3, or until such time as the parties resolve their dispute and so notify the court;

3.   The parties would agree that, in the unlikely event Crytek did not bring a second action, either party could bring a motion for fees/prevailing party motion in a declaratory action presented to this Court.

These proposed conditions completely protect both the parties' legal rights, interests, and ability to seek fees as a prevailing party at the actual conclusion of the parties' dispute. As this Court has recognized, the Court's job in considering if and how to dismiss is to prevent prejudice and protect the legitimate legal rights of the defendant. *See Viriyapanthu v. Bank of Am., N.A.*, No. SA CV 12-1285-DOC(ANx), 2013 WL 3188848 at *2 (C.D. Cal. June 21, 2013). Under Crytek's proposed conditions, all of CIG's complained of "harms" can be addressed following the conclusion of the second action. Crytek's conditions are reasonably tailored to the

1  specific circumstances underlying the present motion, and the Court should adopt
2  them.

3        CIG's conditions, on the other hand, are punitive. They seek to punish Crytek
4  when Crytek is only seeking to manage its ongoing claims in an appropriate and
5  efficient manner. While the type of conditions CIG proposes may be appropriate where
6  a party is seeking to cut its losses early or to avoid a potential fees motion, they simply
7  do not fit the circumstances in this case.[1] The conditions ultimately imposed on
8  Crytek's voluntary dismissal without prejudice should be tied to the specific facts of
9  this case. The only procedural vehicle available to Crytek to create the pause necessary
10 to end CIG's delay strategy was the present motion to dismiss. Requesting such a
11 pause when a second case is forthcoming should not open Crytek up to the punitive
12 conditions proposed by CIG.

13       **B. This Case Remains In Its Early Stages**

14       CIG places much weight on the notion that this case has entered its third year.
15 Detached from the specific context of this case, CIG is hoping to imply that this case
16 is in its late stages. The actual procedural details, however, plainly lead to the opposite
17 conclusion. Crytek filed this case on December 12, 2017. The parties remained in the
18 pleadings stage of the case until CIG filed its Answer to the Second Amended
19 Complaint *in February 2019.* ECF 53. The Court did not enter a case schedule until
20 March 7, 2019—less than a year ago. ECF. 55. Moreover, per this Court's order, CIG
21 did not even need to respond to Crytek's discovery requests until September 18,
22 2019—thirty days after Crytek posted its bond. ECF 59, at 2. Thus, discovery, for
23 Crytek, opened only 4 months ago.

24

25

26 [1] And to this point, CIG knows full well that Crytek has no intent to "cut and run," as
   CIG put it. *CIG's Opposition*, 20. In fact, one of Crytek's proposed conditions above
27 was explicitly proposed to protect CIG's legal right to seek fees in the unlikely event
   that Crytek ultimately decides not to bring another action following the release of
28 *Squadron 42*.

Moreover, as recently as January 2, 2020, both parties recognized—and jointly represented to this Court—that the parties have significant discovery left to take. ECF 89, 3 ("[T]he parties believe there is good cause for the Court to grant the requested continuance because, despite the parties' best efforts, much discovery remains to be conducted in this case[.]"). No depositions have been taken, neither party has made any email production, not a single expert has been disclosed by either side, expert reports and discovery still needs to occur, and the Court recently vacated the existing schedule in response to the parties' *joint* request for a continuance and Crytek's filing of this motion. ECF 97. While in its abundance of exuberance, CIG claims to have already prepared for trial, this cannot possibly be the case given the actual status of this case. By any reasonable measure, this case is in the early stages of discovery.

## II.    ARGUMENT

### A. Crytek's Proposed Conditions for Dismissal without Prejudice Protect both Parties' Legal Rights and Interests

The conditions proposed by Crytek in Section I.A.4 above ensure that when Crytek refiles its action following the release of *Squadron 42* as a standalone game, or in the unlikely event Crytek does not refile its action, the parties will be in exactly the same position they are in now, with all legal rights and interests intact. The analysis courts perform in deciding whether voluntary dismissal is proper in the first place is to ensure exactly what Crytek's conditions achieve—preventing prejudice or unfairness to the non-moving party. *See Viriyapanthu*, 2013 WL 3188848 at *2. CIG has neither suggested nor explained why Crytek's conditions fail to achieve this goal. Thus, dismissal of this case under the terms proposed by Crytek provide fair protections.

This stands in stark contradiction to CIG's proposal which is not designed to protect CIG, but to punish Crytek. The imposition of conditions for this purpose is unsupported in the law, and the Court should reject CIG's conditions.

## B. CIG's Demand of Dismissal With Prejudice is Unsupported

While it is within the Court's discretion to convert a motion for voluntary dismissal without prejudice to one with prejudice, CIG has set forth no legally sufficient reason for this Court to do so. CIG's opposition pays little more than lip service to the factors the Court should consider in deciding whether to dismiss with or without prejudice while relying heavily on entirely inapposite case law.

### 1. None of CIG's Expenses Will be Wasted

CIG's argument is premised on the idea that Crytek is going to "walk away . . . after forcing CIG to expend so much time and effort only to pack up right before the close of discovery." *CIG's Opposition*, 15. For CIG to argue this is disingenuous. Throughout this process, Crytek could not have been more clear that it has no intention of walking away—as soon as CIG releases *Squadron 42* as a standalone game as all of CIG's actions suggest it will, Crytek will refile its action. That has always been the point of Crytek dismissing without prejudice, i.e., so that it can refile its action when it is fully ripe. If Crytek had wanted to "walk away," it would have negotiated appropriate terms for a dismissal with prejudice. That is simply not what is happening. When Crytek refiles its action, CIG will be in exactly the same position it is in now. The fees it has purportedly expended to date (while wasteful in their volume) will have the exact same value to the second case as they do to the current case. In the unlikely event that Crytek does not bring a second action, then Crytek's dismissal without prejudice becomes tantamount to a dismissal with prejudice, and Crytek has already proposed a condition in that circumstance to allow CIG to seek its fees at that point. Simply put, Crytek's proposed conditions on its dismissal without prejudice remove any risk that CIG's incurred fees would have been wasted, making a dismissal with prejudice unwarranted under this factor.

## 2. Crytek Has Diligently Prosecuted its Case and This Motion

For whatever reason, CIG focuses largely on claims that have already been dismissed from this case, either by Court order under Rule 12 or by prior party agreement, arguing they were prosecuted "without diligent research." *CIG's Opposition*, at 15-16. CIG's past success in the Rule 12 context has nothing to do with the present motion. The correct inquiry is whether the claims Crytek is seeking to voluntarily dismiss without prejudice—its current claims—have been prosecuted without diligence. *Toyo Tire*, 2018 WL 1896310, at *4 (quoting *Burnette*, 828 F. Supp. at 1444, where the plaintiff had admitted that it had not diligently researched the claim for which dismissal was being sought).

CIG does not suggest that Crytek has failed to be diligent in prosecuting its credits claims. Regarding Crytek's *Squadron 42* claim, Crytek brought that claim, as explained in detail above in Section I.A.2, based on repeated statements to the public by CIG that it was developing *Squadron 42* as a standalone game. *See also Crytek's Memorandum ISO Motion for Voluntary Dismissal*, ECF 95, at 2. Crytek had a good faith belief until late November that CIG was actively engaged in conduct that would constitute breach under the GLA—the development of *Squadron 42* as a standalone game. Following CIG's verified discovery response in late November, Crytek promptly began discussions with CIG in attempts to agree on a fair procedure for dismissal without prejudice as explained in Section I.A.2 above.

## 3. Crytek's Basis for Dismissal is not "Suspect"

To avoid belaboring the point, Crytek will not reiterate the many confusing and shifting statements CIG made to the public and in its briefing in this matter. *See supra* Section I.A.2. Crytek had a good faith belief that CIG was developing *Squadron 42* as a standalone game up until CIG stated ███████████████ ███████████████████ in its verified discovery response in late November 2019. The basis, or impetus, for Crytek's motion was that CIG's verified discovery response

---

CRYTEK'S REPLY IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE

indicated that ███████████████████████████████████. This was the first time Crytek understood CIG's position in this regard. As noted at the outset, the conduct constituting a breach of the GLA is CIG's development of *Squadron 42* as a standalone game, and Crytek had every reason to believe this conduct had been occurring since CIG announced to the public that *Squadron 42* would be standalone.

Separately, CIG provides only a single, conclusory sentence to challenge Crytek's "judicial economy" argument. CIG made no real attempt to refute that the same facts and witnesses will be at issue when Crytek refiles its claims; it made no attempt to refute that having to litigate the credits claim now and the *Squadron 42* claim later makes no practical sense. Finally, CIG cannot dispute the obvious inefficiency in having to prosecute these closely related claims in two separate cases. CIG's willingness to entertain duplicative litigation rather than simply pause this litigation undercuts its position and its alleged concern over its fees, and makes clear that Crytek's dismissal without prejudice is the proper course.

### 4. This Case Remains in its Early Stages

CIG's assertion that this litigation is in its late stages is simply not credible as explained in detail above in Section I.B. While CIG suggests that the parties would have quickly approached the end of discovery had Crytek not filed this motion, CIG ignores the fact that less than a month ago, the parties *jointly* represented to this Court that there was still much discovery left to do and jointly requested a continuance to the remaining pretrial dates. ECF 89, at 3. CIG then concludes that it would be inequitable to CIG to dismiss this case "right before the close of discovery," again seemingly forgetting that there is no close of discovery even scheduled at this point in view of the Court's order on the parties' joint request for a continuance. ECF 97.

### 5. The "Typical Cases" Warranting Dismissal with Prejudice Are Quite Different From The Present Case

CIG points this Court to three "typical examples" of when dismissal with

prejudice is warranted. Those cases present three situations, not one of which is even arguably relevant here: (1) the case is at a late stage of pretrial proceedings; (2) the plaintiff is seeking to avoid a near-certain adverse ruling; and (3) it would be inequitable or prejudicial to defendant to allow plaintiff to refile this action. *CIG's Opposition*, 13. The first of these need not be addressed any further. As explained in Sections I.B and II.B.4 above, this case is in no way at a late stage of pretrial proceedings.[2]

There is no Near-Certain Adverse Ruling for Crytek to Avoid. At the outset, CIG's argument is completely off its foundations—there is no "summary judgment and trial deadline on the horizon." *CIG's Opposition*, 17. Those deadlines are not even in place. Nor has this Court suggested, through its bond order or otherwise, how it will rule at some point in the future on Crytek's remaining claims.

The questions addressed by the Court at the bond stage were whether CIG had satisfied the "relatively low" hurdle of establishing a possibility of success. ECF 81, at 2. Indeed, this Court noted at footnote 4 of its Order, "[n]othing in this Order shall be construed as a final decision on which party has prevailed or will prevail as a matter of fact. The Court only analyzes here whether Defendants have a reasonable possibility of making such a showing." *Id.* at n.4. CIG's suggestion that the Court indicated a near certain adverse ruling against Crytek was already expressly rejected through the Court's own words. CIG's suggestion to the contrary is simply an overreach.

Furthermore, the Court in its bond order did not even indirectly address any of the discrete legal or factual disputes that would be before the Court in any future

---

[2] CIG's own cited case law demonstrates just how inappropriate it would be to dismiss this case with prejudice. In *In re: FEMA*, in addition to being only three months from trial—which is not the case here—the Court's affirmation of the dismissal with prejudice was based in large part on the Plaintiff's attempt to "manipulate the integrity of the court's bellwether process" in MDL litigation. *In re: FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d 157, 163 (5th Cir. 2010). Obviously, no such facts are present here.

CRYTEK'S REPLY IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE

13

dispositive motions or at trial. Regarding Crytek's *Squadron 42* breach claim, it was simply enough that the GLA defined "the Game" as potentially including *Squadron 42*. ECF 81, at 3. Of course, the parties' dispute has never been as to whether *Squadron 42* is mentioned in the definition of "the Game," the dispute has been over whether CIG is developing *Squadron 42* in accordance with the terms of the GLA. The Court gave no indication one way or another of its views on that issue. *Id*. Similarly, the Court's analysis on Crytek's credit claim rested on CIG's now refuted assertion that it had actually switched to the Lumberyard engine. *Id*. at 4 ("It is enough . . . that CIG switched the copyright and trademark notices only after it began using Lumberyard instead of CryEngine."). In sum, this Court, by the Court's own express statement to this effect, has provided no indication how it may ultimately rule on the issues in this case. And given that CIG has not provided any authority or support for the notion that its license with Amazon voids its obligations under the GLA, Crytek is confident no such adverse ruling is forthcoming.

CIG Faces no Inequities from Temporarily Dismissing this Case. CIG's argument that it would be inequitable to allow Crytek to refile its claims against CIG is nothing more than a summary of its prior arguments. For all the reasons already set forth, none of the factors used in deciding whether to dismiss with prejudice support such a dismissal here. And, more fundamentally, the unique circumstances underpinning Crytek's motion confirm that it is Crytek who would face inequity if its claims are dismissed with prejudice.

### 6. The Central District's *Toyo Tire* Decision Bears no Resemblance to this Case

CIG places much emphasis on the Central District's decision in *Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*, No. 15 Civ. 246, 2018 WL 1896310 (C.D. Cal. Mar. 28, 2018). To describe *Toyo Tire* as "distinguishable" from this case

---

CRYTEK'S REPLY IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE

14

1  does not capture just how little it has to do with the facts and circumstances before this
2  Court now.

3      First, and most critically, *Toyo Tire* had already received an actual adverse
4  merits determination from the Court prior to *Toyo Tire*'s motion to dismiss.
5  Specifically, the Court had determined that the defendant had no involvement in the
6  allegedly infringing conduct underpinning *Toyo Tire*'s claim. *Toyo Tire*, 2018 WL
7  1896310 at *2. Not only is there no doubt in the present case that CIG is responsible
8  for the conduct Crytek alleges, there has been no adverse ruling on the claims Crytek
9  seeks to dismiss without prejudice as there was in *Toyo Tire*. Moreover, that the
10 defendant definitively had no involvement in the allegedly infringing conduct was a
11 driving factor in the dismissal with prejudice. *Id*. at *5 (noting that because "Toyo
12 concedes it cannot bring its claims against [the defendant] based on the evidence in
13 the record, Toyo 'cannot proffer a logical explanation for the need to take a dismissal
14 without prejudice' against [the defendant].'"). Obviously, that is not the case here
15 where it is not in dispute that CIG is currently engaged in the conduct underlying
16 Crytek's claims—developing *Squadron 42* and removing Crytek's credits.

17     Second, *Toyo Tire* knew more than a year before it moved to dismiss that the
18 defendant was not involved in the allegedly infringing conduct. *Id*. And during that
19 time, *Toyo Tire* continued to seek contempt sanctions against the defendant knowing
20 they had no involvement in the allegedly infringing conduct, ultimately leading the
21 Court to deny *Toyo Tire*'s motion for a lack of evidence. *Id*. By contrast, Crytek only
22 learned that ███████████████████████████████████████████████████
23 ████████ roughly two months ago and promptly began taking the steps to file this
24 motion. And more importantly, the information that Crytek learned was not that CIG
25 was innocent, as was the case in *Toyo Tire*, but that ████████████████████ in
26 an attempt to avoid liability for its conduct. The Central District's decision in *Toyo*
27 *Tire* does not support dismissal with prejudice under such circumstances.

28

1    Finally, and at risk of belaboring this point, CIG's contention that this case is in

2 its late stages, similar to *Toyo Tire*, lacks any merit. *See supra* Sections I.B and II.B.4.

3 *Toyo Tire* is inapposite, CIG's arguments lack merit, and dismissal *without prejudice*

4 should be granted.

5 ### C. CIG's Proposed Conditions are Punitive and Unreasonable

6    CIG seeks to impose two punitive conditions on Crytek's dismissal without

7 prejudice. First, CIG seeks to be awarded the entirety of Crytek's $500,000 bond.

8 Because the condition of fees is not necessary in the present case to protect CIG's

9 interests, that condition should be rejected. Second, CIG seeks to condition Crytek's

10 dismissal without prejudice on a condition that its credits claim is dismissed *with*

11 *prejudice*. There is no legally viable basis to force Crytek to give up a substantive

12 claim in exchange for delaying a different claim through a dismissal without prejudice.

13 CIG seeks to gain not protection through this proposed condition, but an unfair

14 advantage.

15 ### 1.  The Payment of Fees is Unnecessary to Protect CIG

16    A Court is not required to impose fees as a condition for voluntary dismissal but

17 may do so when it is necessary *for the protection* of the defendant. *Nash v. Krauss*,

18 No. CV 05-2293 SVW (JTLx), 2006 WL 8440813 at *5 (C.D. Cal. Apr. 4, 2006). And

19 as explained in Crytek's opening motion, the factors this Court considers in exercising

20 its discretion do not favor the imposition of fees in the present case. *Crytek's*

21 *Memorandum ISO Motion for Voluntary Dismissal*, ECF 95, at 8-10. Here, Crytek has

22 offered perfectly reasonable conditions to protect CIG's interests in its ability to seek

23 fees. In fact, CIG's interest in protecting its ability to ultimately seek its fees is entirely

24 addressed by Crytek's proposed conditions. *See supra* Section I.A.4.

25    As evidenced from the tone of CIG's motion, CIG is not requesting fees for its

26 own protection, but to gain an advantage it would not have even if this case proceeded.

27

28

This is not the intended or proper purpose of conditioning a Plaintiff's voluntary dismissal without prejudice.

## 2. Dismissal of Crytek's Credits Claim along with its *Squadron 42* Claim is a Matter of Judicial Economy

CIG's argument in support of dismissing Crytek's credits claim with prejudice is built on mischaracterizations. First, the foundation of CIG's argument is wrong. CIG argues that it would have no obligation to credit Crytek if it switched to an engine different from the CryEngine covered by the GLA. Of course, the reverse is equally true, i.e., CIG does have an obligation to credit Crytek if it has not switched away from the CryEngine. As detailed in Section I.A.2, CIG has already stated that it continues to rely on the same CryEngine code covered by the GLA—there was no switch. CIG's *actual* contention is that taking a second license to the CryEngine from Amazon somehow voids the GLA. Crytek has never suggested that it agrees with that contention, nor has CIG ever provided any legal authority to support it.

Furthermore, Crytek never admitted it has not suffered damage as a result of CIG's failure to credit Crytek. This is yet another overreach by CIG. As an initial matter, Crytek is not limited to a lost profits theory of damages and Crytek has already articulated a separate basis for damages based on the advertising it has been deprived of by CIG in response to CIG's Interrogatory No. 18. Moreover, the "admission" CIG points to is nothing more than a statement that Crytek does not have internal documents detailing the damage it had sustained as a result of CIG's breach of the credits requirement. As the Court is likely well-aware, establishing lost-profit and lost-advertising damages is virtually always done through expert analysis. It is not surprising in the least that Crytek did not have internal documents quantifying these types of damages, and it certainly is not an admission that such damages do not exist.

Further still, CIG entirely misrepresents Crytek's position regarding its pursuit of lost profits. Crytek's actual position, including the portions omitted from CIG's

brief, was:

> Crytek will confirm that it is not and will not seek damages based on a theory that it has lost sales of its Crytek-developed games as a result of CIG's removal of Crytek's credits from Star Citizen.

Brazen Decl. ¶ 7. Crytek has not contended that CIG's removal of credits has had any impact on Crytek's ability to sell its own games. The impact has been on Crytek's licensing business, not its game business. In the same correspondence to CIG, Crytek explained another of its objections to CIG's overbroad requests for general financial information inclusive of Crytek's games business:

> Crytek's general financial documents include financial information that has no relation to its licensing business, including all the Crytek developed game information Crytek has already objected to producing above. Moreover, Crytek has already confirmed that Crytek is not seeking damages on a theory of lost profits."

*Id*. at ¶ 8. In sum, Crytek's admission that its game business was not damaged is not in any way an admission that Crytek's licensing business has not been damaged or that Crytek has not been harmed from the loss of advertising it was entitled to under the GLA. Crytek's credits claim is meritorious and is supported by significant damages caused by CIG's decisions. Crytek seeks to dismiss its credits claim solely in the interests of judicial efficiency so that Crytek's credits claim can proceed at one time with the *Squadron 42* claim when Crytek renews that claim upon its ripeness. CIG's condition should be rejected.

III.   **CONCLUSION**

For the foregoing reasons, Crytek respectfully requests that the Court grant its motion for voluntary dismissal without prejudice and subject to the conditions set forth above in Section I.A.4.

DATED: <u>January 24, 2020</u>

ERISE IP, P.A.

By: <u>*/s/ Eric A. Buresh*</u>
Eric A. Buresh (*pro hac vice*)
Attorneys for Plaintiff
CRYTEK GMBH